Exhibit 1

CHARLES C. MILLER

Judgment in a Criminal Case ( _14_ pages)

AO 2 45B (12/95) Sheet 1 - Judgment in a   ~l Case

# UNITED STATES DISTRICT COURT
## Western District of Washington

UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE**
v. | (For Offenses Committed On or After November 1, 1987)
CHARLES C. MILLER | Case Number: CR97-051C-001

Ralph Hurvitz
Defendant's Attorney

THE DEFENDANT:

_____ pleaded guilty to count(s) _____

_____ pleaded nolo contendere to count(s) _____ which was
accepted by the court.

**XX** was found guilty on count(s) **1-16 of the Indictment** after a plea of
not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| Title 18 USC § 371 | Conspiracy | 11/95 | 1 |
| Title 18 USC § 1344 | Bank Fraud | 11/95 | 2-10 |
| Title 18 USC § 1341 | Mail Fraud | 11/95 | 11-16 |

The defendant is sentenced as provided in pages 2 through __8__ of this judgment. The
sentence is imposed pursuant to the Sentencing Reform Act of 1984.

_____ The defendant has been found not guilty on count(s) _____

_____ Count(s) _____ (is)(are) dismissed on the motion of the
United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this
district within 30 days of any change of name, residence, or mailing address until all fines,
restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.: 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

Defendant's Date of Birth: 11/26/49

Defendant's USM No.: 61721-065

Defendant's Mailing Address:

FCI La Tuna, P.O. Box 1000

8500 Doniphan, Anthony, NM-TX 88021

Defendant's Residence Address:

Same as Above

CARL BLACKSTONE
Assistant United States Attorney

FLOYD G. SHORT
Assistant United States Attorney

November 12, 1999
Date of Imposition of Sentence

Signature of Judicial Officer

THE HONORABLE JOHN C. COUGHENOUR
United States District Judge
Name & Title of Judicial Officer

11/12/99
Date

I hereby certify that the
annexed instrument is a true
and correct copy of the original
on file in my office.
ATTEST: BRUCE RIFKIN
Clerk, U.S. District Court
Western District of Washington

By _____
Deputy Clerk

UNITED STATES v. CHARLES MILLER
(Evidentiary Hearing)
No. CR97-0051JCC

Government's Exhibit No. _____1_____

AC 245B (1/95) Sheet 2 - Imprisonment

Defendant:      CHARLES   MILLER                    Judgment--Page __2__ of __8__
Case Number:    CR97-051_-001

## IMPRISONMENT

The Defendant is hereby committed to the custody of the United States
Bureau of Prisons to be imprisoned for a total term of _____
_____ *One Hundred Twenty One (121) Months* .

_____ The court makes the following recommendations to the Bureau of
Prisons:

_XX_ The defendant is remanded to the custody of the United States Marshal.

_____ The defendant shall surrender to the United States Marshal for this district,

        _____ at _____ a.m.\p.m. on _____.

        _____ as notified by the United States Marshal.

_____ The defendant shall surrender for service of sentence at the institution designated
by the Bureau of Prisons,

        _____ before 2 p.m. on _____.

        _____ as notified by the United States Marshal.

        _____ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

_____

Defendant delivered on _____ to _____ at

_____, with a certified copy of

this judgment.

                                    _____
                                          United States Marshal

                    By: _____
                                          Deputy Marshal

AO 245S (2/92) Sheet 3 - Supervised r...

Defendant:     CHARLES . MILLER          Jud_ :nt--Page __3__ of __8__
Case Number:   CR97-05_.-001

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of _____ FIVE (5) YEARS _____

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

_____ The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

_____ The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check if applicable.)

_XX_ The defendant shall not possess a firearm as defined in 18 U.S.C. § 921. (Check if applicable.)

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below). The defendant shall comply with the additional conditions on the attached page (if indicated below):

### SEE ATTACHED SPECIAL CONDITIONS OF SUPERVISION

### STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer 10 days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B (Rev. 3/95) Sheet 3 - Supervised

Defendant:       CHARLES C  MILLER                     Ju ment--Page __4__ of __8__
Case Number:     CR97-051C-001

## ADDITIONAL SUPERVISED RELEASE TERMS

1.  The defendant shall be prohibited from possessing a firearm or destructive
    device as defined in Title 18, U.S.C. § 921.

2.  The defendant shall submit to a search of his person, residence, office,
    property, or vehicle conducted in a reasonable manner and at a reasonable
    time by a probation officer.

3.  The defendant shall not be required to submit to mandatory drug testing
    pursuant to 18 U.S.C. § 3563(a)(4) and 18 U.S.C. § 3583(d).

4.  The defendant shall provide his probation officer with access to any
    requested financial information including authorization to conduct credit
    checks and obtain copies of his Federal Income Tax Returns.

5.  The defendant shall be prohibited from incurring new credit charges or
    opening additional lines of credit.

6.  The defendant shall pay restitution in the amount of $186,830.14.  Any
    unpaid amount is to be deducted from defendant's inmate recovery payment
    program while incarcerated.  The remaining balance is to be paid during
    any period of supervision in monthly installments as directed by the
    Probation Officer.  The defendant shall be credited for any amount paid to
    the victims through any civil proceedings.  All restitution will be joint
    and several with the other conspirators.

AO 245B (2/95) Sheet 5, Part A - Criminal   ury Penalties

Defendant:   CHARLES C. MILLER                     Judgment--Page __5__ of __8__
Case Number:   CR97-051C-001

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

|         | **Assessment** | **Fine** | **Restitution** |
|---------|----------------|----------|-----------------|
| TOTALS: | $1,600.00      | $-0-     | $186,830.14     |

Restitution to be made jointly and severally with:
    Charles Dean Christenson  (CR97-051C-002)
    Kurt Rolfe Gilson         (CR97-051C-003)
    Veryl E. Knowles          (CR97-051C-004)
    Kathleen Margaret Cottam  (CR96-578C)

_____ If applicable, restitution amount ordered pursuant to plea agreement        $ _____

### FINE

__XX__ The Court finds that the defendant is financially unable and is unlikely to become able to pay a fine and, accordingly, the imposition of a fine is waived.

The above fine includes costs of incarceration and/or supervision in the amount of $ _____
The defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

_____ The court has determined that the defendant does not have the ability to pay interest and it is ordered that:

    _____ The interest requirement is waived.
    _____ The interest requirement is modified as follows:

### RESTITUTION

_____ The determination of restitution is deferred in a case brought under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, until _____
_____. An Amended Judgment in a Criminal Case will be entered after such determination.

__XX__ The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| Name of Payee | *Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---------------|-----------------------|-------------------------------|------------------------------------------|
|               | $                     | $                             |                                          |

SEE NEXT PAGE FOR LISTING OF PAYEES

AO 245B (3/95) Sheet 5, Part B - Criminal Monetary Penalties

Defendant:      CHARLES C. MILLER            Judgment--Page __6__ of __8__
Case Number:    CR97-051C-001

## RESTITUTION (CONT.)

| Name of Payee | *Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
| Buddy Gregg Motor Homes<br>1206 N. Stemmons<br>Lewisville, TX 75067<br>Stock #1801 | $ 7,500.00 | $ 7,500.00 | $ |
| McClains RV<br>P O Box 969<br>Lake Dallas, TX 75065<br>Attn: Nate McClain<br>Ref: WQ237AQ | $58,568.21 | $58,568.21 | |
| John Deere Insurance<br>3400 80th Street<br>Moline, IL 61265<br>Ref: X455739/RDM | $38,716.21 | $38,716.21 | |
| Washington Mutual Savings Bank<br>Attn: Loss Prevention<br>1201 3rd Avenue<br>Seattle, WA 98101 | $ 3,402.10 | $ 3,402.10 | |
| Motor's Insurance Corporation<br>P O Box 2192<br>Carol Stream, IL 60132-2192<br>Ref: FP-C00044362 | $ 6,467.01 | $ 6,467.01 | |
| Wells Fargo Bank<br>Attn: Mike Barnes<br>999 3rd Avenue<br>MAC 6540-124<br>Seattle, WA 98104<br>RE: United Construction & U.S. v. Cottam | $55,400.00 | $55,400.00 | |
| Chase Chevrolet<br>P O Box 8345<br>Stockton, CA 95208<br>Attn: Freemen Case | $   393.75 | $   393.75 | |
| Korum Ford<br>P O Box 538<br>Puyallup, WA 98371<br>Attn: Lee Rippon<br>Ref: 1995 Windstar Van<br>2FMDA5140SBB66321 | $ 3,532.65 | $ 3,532.65 | |

AO 245B (3/93) Sheet 5, Part B - Criminal Monetary Penalties

Defendant:    CHARLES C. MILLER                    Judgment--Page __7__ of __8__
Case Number:  CR97-051C-001

## RESTITUTION (CONT.)

| Name of Payee | *Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
| U.S. Bank | $12,850.21 | $12,850.21 | |

Attn: Investigations/
    Dale Clark
P O Box 720
Seattle, WA 98101
Re: Gilson/Cottam:
    155-083-2271-019


Restitution will be joint and several with:
    Charles Dean Christenson  (CR97-051C-002)
    Kurt Rolfe Gilson        (CR97-051-003)
    Veryl E. Knowles         (CR97-051C-004)
    Kathleen Margaret Cottam (CR96-578C)


    Totals:    $186,830.14    $186,830.14

*Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994

AO 245S (3/95) Sheet 5, Part B - Criminal Monetary Penalties

Defendant:      CHARLES C MILLER                           Judgment--Page __8__ of __8__
Case Number:    CR97-051C-001

## SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment;
(2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest;
(6) penalties.

Payment of the total fine and other criminal monetary penalties shall be
due as follows:

A   _XX_   in full immediately; or

B   ____   $ _____ immediately, balance due (in accordance with C, D,
           or E); or

C   ____   not later than _____; or

D   ____   in installments to commence _____ day(s) after the date of this
           judgment.  In the event the entire amount of criminal monetary
           penalties imposed is not paid prior to the commencement of
           supervision, the U.S. probation officer shall pursue collection of
           the amount due, and shall request the court to establish a payment
           schedule if appropriate; or

E   ____   in _____ (e.g., equal, weekly, monthly, quarterly) installments of $ _____
           _____ over a period of _____ year(s) to commence _____ day(s)
           after the date of this judgment.

Special instructions regarding the payment of criminal monetary penalties:

_XX_   MAKE CASHIER'S CHECK(S), MONEY ORDER(S) (OR PAYMENT MAY BE PAID IN CASH) FOR ALL CRIMINAL
       MONETARY PENALTIES, INCLUDING SPECIAL ASSESSMENTS, FINES, AND RESTITUTION, PAYABLE TO:

       UNITED STATES DISTRICT COURT CLERK, WESTERN DISTRICT OF WASHINGTON.  For restitution
       payments, the Court is to forward money received to the payees at addresses listed on
       pages _6 and 7_ of this judgment. Restitution will be joint and several with:

                 Charles Dean Christenson (CR97-051C-002)
                 Kurt Rolfe Gilson        (CR97-051-003)
                 Veryl E. Knowles         (CR97-051C-004)
                 Kathleen Margaret Cottam (CR96-578C)

____   The defendant shall pay the cost of prosecution.


____   The defendant shall forfeit the defendant's interest in the following property to the United States:



       Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a
period of imprisonment payment of criminal monetary penalties shall be due during the period of imprisonment.  All
criminal monetary penalty payments, except those payments made through the Bureau of Prisons' Inmate Financial
Responsibility Program, are to be made as directed by the court, the probation officer, or the United States Attorney.

℀AO 245D    (Rev. 6/2005) Judgment in a Criminal Case for Revocations (Rev. USAO 10/2005)
Sheet 1

# UNITED STATES DISTRICT COURT

|  WESTERN  | District of |  WASHINGTON  |

| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| V. | (For **Revocation** of Probation or Supervised Release) |

| CHARLES C. MILLER | Case Number: | CR97-051C-001 |
| | USM Number: | 61721-065 |
| | Ralph Hurvitz |
| | Defendant's Attorney |

## THE DEFENDANT:

☐ admitted guilt to violation of conditions _____ of the term of supervised release.

X was found in violation of condition(s) 1-6 _____ after denial of guilt.

The defendant is adjudicated guilty of these violations:

| Violation Number | Nature of Violation | Violation Ended |
|---|---|---|
| 1 | Driving without a valid driver's license in the District of Nevada | 4/3/2006 |
| 2 | Failing to register as a convicted felon following his release from custody | |
| 3 | Associating with a convicted felon | December 2006 |
| 4 | Submitting false monthly reports | December 2006 |
| 5 | Failing to provide access to requested financial information to probation | December 2006 |
| 6 | Failing to respond truthfully to, and follow the instructions of his probation officer | December 2006 |

The defendant is sentenced as provided in pages 2 through ___4___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant is discharged as to violations _____

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

CARL BLACKSTONE
Assistant United States Attorney

April 6, 2007
Date of Imposition of Judgment

Signature of Judge

THE HONORABLE JOHN C. COUGHENOUR
Name and Title of Judge

4/6/07
Date

97-CR-00051-BCST

AO 245D    (Rev. 6/2005) Judgment in a Criminal Case for Revocations (Rev. USAO 10/2005)
            Sheet 2--- Imprisonment

Judgment — Page __2__ of __6__

DEFENDANT:       CHARLES C. MILLER
CASE NUMBER:     CR97-051C-001

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total
total term of :          Thirty - Six (36) Months

☐  The court makes the following recommendations to the Bureau of Prisons:

X   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

    ☐   at _____ ☐  a.m.   ☐  p.m.   on _____ .

    ☐   as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐   before 2 p.m. on _____ .

    ☐   as notified by the United States Marshal.

    ☐   as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

a _____ with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (12/55) Sheet 5, Part A - Criminal     ury Penalties

Defendant:     CHARLES C. MILLER            Judgment--Page 3 of 6
Case Number:   CR97-051C-001

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

|           | Assessment    | Fine     | Restitution   |
|-----------|---------------|----------|---------------|
| TOTALS:   | $1,600.00     | $-0-     | $186,830.14   |

Restitution to be made jointly and severally with:
    Charles Dean Christenson  (CR97-051C-002)
    Kurt Rolfe Gilson         (CR97-051C-003)
    Veryl E. Knowles          (CR97-051C-004)
    Kathleen Margaret Cottam  (CR96-578C)


_____ If applicable, restitution amount ordered pursuant to plea agreement     $ _____

## FINE

_XX_ The Court finds that the defendant is financially unable and is unlikely to become able to pay a fine and, accordingly, the imposition of a fine is waived.

The above fine includes costs of incarceration and/or supervision in the amount of $ _____
    The defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

_____ The court has determined that the defendant does not have the ability to pay interest and it is ordered that:

        _____ The interest requirement is waived.
        _____ The interest requirement is modified as follows:


## RESTITUTION

_____ The determination of restitution is deferred in a case brought under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, until _____
_____. An Amended Judgment in a Criminal Case will be entered after such determination.

_XX_ The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| Name of Payee | *Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---------------|-----------------------|-------------------------------|-----------------------------------------|
|               | $                     | $                             |                                         |

SEE NEXT PAGE FOR LISTING OF PAYEES

AO 245S (3/95) Sheet 5, Part B - Criminal Monetary Penalties

Defendant:     CHARLES C. MILLER                    Judgment--Page _4_ of _6_
Case Number:   CR97-051C-001

## RESTITUTION (CONT.)

| Name of Payee | *Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
| Buddy Gregg Motor Homes<br>1206 N. Stemmons<br>Lewisville, TX 75067<br>Stock #1801 | $ 7,500.00 | $ 7,500.00 | $ |
| McClains RV<br>P O Box 969<br>Lake Dallas, TX 75065<br>Attn: Nate McClain<br>Ref: WQ237AQ | $58,568.21 | $58,568.21 | |
| John Deere Insurance<br>3400 80th Street<br>Moline, IL 61265<br>Ref: X455739/RDM | $38,716.21 | $38,716.21 | |
| Washington Mutual Savings Bank<br>Attn: Loss Prevention<br>1201 3rd Avenue<br>Seattle, WA 98101 | $ 3,402.10 | $ 3,402.10 | |
| Motor's Insurance Corporation<br>P O Box 2192<br>Carol Stream, IL 60132-2192<br>Ref: FP-C00044362 | $ 6,467.01 | $ 6,467.01 | |
| Wells Fargo Bank<br>Attn: Mike Barnes<br>999 3rd Avenue<br>MAC 6540-124<br>Seattle, WA 98104<br>RE: United Construction & U.S. v. Cottam | $55,400.00 | $55,400.00 | |
| Chase Chevrolet<br>P O Box 8345<br>Stockton, CA 95208<br>Attn: Freemen Case | $   393.75 | $   393.75 | |
| Korum Ford<br>P O Box 538<br>Puyallup, WA 98371<br>Attn: Lee Rippon<br>Ref: 1995 Windstar Van<br>2FMDA5140SBB66321 | $ 3,532.65 | $ 3,532.65 | |

AO 245B (12/93) Sheet 5, Part B - Criminal Monetary Penalties

Defendant:        CHARLES C. MILLER                    Judgment--Page _5_ of _6_
Case Number:      CR97-051C-001

## RESTITUTION (CONT.)

| Name of Payee | *Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
| U.S. Bank | $12,850.21 | $12,850.21 | |
| Attn: Investigations/ | | | |
| Dale Clark | | | |
| P O Box 720 | | | |
| Seattle, WA 98101 | | | |
| Re: Gilson/Cottam: | | | |
| 155-083-2271-019 | | | |

Restitution will be joint and several with:
    Charles Dean Christenson  (CR97-051C-002)
    Kurt Rolfe Gilson         (CR97-051-003)
    Veryl R. Knowles          (CR97-051C-004)
    Kathleen Margaret Cottam  (CR96-578C)


    Totals:        $186,830.14    $186,830.14

*Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of
Title 18 for offenses committed on or after September 13, 1994

AO 245H (3/93) Sheet 5, Part B - Criminal   Any Penalties

Defendant:    CHARLES C. MILLER                    Judgment--Page __6__ of __6__
Case Number:  CR97-051C-001

## SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment;
(2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest;
(6) penalties.

Payment of the total fine and other criminal monetary penalties shall be
due as follows:

A  __XX__  in full immediately; or

B  _____   $ _____ immediately, balance due (in accordance with C, D,
           or E); or

C  _____   not later than _____; or

D  _____   in installments to commence _____ day(s) after the date of this
           judgment. In the event the entire amount of criminal monetary
           penalties imposed is not paid prior to the commencement of
           supervision, the U.S. probation officer shall pursue collection of
           the amount due, and shall request the court to establish a payment
           schedule if appropriate; or

E  _____   in _____ (e.g., equal, weekly, monthly, quarterly) installments of $ _____
           _____ over a period of _____ year(s) to commence _____ day(s)
           after the date of this judgment.

Special instructions regarding the payment of criminal monetary penalties:

__XX__  MAKE CASHIER'S CHECK(S), MONEY ORDER(S) (OR PAYMENT MAY BE PAID IN CASH) FOR ALL CRIMINAL
        MONETARY PENALTIES, INCLUDING SPECIAL ASSESSMENTS, FINES, AND RESTITUTION, PAYABLE TO:

        UNITED STATES DISTRICT COURT CLERK, WESTERN DISTRICT OF WASHINGTON. For restitution
        payments, the Court is to forward money received to the payees at addresses listed on
        pages __6 and 7__ of this judgment. Restitution will be joint and several with:

                Charles Dean Christenson (CR97-051C-002)
                Kurt Rolfe Gilson       (CR97-051C-003)
                Varyl E. Knowles        (CR97-051C-004)
                Kathleen Margaret Cottam (CR96-578C)

_____  The defendant shall pay the cost of prosecution.


_____  The defendant shall forfeit the defendant's interest in the following property to the United States:



        Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a
period of imprisonment payment of criminal monetary penalties shall be due during the period of imprisonment. All
criminal monetary penalty payments, except those payments made through the Bureau of Prisons' Inmate Financial
Responsibility Program, are to be made as directed by the court, the probation officer, or the United States Attorney.

**EXHIBIT – 2**

– Appointment Affidavits

– Oath of Office for United States judges

– Senate of the United States consent for Judicial Nomination

– Presidential Appointment of Judge

\* Believed to be required of  <u>all</u> Federal Offices

STANDARD FORM 61
REVISED SEPTEMBER 1970
U.S. CIVIL SERVICE COMMISSION
F.P.M. CHAPTER 295
61–107

OMB APPROVAL NO. 50–R0118

# APPOINTMENT AFFIDAVITS

_United States District Judge_                    _9/28/81_
(Position to which appointed)                    (Date of appointment)

_____        _____        _Seattle Wash_
(Department or agency)            (Bureau or division)        (Place of employment)

I, _John C. Coughenour_                    , do solemnly swear (or affirm) that—

## A. OATH OF OFFICE

I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God.

## B. AFFIDAVIT AS TO STRIKING AGAINST THE FEDERAL GOVERNMENT

I am not participating in any strike against the Government of the United States or any agency thereof, and I will not so participate while an employee of the Government of the United States or any agency thereof.

## C. AFFIDAVIT AS TO PURCHASE AND SALE OF OFFICE

I have not, nor has anyone acting in my behalf, given, transferred, promised or paid any consideration for or in expectation or hope of receiving assistance in securing this appointment.

_John C Coughenour_
(Signature of appointee)

Subscribed and sworn (or affirmed) before me this _20_ day of _October_ A.D. 19_81_

at _____Seattle_____        _Washington_
(City)                        (State)

[SEAL]

_Susan Palmer_
(Signature of officer)

Commission expires _7-27-82_        _Notary Public_
(If by a Notary Public, the date of expiration            (Title)
of his Commission should be shown)

09 0580

NOTE.—The oath of office must be administered by a person specified in 5 U.S.C. 2903. The words "So help me God" in the oath and the word "swear" wherever it appears above should be stricken out when the appointee elects to affirm rather than swear to the affidavits; only these words may be stricken and only when the appointee elects to affirm the affidavit.

★U.S. Government Printing Office: 1977—241-530/3254        643–18–83434–1      643–762    gpo

FILED

MAR 26 2009

Clerk, U.S. District and
Bankruptcy Courts

'orm No. G-22
Rev. 11-2-70)

# OATH OF OFFICE FOR UNITED STATES JUDGES

**(Title 28, Sec. 453 and Title 5, Sec. 3331, United States Code)**

I, ....*John C. Coughenour*...................................., do solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and that I will faithfully and impartially discharge and perform all the duties incumbent upon me as *U.S. District Judge*................, according to the best of my abilities and understanding, agreeable to the Constitution and laws of the United States; and that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter.   So HELP ME GOD.

.................................................................

Subscribed and sworn to (or affirmed) before me this ................................................ day

of ....*October*.........................., 19 *81*

.................................................................

**Actual abode** ██████████████       ...........................................................

**Official station** • *Seattle, Wa*.........

**Date of birth** ......*7/27/41*.................................

**Date of entry on duty** ......*9/28/81*.........................

Note—The Act of May 1, 1876 (Title 48, sec. 1466, United States Code), provides that the oaths of *Territorial Officers* shall be administered in the Territory in which the office is held.

# Senate of the United States

**IN EXECUTIVE SESSION**

September 25, 1981

**Resolved,** That the Senate advise and consent to the following nomination:

John C. Coughenour, of Washington, to be United States District Judge for the Western District of Washington.

Attest: 

Secretary

THE WHITE HOUSE
SEP 25 1981
RECEIVED

President of the United States of America

To all who shall see these Presents, Greeting:

Know Ye: That reposing special trust and confidence in the Wisdom, Uprightness, and Learning of John C. Coughenour, of Washington, I have nominated, and, by and with the advice and consent of the Senate, do appoint him United States District Judge for the Western District of Washington, and do authorize and empower him to execute and fulfill the duties of that Office according to the Constitution and Laws of the said United States, and to Have and to Hold the said Office, with all the powers, privileges, and emoluments to the same of right appertaining, unto Him, the said John C. Coughenour during his good Behavior.

In testimony whereof, I have caused these Letters to be made patent and the seal of the Department of Justice to be hereunto affixed.

Done at the City of Washington this twenty-eighth day of September, in the year of our Lord one thousand nine hundred and eighty-one, and of the Independence of the United States of America the two hundred and sixth.

By the President:

William French Smith

Ronald Reagan



EXHIBIT 3

28 USC 453

5 USC 3331

**Copies as provided by the Law Library at FCI LOMPOC
by operation of law**

09 0580

# FILED

MAR 2 6 2009

Clerk, U.S. District and
Bankruptcy Courts



**5 USCS § 3331**   GOVERNMENT ORGANIZATION & EMPLOYEES

this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God." This section does not affect other oaths required by law.

(Sept. 6, 1966, P. L. 89-554, § 1, 80 Stat. 424.)

## HISTORY; ANCILLARY LAWS AND DIRECTIVES

**Prior law and revision:**

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
| . . . . . . . . . . . . . . . . . . . . | 5 USC § 16 | R.S. § 1757. May 13, 1884, ch 46, §§ 2, 3, 23 Stat. 22. |

All but the quoted language in R.S. § 1757 is omitted as obsolete since R.S. § 1757 was originally an alternative oath to the oath prescribed in R.S. § 1756 which oath was repealed by Act May 13, 1884, ch 46, § 2, 23 Stat. 22. The words "An individual, except the President, . . . in the civil service or uniformed services" are substituted for "any person . . . either in the civil, military, or naval service, except the President of the United States". The second sentence of former 5 USC § 16 is changed to read, "This section does not affect other oaths required by law.". Standard changes are made to conform with the definitions applicable and the style of this title.

## CROSS REFERENCES

This section is referred to in 2 USCS § 64-1; 5 USCS §§ 2903–2906, 3332; 10 USCS §§ 591, 603, 626; 14 USCS §§ 273, 735; 22 USCS § 2504; 33 USCS § 854a-2; 42 USCS §§ 1971, 4954.

## INTERPRETIVE NOTES AND DECISIONS

1. Generally
2. Positions for which oath required
3. Time for taking of oath
4. Effect of taking of oath, generally
5. —Oath as prerequisite to compensation
6. Presumption as to taking of oath
7. Effect of failure or inability to take oath
8. Effect of conscientious objector beliefs
9. Effect of subsequent expatriation
10. Preservation of oath records

**1. Generally**

Postmasters must take oath required by predecessor to 5 USCS § 3331 as well as oaths prescribed by predecessor to 39 USCS § 1011 relative to performance of duties in Postal Service. (1885) 18 Op Atty Gen 181.

Predecessor to 5 USCS § 3331 was enacted to uphold paramount authority of national government and it emphatically repels deadly heresy of paramount state allegiance. Treason to Grand Jury-Treason and Piracy (CC Mass) F Cas No. 18,277.

**2. Positions for which oath required**

Predecessor to 5 USCS § 3331 was inapplicable

to clerk of internal revenue supervisor. Hedrick & Warden's Cases (1880) 16 Ct Cl 88.

Oath was not required of consular agents. Sampson v United States (1895) 30 Ct Cl 365.

Predecessor to 5 USCS § 3331 was applicable to disbursing agent. Bartlett v United States, 39 Ct Cls 338, affd 197 US 230, 49 L Ed 735, 25 S Ct 433.

Judges are required to take oaths. 7 Op Atty Gen 303.

Marshal of consular court is required to take oath. 10 Op Atty Gen 250.

Oath was required by clerks in executive departments. 12 Op Atty Gen 521.

Predecessor to 5 USCS § 3331 included members of Congress. 17 Op Atty Gen 419.

Foreign marshals of consular courts did not need to swear allegiance. 23 Op Atty Gen 608.

Prescribed oath, which Congress had given for all elected or appointed officers in civil, military, or naval service of United States, except President, had no application whatsoever to officers of state or any subdivision thereof. Van Hodge v State (1945) 149 Tex Crim 64, 191 SW2d 24.

**3. Time for taking of oath**

Employee transferred from Unite ployees' Compensation Commission to of Agriculture might properly take oa day of transfer, but mere delay in taki not be regarded as prejudicial. 39 Op /

**4. Effect of taking of oath, generally**

Appointment was complete upon Glavey v United States (1901) 182 US 1247, 21 S Ct 891.

Fact one took oath of office o that position held was "office" so as to dant "officer" within meaning of cri which prohibited officer with custod ment document from fraudulently tal withdrawing such document. Marti States (1909, CA8 Indian Terr) 168 F

Taking of oath was in law legal acce fice, and, as such, sufficient formal ac Op Atty Gen 283.

**5. —Oath as prerequisite to compens**

Internal revenue collector was entit pensation from time of oath computed commencing duties. United States (1884) 112 US 88, 28 L Ed 630, 5 S Ct

Paymaster's clerk in Navy was enti pensation from date of oath. Poore v U (1914) 49 Ct Cl 192.

Military officer was entitled to co from acceptance of appointment withou Atty Gen 638.

Oath was prerequisite to compensatic 7 Op Atty Gen 303.

Oath was prerequisite to compensat shal of consular court. 10 Op Atty Gen

Assistant assessor of internal reveni tled to compensation though he did no 13 Op Atty Gen 306.

## § 3332.  Officer affidavit;

An officer, within 30 days aft with the oath of office require ther he nor anyone acting ir paid any consideration for or in securing the appointment.

(Sept. 6, 1966, P. L. 89-554, §

## HISTORY; ANC

**Prior law and revision:**

| Derivation | U.S. C |
|---|---|
| . . . . . . . . . . . . . . . . . . . . | 5 USC |

**§ 3329.  Government-wide list of vacant positions [Caution: For enactment of another § 3329, see note to section]**

(a) For the purpose of this section, the term "agency" means an Executive agency, excluding the General Accounting Office and any agency (or unit thereof) whose principal function is the conduct of foreign intelligence or counterintelligence activities, as determined by the President.

(b) The Office of Personnel Management shall establish and keep current a comprehensive list of all announcements of vacant positions in the competitive service within each agency that are to be filled by appointment for more than one year and for which applications are being (or will soon be) accepted from outside the agency's work force.

(c) Included for any position listed shall be—

   (1) a brief description of the position, including its title, tenure, location, and rate of pay;

   (2) application procedures, including the period within which applications may be submitted and procedures for obtaining additional information; and

   (3) any other information which the Office considers appropriate.

(d) The list shall be available to members of the public.

(e) The Office shall prescribe such regulations as may be necessary to carry out this section. Any requirement under this section that agencies notify the Office as to the availability of any vacant positions shall be designed so as to avoid any duplication of information otherwise required to be furnished under section 3327 of this title or any other provision of law.

(Added Oct. 23, 1992, P. L. 102-484, Div D, Title XLIV, Subtitle C, § 4431(a), 106 Stat. 2719.)

### HISTORY; ANCILLARY LAWS AND DIRECTIVES

**Explanatory notes:**
Another § 3329 was enacted by Act Oct. 23, 1992, P. L. 102-484, § 544(a).

## SUBCHAPTER II.  OATH OF OFFICE

### § 3331.  Oath of office

An individual, except the President, elected or appointed to an office of honor or profit in the civil service or uniformed services, shall take the following oath: "I, AB, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take

561

tent Appeals, and this section has the United States.

f title 28, U.S.C., 1940 ed., are 4 of this title.

er closed" and signifies the time ith respect to matters enumerated "always open," there is no time (Ex parte Branch. 63 Ala. 383,

ovided that "The district courts, ty, shall be deemed always open he judge "at chambers or in the n term," may make orders and ll reference to the nature of the e acts which may be performed '5(c) and 56 of the new Federal similar provisions with respect ppeals and in the district courts. of Civil Procedure contain pro- raphs, respectively, of this sec- :ourts.

ling, substituted "power unre- :rs unrestricted by terms"; and "term".

**CES**

il Procedure, Rule 2.

ederal Rules of Civil Procedure,

s of Civil Procedure, Rule 77.

)E

3d ed.). Time § 6.04.

r 3d ed.). Organization and

3d ed.). Clerk § 501.03.

3d ed.). Courts and Clerks

for failure to comply with eating activities of private

parties, under § 113 of Clean Air Act (42 USCS § 1857c-8). 31 ALR Fed 79.

Recall of appellate mandate directing action by federal agency. 44 ALR Fed 831.

## INTERPRETIVE NOTES AND DECISIONS

1. Significance of "term," generally
2. Effect of end of term

**1. Significance of "term," generally**

Concept of "term" no longer retains much significance especially since enactment of 28 USCS § 452. American Iron & Steel Institute v Environmental Protection Agency (1977, CA3) 560 F2d 589, 10 Envt Rep Cas 1549, 7 ELR 20624, 44 ALR Fed 813, cert den (1978) 435 US 914, 55 L Ed 2d 505, 98 S Ct 1467, 11 Envt Rep Cas 1320.

Fact that request for recall of mandate is filed within same term as mandate, although of decisive significance under common law "term" rule applied by federal courts, has no significance since enactment of this section in 1948; continuance of "term" is without importance and 1963 amendment changing "term" to "session" wrought no substantive change; court's decision whether to use power to recall mandate may be affected by timeliness of request, but request may reflect untimeliness even though filed at same term 11 months after judgment,

and may reflect diligence even though filed at different "term" if filed only two months after mandate. Greater Boston Television Corp. v FCC (1971, App DC) 149 US App DC 322, 463 F2d 268, 31 ALR Fed 765, cert den (1972) 406 US 950, 32 L Ed 2d 338, 92 S Ct 2042.

**2. Effect of end of term**

Under 28 USCS § 452, in spite of ending of term at which its mandate went down, it had power over such mandate not only to declare what it meant, but also to change it as situation demanded. National Comics Publications, Inc. v Fawcett Publications, Inc. (1952, CA2) 198 F2d 927, 94 USPQ 289

Expiration of term does not deprive Court of Appeals of jurisdiction to make necessary correction of clerical error in opinion rendered in prior term. Kinnear-Weed Corp. v Humble Oil & Refining Co. (1961, CA5 Tex) 296 F2d 215, 132 USPQ 305. cert den (1961) 368 US 890, 7 L Ed 2d 89, 82 S Ct 142, reh den (1961) 368 US 936, 7 L Ed 2d 198, 82 S Ct 359.

## § 453. Oaths of justices and judges

Each justice or judge of the United States shall take the following oath or affirmation before performing the duties of his office: "I,_____, do solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich. and that I will faithfully and impartially discharge and perform all the duties incumbent upon me as _____ under the Constitution and laws of the United States. So help me God."

(June 25, 1948, ch 646, § 1, 62 Stat. 907; Dec. 1, 1990, P. L. 101-650, Title IV, Subtitle I, § 404, 104 Stat. 5124.)

### HISTORY; ANCILLARY LAWS AND DIRECTIVES

**Prior law and revision:**

Based on title 28, U.S.C., 1940 ed., §§ 241, 372, and District of Columbia Code. 1940 ed., §§ 11-203, 11-303 (R.S.D.C., § 752, 18 Stat. pt. II. 90; Feb. 9, 1893, ch. 74, § 3, 27 Stat. 435; Mar. 3, 1901, ch. 854, § 223, 31 Stat. 1224; Mar. 3, 1911, ch. 231, §§ 136, 137, 257, 36 Stat. 1135, 1161; Feb. 25, 1919, ch. 29, § 4, 40 Stat. 1157).

This section consolidates sections 11-203 and 11-303 of District of Columbia Code, 1940 ed., and section 372 of title 28, U.S.C., 1940 ed., with that portion of section 241 of said title 28 providing that judges of the Court of Claims shall take an oath of office. The remainder of said section 241 comprises sections 171 and 173 of this title.

The phrase "justice or judge of the United States" was substituted for



EXHIBIT 4

CERTIFIED DOCUMENTS FROM THE ARCHIVIST

OF THE UNITED STATES

09 0580

**FILED**

MAR 2 6 2009

Clerk, U.S. District and
Bankruptcy Courts

**APPENDIX**

**TABLE OF CONTENTS**

App. Page(s)

Journal of the House of Representatives of the United States,
Eightieth Congress, First Session (1947) ……………………….................…1-6

Journal of the Senate of the United States, Eightieth Congress,
First Session (1947) ………………………………………………………...7-11

Journal of the House of Representatives of the United States,
Eightieth Congress, Second Session (1948) ……………………………………12-30

Journal of the Senate of the United States, Eightieth Congress,
Second Session (1948) ………………………………………………………31-44

93 Congressional Record, 80th Cong., 1st Sess. (1947) ……………………….................45-49

94 Congressional Record, 80th Cong., 2nd Sess. (1948) ……………………….................50-66

House Report No. 304, 80th Cong., 1st Sess., April 24, 1947 …………….....................................67

House Document No. 769, 79th Cong., 2nd Sess., Constitution,
Jefferson's Manual and Rules of the House of Representatives
of the United States, Eightieth Congress (G.P.O. 1947) ……………..…….................68-80

House Document No. 355, 59th Cong., 2nd Sess., Hinds' Precedents
of the House of Representatives of the United States,
Volumes IV and V (G.P.O. 1907) ……………………………………..................81-102

Senate Report No. 1620, 80th Cong., 2nd Sess., June 14, 1948 ……………………………103-104

House Concurrent Resolutions 218 and 219, 80th Cong., 2nd Sess.,
June 20, 1948, 62 Stat. 1435-1436 …………………….…………………….................105-106

Certified Copy of H.R. 3190, passed by the House of Representatives
on May 12, 1947, and certified as truly enrolled on
June 18, 1948 ………………………………………………………………...107-113

Certified Copy of H.R. 3190, as signed into Public Law 80-772 and
received at Department of State on June 25, 1948 ………………………...............114-117

Judgment/Commitment Orders of Petitioners ………….REMOVED…………………….....118-181

i

## NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

# 𝔗𝔬 𝔞𝔩𝔩 𝔱𝔬 𝔴𝔥𝔬𝔪 𝔱𝔥𝔢𝔰𝔢 𝔭𝔯𝔢𝔰𝔢𝔫𝔱𝔰 𝔰𝔥𝔞𝔩𝔩 𝔠𝔬𝔪𝔢. 𝔊𝔯𝔢𝔢𝔱𝔦𝔫𝔤:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf,

...er the seal of the National Archives of the United States, that the attached reproduction(s) is a true and

c...   copy of documents in his custody.

| SIGNATURE | | |
|---|---|---|
| NAME Richard H. Hunt | | DATE 05/11/07 |
| TITLE Director Center for Legislative Archives | | |
| NAME AND ADDRESS OF DEPOSITORY The National Archives Washington, D.C. 20408 | | |

NA FORM APR 85 1407-A

App.   1

# JOURNAL

OF THE

# HOUSE OF REPRESENTATIVES
# OF THE UNITED STATES

## EIGHTIETH CONGRESS
## FIRST SESSION

BEGUN AND HELD AT THE CITY OF
WASHINGTON : : JANUARY 3, 1947

IN THE ONE HUNDRED AND SEVENTY-FIRST YEAR
OF THE INDEPENDENCE OF THE UNITED STATES



Prepared under the direction of
John Andrews, Clerk of the House of Representatives, by Eugene F. Sharkoff, Journal Clerk
and Raymond P. Johnson, and Thomas H. Cleary, Assistant Journal Clerks

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1947

# JOURNAL

OF THE

# HOUSE OF REPRESENTATIVES

### CONGRESS OF THE UNITED STATES

Begun and held at the Capitol, in the city of Washington, in the District of Columbia, on Friday, the 3d day of January, in the year of our Lord nineteen hundred and forty-seven, being the *first session* of the EIGHTIETH CONGRESS, held under the Constitution of the Government of the United States, and in the one hundred and seventy-first year of the Independence of the United States.

---

### FRIDAY, JANUARY 3, 1947

On which day, being the day fixed by the Constitution of the United States, as amended, for the meeting of Congress, Ralph R. Roberts, Doorkeeper of the House of Representatives, at the hour of 12 o'clock noon, called the House to order, and proceeded to call the roll of Members-elect by States whose credentials had been received, when the following Members-elect answered:

[Roll No. 1]

*From the State of—*

**ALABAMA**

| | | |
|---|---|---|
| Boykin | Hobbs | Battle |
| Grant | Rains | |
| Andrews | Jarman | Manasco |

**ARIZONA**

| | |
|---|---|
| Harless | Murdock |

**ARKANSAS**

| | | |
|---|---|---|
| Gathings | Cravens | Norrell |
| Mills | Hays | Harris |
| Trimble | | |

**CALIFORNIA**

| | | |
|---|---|---|
| Lea | Gearhart | Bradley |
| Engle | Elliott | Holifield |
| Johnson | Bramblett | Hinshaw |
| Havenner | Nixon | Sheppard |
| Welch | Poulson | Phillips |
| Miller | McDonough | Fletcher |
| Allen | Jackson | |
| Anderson | King | |

**COLORADO**

| | | |
|---|---|---|
| Carroll | Chenoweth | Rockwell |
| Hill | | |

**CONNECTICUT**

| | | |
|---|---|---|
| Miller | Foote | Patterson |
| Seely-Brown | Lodge | Sadlak |

**DELAWARE**

Boggs

**FLORIDA**

| | | |
|---|---|---|
| Peterson | Sikes | Hendricks |
| Price | Smathers | Rogers |

**GEORGIA**

| | | |
|---|---|---|
| Preston | Davis | Wheeler |
| Cox | Vinson | Wood |
| Pace | Lanham | Brown |
| Camp | | |

**IDAHO**

| | |
|---|---|
| Goff | Sanborn |

| | | |
|---|---|---|
| Dawson | Church | McMillen |
| Vail | Reed | Simpson |
| Busbey | Mason | Howell |
| Gorski | Allen | Price |
| Sabath | Johnson | Vursell |
| O'Brien | Chiperfield | Clippinger |
| Owens | Dirksen | Bishop |
| Gordon | Arends | Stratton |
| Twyman | Jenison | |

**ILLINOIS**

**INDIANA**

| | | |
|---|---|---|
| Madden | Harness | Mitchell |
| Halleck | Johnson | Wilson |
| Grant | Landis | Springer |
| Gillie | | |

**IOWA**

| | | |
|---|---|---|
| Martin | LeCompte | Jensen |
| Talle | Cunningham | Hoeven |
| Gwynne | Dolliver | |

**KANSAS**

| | | |
|---|---|---|
| Cole | Meyer | Hope |
| Scrivner | Rees | Smith |

**KENTUCKY**

| | | |
|---|---|---|
| Gregory | Chelf | Meade |
| Clements | Spence | Bates |
| Morton | Chapman | Robsion |

**LOUISIANA**

| | | |
|---|---|---|
| Hébert | Brooks | Larcade |
| Boggs | Passman | Allen |

**MAINE**

| | | |
|---|---|---|
| Hale | Smith | Fellows |

**MARYLAND**

| | | |
|---|---|---|
| Miller | D'Alesandro | Sasscer |
| Meade | Fallon | Beall |

**MASSACHUSETTS**

| | | |
|---|---|---|
| Heselton | Bates | Kennedy |
| Clason | Lane | McCormack |
| Philbin | Goodwin | Wigglesworth |
| Donohue | Gifford | Martin |
| Rogers | Herter | |

**MICHIGAN**

| | | |
|---|---|---|
| Sadowski | Wolcott | Coffin |
| Michener | Crawford | Youngblood |
| Shafer | Engel | Dingell |
| Hoffman | Woodruff | Lesinski |
| Jonkman | Bradley | Dondero |
| Blackney | Bennett | |

**MINNESOTA**

| | | |
|---|---|---|
| Andresen, | Devitt | Andersen, |
| August H. | Judd | H. Carl |
| O'Hara | Knutson | Blatnik |
| MacKinnon | | Hagen |

**MISSISSIPPI**

| | | |
|---|---|---|
| Rankin | Abernethy | Colmer |
| Whitten | Winstead | Williams |
| Whittington | | |

| | | |
|---|---|---|
| Arnold | Bennett | Bakewell |
| Schwabe | Short | Ploeser |
| Cole | Banta | Karsten |
| Bell | Cannon | |
| Reeves | Zimmerman | |

**MISSOURI**

**MONTANA**

| | |
|---|---|
| Mansfield | D'Ewart |

**NEBRASKA**

| | | |
|---|---|---|
| Curtis | Stefan | Miller |
| Buffett | | |

**NEVADA**

Russell

**NEW HAMPSHIRE**

| | |
|---|---|
| Merrow | Cotton |

**NEW JERSEY**

| | | |
|---|---|---|
| Wolverton | Case | Sundstrom |
| Hand | Thomas | Kean |
| Auchincloss | Canfield | Norton |
| Mathews | Towe | Hart |
| Eaton | Hartley | |

**NEW MEXICO**

| | |
|---|---|
| Fernandez | Lusk |

**NEW YORK**

| | | |
|---|---|---|
| Macy | Buck | Byrne |
| Hall, | Coudert | Taylor |
| Leonard W. | Marcantonio | Kilburn |
| Latham | Klein | Fuller |
| McMahon | Bloom | Riehlman |
| Ross | Javits | Hall, |
| Nodar | Powell | Edwin Arthur |
| Delaney | Lynch | Taber |
| Pfeifer | Rabin | Cole |
| Keogh | Buckley | Keating |
| Somers | Potts | Wadsworth |
| Heffernan | Gwinn | Andrews |
| Rooney | Gamble | Elsaesser |
| O'Toole | St. George | Butler |
| Rayfiel | LeFevre | Reed |
| Celler | Kearney | |

**NORTH CAROLINA**

| | | |
|---|---|---|
| Bonner | Folger | Doughton |
| Kerr | Durham | Jones |
| Barden | Clark | Bulwinkle |
| Cooley | Deane | Redden |

**NORTH DAKOTA**

| | |
|---|---|
| Lemke | Robertson |

**OHIO**

| | | |
|---|---|---|
| Elston | Ramey | McGregor |
| Hess | Jenkins | Lewis |
| Burke | Brehm | Kirwan |
| Jones | Vorys | Feighan |
| Clevenger | Weichel | Crosser |
| McCowen | Huber | Bolton |
| Brown | Griffiths | Bender |
| Smith | Carson | |

3

*United States or of any State or any subdivision thereof, for such copies or information furnished for official use in connection with the official duties of such officers or agencies.*

H. R. 2353. A bill to authorize the patenting of certain public lands to the State of Montana or to the Board of County Commissioners of Hill County, Mont., for public-park purposes.

Page 3, lines 12 and 13, strike out " (1) that the lands shall be used for park and recreational purposes; (2) ".

Page 3, line 11, strike out all following "provide", and all of line 12 before "that".

Page 3, line 3, after "Interior", strike out the semicolon, insert a period and strike out balance of bill.

*Ordered,* That the Clerk request the concurrence of the Senate in said bills, severally.

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill of the Senate (S. 64) granting the consent of Congress for the construction of a dam across Dan River in North Carolina, when said bill was considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

*Ordered,* That the Clerk notify the Senate thereof.

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 1465) to relieve collectors of customs of liability for failure to collect certain special tonnage duties and light money, and for other purposes.

When said bill was read by title.

On motion of Mr. TRIMBLE, by unanimous consent, the Committee on the Judiciary was discharged from further consideration of the bill of the Senate (S. 132) to relieve collectors of customs of liability for failure to collect certain special tonnage duties and light money, and for other purposes, when said bill was considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

*Ordered,* That the Clerk notify the Senate thereof.

By unanimous consent, the bill H. R. 1465, a similar House bill, was laid on the table.

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 2076) to limit the time within which the General Accounting Office shall make final settlement of the monthly or quarterly accounts of fiscal officers, and for other purposes.

When said bill was read by title.

On motion of Mr. TRIMBLE, by unanimous consent, the bill of the Senate (S. 273) to limit the time within which the General Accounting Office shall make final settlement of the monthly or quarterly accounts of fiscal officers, and for

other purposes, was taken from the Speaker's table, considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

*Ordered,* That the Clerk notify the Senate thereof.

By unanimous consent, the bill H. R. 2076, a similar House bill, was laid on the table.

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 2238) to amend section 327 (h) of the Nationality Act of 1940.

When said bill was read by title.

On motion of Mr. TRIMBLE, by unanimous consent, the bill of the Senate (S. 460) to amend section 327 (h) of the Nationality Act of 1940, was taken from the Speaker's table, considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

*Ordered,* That the Clerk notify the Senate thereof.

By unanimous consent, the bill H. R. 2238, a similar House bill, was laid on the table.

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 1999) to authorize additional allowances of good time and the payment of compensation to prison inmates performing exceptionally meritorious or outstanding services.

When said bill was read by title.

On motion of Mr. TRIMBLE, by unanimous consent, the bill of the Senate (S. 534) to authorize additional allowances of good time and the payment of compensation to prison inmates performing exceptionally meritorious or outstanding services, was taken from the Speaker's table, considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

*Ordered,* That the Clerk notify the Senate thereof.

By unanimous consent the bill H. R. 1999, a similar House bill, was laid on the table.

The bill (H. R. 797) to change the name of the Lugert-Altus Irrigation project in the State of Oklahoma to the W. C. Austin project was read by title.

On motion of Mr. TRIMBLE, by unanimous consent, the bill of the Senate (S. 214) to change the name of the Lugert-Altus Irrigation project in the State of Oklahoma to the W. C. Austin project, was taken from the Speaker's table, considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

*Ordered,* That the Clerk notify the Senate thereof.

By unanimous consent, the bill H. R. 797, a similar House bill, was laid on the table.

The Committee of the Whole House on the State of the Union was discharged

from further consideration of the bill (H. R. 1467) to amend the act entitled "An act to punish acts of interference with the foreign relations, the neutrality, and the foreign commerce of the United States, to punish espionage, and better to enforce the criminal laws of the United States, and for other purposes," of June 15, 1917, as amended, and the Alien Registration Act, 1940, to increase the penalties for violation of such acts.

When said bill was considered and read twice.

Mr. SPRINGER submitted the following amendments, which were agreed to:

Page 1, line 4, after "follows:", insert *Strike the word "six" where it appears in section 1 (a) and substitute in lieu thereof the word "seven;".*

Page 1, line 4, strike out "Renumber" and insert *renumber.*

The bill, as amended, was ordered to be engrossed and read a third time, was read a third time by title and passed.

*Ordered,* That the Clerk request the concurrence of the Senate in said bill.

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 2083) to codify and enact into positive law, title 17 of the United States Code, entitled "Copyrights."

When said bill was considered and read twice.

The following amendments, recommended by the Committee on the Judiciary, were agreed to:

Page 21, line 19, strike out "June 3" and insert *June 18.*

Page 34, line 9, strike out comma after "Puerto Rico" and "and the courts of first instance of the Philippine Islands".

Page 34, line 18, strike out "bill in equity" and insert *complaint.*

Page 39, line 22, strike out "March 2, 1913" and insert *July 1, 1909.*

Mr. ROBSION submitted the following amendment, which was agreed to:

Page 41, lines 8 and 9, strike out "and not exceeding $1 per annum for the catalogs issued during the year for any one class of subjects".

The bill, as amended, was ordered to be engrossed and read a third time, was read a third time by title and passed.

*Ordered,* That the Clerk request the concurrence of the Senate in said bill.

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 3190) to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

When said bill was considered and read twice.

Mr. WALTER submitted the following amendment, which was agreed to:

Page 434, line 11, after "of", strike out "three" and insert *five.*

The bill, as amended, was ordered to be engrossed and read a third time, was read a third time by title, and passed.

*Ordered,* That the Clerk request the concurrence of the Senate in said bill.

#### BILLS PASSED OVER

By unanimous consent, bills of the following titles were severally passed over without prejudice and retain their places on the Consent Calendar:

S. 26. An act to make criminally liable persons who negligently allow prisoners in their custody to escape.

S. 321. An act to amend section 17 of the Pay Readjustment Act of 1942, so as to increase the pay of cadets and midshipmen at the service academies, and for other purposes.

H. R. 174. A bill to amend section 26, title I, chapter 1, of the act entitled "An act making further provision for a civil government for Alaska, and for other purposes," approved June 6, 1900 (31 Stat. 321), as amended by the act of May 31, 1938 (52 Stat. 588).

H. R. 673. A bill to repeal certain provisions authorizing the establishing of priorities in transportation by merchant vessels.

H. R. 966. A bill to amend section 14 of the Veterans' Preference Act of June 27, 1944 (58 Stat. 387).

H. R. 2229. A bill to amend the act of June 25, 1938, relating to the appointment of postmasters under civil service.

H. R. 2759. A bill to amend the Interstate Commerce Act, as amended, so as to provide limitations on the time within which actions may be brought for the recovery of undercharges and overcharges by or against common carriers by motor vehicle, common carriers by water, and freight forwarders.

H. R. 3214. A bill to revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary."

#### BILLS OBJECTED TO

One objection being made to the consideration of the bill (H. R. 1556) to provide basic authority for the performance of certain functions and activities of the Bureau of Reclamation, said bill was passed over on the Consent Calendar, under the rule.

Three objections being made to the consideration of the joint resolution (H. J. Res. 152) relating to the marketing of Virginia sun-cured tobacco under the Agricultural Adjustment Act of 1938, as amended, said bill was stricken from the Consent Calendar.

Motions severally made to reconsider the votes whereby each bill and joint resolution on the Consent Calendar was disposed of today were, by unanimous consent, severally laid on the table.

#### COMMITTEE ON ARMED SERVICES

Mr. ALLEN of Illinois, from the Committee on Rules, called up the following resolution (H. Res. 141):

*Resolved,* That the Committee on Armed Services, acting as a whole or by

subcommittee, is authorized and directed to conduct thorough studies and investigations relating to matters coming within the jurisdiction of such committee under rule XI (1) (c) of the Rules of the House of Representatives, and for such purposes the said committee or any subcommittee thereof is authorized to sit and act during the present session of Congress as such times and places, whether the House is in session, has recessed, or has adjourned, to hold such hearings, and to require by subpena or otherwise the attendance and testimony of such witnesses and the production of such books, records, papers, and documents, as it deems necessary. Subpenas may be issued over the signature of the chairman of the committee, or by any member designated by such chairman, and may be served by any person designated by such chairman or member. The chairman of the committee or any member thereof may administer oaths to witnesses.

The committee shall report to the House of Representatives during the present session of Congress the results of its studies and investigations with such recommendations for legislation or otherwise as the committee deems desirable.

When said resolution was considered.

After debate,

On motion of Mr. ALLEN of Illinois, the previous question was ordered on the resolution to its adoption or rejection, and under the operation thereof, the resolution was agreed to.

A motion to reconsider the vote whereby said resolution was agred to was, by unanimous consent, laid on the table.

#### COMMITTEE ON PUBLIC LANDS

Mr. ALLEN of Illinois, from the Committee on Rules, called up the following resolution (H. Res. 93):

*Resolved,* That the Committee on Public Lands (now comprised of the six former Committees on Insular Affairs, Territories, Public Lands, Irrigation and Reclamation, Mines and Mining, and Indian Affairs) may make investigations into any matter within its jurisdiction. For the purpose of making such investigations the committee, or any subcommittee thereof, is authorized to sit and act during the present Congress at such times and places within or outside the United States, whether the House is in session, has recessed, or has adjourned, to hold such hearings, and to require, by subpena or otherwise, the attendance and testimony of such books, records, correspondence, memoranda, papers, and documents, as it deems necessary. Subpenas may be issued under the signature of the chairman of the committee or any member of the committee designated by him, and may be served by any person designated by such chairman or member.

When said resolution was considered.

After debate,

On motion of Mr. ALLEN of Illinois, the previous question was ordered on the

resolution to its adoption or rejection, and, under the operation thereof, the resolution was agreed to.

A motion to reconsider the vote whereby said resolution was agreed to was, by unanimous consent, laid on the table.

#### COMMITTEE ON INTERSTATE AND FOREIGN COMMERCE

Mr. ALLEN of Illinois, from the Committee on Rules, called up the following resolution (H. Res. 153):

*Resolved,* That, effective from January 3, 1947, the Committee on Interstate and Foreign Commerce, or any duly authorized subcommittee thereof, is authorized to continue the investigation begun under authority of House Resolution 318 of the Seventy-ninth Congress, and for such purposes shall have the same power and authority as that conferred by such House Resolution 318. The committee may from time to time make such preliminary reports to the House as it deems advisable; and shall, during the present Congress, report to the House the results of its investigation, together with such recommendations as it deems advisable. Any report submitted when the House is not in session shall be filed with the Clerk of the House.

When said resolution was considered.

After debate,

On motion of Mr. ALLEN of Illinois, the previous question was ordered on the resolution to its adoption or rejection, and, under the operation thereof, the resolution was agreed to.

A motion to reconsider the vote whereby said resolution was agreed to, was, by unanimous consent, laid on the table.

#### ENROLLED BILLS SIGNED

Mr. LECOMPTE, from the Committee on House Administration, reported that that committee had examined and found truly enrolled bills of the House of the following titles, which were thereupon signed by the Speaker:

H. R. 450. An act providing for the conveyance to the town of Marblehead, in the State of Massachusetts, of Marblehead Military Reservation for public use.

H. R. 1098. An act to authorize the segregation and expenditure of trust funds held in joint ownership by the Shoshone and Arapaho Tribes of the Wind River Reservation.

#### ENROLLED SENATE JOINT RESOLUTION SIGNED

The SPEAKER announced his signature to an enrolled joint resolution of the Senate of the following title:

S. J. Res. 102. Joint resolution to permit United States common communications carriers to accord free communication privileges to official participants in the world telecommunications conferences to be held in the United States in 1947.

#### LEAVE TO ADDRESS THE HOUSE

On motion of Mr. BENNETT of Missouri, by unanimous consent,

Secretary of War inactivating the United States Army post at Camp McCoy and requesting that steps be taken to prevent such order from taking effect; to the Committee on Armed Services.

### PRIVATE BILLS AND RESOLUTIONS

Under clause 1 of rule XXII, private bills and resolutions were introduced and severally referred as follows:

By Mr. EBERHARTER:

H. R. 3424. A bill for the relief of Mrs. Mitsu Yajima; to the Committee on the Judiciary.

By Mr. EVINS:

H. R. 3425. A bill for the relief of the Lebanon Woolen Mills, Inc.; to the Committee on the Judiciary.

H. R. 3426. A bill for the relief of Mr. and and Mrs. Lem Motlow; to the Committee on the Judiciary.

H. R. 3427. A bill for the relief of Mrs. Mary H. Overall and Thomas I. Baker; to the Committee on the Judiciary.

By Mr. FOGARTY:

H. R. 3428. A bill granting an annuity to Emma June Wilbur; to the Committee on the Judiciary.

### PETITIONS, ETC.

Under clause 1 of rule XXII, petitions and papers were laid on the Clerk's desk and referred as follows:

488. By Mr. BRADLEY of California: Petition of Mrs. C. D. Rasmussen, of Long Beach, Calif., and 226 other residents of the Eighteenth Congressional District of California, urging favorable consideration and support of S. 265, a bill to prevent the interstate transmission of advertising of all alcoholic beverages and the broadcasting of all such advertising by means of radio; to the Committee on Interstate and Foreign Commerce.

489. By Mr. BRAMBLETT: Petition of Elmer J. Grain, Monterey, Calif., and others, regarding immediate cashing of veterans' terminal-leave bonds; to the Committee on Veterans' Affairs.

490. By Mr. HOLMES: Petitions of residents of Walla Walla, Wash., urging passage of S. 265, a bill to prohibit transportation of alcoholic-beverage advertising and broadcasting alcoholic-beverage advertising over the radio; to the Committee on Interstate and Foreign Commerce.

491. By Mr. LEWIS: Petition of 94 residents of Cadiz and surrounding communities, in support of S. 265, a bill to prohibit the transportation of alcoholic-beverage advertising in interstate commerce and broadcasting of alcoholic-beverage advertising over the radio; to the Committee on Interstate and Foreign Commerce.

492. By Mr. MCGREGOR: Petition of citizens of Mount Vernon, Ohio (Knox County), in behalf of passage of S. 265, a bill to prohibit the transportation of alcoholic-beverage advertising in interstate commerce and the broadcasting of alcoholic-beverage advertising over the radio; to the Committee on Interstate and Foreign Commerce.

493. By Mr. COTTON: Petition of the executive committee of the New Hampshire Bar Association, urging Congress to endorse H. R. 1639; to the Committee on Education and Labor.

494. By Mr. SMITH of Wisconsin: Resolution of May 8, 1947, by Kenosha Jewish Welfare Fund, Kenosha, Wis., calling upon the United States Government to take the initiative during the special meeting of the General Assembly of the United Nations in championing the program for Palestine, to insist that the Jewish people be accorded full representation in all deliberations regarding Palestine within the United Nations through the Jewish agency, and to bring weight to bear on the mandatory government to the end that an interim policy based upon the existing mandate be set in motion at once providing for immediate large-scale Jewish immigration into Palestine and the removal of discriminatory land restrictions in the Jewish national home; to the Committee on Foreign Affairs.

495. By Mr. WELCH: California State Senate Resolution No. 17, relative to the development of deposits of mineral ores in the United States; to the Committee on Public Lands.

496. Also, California State Senate Resolution No. 6, memorializing and petitioning the President and Congress of the United States to pass appropriate legislation to enable veterans who obtained guaranteed loans prior to December 28, 1945, to come within provisions of Public Law 268; to the Committee on Veterans' Affairs.

497. By the SPEAKER: Petition of officers and members of the Townsend conference from the Eighth District of the State of Massachusetts, petitioning consideration of their resolution with reference to endorsement of the Townsend plan, H. R. 16; to the Committee on Ways and Means.

498. Also, petition of members of Townsend Club, No. 2, Boston, Mass, petitioning consideration of their resolution with reference to endorsement of the Townsend plan; to the Committee on Ways and Means.

499. Also, petition of Donald F. Dooley, Janesville, Wis., and others, petitioning consideration of their resolution with reference to request for an impartial investigation of the Allis-Chalmers Manufacturing Co.'s behavior in an 11-month strike; to the Committee on Education and Labor.

### TUESDAY, MAY 13, 1947

The House was called to order by the Speaker.

The Journal of the proceedings of Monday, May 12, 1947, was read and approved.

### COMMUNICATION

Executive and other communications, pursuant to clause 2, rule XXIV, were referred as follows.

675. A letter from the Director, Administrative Office of the United States Courts, transmitting a draft of a proposed bill to provide for the appointment of an additional circuit judge for the seventh judicial circuit; to the Committee on the Judiciary.

676. A letter from the Under Secretary of Agriculture, transmitting a report on the cooperation of the United States with Mexico in the control and eradication of foot-and-mouth disease; to the Committee on Agriculture.

677. A communication from the President of the United States, transmitting a revised estimate of appropriation for the fiscal year 1948 involving an increase of $8,850,000 for the Navy Department (H. Doc. No. 246); to the Committee on Appropriations and ordered to be printed.

### CALENDAR WEDNESDAY BUSINESS DISPENSED WITH

On motion of Mr. HALLECK, by unanimous consent,

*Ordered*, That business in order for consideration on Wednesday, May 14, 1947, under clause 7, rule XXIV, the Calendar Wednesday rule, be dispensed with.

### COMMITTEES GRANTED LEAVE TO SIT

By unanimous consent, committees were granted leave to sit during general debate in the House, as follows:

Committee on Interstate and Foreign Commerce, for today;

Committee on Banking and Currency, for today; and

Subcommittee No. 3 of the Committee on Merchant Marine and Fisheries, tomorrow.

### BILLS PRESENTED TO THE PRESIDENT

Mr. LeCOMPTE, from the Committee of House Administration, reported that that committee did on May 12, 1947, present to the President, for his approval, bills of the House of the following titles:

H. R. 450. An act providing for the conveyance to the town of Marblehead, in the State of Massachusetts, of Marblehead Military Reservation, for public use.

H. R. 1098. An act to authorize the segregation and expenditure of trust funds held in joint ownership by the Shoshone and Arapaho Tribes of the Wind River Reservation.

### STATE, JUSTICE, AND COMMERCE, AND JUDICIARY APPROPRIATION BILL, 1948

Mr. STEFAN moved that the House resolve itself into the Committee of the Whole House on the State of the Union for the consideration of the bill (H. R. 3311) making appropriations for the Departments of State, Justice, and Commerce, and the Judiciary, for the fiscal year ending June 30, 1948, and for other purposes.

Pending which,

On motion of Mr. STEFAN, by unanimous consent,

*Ordered*, That the time for general debate run on today, be equally divided

# NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives of the United States, that the attached reproduction(s) is a true and ⁓ct copy of documents in his custody.

| SIGNATURE | | |
|---|---|---|
| *RJHAbt* | | |
| NAME Richard H. Hunt | DATE | 05/11/07 |
| TITLE Director Center for Legislative Archives | | |
| NAME AND ADDRESS OF DEPOSITORY The National Archives Washington, D.C. 20408 | | |

NA FORM APR 85 1407-A

App.   7

# JOURNAL OF THE SENATE

OF THE

# UNITED STATES OF AMERICA

————

# FIRST SESSION

OF THE

# EIGHTIETH CONGRESS

BEGUN AND HELD AT THE CITY OF WASHINGTON
JANUARY 3, 1947, IN THE ONE HUNDRED
AND SEVENTY-FIRST YEAR OF THE
INDEPENDENCE OF THE
UNITED STATES



UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1948

# JOURNAL OF THE SENATE OF THE UNITED STATES OF AMERICA

Eightieth Congress, First Session   :   :   :   Beginning January 3, 1947

The First Session of the Eightieth Congress commenced this·day, conformably to the Constitution of the United States, and the Senate met in its Chamber at the city of Washington.

### FRIDAY, JANUARY 3, 1947

The office of President pro tempore being vacant by expiration of the term of Hon. KENNETH D. McKELLAR as Senator from the State of Tennessee,

The Secretary of the Senate (Hon. Leslie L. Biffle), under rule I, paragraph 2, called the Senate to order, and the Chaplain, Rev. Frederick Brown Harris, D. D., of Washington, D. C., offered prayer.

#### SENATOR-ELECT FROM KENTUCKY

The Secretary laid before the Senate the credentials of JOHN SHERMAN COOPER, duly chosen a Senator by the qualified electors of the State of Kentucky on November 5, 1946, to fill the vacancy in the term ending January 3, 1949, caused by the resignation of Hon. Albert Benjamin Chandler; which were ordered to be placed on file.

#### SENATOR-ELECT FROM IDAHO

The Secretary laid before the Senate the credentials of HENRY DWORSHAK, duly chosen a Senator by the qualified electors of the State of Idaho on November 5, 1946, to fill the vacancy in the term ending January 3, 1949, caused by the death of Hon. John Thomas; which were ordered to be placed on file.

#### SENATOR-ELECT FROM VIRGINIA

The Secretary laid before the Senate the credentials of A. WILLIS ROBERTSON, duly chosen a Senator by the qualified electors of the State of Virginia on November 5, 1946, to fill the vacancy in the term ending January 3, 1949, caused by the death of Hon. Carter Glass; which were ordered to be placed on file.

#### SENATOR-ELECT FROM ALABAMA

The Secretary laid before the Senate the credentials of JOHN SPARKMAN, duly chosen a Senator by the qualified electors of the State of Alabama on November 5, 1946, to fill the vacancy in the term ending January 3, 1949, caused by the death of Hon. John H. Bankhead; which were ordered to be placed on file.

#### CREDENTIALS OF SENATORS-ELECT FOR 6-YEAR TERM

The credentials of the following Senators-elect, duly chosen by the qualified

electors of their respective States for the term of 6 years beginning January 3, 1947, were laid before the Senate by the Secretary, and ordered to be placed on file:

Mr. RAYMOND E. BALDWIN, from the State of Connecticut;

Mr. THEODORE GILMORE BILBO, from the State of Mississippi;

Mr. OWEN BREWSTER, from the State of Maine;

Mr. JOHN W. BRICKER, from the State of Ohio;

Mr. HUGH BUTLER, from the State of Nebraska;

Mr. HARRY F. BYRD, from the State of Virginia;

Mr. HARRY P. CAIN, from the State of Washington;

Mr. DENNIS CHAVEZ, from the State of New Mexico;

Mr. TOM CONNALLY, from the State of Texas;

Mr. ZALES N. ECTON, from the State of Montana;

Mr. RALPH E. FLANDERS, from the State of Vermont;

Mr. SPESSARD L. HOLLAND, from the State of Florida;

Mr. IRVING M. IVES, from the State of New York;

Mr. WILLIAM E. JENNER, from the State of Indiana;

Mr. JAMES P. KEM, from the State of Missouri;

Mr. HARLEY M. KILGORE, from the State of West Virginia;

Mr. WILLIAM F. KNOWLAND, from the State of California;

Mr. WILLIAM LANGER, from the State of North Dakota;

Mr. HENRY CABOT LODGE, Jr., from the State of Massachusetts;

Mr. GEORGE W. MALONE, from the State of Nevada;

Mr. EDWARD MARTIN, from the State of Pennsylvania;

Mr. JOSEPH R. McCARTHY, from the State of Wisconsin;

Mr. ERNEST W. McFARLAND, from the State of Arizona;

Mr. J. HOWARD McGRATH, from the State of Rhode Island and Providence Plantations;

Mr. KENNETH D. McKELLAR, from the State of Tennessee;

Mr. HERBERT R. O'CONOR, from the State of Maryland;

Mr. JOSEPH C. O'MAHONEY, from the State of Wyoming;

Mr. H. ALEXANDER SMITH, from the State of New Jersey;

Mr. EDWARD J. THYE, from the State of Minnesota;

Mr. ARTHUR H. VANDENBERG, from the State of Michigan;

Mr. ARTHUR V. WATKINS, from the State of Utah; and

Mr. JOHN J. WILLIAMS, from the State of Delaware.

#### SENATOR-ELECT FROM CONNECTICUT

The Secretary laid before the Senate the credentials of RAYMOND E. BALDWIN, duly chosen a Senator by the qualified electors of the State of Connecticut on November 5, 1946, to fill the vacancy in the term ending January 3, 1947, caused by the death of Hon. Francis Maloney; which were ordered to be placed on file.

#### SENATOR-DESIGNATE FROM VERMONT

The Secretary laid before the Senate the credentials of RALPH E. FLANDERS, duly appointed a Senator by the Governor of Vermont on November 1, 1946, to represent said State in the Senate of the United States for the term ending January 3, 1947, to fill the vacancy caused by the resignation of Hon. Warren R. Austin; which were ordered to be placed on file.

#### SENATOR-ELECT FROM CALIFORNIA

The Secretary laid before the Senate the credentials of WILLIAM F. KNOWLAND, duly chosen a Senator by the qualified electors of the State of California on November 5, 1946, to fill the vacancy in the term ending January 3, 1947, caused by the death of Hon. Hiram W. Johnson; which were ordered to be placed on file.

#### SENATOR-ELECT FROM OHIO

The Secretary laid before the Senate the credentials of KINGSLEY A. TAFT, duly chosen a Senator on November 5, 1946, by the qualified electors of the State of Ohio, to fill the vacancy in the term ending January 3, 1947, caused by the

3

(c) The expenses of the committee, which shall not exceed $ , shall be paid one-half from the contingent fund of the Senate and one-half from the contingent fund of the House of Representatives, upon vouchers signed by the chairman or vice chairman. Disbursements to pay such expenses shall be made by the Secretary of the Senate out of the contingent fund of the Senate, such contingent fund to be reimbursed from the contingent fund of the House of Representatives in the amount of one-half of disbursements so made.

FEDERAL LABOR RELATIONS ACT OF 1947

The Senate resumed the consideration of the bill (S. 1126) to amend the National Labor Relations Act, to provide additional facilities for the mediation of labor disputes affecting commerce, to equalize legal responsibilities of labor organizations and employers, and for other purposes.

The question being on agreeing to the amendment proposed by Mr. MURRAY (for himself and others) as a substitute for the bill, as amended,

Pending debate,

On motion by Mr. LANGER to further amend the bill by inserting on page 6, after line 24, provisions defining the terms "superintendent" and "assistant superintendent",

Pending debate,

MESSAGE FROM THE HOUSE

A message from the House of Representatives by Mr. Maurer, one of its clerks:

*Mr. President:* The House of Representatives has passed each without amendment the following bills of the Senate:

S. 64. An act granting the consent of Congress for the construction of a dam across Dan River in North Carolina;

S. 132. An act to relieve collectors of customs of liability for failure to collect certain special tonnage duties and light money, and for other purposes;

S. 214. An act to change the name of the Lugert-Altus irrigation project in the State of Oklahoma to the W. C. Austin project.

S. 273. An act to limit the time within which the General Accounting Office shall make final settlement of the monthly or quarterly accounts of fiscal officers, and for other purposes;

S. 460. An act to amend section 327 (h) of the Nationality Act of 1940; and

S. 534. An act to authorize additional allowances of good time and the payment of compensation to prison inmates performing exceptionally meritorious or outstanding services.

The House has passed the following bills in which it requests the concurrence of the Senate:

H. R. 84. An act to amend the Nationality Act of 1940, as amended;

H. R. 239. An act to further perfect the consolidation of the Lighthouse Service with the Coast Guard;

H. R. 1179. An act to aid in defraying the expenses of the Seventeenth Triennial Convention of the World's Woman's Christian Temperance Union to be held in this country in June 1947;

H. R. 1203. An act to provide compensation to persons performing the duties of postmasters at post offices of the fourth class during annual and sick leave of the postmasters;

H. R. 1237. An act to regulate the marketing of economic poisons and devices, and for other purposes;

H. R. 1362. An act to permit certain naval personnel to count all active service rendered under temporary appointment as warrant or commissioned officers in the United States Navy and the United States Naval Reserve, or in the United States Marine Corps and the United States Marine Corps Reserve, for purposes of promotion to commissioned warrant officer in the United States Navy or the United States Marine Corps, respectively;

H. R. 1371. An act to authorize the Secretary of the Navy to appoint, for supply duty only, officers of the line of the Marine Corps, and for other purposes;

H. R. 1412. An act to grant to the Arthur Alexander Post, No. 68, the American Legion, of Belzoni, Miss., all of the reversionary interest reserved to the United States in lands conveyed to said post pursuant to act of Congress approved June 29, 1938;

H. R. 1467. An act to amend the act entitled "An act to punish acts of interference with the foreign relations, the neutrality, and the foreign commerce of the United States, to punish espionage, and better to enforce the criminal laws of the United States, and for other purposes," of June 15, 1917, as amended, and the Alien Registration Act, 1940, to increase the penalties for violation of such acts;

H. R. 1565. An act to codify and enact into positive law, title 1 of the United States Code, entitled "General Provisions";

H. R. 1566. An act to codify and enact into positive law, title 6 of the United States Code, entitled "Flag and Seal, Seat of Government, and the States";

H. R. 1567. An act to codify and enact into positive law, title 6 of the United States Code, entitled "Official and Penal Bonds";

H. R. 1874. An act to amend the act entitled "An act to provide that the United States shall aid the States in the construction of rural post roads, and for other purposes," approved July 11, 1916, as amended and supplemented, and for other purposes;

H. R. 2054. An act to amend the act of April 14, 1930, to provide increased retired pay for certain members of the former Life Saving Service;

H. R. 2083. An act to codify and enact into positive law title 17 of the United States Code, entitled "Copyrights";

H. R. 2084. An act to codify and enact into positive law title 9 of the United States Code, entitled "Arbitration";

H. R. 2181. An act relating to institutional on-farm training for veterans;

H. R. 2237. An act to correct an error in section 342 (b) (8) of the Nationality Act of 1940, as amended;

H. R. 2331. An act to amend section 20a of the Interstate Commerce Act;

H. R. 2353. An act to authorize the patenting of certain public lands to the State of Montana or to the Board of County Commissioners of Hill County, Mont., for public-park purposes;

H. R. 2368. An act to amend paragraph 8 of part VII, Veterans Regulation No. 1 (a), as amended, to authorize an appropriation of $3,000,000 as a revolving fund in lieu of $1,500,000 now authorized, and for other purposes;

H. R. 2573. An act to authorize the Director of the United States Geological Survey to produce and sell copies of aerial or other photographs and mosaics, and photographic or photostatic reproductions of records, on a reimbursement of appropriations basis;

H. R. 2654. An act to authorize the Secretary of the Treasury to grant to the mayor and City Council of Baltimore, State of Maryland, a permanent easement for the purpose of installing, maintaining, and servicing a subterranean water main in, on, and across the land of the United States Coast Guard station called Lazaretto depot, Baltimore, Md.;

H. R. 3029. An act to provide for the acquisition of a site and for preparation of plans and specifications for a courthouse to accommodate the United States Court of Appeals for the District of Columbia and the District Court of the United States for the District of Columbia; and

H. R. 3190. An act to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

HOUSE BILLS REFERRED

The bills this day received from the House of Representatives for concurrence were severally read the first and second times by unanimous consent.

*Ordered,* That the bills H. R. 84, H. R. 1467, H. R. 1565, H. R. 1566, H. R. 1567, H. R. 2083, H. R. 2084, H. R. 2237, and H. R. 3190 be referred to the Committee on the Judiciary;

That the bills H. R. 239, H. R. 2054, H. R. 2331, and H. R. 2654 be referred to the Committee on Interstate and Foreign Commerce;

That the bill H. R. 1179 be referred to the Committee on Foreign Relations;

That the bill H. R. 1203 be referred to the Committee on Civil Service;

That the bill H. R. 1237 be referred to the Committee on Agriculture and Forestry;

That the bills H. R. 1362 and 1371 be referred to the Committee on Armed Services;

## MESSAGE FROM THE HOUSE

A message from the House of Representatives by Mr. Maurer, one of its clerks:

*Mr. President:* The House of Representatives insists upon its amendments to the bill (S. 938) to provide for assistance to Greece and Turkey; it agrees to the conference asked by the Senate on the disagreeing votes of the two Houses thereon, and has appointed Mr. EATON, Mr. MUNDT, Mr. JONKMAN, Mr. BLOOM, and Mr. KEE managers at the same on its part.

## RELIEF TO PEOPLE OF COUNTRIES DEVASTATED BY WAR

The Senate resumed the consideration of the joint resolution (H. J. Res. 153) providing for relief assistance to the people of countries devastated by war.

The question being on agreeing to the reported amendment, as amended, striking out all after the resolving clause and inserting in lieu thereof other words,

Pending debate,

## SENATORS EXCUSED FROM ATTENDANCE

The following-named Senators, on their own request, were excused from attendance upon the Senate for the periods indicated:

Mr. LANGER, for 1 week;

Mr. CAPEHART, until Monday next;

Mr. FLANDERS, for the balance of the week;

Mr. STEWART, for a few days; and

Mr. McCARRAN, for 2 weeks.

## EXECUTIVE BUSINESS

During legislative session, certain executive business was transacted by unanimous consent, as in executive session.

## RECESS

On motion by Mr. WHITE, at 7 o'clock and 43 minutes p. m.,

The Senate took a recess until 11 o'clock a. m. tomorrow.

## WEDNESDAY, MAY 14, 1947

*(Legislative day of Monday, April 21, 1947)*

The PRESIDENT pro tempore called the Senate to order at 11 o'clock a. m., and the Chaplain offered prayer.

## JOURNAL

On motion by Mr. WHITE, and by unanimous consent,

The Journal of the proceedings of Tuesday, May 13, 1947, was approved.

## MESSAGE FROM THE HOUSE

A message from the House of Representatives by Mr. Swanson, one of its clerks:

*Mr. President:* The Speaker of the House of Representatives having signed six enrolled bills, viz, S. 64, S. 132, S. 214, S. 273, S. 460, and S. 534, I am directed to bring the same to the Senate for the signature of its President.

The President of the United States has informed the House that he approved and signed the following acts:

On April 16, 1947:

H. R. 1943. An act to establish a permanent Nurse Corps of the Army and the Navy and to establish a Women's Medical Specialist Corps in the Army.

On April 25, 1947:

H. R. 731. An act to establish the Theodore Roosevelt National Memorial Park; to erect a monument in the village of Theodore Roosevelt in the village of Medora, N. Dak., and for other purposes.

On April 29, 1947:

H. R. 2404. An act to suspend certain import taxes on copper.

On May 1, 1947:

H. R. 2849. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1947, and for other purposes.

## ENROLLED BILLS SIGNED

The Secretary reported that he had examined and found truly enrolled the following bills:

S. 64. An act granting the consent of Congress for the construction of a dam across Dan River in North Carolina;

S. 132. An act to relieve collectors of customs of liability for failure to collect certain special tonnage duties and light money, and for other purposes;

S. 214. An act to change the name of the Lugert-Altus irrigation project in the State of Oklahoma to the W. C. Austin project;

S. 273. An act to limit the time within which the General Accounting Office shall make final settlement of the monthly or quarterly accounts of fiscal officers, and for other purposes;

S. 460. An act to amend section 327 (h) of the Nationality Act of 1940; and

S. 534. An act to authorize additional allowances of good time and the payment of compensation to prison inmates performing exceptionally meritorious or outstanding services.

The PRESIDENT pro tempore thereupon signed the same.

## QUESTION OF QUORUM

Mr. WHITE raised a question as to the presence of a quorum;

Whereupon

The PRESIDENT pro tempore directed the roll to be called;

When

Eighty-four Senators answered to their names, as follows:

| | | |
|---|---|---|
| Aiken | Downey | Jenner |
| Ball | Dworshak | Johnson, Colo. |
| Barkley | Eastland | Johnston, S. C. |
| Brewster | Ecton | Kem |
| Bricker | Ellender | Kilgore |
| Bridges | Ferguson | Knowland |
| Brooks | Fulbright | Lodge |
| Buck | George | Lucas |
| Bushfield | Green | McCarthy . |
| Butler | Gurney | McClellan |
| Byrd | Hatch | McFarland |
| Cain | Hawkes | McGrath |
| Capper | Hayden | McKellar |
| Chavez | Hickenlooper | McMahon |
| Connally | Hill | Magnuson |
| Cooper | Hoey | Malone |
| Cordon | Holland | Martin |
| Donnell | Ives   • | Maybank |

| | | |
|---|---|---|
| Millikin | Robertson, Va | Tydings |
| Moore | Robertson, Wyo. | Umstead |
| Morse | Russell | Vandenberg |
| Murray | Saltonstall | Watkins |
| Myers | Smith | Wherry |
| O'Conor | Sparkman | White |
| O'Daniel | Taft | Wiley |
| O'Mahoney | Taylor | Williams |
| Pepper | Thomas, Okla. | Wilson |
| Reed | Thye | Young |

A quorum being present,

## COMMITTEES AUTHORIZED TO SIT DURING THE SESSION OF THE SENATE

The following committees were authorized to sit during the session of the Senate, on today:

A subcommittee of the Committee on the Judiciary considering a nomination, and another subcommittee of the same committee considering S. 104; on the request of Mr. WILEY; and

The Committee on Rules and Administration; on the request of Mr. BROOKS.

## SENATORS EXCUSED FROM ATTENDANCE

Mr. CAIN and Mr. HATCH, on their own request, were excused from attendance upon the Senate for tomorrow.

## REPORT ON COOPERATION OF UNITED STATES WITH MEXICO IN CONTROL AND ERADICATION OF FOOT-AND-MOUTH DISEASE

The PRESIDENT pro tempore laid before the Senate a communication from the Under Secretary of Agriculture, transmitting, pursuant to law, a report on cooperation of the United States with Mexico in the control and eradication of foot-and-mouth disease, under the act of February 28, 1947, for the 30-day period ended April 29, 1947; which, with the accompanying report, was referred to the Committee on Agriculture and Forestry.

## TRANSFER OF NAVY VESSEL

The PRESIDENT pro tempore laid before the Senate a communication from the Secretary of the Navy, transmitting, pursuant to law, a report of the transfer of the U. S. S. *Texas* to the State of Texas under the provisions of section 1 of the act of August 7, 1946; which was referred to the Committee on Armed Services.

## EXPORT-IMPORT BANK OF WASHINGTON AUDIT REPORTS OF 1945 AND 1946

The PRESIDENT pro tempore laid before the Senate two communications from the Comptroller General of the United States, transmitting, pursuant to law, two audit reports of the Export-Import Bank of Washington for the fiscal years ended June 30, 1945, and 1946, respectively; which, with the accompanying reports, were referred to the Committee on Expenditures in the Executive Departments.

## SUPPLEMENTAL ESTIMATE OF APPROPRIATION

The PRESIDENT pro tempore laid before the Senate a communication from the President of the United States, together with a letter from the Acting Director of the Bureau of the Budget, transmitting, pursuant to law, supplemental estimates of appropriations for

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf,

er the seal of the National Archives of the United States, that the attached reproduction(s) is a true and

copy of documents in his custody.

| SIGNATURE | | |
|---|---|---|
| NAME Richard H. Hunt | | DATE 05/11/07 |
| TITLE Director Center for Legislative Archives | | |
| NAME AND ADDRESS OF DEPOSITORY The National Archives Washington, D.C. 20408 | | |

NA FORM APR 85 1407-A

App.  12

# JOURNAL

OF THE

# HOUSE OF REPRESENTATIVES
# OF THE UNITED STATES

## EIGHTIETH CONGRESS
## SECOND SESSION

BEGUN AND HELD AT THE CITY OF
WASHINGTON : : JANUARY 6, 1948

IN THE ONE HUNDRED AND SEVENTY-SECOND YEAR
OF THE INDEPENDENCE OF THE UNITED STATES



Prepared for John Andrews, Clerk of the House of Representatives, by Eugene F. Sharkoff,
Journal Clerk; Raymond P. Johnson and Thomas Cleary, Assistants

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1949

# JOURNAL

OF THE

# HOUSE OF REPRESENTATIVES

## CONGRESS OF THE UNITED STATES

Begun and held at the Capitol, in the city of Washington, in the District of Columbia, on Tuesday, the 6th day of January, in the year of our Lord nineteen hundred and forty-eight, being the *second session* of the EIGHTIETH CONGRESS, held under the Constitution of the Government of the United States, and in the one hundred and seventy-second year of the Independence of the United States.

## TUESDAY, JANUARY 6, 1948

On which day, being the day fixed by Public Law 358, Eightieth Congress, first session, approved August 4, 1947, and by the Constitution of the United States, as amended, for the meeting of Congress, JOSEPH W. MARTIN, Jr. (a Representative from the State of Massachusetts) the Speaker, called the House to order.

### RESIGNATION OF MEMBER

The SPEAKER laid before the House the following communication, which was read, as follows:

DECEMBER 30, 1947.
Hon. JOSEPH W. MARTIN, Jr.,
*Speaker, House of Representatives,*
*Washington, D. C.*

MY DEAR MR. SPEAKER: This is to advise you that I have this date tendered to the Governor of New York my resignation as Representative of the Twenty-fourth Congressional District of the State of New York in the Congress of the United States, such resignation to take effect as of midnight of December 31, 1947.

Sincerely yours,
BENJAMAN J. RABIN.

By direction of the Speaker, the roll of Members was called alphabetically, when the following Members answered to their names:

[Roll No. 1]

Abernethy
Albert
Allen, Calif.
Allen, Ill.
Almond
Andersen,
  H Carl
Anderson, Calif.
Andrews, Ala
Andrews, N Y
Angell
Arends
Arnold
Auchincloss
Bakewell,
Banta
Barrett
Bates, Mass.

Battle
Beall
Beckworth
Bender
Bennett, Mo.
Bishop
Blackney
Bland
Bloom
Boggs, Del.
Bolton
Bonner
Bradley
Brehm
Brooks
Brophy
Brown, Ga.
Bryson

Buchanan
Buck
Buckley
Buffett
Bulwinkle
Burke
Burleson
Butler
Byrne, N. Y.
Byrnes, Wis.
Camp
Canfield
Cannon
Carroll
Case, N. J.
Chadwick
Che.f
Chenoweth

Church
Clason
Clevenger
Coffin
Cole, Kans.
Cole, Mo.
Cole, N Y.
Colmer
Cooper
Corbett
Cotton
Coudert
Courtney
Cox
Crawford
Crosser
Crow
Cunningham
Dague
Davis Ga.
Davis, Tenn.
Davis, Wis.
Dawson, Utah
Deane
Delaney
Dingell
Dirksen
Dolliver
Dondero
Donohue
Dorn
Doughton
Eaton
Eberharter
Ellis
Elsaesser
Engel, Mich.
Engle, Calif.
Evins
Fallon
Fellows
Fenton
Fisher
Flanagan
Fletcher
Folger
Foote
Forand
Fulton
Garmatz
Gary
Gathings
Gavin
Gearhart
Gillette
Goff
Goodwin
Gordon
Gore
Graham
Grant Ind.
Griffiths
Gross
Gwinn, N Y.
Gwynne, Iowa
Hagen
Hale

Hall,
  Edwin Arthur
Hall,
  Leonard W.
Halleck
Hand
Hardy
Harness, Ind.
Harrison
Hart
Hartley
Harvey
Havenner
Hays
Hedrick
Heffernan
Herter
Heselton
Hess
Hill
Hoffman
Holmes
Hope
Horan
Huber
Jackson, Ca'if.
Javits
Jenison
Jenkins, Ohio
Jensen
Johnson, Ill.
Johnson, Ind.
Johnson, Okla.
Jones Ala.
Jones N. C
Jones, Wash.
Jonkman
Judd
Karsten, Mo.
Kean
Kearney
Kearns
Keating
Kee
Keefe
Kelley
Kennedy
Keogh
Kerr
Kilday
Kirwan
Klein
Knutson
Kunkel
Landis
Lane
Latham
Latham
Lea
Lesinski
Lewis
Lichtenwalter
Lodge
Love
Lucas
Ludlow
Lusk

Lyle
Lynch
McConnell
McCowen
McCulloch
McDonough
McDowell
McGarvey
McGregor
McMahon
McMillan, S C.
Mack
Macy
Madden
Mahon
Maloney
Manasco
Martin, Iowa
Mason
Mathews
Meade, Ky.
Meade, Md.
Merrow
Meyer
Michener
Miller, Conn.
Miller, Md.
Mills
Mitchell
Morgan
Morton
Muhlenberg
Multer
Murdock
Murray, Wis.
Nicholson
Nixon
Nodar
Norblad
Norrell
O'Brien
O'Hara
Owens
Pace
Passman
Patman
Patterson
Peden
Peterson
Pfeifer
Philbin
Phillips Calif.
Phillips, Tenn.
Pickett
Plumley
Poage
Potter
Potts
Preston
Price, Fla.
Price, Ill.
Priest
Rains
Ramey
Rankin
Rayburn
Reed, N. Y.

Rees
Regan
Rich
Riley
Rizley
Rcbertson
Robsion
Rockwell
Rogers, Fla
Rogers, Mass.
Rohrbough
Rooney
Ross
Russell
Sadlak
St. George
Sanborn
Sarbacher
Sasscer
Schwabe, Okla.
Scoblick
Scott, Hardie
Scott,
  Hugh D., Jr.

Scrivner
Seely-Brown
Sheppard
Short
Sikes
Simpson, Pa.
Smathers
Smith, Kans.
Smith, Maine
Smith, Ohio
Smith, Va.
Smith, Wis.
Snyder
Somers
Spence
Stefan
Stigler
Stratton
Sundstrom
Taber
Talle
Teague
Thomas, N. J.
Thompson

Tibbot
Tollefson
Twyman
Vail
Van Zandt
Vinson
Vorys
Wadsworth
Weichel
Welch
Wheeler
Whitten
Wigglesworth
Williams
Wilson, Ind.
Wilson, Tex.
Winstead
Wolcott
Wood
Woodruff
Worley
Youngblood
Zimmerman

Thereupon the Speaker announced that 322 Members had answered to their names, a quorum.

### COMMUNICATIONS

Executive and other communications, pursuant to clause 2, rule XXIV, were referred as follows:

1160. A letter from the Chairman of the Board of Directors of the Tennessee Valley Authority, transmitting the fourteenth annual report, covering the activities of the Authority during the fiscal year beginning July 1, 1946, and ending June 30, 1947; to the Committee on Public Works.

1161. A letter from the director, national legislative commission, the American Legion, transmitting the financial statement of the American Legion up to and including October 31, 1947; to the Committee on Veterans' Affairs.

1162. A letter from the Acting Secretary of the Navy, transmitting a report, as required by Public Law 313, Eightieth Congress, approved August 1, 1947, which authorized the creation of additional positions in the professional and scientific service; to the Committee on Post Office and Civil Service.

3

Page 48, strike out lines 8, 9, 10, and 11 and insert:

*(g) The term "organized unit" when used with respect to a Reserve component shall be deemed to mean a unit in which the members thereof satisfactorily participate in scheduled drills and training periods as prescribed by the Secretary of Defense.*

Page 49, strike out all of sections 22 and 23 and insert:

*Sec. 22. The Congress declares in accordance with our traditional military policy as expressed in the National Defense Act of 1916, as amended, that it is essential that the strength and organization of the National Guard, both ground and air, as an integral part of the first-line defenses of this Nation, be at all times maintained and assured. To this end it is the intent of the Congress that whenever Congress shall determine that units and organizations are needed for the national security in excess of those of the Regular components of the Ground Forces and the Air Forces, and those in active service under this Act, the National Guard of the United States, both ground and air, or such part thereof as may be necessary for a balanced force, shall be ordered to active Federal service and continued therein so long as such necessity exists.*

*Sec. 23. This Act shall be effective upon its enactment.*

The bill, as amended, was ordered to be engrossed and read a third time.

Mr. MARCANTONIO demanded the reading of the engrossed copy of said bill.

### RECESS

On motion of Mr. HALLECK, at 8 o'clock and 12 minutes p. m., the House stood in recess until 10 o'clock a. m. on Friday, June 18, 1948.

### FRIDAY, JUNE 18, 1948

*(Legislative day of Thursday, June 17, 1948)*

### AFTER RECESS

The SPEAKER called the House to order at 10 o'clock a. m.

### FURTHER MESSAGE FROM THE SENATE

A still further message from the Senate, by Mr. Frazier, its legislative clerk, announced that the Senate had passed, with amendments in which the concurrence of the House is requested, a bill of the House of the following title:

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes.

The message also announced that the Senate insists upon its amendments to the foregoing bill, requests a conference with the House on the disagreeing votes of the two Houses thereon, and appoints Mr. GURNEY, Mr. BROOKS, Mr. REED, Mr. FERGUSON, Mr. BRIDGES, Mr. THOMAS of

Oklahoma, Mr. HAYDEN, and Mr. RUSSELL to be the conferees on the part of the Senate.

The message also announced that the Senate had passed, with amendments in which the concurrence of the House is requested, a bill of the House of the following title:

H. R. 6248. An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes.

The message also announced that the Senate insists upon its amendments to the foregoing bill, requests a conference with the House on the disagreeing votes of the two Houses thereon, and appoints Mr. AIKEN, Mr. YOUNG, Mr. THYE, Mr. THOMAS of Oklahoma, and Mr. ELLENDER to be the conferees on the part of the Senate.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendment of the House to a joint resolution (S. J. Res. 117) entitled "Joint resolution providing for acceptance by the United States of America of the Constitution of the International Labor Organization Instrument of Amendment, and further authorizing an appropriation for payment of the United States share of the expenses of membership and for expenses of participation by the United States."

### CORRECTION OF ROLL CALLS

On motion of Mr. BLATNIK, by unanimous consent, roll call No. 111 was corrected to show him voting in the negative.

On motion of Mr. DAVIS of Wisconsin, by unanimous consent, roll call No. 113 was corrected to show him present.

### FOOD, DRUG, AND COSMETIC ACT

Mr. LEONARD W. HALL submitted a conference report (Rept. No. 2400) on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H. R. 4071) to amend sections 301 (k) and 304 (a) of the Federal Food, Drug, and Cosmetic Act, as amended, together with a statement thereon for printing in the Record under the rule.

### MILITARY ESTABLISHMENT APPROPRIATIONS, 1949

On motion of Mr. ENGEL of Michigan, by unanimous consent, the bill (H. R. 6771) making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes, together with the amendments of the Senate thereto, was taken from the Speaker's table.

When, on motion of Mr. ENGEL of Michigan,

*Resolved,* That the House disagree to the amendments of the Senate to said

bill and agree to the conference asked by the Senate on the disagreeing votes of the two Houses thereon.

Thereupon the Speaker announced the appointment of Messrs. ENGEL of Michigan, CASE of South Dakota, TIBBOTT, SCRIVNER, KERR, MAHON, and NORRELL managers on the part of the House at said conference.

*Ordered,* That the Clerk notify the Senate thereof.

### SELECTIVE SERVICE

The SPEAKER laid before the House the unfinished business, being the reading of the engrossed copy of the bill H. R. 6401.

Mr. MARCANTONIO withdrew his demand for the reading of the engrossed copy of said bill.

The bill was then read a third time by title.

Mr. PHILBIN moved to recommit the bill to the Committee on Armed Services.

On motion of Mr. ANDREWS of New York the previous question was ordered on the motion to recommit to its adoption or rejection.

The question being put, viva voce,

Will the House recommit said bill?

The SPEAKER announced that the nays had it.

Mr. MARCANTONIO objected to the vote on the ground that a quorum was not present and not voting.

A quorum not being present,

The roll was called under clause 4, rule XV.

When there appeared__ { Yeas____ 125
                          Nays____ 283

[Roll No. 118]

Those voting in the affirmative—

| | | |
|---|---|---|
| Allen, Ill. | Gillie | Morris |
| Andersen, | Granger | Murray, Wis. |
| H. Carl | Grant, Ind. | Nicholson |
| Andresen, | Griffiths | Nodar |
| August H. | Gross | O'Hara |
| Arnold | Gwynne, Iowa | O'Konski |
| Banta | Hagen | Pfeifer |
| Barden | Harness, Ind. | Philbin |
| Beall | Havenner | Powell |
| Bender | Heffernan | Rankin |
| Bishop | Hill | Reed, Ill. |
| Blatnik | Hoeven | Reed, N. Y. |
| Bloom | Hoffman | Rees |
| Bolton | Holifield | Rich |
| Bradley | Horan | Rockwell |
| Brehm | Hull | Rooney |
| Buffett | Isacson | Sabath |
| Bushey | Jenison | Sadowski |
| Butler | Jenkins, Ohio | Schwabe, Mo. |
| Carson | Johnson, Ill. | Schwabe, Okla. |
| Celler | Johnson, Ind. | Scoblick |
| Chenoweth | Jones, Wash. | Scott, Hardie |
| Chiperfield | Keefe | Scott, |
| Church | Keogh | Hugh D., Jr. |
| Clevenger | Klein | Shafer |
| Clippinger | Knutson | Short |
| Cole, Mo. | Landis | Simpson, Ill. |
| Crosser | Lemke | Smith, Kans. |
| Crow | Lewis, Ohio | Smith, Ohio |
| Cunningham | Love | Smith, Wis |
| Davis, Wis. | McCowen | Snyder |
| Dawson, Utah | McCulloch | Somers |
| Delaney | McGarvey | Stanley |
| Dolliver | McGregor | Stefan |
| Donohue | Madden | Stevenson |
| Doughton | Maloney | Stratton |
| Douglas | Mansfield | Twyman |
| Elliott | Marcantonio | Vail |
| Ellis | Martin, Iowa | Yursell |
| Elsaesser | Mason | Welchel |
| Feighan | Miller, Conn. | Welch |
| Folger | Miller, Nebr. | Youngblood |
| Gallagher | Mitchell | |

## JOURNAL OF THE

thereupon, at my request, the Attorney General on March 19 instituted an action and obtained an injunction in the United States District Court for the Eastern District of Tennessee. This order enjoined both the Corporation and the Council, and all persons in active participation with them, from engaging in any strike or lock-out or from interfering with normal continuance of work, or from making any change in terms or conditions of employment other than by mutual agreement.

On March 24 I reconvened the Board of Inquiry. Negotiations between the parties continued, with the assistance of the Federal Mediation and Conciliation Service. On May 18 the Board of Inquiry submitted to me its second report, stating that the position of the parties remained unaltered and the dispute unsettled.

On June 1 and 2 the National Labor Relations Board conducted a secret ballot of the employees to ascertain whether they wished to accept the final offer of settlement as stated and made by the employer. The employees, by a vote of 771 to 26, rejected the employer's last offer. On June 7 the National Labor Relations Board certified to the Attorney General the results of this election. On June 8 the employees at a union meeting took action looking to a possible stoppage if the injunction were lifted and if the employer unilaterally placed in effect the terms proposed in its final offer.

On June 10, pursuant to section 210 of the Labor Management Relations Act, the Attorney General moved the court to discharge the injunction. The injunction was discharged on June 11.

During this period, the parties continued negotiations, with the assistance of the Federal Mediation and Conciliation Service. On June 15 the parties reached agreement on the terms of a new contract.

All parties to this dispute and the Government agencies concerned complied with all legal and procedural requirements of title II of the Labor Management Relations Act, 1947.

A number of additional facts concerning this dispute are set forth in the first and second reports of the board of inquiry. Copies of these reports are transmitted to the Congress with this message.

Both parties are to be commended for achieving settlement of this dispute without an interruption of work.

The dispute at Oak Ridge has raised some question, nevertheless, as to the sufficiency of present collective-bargaining methods in atomic-energy installations.

This question is somewhat different from others which have arisen in the past. On the one hand, it is clear that the national security and the development of the beneficial arts and sciences are bound up with the progress of our atomic-energy program. Thus, every dispute which threatens to seriously impair that program imperils the national health and safety.

On the other hand, it is equally clear that the progress of our atomic-energy program requires the support and drive of broad sectors of the American economy. In order to encourage such support, the Atomic Energy Commission has lodged in its contractors a large measure of responsibility and authority. The progress of the program is equally dependent upon the full and willing support of the men and women who work in atomic-energy plants and laboratories.

Under these circumstances, it is imperative that the most successful techniques of the collective-bargaining process should be adopted for the atomic-energy program.

The objective should be twofold: The parties should continue to enjoy the maximum of voluntary action and freedom of choice; secondly, the public interest must be protected at all times.

I believe that special study should be given to the problem of peaceful and orderly settlement of labor disputes in Government-owned, privately operated atomic-energy installations, such as those at Richland, Wash.; Oak Ridge, Tenn.; Los Alamos, N. Mex.; the Argonne National Laboratory, Chicago, Ill.; and others.

I propose, therefore, to establish a commission composed of men having expert knowledge in the field of labor relations, to study this problem and to make such recommendations as they may find necessary. The commission should explore the question whether any special legislation should be enacted to protect the national interest without depriving management or labor organizations of the initiative and freedom necessary for the progress of our atomic-energy program. The commission should study ways and means of adapting to the atomic-energy program the best of our experience in the complex field of labor relations. The commission should concern itself also with special aspects of the problem, such as questions of bargaining representation, uniformity of working conditions and wages, and procedures for grievance handling.

The commission should concern itself, in short, with the broad code of conduct which should be observed by management and labor in their relations with each other in this vital program.

In appointing this commission I shall request the advice of the Atomic Energy Commission and the Joint Committee on Atomic Energy both as to the membership of the commission and the specific questions to be studied.

I believe that the report of this commission, which should be submitted as soon as possible, will be of great value in guiding contractors, labor organizations, and the Government in this new and vital field. I am confident that this is the best avenue to follow to achieve and maintain that proper balance between freedom and responsibility which is the tradition in all our economic relations, including those between management and labor.

HARRY S. TRUMAN.

THE WHITE HOUSE, *June 18, 1948.*

The message was referred to the Committee on Education and Labor and ordered to be printed.

### MESSAGE FROM THE SENATE

A further message from the Senate by Mr. Carrell, one of its clerks, announced that the Senate had passed, with amendments in which the concurrence of the House is requested, bills of the House of the following titles:

H. R. 3190. An act to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

H. R. 5710. An act to amend the Act entitled "An act to expedite the provision of housing in connection with national defense, and for other purposes," approved October 14, 1940, as amended.

The message also announced that the Senate insists upon its amendment to the foregoing bill, requests a conference with the House on the disagreeing votes of the two Houses thereon, and appoints Mr. CAIN, Mr. BUCK, and Mr. FULBRIGHT to be the conferees on the part of the Senate.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendment of the Senate to the bill (H. R. 2192) entitled "An act for the relief of the Massman Construction Company."

The message also announced that the Senate had passed without amendment bills and joint resolutions of the House of the following titles:

H. R. 333. An act for the relief of sundry residents of Alaska, veterans of World War II.

H. R. 371. An act for the relief of Jenness C. Thomas.

H. R. 564. An act for the relief of Sarah Lee Cregg.

H. R. 700. An act for the relief of Anthony Arancio.

H. R. 851. An act for the relief of Adney W. Gray.

H. R. 911. An act for the relief of Kam Fong Chun, Mr. and Mrs. Jose Dias, Joseph De Souza, Mr. and Mrs. Kenneth Ayres, and Jose Oducado.

H. R. 912. An act for the relief of Hiro Higa and Kana Higa.

H. R. 1220. An act for the relief of James Sigler and Frederick P. Vogelsland III.

H. R. 1409. An act for the relief of Frantisek Jiri Pavlik or Georg Pavlik.

H. R. 1490. An act for the relief of the United States Radiator Corp. of Detroit, Mich.

H. R. 1642. An act for the relief of Miss Rosella M. Kostenbader.

H. R. 1779. An act for the relief of the Winona Machine & Foundry Co., a corporation of Winona, Minn.

read a third time, was read a third time by title, and passed.

A motion to reconsider the vote whereby said bill was passed was, by unanimous consent, laid on the table.

*Ordered,* That the Clerk request the concurrence of the Senate in said bill.

### AMENDING SECTIONS 3108 AND 3250 OF INTERNAL REVENUE CODE

On motion of Mr. GRANT of Indiana, by unanimous consent, the Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 6800) to amend sections 3108 and 3250 of the Internal Revenue Code, and for other purposes.

When said bill was considered and read twice, ordered to be engrossed and read a third time, was read a third time by title, and passed.

A motion to reconsider the vote whereby said bill was passed was, by unanimous consent, laid on the table.

*Ordered,* That the Clerk request the concurrence of the Senate in said bill.

### CRIMES AND CRIMINAL PROCEDURE

On motion of Mr. REED of Illinois, by unanimous consent, the bill (H. R. 3190) to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure," together with the following amendments of the Senate thereto, was taken from the Speaker's table:

Page 3, following "13. Laws of States adopted for areas within Federal jurisdiction." insert *14. Applicability to Canal Zone.*

Page 5, line 4, after "States", insert *, except the Canal Zone.*

Page 8, after line 15 insert:

*§ 14. Applicability to Canal Zone.*

*In addition to the sections of this title which by their terms apply to and within the Canal Zone, the following sections of this title shall likewise apply to and within the Canal Zone: 6, 8, 11, 331, 371, 472, 474, 478, 479, 480, 481, 482, 483, 485, 488, 489, 490, 499, 502, 506, 594, 595, 598, 600, 601, 604, 605, 608, 611, 612, 703, 756, 791, 792, 793, 794, 795, 796, 797, 915, 917, 951, 953, 954, 956, 957, 958, 959, 960, 961, 962, 963, 964, 965, 966, 967, 1017, 1073, 1301, 1364, 1382, 1542, 1543, 1544, 1546, 1584, 1621, 1622, 1761, 1821, 1914, 2151, 2152, 2153, 2154, 2155, 2156, 2199, 2231, 2234, 2235, 2274, 2275, 2277, 2384, 2385, 2388, 2389, 2390, 2421, 2422, 2423, 2424, 3059, 3105, 3109.*

Page 91, strike out "610. Contributions by national banks or corporations." and insert *610. Contributions or expenditures by national banks, corporations or labor organizations.*

Page 104, strike out lines 4 to 21, inclusive, and insert:

*§ 610. Contributions by National Banks, Corporations or Labor Organizations*

*It is unlawful for any national bank, or any corporation organized by authority of any law of Congress, to make a contribution or expenditure in connection with any election to any political office, or in connection with any primary election or political convention or caucus held to select candidates for any political office, or for any corporation whatever, or any labor organization to make a contribution or expenditure in connection with any election at which Presidential and Vice Presidential electors or a Senator or Representative in, or a Delegate or Resident Commission to Congress are to be voted for, or in connection with any primary election or political convention or caucus held to select candidates for any of the foregoing offices, or for any candidate, political committee, or other person to accept or receive any contribution prohibited by this section.*

*Every corporation or labor organization which makes any contribution or expenditure in violation of this section shall be fined not more than $5,000; and every officer or director of any corporation, or officer of any labor organization, who consents to any contribution or expenditure by the corporation or labor organization, as the case may be, in violation of this section shall be fined not more than $1,000 or imprisoned not more than one year, or both.*

*For the purposes of this section "labor organization" means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exist for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rate of pay, hours of employment, or conditions of work.*

Page 117, line 8, strike out all after "receiver," down to and including "System," in line 15.

Page 118, line 18, strike out all after "care," down to and including "institution," in line 23.

Page 134, line 19, after "both", insert *; or if he negligently suffers such person to escape, he shall be fined not more than $500 or imprisoned not more than one year, or both.*

Page 158, after line 12, insert *While any foreign government is a member both of the International Monetary Fund and of the International Bank for Reconstruction and Development, this section shall not apply to the sale or purchase of bonds, securities, or other obligations of such government or any political subdivision thereof or of any organization or association acting for or on behalf of such government or political subdivision, or to making of any loan to such government, political subdivision, organization, or association.*

Page 367, lines 15 to 18, inclusive, and insert *The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.*

*Nothing in this title shall be held to take away or impair the jurisdiction of*

the courts of the several States under the laws thereof.

Page 415, line 10, after "Zone,". insert *District of Columbia,*

Page 415, after line 17, insert:

*Nothing in this title, anything therein to the contrary notwithstanding, shall in any way limit, supersede, or repeal any such rules heretofore prescribed by the Supreme Court.*

Page 416, after line 21, insert:

*Nothing in this title, anything therein to the contrary notwithstanding, shall in any way limit, supersede, or repeal any such rules heretofore prescribed by the Supreme Court.*

Page 448, lines 24 and 25, strike out "the Revised Statutes (1 U. S. C., sec. 1)" and insert *Title 1 of the United States Code.*

Page 456, strike out lines 3 to 21, inclusive.

Page 456, line 22, strike out "19" and insert *18.*

Page 457, line 3, strike out "20" and insert *19.*

Page 457, strike out lines 8 to 15, inclusive, and insert:

*Sec. 20. This Act shall take effect September 1, 1948.*

Page 457, line 16, strike out "22" and insert *21.*

Page 463, about middle of page, strike out

"July 3.........| 126|   4, 5| 40|765, 756| 10|   705, 706"

Page 467, below middle of page, strike out

| "June 20......... | 634| | 4| 49| | 1556| 16| | 705 |
|---|---|---|---|---|---|---|---|---|---|
| Do.......... | 635| | 1, 2| 49| | 1557| 22| | 248" |

and insert

| June 20......... | 635| | 1, 2| 49| | 1557| 22| | 248 |
|---|---|---|---|---|---|---|---|---|---|

Page 470, after

"June 8.........| 178| 1, 2, 3| 59|234, 235| 18|241, 241a, 242"

insert:

"July 31.........| 339|   9| 59|   516| 31|   304b

Page 471, at the end of the schedule of repeals on this page, insert:

| 1947—Apr. 16..| 59|......| 61| | 58| 18| | 411 |
|---|---|---|---|---|---|---|---|---|---|
| May 16..| 73|......| 61| | 97| 18| | 748–1 |
| June 21..| 111|......| 61| | 131| 18| | 244 |
| June 25..| 160|   304| 61| | 159| 2| | 951 |

When, on motion of Mr. REED of Illinois, said Senate amendments were concurred in.

A motion to reconsider the vote whereby said Senate amendments were concurred in was, by unanimous consent, laid on the table.

*Ordered,* That the Clerk notify the Senate thereof.

### BUREAU OF RECLAMATION EMERGENCY FUND

On motion of Mr. WELCH, by unanimous consent, the bill (H. R. 3218) to authorize an emergency fund for the Bureau of Reclamation to assure the continuous operation of its irrigation and power systems, together with the following amendment of the Senate thereto, was taken from the Speaker's table.

After line 10, insert:

*Sec. 2. The term "unusual or emergency conditions", as used in this Act, shall be construed to mean canal bank*

cases; to the Committee on the Judiciary.

By Mr. HARNESS of Indiana:

H. Res. 691. Resolution authorizing the appointment of a select committee to conduct a study and investigation of the organization, personnel, and activities of the Federal Communications Commission; to the Committee on Rules.

By Mrs. ROGERS of Massachusetts:

H. Res. 693. Resolution providing for the consideration of H. R. 6958; to the Committee on Rules.

H. Res. 694. Resolution providing for the further expenses for conducting the study and inspection authorized by House Resolution 120 of the Eightieth Congress; to the Committee on House Administration.

PRIVATE BILLS AND RESOLUTIONS

Under clause 1 of rule XXII, private bills and resolutions were introduced and severally referred as follows:

By Mr. BLAND:

H. R. 6991. A bill for the relief of Hampton Institute; to the Committee on the Judiciary.

By Mr. GAMBLE:

H. R. 6992. A bill for the relief of the estate of James J. Barnett, deceased; to the Committee on the Judiciary.

By Mr. KLEIN:

H. R. 6993. A bill for the relief of Leonid Zankowsky; to the Committee on the Judiciary.

H. R. 6994. A bill for the relief of Gronislav Vydaevich; to the Committee on the Judiciary.

H. R. 6995. A bill to authorize the admission of Mrs. Julia Balint to the United States; to the Committee on the Judiciary.

By Mr. MANSFIELD:

H. R. 6996. A bill for the relief of the Montana Engineering & Construction Co.; to the Committee on the Judiciary.

By Mr. REEVES:

H. R. 6997. A bill for the relief of Ferd Owen, Berdie Owen, Gilbert Good, Lela Owen Good, Audit Owen, Wayne Owen, Art Owen, Has Owen, Marvin Owen, and Gene Owen, doing business as Owen Bros.; to the Committee on the Judiciary.

By Mrs. ST. GEORGE:

H. R. 6998. A bill for the relief of Janos and Marianne Mero Somogyi; to the Committee on the Judiciary.

PETITIONS, ETC.

Under clause 1 of rule XXII, petitions and papers were laid on the Clerk's desk and referred as follows:

2105. By the Speaker: Petition of New York Teachers Chapter, American Veterans Committee, petitioning consideration of their resolution with reference to endorsement of the Taft-Ellender-Wagner housing bill; to the Committee on Banking and Currency.

2106. By Mr. CASE of South Dakota: Petition of Mrs. Isaac De Haan, Corsica,

S. Dak., and 14 others, urging the defeat of any legislation proposing the establishing of a universal military training program; to the Committee on Armed Services.

2107. By Mr. GRAHAM: Petition of 17 members of the Winfield Township WCTU, of Butler County, Pa., opposing the Towe bill, H. R. 4278, or recommending prohibiting the sale of beer to trainees, especially those under the age of 21 years; to the Committee on Armed Services.

2108. By Mr. SMITH of Wisconsin: Resolution adopted at Twenty-third Annual Convention of Central Retail Feed Association, Milwaukee, Wis., favoring a change to the hundredweight system for grain; to the Committee on Agriculture.

2109. Also, resolution adopted by Upper Mississippi Valley Water Use Council at its meeting held in Dubuque on June 4, urging Congress to adequately support the United States Geological Survey's program of water investigations; to the Committee on Agriculture.

2110. Also, resolution adopted at Twenty-third Annual Convention of Central Retail Feed Association, Milwaukee, Wis., endorsing legislation to bring into the open all groups' whose aim is to overthrow our constitutional form of government; to the Committee on Un-American Activities.

2111. Also, resolution adopted at Twenty-third Annual Convention of Central Retail Feed Association, Milwaukee, Wis., endorsing all legislation which is designed to keep the Commodity Credit Corporation from competing with private business; to the Committee on Banking and Currency.

2112. By Mr. SABBATH: Memorial of the City Council of the City of Chicago, memorializing Congress to provide appropriations for the operation of air-traffic control towers by the Civil Aeronautics Administration in cities throughout the United States; to the Committee on Appropriations.

2113. By the SPEAKER: Petition of New York Teachers Chapter, American Veterans Committee, petitioning consideration of their resolution with reference to endorsement of the Taft-Ellender-Wagner housing bill; to the Committee on Banking and Currency.

2114. By Mr. BUCK: Petition of Dr. and Mrs. Frank E. Becker, containing 1,215 signatures, including those of 223 residents of Staten Island, N. Y., urging the appropriation by the Congress of sufficient funds for the education and general rehabilitation of the Navajo Indians; to the Committee on Public Lands.


SATURDAY, JUNE 19, 1948

The House was called to order by the Speaker.

The Journal of the legislative day of Thursday June 17, 1948, was read and approved.

COMMUNICATION

A communication from the Acting Secretary of the Interior, pursuant to clause 2, rule XXIV, transmitting a draft of a proposed bill to promote the settlement and development of the public domain in the Territory of Alaska by facilitating the construction of necessary housing therein, and for other purposes, was taken from the Speaker's table and referred to the Committee on Banking and Currency.

MESSAGE FROM THE SENATE

A message from the Senate, by Mr. Carrell, one of its clerks, announced that the Senate had passed, with amendments in which the concurrence of the House is requested, bills of the House of the following titles:

H. R. 4044. An act to amend the Trading With the Enemy Act, as amended; to create a commission to make an inquiry and report with respect to war claims; and to provide for relief for internees in certain cases.

H. R. 4816. An act to amend section 624 of the Public Health Service Act so as to provide a minimum allotment of $250,000 to each State for the construction of hospitals.

H. R. 5882. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes.

H. R. 6039. An act to authorize the permanent appointment in the Regular Army of one officer in the grade of general and to authorize the permanent appointment in the Regular Air Force of one officer in the grade of general, and other purposes.

H. R. 6116. An act to amend the Trading With the Enemy Act.

H. R. 6527. An act to provide assistance to certain local school agencies overburdened with war-incurred, or postwar national-defense-incurred, enrollments.

H. R. 6641. An act to amend the Civil Service Retirement Act of May 29, 1930, to provide annuities for certain surviving spouses of annuitants retired prior to April 1, 1948.

H. R. 6707. An act to amend the Officer Personnel Act of 1947 (Public Law 381, 80th Cong.), and for other purposes.

The message also announced that the Senate had passed bills and joint resolutions of the following titles, in which the concurrence of the House is requested:

S. 411. An act for the relief of Ghetel Pollak Kahan, Magdalena Linda Kahan (wife), and Susanna Kahan (daughter, 10 years old).

S. 2054. An act for the relief of Engebert Axer.

S. 2075. An act for the relief of Wisia Paryzenberg.

S. 2235. An act for the relief of Milo Jurisevic, Mrs. Jelena Jurisevic, Svetozar, Jurisevic, and Radmila Jurisevic,

**ADJOURNMENT RESOLUTION**

Mr HALLECK submitted the following concurrent resolution (H. Con. Res. 218):

*Resolved,* That when the two Houses adjourn on Sunday, June 20, 1948, they stand adjourned until 12 o'clock meridian on Friday, December 31, 1948, or until 12 o'clock meridian on the third day after the respective Members are notified to reassemble in accordance with section 2 of this resolution, whichever event first occurs.

SEC. 2. The President pro tempore of the Senate, the Speaker of the House of Representatives, the acting majority leader of the Senate, and the majority leader of the House of Representatives, all acting jointly, shall notify the Members of the Senate and the House, respectively, to reassemble whenever, in their opinion, the public interest shall warrant it.

When said concurrent resolution was considered and agreed to.

A motion to reconsider the vote whereby said concurrent resolution was agreed to was, by unanimous consent, laid on the table.

*Ordered,* That the Clerk request the concurrence of the Senate in said concurrent resolution.

**AUTHORIZING THE SPEAKER AND THE PRESIDENT PRO TEMPORE TO SIGN ENROLLED BILLS AND JOINT RESOLUTIONS**

Mr. HALLECK submitted the following concurrent resolution (H. Con. Res. 219):

*Resolved,* That notwithstanding the adjournment of the two Houses until December 31, 1948, the Speaker of the House of Representatives and the President pro tempore of the Senate be, and they are hereby, authorized to sign enrolled bills and joint resolutions duly passed by the two Houses and found truly enrolled.

When said concurrent resolution was considered and agreed to.

A motion to reconsider the vote whereby said resolution was considered and agreed to was, by unanimous consent, laid on the table.

*Ordered,* That the Clerk request the concurrence of the Senate in said concurrent resolution.

**AUTHORIZING THE SPEAKER TO APPOINT COMMISSIONS, BOARDS, AND COMMITTEES**

On motion of Mr. HALLECK, by unanimous consent,

*Ordered,* That notwithstanding the adjournment of the House until December 31, 1948, the Speaker be authorized to appoint commissions, boards, and committees authorized by law or by the House.

**REPORTS OF INVESTIGATING COMMITTEES TO BE DOCUMENTS OF THE EIGHTIETH CONGRESS**

On motion of Mr. HALLECK, by unanimous consent,

*Ordered,* That reports filed with the Clerk following the adjournment of the House until Friday, December 31, 1948, by committees authorized by the House to conduct investigations may be printed by the Clerk as reports of the Eightieth Congress.

**GENERAL LEAVE TO EXTEND REMARKS**

On motion of Mr. HALLECK, by unanimous consent, all Members were granted permission, until the last edition authorized by the Joint Committee on Printing is published, to extend and revise their own remarks in the Record on more than one subject, if they so desire, and also to include therein such short quotations as may be necessary to explain or complete such extension of remarks, but this order shall not apply to any subject matter which may have occurred or to any speech delivered subsequent to the adjournment of Congress until Friday, December 31, 1948.

**CLERK TO RECEIVE MESSAGES**

On motion of Mr. HALLECK, by unanimous consent,

*Ordered,* That notwithstanding the adjournment of the House until December 31, 1948, the Clerk be authorized to receive messages from the Senate.

**REPORTS FROM THE OFFICE OF THE COMPTROLLER GENERAL**

Mr. HALLECK submitted the following resolution, which was considered and agreed to (H. Res. 700):

*Resolved,* That the reports of the Comptroller General of the United States made to Congress, pursuant to section 5 of the act of February 24, 1945 (56 Stat. 6), and the Government Corporation Control Act (59 Stat. 597), after the adjournment of the House until December 31, 1948, shall be printed as House documents of the second session of the Eightieth Congress.

A motion to reconsider the vote whereby said resolution was agreed to was, by unanimous consent, laid on the table.

**DESIGNATION OF ACTING CLERK OF THE HOUSE OF REPRESENTATIVES**

Mr. HALLECK submitted the following resolution, which was considered and agreed to (H. Res. 701):

*Resolved,* That in order that the duties of his office may be discharged in case of his absence or disability or in case his office should become vacant, the Clerk of the House of Representatives on or before June 19, 1948, shall designate a subordinate in his office to perform the duties thereof in any such contingencies until the commencement of the first session of the Eighty-first Congress. Such designee when acting under this authorization, shall subscribe himself as Acting Clerk of the House of Representatives.

The Clerk of the House shall promptly communicate to the Speaker the name of the employee designated hereunder for the information of the House.

A motion to reconsider the vote whereby said resolution was agreed to was, by unanimous consent, laid on the table.

The SPEAKER laid before the House the following communication from the Clerk, which was read:

OFFICE OF THE CLERK,
HOUSE OF REPRESENTATIVES,
*Washington, D. C., June 20, 1948.*
The honorable the SPEAKER,
*House of Representatives.*

SIR: Pursuant to the provisions of House Resolution 701 adopted by the House today, I have designated Mr. Harry Newlin Megill, an official in my office, to discharge the duties contemplated by said resolution.

Respectfully yours,
JOHN ANDREWS,
*Clerk of the House of Representatives.*

**EMPIRE PARLIAMENTARY ASSOCIATION**

The SPEAKER announced that, pursuant to the provisions of House Concurrent Resolution 201, Eightieth Congress, he had appointed the following Members on the part of the House to attend the meeting of the Empire Parliamentary Association to be held in Bermuda beginning November 15, 1948: Mr. TALLE, of Iowa, chairman; Mr. CORBETT, of Pennsylvania; Mr. KEFAUVER, of Tennessee; Mr. WORLEY, of Texas.

**INVESTIGATIONS OF PACIFIC ISLANDS AND AREAS**

The SPEAKER announced that, pursuant to the provisions of House Concurrent Resolution 129, Eightieth Congress, he had appointed as members of the joint committee to make a study and investigation of the islands and other areas of the Pacific subject to the authority of the United States the following members of the Committee on Public Lands of the House of Representatives: Mr. CRAWFORD, Mr. LEMKE, Mr. FERNANDEZ.

And the following Members of the Committee on Foreign Affairs of the House of Representatives: Mr. FULTON, Mr. JACKSON of California, Mr. PFEIFER.

**FURTHER MESSAGE FROM THE SENATE**

A still further message from the Senate, by Mr. Burke, one of its clerks, announced that the Senate had passed without amendment a bill of the House of the following title:

H. R. 5355. An act authorizing a per capita payment of $50 each to the members of the Red Lake Band of Chippewa Indians from the proceeds of the sale of timber and lumber on the Red Lake Reservation.

The message also announced that the Senate agrees to the amendment of the House to the bill (S. 2877) entitled "An act to amend the Reconstruction Finance Corporation Act, as amended," with an amendment, as follows: Strike out, "$35,000,000" and insert in lieu thereof "$40,000,000."

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amend-

772            JOURNAL OF THE

ment of the House to the bill (S 2242) entitled "An act to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes."

The message also announced that the Senate agrees to the amendment of the House to a bill of the Senate of the following title:

S 2730. An act to credit, in certain cases, military service and training preparatory thereto performed by employees of the postal service.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendments of the House to the bill (S. 2830) entitled "An act to extend for 5 years the authority to provide for the maintenance of a domestic tin-smelting industry."

The Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H. R. 6771) entitled "An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes."

. The message also announced that the Senate agrees to the amendments of the House to the amendments of the Senate Nos. 28 and 30 to the above-entitled bill.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (S. 2510) entitled "An act to provide for certain administrative expenses in the Post Office Department, including retainment of pneumatic-tube systems, and for other purposes."

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H. R. 6829) entitled "An act making supplemental appropriations for the Executive Office and sundry independent executive bureaus, boards, commissions, and offices, for the fiscal year ending June 30, 1949, and for other purposes."

The message also announced that the Senate had passed without amendment a joint resolution of the House of the following title:

H. J. Res. 433. Joint resolution permitting the free entry of certain articles imported to promote international good will, and for other purposes.

The message also announced that the Senate had passed without amendment concurrent resolutions of the House of the following titles:

H Con. Res. 199 Concurrent resolution authorizing the printing of additional copies of the report (H. Rept. 1920) on the Communist Party of the United States as an advocate of overthrow of Government by force and violence.

H Con. Res 213. Concurrent resolution authorizing the Committee on Expenditures in the Executive Departments, House of Representatives, to have printed for its use additional copies of the hearings held before a special subcommittee of said committee, current Congress, relative to investigation as to the manner in which the United States Board of Parole is operating and as to whether there is a necessity for a change in either the procedure or basic law.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H. R. 6481) entitled "An act making appropriations for Government corporations and independent executive agencies for the fiscal year ending June 30, 1949, and for other purposes."

The message also announced that the Senate recedes from its amendments Nos. 1, 2, and 3 to the above-entitled bill; and that the Senate agrees to the amendments of the House to Senate amendments Nos. 7, 13, 16, 24, and 26 to said bill.

The message also announced that the Senate agrees to the amendment of the House to a bill of the Senate of the following title:

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III.

The message also announced that the Senate agrees to the amendments of the House to bills of the Senate of the following titles:

S. 1243. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes.

S. 1683. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H. R. 6935) entitled "An act making appropriations for the fiscal year ending June 30, 1948, and for other purposes."

The message also announced that the Senate recedes from its amendment numbered 25 to the above-entitled bill.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (S. 1322) entitled "An act to provide a Federal charter for the Commodity Credit Corporation."

The message also announced that the Senate agrees to the report of the com-

mittee of conference on the disagreeing votes of the two Houses on the amendments of the Senate to bills of the House of the following titles:

H. R. 5904. An act to incorporate the Virgin Islands Corporation, and for other purposes.

H. R. 6916. An act to provide for permanent postal rates and additional compensation for postmasters and employees of the field service in the Post Office Department.

H. R. 6801. An act making appropriations for foreign aid for the period beginning April 3, 1948, and ending June 30, 1949, and for other purposes.

The message also announced that the Senate had passed without amendment concurrent resolutions of the House of the following titles:

H. Con. Res. 218. Concurrent resolution providing for adjournment of the two Houses of Congress until December 31, 1948.

H. Con. Res. 219. Concurrent resolution authorizing the signing of enrolled bills following adjournment.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (H. R. 6248) entitled "An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes."

The message also announced that the Senate had passed without amendment joint resolutions of the House of the following titles:

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer United States Cavalry) of the Spanish-American War.

H. J. Res. 327. Joint resolution to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America.

The message also announced that the Senate agrees to the amendments of the House to bills of the Senate of the following titles:

S. 2767. An act to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market of agricultural commodities to meet domestic needs and foreign commitments.

S. 2790. An act to amend the Servicemen's Readjustment Act of 1944, as amended, and for other purposes.

ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED

Mr. LeCOMPTE, from the Committee on House Administration, reported that that committee had examined and found truly enrolled bills and joint resolutions

service-connected disabilities who have dependents.

S. 2825. An act to increase the rates of service-connected death compensation payable to certain widows, children, and dependent parents of persons who served in the active military or naval service, and for other purposes.

S. J. Res. 37. Joint resolution requesting the President to proclaim February 1 as National Freedom Day.

S. J. Res. 206. Joint resolution consenting to an interstate boundary compact by and between the States of Michigan, Minnesota, and Wisconsin.

And then,

### ADJOURNMENT

On motion of Mr. HALLECK, pursuant to House Concurrent Resolution 218, at 6 o'clock and 56 minutes a. m., June 20, 1948, the House adjourned until 12 o'clock meridian on Friday, December 31, 1948.

### REPORTS OF COMMITTEES OF PUBLIC BILLS AND RESOLUTIONS

Under clause 2 of rule XIII, reports of committees were delivered to the Clerk for printing and reference to the proper calendar, as follows:

Mr. WELCH: Committee on Public Lands. H. R. 6697. A bill to authorize the sale and grant to the city of Los Angeles, Calif., of certain interests in public lands, and repealing a certain act; with amendments (Rept. No. 2429). Referred to the Committee of the Whole House on the State of the Union.

Mr. WOLVERTON: Committee on Interstate and Foreign Commerce. Report on the activity of the Committee on Interstate and Foreign Commerce, Eightieth Congress; without amendment (Rept. No. 2433). Referred to the Committee of the Whole House on the State of the Union.

Mr. REES: Committee on Post Office and Civil Service. Report on the survey and study of the postal service; without amendment (Rept. No. 2434). Referred to the Committee of the Whole House on the State of the Union.

Mr. HOFFMAN: Committee on Expenditures in the Executive Departments. Seventeenth intermediate report on investigation as to the manner in which the United States Board of Parole is operating; without amendment (Rept. No. 2441). Referred to the Committee of the Whole House on the State of the Union.

Mr. WEICHEL: Committee on Merchant Marine and Fisheries. Senate Joint Resolution 219. Joint resolution to continue until March 1, 1949, the authority of the United States Maritime Commission to make provisions for certain ocean-transportation service to, from, and within Alaska; without amendment (Rept. No. 2447). Referred to the Committee of the Whole House on the State of the Union.

### CHANGE OF REFERENCE

Under clause 3 of rule XXII, the Committee on Ways and Means was discharged from the consideration of the bill (H R. 5849) to amend the Federal Alcohol Administration Act, and for other purposes, and the same was referred to the Committee on Interstate and Foreign Commerce.

### PUBLIC BILLS AND RESOLUTIONS

Under clause 3 of rule XXII, public bills and resolutions were introduced and severally referred as follows:

By Mr. HARDIE SCOTT:

H. R. 6999. A bill to provide for capital-gain treatment with respect to income received on the redemption of certain United States saving bonds; to the Committee on Ways and Means.

By Mr. BARTLETT:

H. R. 7000. A bill authorizing municipalities o fthe Territory of Alaska to enact transaction taxes; to the Committee on Public Lands.

By Mr. WELCH:

H. R. 7001. A bill to aid the settlement and development of Alaska; to the Committee on Public Lands.

H. R. 7002. A bill to settle and extinguish land claims to the public domain in the Territory of Alaska; to the Committee on Public Lands.

By Mr. WOLCOTT:

H. R. 7003 A bill to provide for a cash allowance for uniforms for employees of the United States Government; to the Committee on Post Office and Civil Service.

By Mr. MARCANTONIO·

H. R. 7004. A bill repealing section 202 (e) of the Sugar Act of 1948; to the Committee on Agriculture.

By Mr. FULTON:

H. R. 7005. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr WEICHEL:

H. R. 7006 A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. KELLEY:

H. R. 7007. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis; to the Committee on Interstate and Foreign Commerce.

By Mr. McDOWELL:

H. R. 7008 A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. MORGAN:

H R. 7009 A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. McMAHON:

H R. 7010. A bill to provide for the admission to the United States of certain persons who served in the Polish Army, and for other purposes; to the Committee on the Judiciary.

By Mr. MEADE of Kentucky:

H. R. 7011. A bill to amend section 2 of the act entitled "An act to supplement existing laws against unlawful restraints and monopolies, and for other purposes," as amended; to the Committee on the Judiciary.

By Mr. SANBORN:

H R. 7012. A bill to promote a sound monetary system; to the Committee on Banking and Currency.

By Mr. SMATHERS:

H R. 7013 A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mrs. BOLTON:

H. R. 7014. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis; to the Committee on Interstate and Foreign Commerce.

By Mr. CORBETT:

H. R. 7015. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. EATON:

H R. 7016. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. McDONOUGH:

H. R. 7017. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. PFEIFER:

H. R. 7018. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. BARTLETT:

H. R. 7019. A bill to promote the settlement and development of the public domain in the Territory of Alaska by facilitating the construction of necessary housing therein, and for other purposes; to the Committee on Banking and Currency.

H. R. 7020. A bill to authorize a program of useful public works for the development of the Territory of Alaska; to the Committee on Public Lands.

By Mr. JENKINS of Pennsylvania:

H. R. 7021. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis; to the Committee on Interstate and Foreign Commerce.

By Mr. VAN ZANDT:

H. R. 7022. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. EBERHARTER:

H. R. 7023. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. KERSTEN of Wisconsin:

H. R. 7024. A bill to amend an act entitled "An act to supplement existing laws against unlawful restraints and monopolies, and for other purposes," approved October 15, 1914 (38 Stat. 730), as amended; to the Committee on the Judiciary.

By Mr. JAVITS:

H. R. 7025. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. BUCHANAN:

H. R. 7026. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. CHELF:

H. R. 7027. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. McMAHON:

H. J. Res. 435. Joint resolution to establish a commission to investigate and study the entire field of educational nursing; to the Committee on Interstate and Foreign Commerce.

By Mr. SOMERS:

H. Res. 695. Resolution authorizing an investigation of conditions in Palestine; to the Committee on Rules.

By Mr. MULTER:

H. Res. 696. Resolution authorizing an investigation of conditions in Palestine; to the Committee on Rules.

By Mr. LeCOMPTE:

H. Res. 697. Resolution providing expenses for conducting the investigation incurred by the select committee authorized by House Resolution 691, which was referred to the Committee on House Administration.

By Mr. DONOHUE:

H. Res. 698. Resolution calling upon Congress to take effective action against the spread of inflation and the high cost of living; to the Committee on Banking and Currency.

PRIVATE BILLS AND RESOLUTIONS

Under clause 1 of rule XXII, private bills and resolutions were introduced and severally referred as follows:

By Mr. JENKINS of Pennsylvania:

H. R. 7028. A bill for the relief of Maria Forbes; to the Committee on the Judiciary.

By Mr. McCORMACK:

H. R. 7029. A bill for the relief of John J. O'Mara; to the Committee on the Judiciary.

By Mr. PHILBIN:

H. R. 7030. A bill for the relief of Adalbert (Bela) Juth; to the Committee on the Judiciary.

PETITIONS, ETC.

Under clause 1 of rule XXII, petitions and papers were laid on the Clerk's desk and referred as follows:

, 2115. By Mr. KEARNEY: Petition by the members of Otsego County (N. Y.) Pomona Grange, urging that the Congress of the United States take immediate steps to appropriate money to set up a laboratory for the study and research of the causes, remedies, and final eradication of the hoof-and-mouth disease; to the Committee on Appropriations.

2116. By Mrs. ROGERS of Massachusetts: Petition of the General Court of Massachusetts, relative to the recognition of the state of Israel and the lifting of the embargo on arms to Palestine; to the Committee on Foreign Affairs.

APPOINTMENTS BY THE SPEAKER SUBSEQUENT TO ADJOURNMENT

INVESTIGATION OF FEDERAL COMMUNICATIONS COMMISSION

The SPEAKER, pursuant to the authority conferred upon him by House Resolution 691, Eightieth Congress, and the order of the House of June 19, 1948, empowering him to appoint commissions, boards, and committees authorized by law or by the House, did on June 29, 1948, appoint as members of the select committee to conduct a study and investigation of the organization, personnel, and activities of the Federal Communications Commission the following Members of the House: Hon. FOREST A. HARNESS, Indiana, chairman; Hon. J EDWARD W. HALL, New York; Hon. CHARLES H .,ELSTON, Ohio; Hon. J. PERCY PRIEST, Tennessee; Hon. OREN HARRIS, Arkansas

WASHINGTON AND LEE UNIVERSITY BICENTENNIAL COMMISSION

The SPEAKER, pursuant to the authority conferred upon him by Public Law 636, Eightieth Congress, and the order of the House of June 19, 1948, empowering him to appoint commissions, boards and committees authorized by law or by the House, did on July 9, 1948, appoint as members of the United States-Washington and Lee University Bicentennial Commission the following members on the part of the House to serve with himself: Hon. CLARENCE J. BROWN, Ohio; Hon. JAMES W. WADSWORTH, New York; Hon. JOHN W. FLANNAGAN, Jr., Virginia; Hon. FADJO CRAVENS, Arkansas.

A FURTHER MESSAGE FROM THE SENATE SUBSEQUENT TO ADJOURNMENT

A message from the Senate, received by the Clerk of the House on June 24, 1948, announced that the Senate had passed a concurrent resolution of the following title in which the concurrence of the House is requested:

S. Con. Res. 59. Concurrent resolution relative to negotiations with the Canadian Government concerning the construction of railroads in Alaska and the establishment of reciprocal tariff and immigration arrangements.

BILLS AND JOINT RESOLUTIONS ENROLLED SUBSEQUENT TO ADJOURNMENT

Mr. LeCOMPTE, from the Committee on House Administration, reported that that committee had examined and found truly enrolled bills and joint resolutions of the House of the following titles:

H. R. 333. An act for the relief of sundry residents of Alaska, the veterans of World War II.

H. R. 2009. An act for the relief of the estate of Vito Abarno.

H. R. 2269. An act for the relief of Frank A. Constable.

H. R. 2798. An act to amend section 5, Home Owners' Loan Act of 1933, and for other purposes.

H. R. 3190. An act to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

H. R. 3416. An act to provide for the establishment of the Pensacola National Monument.

H. R. 4044. An act to amend the Trading with the Enemy Act, as amended; to create a commission to make an inquiry and report with respect to war claims; and to provide for relief for internees in certain cases.

H. R. 4917. An act to provide further benefits for certain employees of the United States who are veterans of World War II and lost opportunity for probational civil-service appointments by reason of their service in the armed forces of the United States, and who, due to service-connected disabilities, are unable to perform the duties of the positions for which examinations were taken.

H. R. 5416. An act to promote the interests of the Fort Hall Indian irrigation project, Idaho, and for other purposes.

H. R. 5882. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes.

H. R. 5904. An act to continue the Virgin Islands Company as an agency of the United States.

H. R. 6248. An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes.

H. R. 6402. An act to provide for extension of the terms of office of the present members of the Atomic Energy Commission.

H. R. 6448. An act to authorize the Administrator of Veterans' Affairs to convey certain land in Tennessee to the city of Johnson City.

H. R. 6465. An act to amend and supplement section 2 of the act approved August 30, 1935, relating to the construction and financing of toll bridges over the Delaware River by the Delaware River Joint Toll Bridge Commission of the Commonwealth of Pennsylvania and the State of New Jersey.

H. R. 6481. An act making appropriations for Government corporations and independent executive agencies for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6527. An act to provide assistance to certain local school agencies overburdened with war-incurred or postwar national-defense-incurred enrollments.

H. R. 6641. An act to amend the Civil Service Retirement Act of May 29, 1930, to provide annuities for certain surviving spouses of annuitants retired prior to April 1, 1948.

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6801. An act making appropriations for foreign aid, and for other purposes.

H. R. 6829. An act making supplemental appropriations for the Executive Office and sundry independent executive bureaus, boards, commissions, and offices for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6916. An act to provide for permanent postal rates and to provide pay increases for Government employees.

H. R. 6935. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1948, and for other purposes.

H. R. 6808. An act to permit refund or credit to brewers of taxes paid on beer lost in bottling operations.

H. J. Res. 190. Joint resolution authorizing the printing and binding of Cannon's Procedure in the oHuse of Representatives and providing that the same shall be subject to copyright by the author.

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer U. S. Cavalry) of the Spanish-American War.

H. J. Res. 327. Joint resolution to authorize the issuance of a special series

of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America.

H. J. Res. 433. Joint resolution permitting the free entry of certain articles imported to promote international good will, and for other purposes.

ENROLLED BILLS AND JOINT RESOLUTION SIGNED SUBSEQUENT TO ADJOURNMENT

The SPEAKER, pursuant to the authority granted him by House Concurrent Resolution 219, second session of the Eightieth Congress, did on June 22, 1948, sign enrolled bills and joint resolutions of the House of the following titles:

H. R. 333. An act for the relief of sundry residents of Alaska, the veterans of World War II.

H. R. 2009. An act for the relief of the estate of Vito Abarnot.

H. R. 2269. An act for the relief of Frank A. Constable.

H. R. 2798. An act to amend section 5, Home Owners' Loan Act of 1933, and for other purposes.

H. R. 3190. An act to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

H. R. 3416. An act to provide for the establishment of the Pensacola National Monument.

H. R. 4044. An act to amend the Trading With the Enemy Act, as amended; to create a commission to make an inquiry and report with respect to war claims; and to provide for relief for internees in certain cases.

H. R. 4917. An act to provide further benefits for certain employees of the United States who are veterans of World War II and lost opportunity for probational civil-service appointments by reason of their service in the armed forces of the United States, and who, due to service-connected disabilities, are unable to perform the duties of the positions for which examinations were taken.

H. R. 5416. An act to promote the interests of the Fort Hall Indian irrigation project, Idaho, and for other purposes.

H. R. 5882. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes.

H. R. 5904. An act to continue the Virgin Islands Company as an agency of the United States.

H. R. 6248. An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes.

H. R. 6402. An act to provide for extension of the terms of office of the present members of the Atomic Energy Commission.

H. R. 6448. An act to authorize the Administrator of Veterans' Affairs to convey certain land in Tennessee to the city of Johnson City.

H. R. 6465. An act to amend and supplement section 2 of the act approved August 30, 1935, relating to the construction and financing of toll bridges over the Delaware River by the Delaware River Joint Toll Bridge Commission of the Commonwealth of Pennsylvania and the State of New Jersey.

H. R. 6481. An act making appropriations for Government corporations and independent executive agencies for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6527. An act to provide assistance to certain local school agencies overburdened with war-incurred or postwar national-defense-incurred enrollments.

H. R. 6641. An act to amend the Civil Service Retirement Act of May 29, 1930, to provide annuities for certain surviving spouses of annuitants retired prior to April 1, 1948.

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6801. An act making appropriations for foreign aid, and for other purposes.

H. R. 6829. An act making supplemental appropriations for the Executive Office and sundry independent executive bureaus, boards, commissions, and offices for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6916. An act to provide for permanent postal rates and to provide pay increases for Government employees.

H. R. 6935. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1948, and for other purposes.

H. R. 6808. An act to permit refund or credit to brewers of taxes paid on beer lost in bottling operations.

H. J. Res. 190. Joint resolution authorizing the printing and binding of Cannon's Procedure in the House of Representatives and providing that the same shall be subject to copyright by the author.

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer U. S. Cavalry) of the Spanish-American War.

H. J. Res. 327. Joint resolution to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America.

H. J. Res. 433. Joint resolution permitting the free entry of certain articles imported to promote international good will, and for other purposes.

SENATE ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED SUBSEQUENT TO ADJOURNMENT

The SPEAKER, pursuant to the authority granted him by House Concurrent Resolution 219, second session, Eightieth Congress, did, on the follow-

Case 1:09-cv-00580-PLF   Document 1-1   Filed 03/26/09   Page 49 of 143

ing dates, sign enrolled bills and joint resolutions of the Senate of the following titles:

On June 22, 1948:

S. 418. An act to provide for water-pollution-control activities in the Federal Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes.

S. 595. An act to provide that the rates of compensation for disabilities incurred in active military or naval service other than in a period of war service shall be equal to 80 percent of the rates payable for similar disabilities incurred during active service in time of war.

S. 1243 An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes.

S. 1260. An act to create a commission to hear and determine the claims of certain motor carriers.

S. 1322. An act to provide a Federal charter for the Commodity Credit Corporation.

S. 1683 An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State.

S. 1715. An act for the relief of Archie Hamilton and Delbert Hamilton.

S. 1717. An act for the relief of the estate of William R. Stigall, deceased.

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III.

S. 2217. An act conferring jurisdiction upon the Court of Claims of the United States to hear, determine, and render judgment upon the joint claims of Silas Mason Co., Inc.; Walsh Construction Co.; and Atkinson-Kier Co.

S. 2242. An act to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes.

S. 2281. An act to provide for an air parcel-post service, and for other purposes.

S. 2371. An act validating certain conveyances of the Oregon Short Line Railroad Co. and the Union Pacific Railroad Co. and waiving, relinquishing, and disclaiming all title and all right of reverter and forfeiture of the United States of America to the lands described in said conveyance.

S. 2376. An act to provide a revolving fund for the purchase of agricultural commodities and raw materials to be processed in occupied areas and sold.

S. 2440. An act for the relief of Charles Duncan Montrieth.

S. 2554. An act to promote the common defense by providing for the retention and maintenance of a national reserve of industrial productive capacity, and for other purposes.

S. 2621. An act authorizing the extension of the functions and duties of Federal Prison Industries, Inc., to military disciplinary barracks.

S. 2655. An act to provide for the common defense by increasing the strength of the armed forces of the United States, including the Reserve components thereof, and for other purposes.

S. 2676. An act to authorize the Secretary of the Interior to convey a certain parcel of land in St. Louis County, Minn., to the University of Minnesota.

S. 2692. An act to terminate the retirement system of the Office of the Comptroller of the Currency, and to transfer that retirement fund to the Civil Service Retirement and Disability Fund.

S. 2698. An act to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institution, a State institution, and for other purposes.

S. 2705. An act to reimburse the James & Phelps Construction Co.

S. 2709. An act for the relief of Stefan Magura and Michal Magura.

S. 2730. An act to include as allowable service under the act of July 6, 1945, service performed in the military forces and on war transfer by employees in the field service of the Post Office Department.

S. 2743. An act providing for the more expeditious determination of certain claims filed by Ute Indians.

S. 2747. An act to amend the Canal Zone Code for the purpose of incorporating the Panama Railroad Company.

S. 2767. An act to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market of agricultural commodities to meet domestic needs and foreign commitment.

S. 2794. An act to authorize the Administrator of Veterans' Affairs to prescribe the rates of pay for certain positions at field installations.

S. 2830. An act to extend for 2 years the authority to provide for the maintenance of a domestic tin-smelting industry.

S. 2849. An act to authorize the Administrator of Veterans' Affairs to convey a certain tract of land in the State of Arkansas to Washington County, Ark.

S. 2861. An act to assist by grants-in-aid the Republic of the Philippines in providing medical care and treatment for certain veterans.

S. J. Res. 177. Joint resolution providing for participation by the Government of the United States in the Pan American Railway Congress, and authorizing an appropriation therefor.

S. J. Res. 219. Joint resolution to continue until March 1, 1949, the authority of the United States Maritime Commission to make provision for certain ocean transportation service to, from, and within Alaska.

On June 23, 1948:

S. 165. An act for the relief of Doris E. Snyder.

S. 2790. An act to amend the Servicemen's Readjustment Act of 1944, as amended, and for other purposes.

S. 2877. An act to amend the Reconstruction Finance Corporation Act, as amended.

BILLS AND JOINT RESOLUTIONS PRESENTED TO THE PRESIDENT SUBSEQUENT TO ADJOURNMENT

Mr. LeCOMPTE, from the Committee on House Administration, reported that that committee did on the following dates present to the President, for his approval, bills and joint resolutions of the House of the following titles:

On June 21, 1948:

H. R. 371. An act for the relief of Jenness C. Thomas.

H. R. 564. An act for the relief of Sarah Lee Cregg.

H. R. 700. An act for the relief of Anthony Arancio.

H. R. 703. An act for the relief of Leon Nikolaivich Volkov.

H. R. 851. An act for the relief of Adney W. Gray.

H. R. 911. An act for the relief of Kam Fong Chun, Mr. and Mrs. Jose Dias, Joseph de Souza, Mr. and Mrs. Kenneth Ayres, and Jose Oducado.

H. R. 912. An act for the relief of Hiro Higa and Kana Higa.

H. R. 915. An act to confer jurisdiction upon the District Court of the United States for the Territory of Hawaii to hear, determine, and render judgment on the claims of the executors and trustees of the estate of L. L. McCandless, deceased, as their interests may appear, against the United States of America.

H. R. 1076. An act for the relief of Chester O. Glenn.

H. R. 1220. An act for the relief of James D. Sigler and Frederick P. Vogelsand III.

H. R. 1409. An act for the relief of Frantisek Jiri Pavlik or Georg Pavlik.

H. R. 1490. An act for the relief of the United States Radiator Corp., of Detroit, Mich.

H. R. 1642. An act for the relief of Miss Rosella M. Kostenbader.

H. R. 1733. An act for the relief of G. C. Hedrick.

H. R. 1734. An act for the relief of Gabel Construction Co.

H. R. 1779. For the relief of the Winona Machine & Foundry Co., a corporation of Winona, Minn.

H. R. 1780. An act for the relief of the Cannon Valley Milling Co.

H. R. 1910. An act for the relief of the legal guardian of Robert Lee Threatt, a minor.

H. R. 1930. An act for the relief of the Growers Fertilizer Co., a Florida corporation.

H. R. 2096. An act to amend section 11 of the act approved June 5, 1942 (56 Stat. 317), relating to Mammoth Cave National Park in the State of Kentucky, and for other purposes.

H. R. 2192. An act for relief of the Massman Construction Co.

H. R. 2193. An act for the relief of Robert E. Graham.

mented liquors subject to the internal-revenue tax on fermented liquor.

H R. 6184. An act for the relief of the East Coast Ship & Yacht Corp., of Noank, Conn.

H. R. 6186. An act for reimbursement of the Hawaiian Dredging Co., Ltd.

H R. 6224. An act for the relief of John Watkins.

H. R. 6293. An act to amend the act of June 19, 1934, providing for the establishment of the National Archives, so as to provide that certain fees collected by the Archivist shall be available for disbursement in the interest of the National Archives.

H. R. 6318. An act to amend section 3 of the Standard Time Act of March 19, 1918, as amended, relating to the placing of a certain portion of the State of Idaho in the third time zone.

H. R. 6327. An act to provide for the issuance of a license to practice chiropractic in the District of Columbia to Samuel O. Burdette.

H R 6412. An act to codify and enact into law title 3 of the United States Code, entitled "The President."

H. R. 6419. An act authorizing the construction, repair, and preservation of certain public works on rivers and harbors for navigation, flood control, and for other purposes.

H. R. 6428. An act to reimburse the Luther Bros. Construction Co.

H. R. 6452. An act to amend section 7 of the act entitled "An act making appropriations to provide for the government of the District of Columbia for the fiscal year ending June 30, 1903, or for other purposes," approved July 1, 1902, as amended.

H. R. 6454. An act to amend the Civil Service Retirement Act of May 29, 1930, as amended, to provide annuities for certain Federal employees who have rendered at least 20 years' service in the investigation, apprehension, or detention of persons suspected or convicted of offenses against the United States.

H. R. 6507. An act to amend subsection 602 (f) of the National Service Life Insurance Act of 1940, as amended, to authorize renewal of level premium term insurance for a second 5-year period, and for other purposes.

H R. 6598. To amend section 2 of the act entitled "An act to provide for insanity proceedings in the District of Columbia," approved August 9, 1939.

H. R. 6933. An act to authorize an exchange of lands and interests therein between the city of San Diego, Calif., and the United States, and for other purposes.

H. R. 6634. An act to authorize the issuance of a special series of stamps in honor and commemoration of Moina Michael, originator of Flanders Field memorial poppy idea.

H R 6638. An act to authorize the course of instruction at the United States Naval Academy to be given to not exceeding four persons at a time from the Republic of the Philippines.

H. R. 6705. An act making appropriations for the Department of the Interior for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6707. An act to amend the Office Personnel Act of 1947 (Public Law 381, 80th Cong.), and for other purposes.

H. R. 6772. An act making appropriations for the Department of the Navy and the naval service for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6818. An act to amend title X of the Social Security Act (relating to aid to the blind) so as to provide greater encouragement to blind recipients thereunder to become self-supporting.

H. R. 6822. An act to continue the authorization for the appointment of two additional Assistant Secretaries of State.

H. R. 6860. An act to amend the Federal Airport Act.

H. J. Res. 297. Joint resolution to increase the sum authorized to be appropriated for the presentation to Eire of a statute of Commodore John Barry.

H. J. Res. 421. Joint resolution to authorize and direct the Commissioners of the District of Columbia to investigate and study certain matters relating to parking lots in the District of Columbia.

H. J. Res. 427. Joint resolution correcting act establishing the Theodore Roosevelt National Memorial Park, as amended.

H. J. Res. 428. Joint resolution providing an extension of time for claiming credit or refund with respect to war losses.

H. J. Res. 429. Joint resolution relating to the marital deduction, for estate-tax purposes, in the case of life insurance or annuity payments.

On June 23, 1948:

H. R. 333. An act for the relief of sundry residents of Alaska, veterans of World War II.

H. R. 2009. An act for the relief of the estate of Vito Abarno.

H. R. 2269. An act for the relief of Frank A. Constable.

H. R. 2798. An act to amend section 5, Home Owners' Loan Act of 1933, and for other purposes.

H. R. 3190. An act to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

H. R. 3416. An act to provide for the establishment of the Pensacola National Monument.

H. R. 4044. An act to amend the Trading With the Enemy Act, as amended; to create a commission to make an inquiry and report with respect to war claims; and to provide for relief of internees in certain cases.

H. R. 4917. An act to provide further benefits for certain employees of the United States who are veterans of World War II and lost opportunity for probational civil-service appointments by reason of their service in the armed forces of the United States, and who, due to

service-connected disabilities, are unable to perform the duties of the positions for which examinations were taken.

H. R. 5416. An act to promote the interests of the Fort Hall Indian irrigation project, Idaho, and for other purposes.

H. R. 5882. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes.

H. R. 5904. An act to continue the Virgin Islands Company as an agency of the United States.

H. R. 6248. An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes.

H. R. 6402. An act to provide for extension of the terms of office of the present members of the Atomic Energy Commission.

H. R. 6448. An act to authorize the Administrator of Veterans' Affairs to convey certain land in Tennessee to the city of Johnson City.

H. R. 6465. An act to amend and supplement section 2 of the act approved August 30, 1935, relating to the construction and financing of toll bridges over the Delaware River by the Delaware River Joint Toll Bridge Commission of the Commonwealth of Pennsylvania and the State of New Jersey.

H. R. 6481. An act making appropriations for Government corporations and independent executive agencies for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6527. An act to provide assistance to certain local school agencies overburdened with war-incurred, or postwar national-defense-incurred enrollments.

H. R. 6641. An act to amend the Civil Service Retirement Act of May 29, 1930, to provide annuities for certain surviving spouses of annuitants retired prior to April 1, 1948.

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6801. An act making appropriations for foreign aid, and for other purposes.

H. R. 6808. An act to permit refund or credit to brewers of taxes paid on beer lost in bottling operations.

H. R. 6829. An act making supplemental appropriations for the Executive Office and sundry independent executive bureaus, boards, commissions, and offices, for the fiscal year ending June 30, 1949, and for other purposes.

H R 6916. An act to provide for permanent postal rates and to provide pay increases for Government employees.

H R. 6935. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1948, and for other purposes.

H J. Res 190. Joint resolution authorizing the printing and binding of Cannon's Procedure in the House of Representatives and providing that the same shall be subject to copyright by the author.

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer United States Cavalry) of the Spanish-American War.

H. J. Res. 327. Joint resolution to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America.

H. J. Res. 433. Joint resolution permitting the free entry of certain articles imported to promote international good will, and for other purposes.

BILLS AND JOINT RESOLUTIONS APPROVED
SUBSEQUENT TO ADJOURNMENT

The President of the United States, subsequent to adjournment, notified the Clerk of the House of Representatives that on the following dates he approved and signed bills and joint resolutions of the House bill of the following titles:

On June 19, 1948:

H. R. 238. An act for the extension of admiralty jurisdiction.

H. R. 636. An act for the relief of W. A. Knox, W. L. M. Knox, and Frank C. Morris, operating as Knox Lumber Sales Co., of Thomson, Ga.

H. R. 1222. An act for the relief of Mr. and Mrs. M. C. Lewis.

H. R. 1726. An act for the relief of Elsie L. Rosenow.

H. R. 1781. An act for the relief of Annie L. Taylor and William Benjamin Taylor.

H R. 1855. An act for the relief of Elbert Spivey.

H. R. 2062. An act for the relief of Mrs. Carrie M. Lee.

H R. 2273. An act to amend the act of May 29, 1944, providing for the recognition of the services of the civilian officials and employees, citizens of the United States, engaged in and about the construction of the Panama Canal.

H. R. 2479. An act for the relief of Hardy H. Bryant.

H. R. 2684. An act for the relief of sundry fruit growers of the State of Delaware who sustained losses as the result of the fumigation of apples with methyl bromide in order to comply with the requirements of the United States Department of Agriculture relating to the Japanese beetle quarantine.

H R 2721 An act to amend the act of March 10, 1934, entitled "an act to promote the conservation of wildlife, fish, and game, and for other purposes," as amended by the act approved August 14, 1946.

H R 2916. An act for the relief of Walter Vandahl and Esther S. Vandahl, Allabrada Adams, Mrs. Lucile L. Rice Talbot, Mrs. Gladys Webb, and John E. Webb.

H R 2922 An act for the relief of Charles B Featherstone.

H. R. 3307. An act for the relief of Ernest F. Lutzken.

H. R. 5114. An act for the relief of the estate of John Deiman.

H. R. 3159. An act for the relief of Mrs. Mae H Fitzgerald.

H R 3280. An act for the relief of Clarence S. Osika.

H. R. 3352. An act for the relief of Emeline Latigue.

H. R. 3402. An act to extend the authorized maturity date of certain bridge revenue bonds to be issued in connection with the refunding of the acquisition cost of the bridge across the Missouri River at Rulo, Nebr.

H R 3423. An act to amend the act entitled "An act to classify the officers and members of the Fire Department of the District of Columbia, and for other purposes," approved June 20, 1906, and for other purposes.

H. R. 3500. An act for the relief of Lester L. Elder and Mrs. Esther E. Elder.

H. R. 3641. An act for the relief of Mrs. Helen E. Scofield.

H. R. 3883. An act to authorize and direct the Secretary of the Army to transfer to the Territory of Alaska the title to the Army vessel Hygiene.

H. R. 3915. An act to increase the size of the Arkansas-Mississippi Bridge Commission, and for other purposes.

H. R. 4244. An act to authorize assistance to certain veterans in acquiring specially adapted housing which they require by reason of the nature of their service-connected disabilities.

H. R. 4455. An act to authorize the conveyance by the Secretary of the Interior to the Richmond, Fredericksburg & Potomac Railroad Co., of certain lands lying in the bed of Roaches Run, Arlington County, Va., and for other purposes.

H. R. 4663. An act to confer jurisdiction upon the District Court of the United States for the Middle District of Georgia to hear, determine, and render judgment on the claims of the owners of the fee-simple titles and leasehold interests in lands leased to the United States by the city of Macon, Ga., for use as a part of the site of Camp Wheeler, Ga.

H. R. 4688. An act to enlarge the Gettysburg National Cemetery.

H. R. 4830. An act for the relief of Cooperative for American Remittances to Europe, Inc.

H. R. 4874. An act to transfer Pelican Rock in Crescent City Harbor, Del Norte County, Calif., to that county.

H. R. 5065. An act to amend section 1700 (a) (1) of the Internal Revenue Code so as to exempt hospitalized servicemen and veterans from the admissions tax when admitted free.

H. R. 5112. An act to amend the Civil Service Retirement Act of May 29, 1930, as amended.

H. R. 5147. An act authorizing the Secretary of the Interior to issue a patent in fee to Florence A. W. Arens.

H R. 5174 An act to authorize Commodity Credit Corporation to make adjustment payments to certain producers of raw cane sugar in Puerto Rico and Hawaii.

H.R. 5330. An act for the relief of W. W. DeLoach.

H.R. 5344. An act to prevent retroactive checkage of retired pay in the cases of certain enlisted men and warrant officers appointed or advanced to commissioned rank or grade under the act of July 24, 1941 (55 Stat. 603), as amended, and for other purposes.

H. R. 5655. An act confirming the claim of Juan Berrar to certain lands in the State of Louisiana, county of Attakapas, now parish of St. Martin, said claim being listed as No. B–690 in the report of the commissioners dated June 1811, so as to include section 2, township 11 south, range 6 east, Louisiana meridian, containing one hundred and thirty-nine and sixty-two one-hundredths acres.

H. R. 5758. An act to amend further the Armed Forces Leave Act of 1946, as amended, to permit certain payments to be made to surviving brothers and sisters, and nieces and nephews, of deceased members and former members of the armed forces.

H. R. 5808. An act to continue a system of nurseries and nursery schools for the day care of school-age and underschool-age children of the District of Columbia.

H. R. 5820. An act to aid in the development of improved prosthetic appliances, and for other purposes.

H. R. 5883. An act making appropriations for the Department of Agriculture (exclusive of the Farm Credit Administration) for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 5889. An act to extend the provisions of title VI of the Public Health Service Act to the Virgin Islands.

H. R. 5891. An act to repeal an act approved August 24, 1894, entitled "An act to authorize the purchasers of the property and franchises of the Choctaw Coal & Railway Co. to organize a corporation, and to confer upon the same all the powers, privileges, and franchises vested in that company," and all acts amendatory thereof and supplemental thereto.

H. R. 5957. An act to provide for the establishment of the Fort Vancouver National Monument, in the State of Washington, to include the site of the old Hudson's Bay Co. stockade, and for other purposes.

H. R. 5983. An act to amend section 202 of title II of the Army-Navy Medical Services Corps Act of 1947, as amended, to remove the present restriction on appointments to the Navy Medical Service Corps.

H R. 6073. An act to provide for the acquisition of lands for grazing and related purposes

H R. 6110. An act to permit the landing of halibut by Canadian fishing vessels to Alaskan ports, and for other purposes.

H.R. 6113. An act to transfer certain land in Langlade County, Wis., to the United States Forest Service.

H. R. 6114. An act to amend title I of the Bankhead-Jones Farm Tenant Act, as amended, so as to increase the interest rate on title I loans, to provide for the redemption of nondelinquent insured mortgages, to authorize advances for the preservation and protection of the insured loan security, and for other purposes.

H. R 6229. An act to authorize the extension of leases of certain land in the Territory of Hawaii.

H. R. 6234. An act to authorize the establishment of internships in the Department of Medicine and Surgery of the Veterans' Administration.

H. R. 6252. An act to authorize the issuance of a land patent to certain public lands, situated in the county of Kauai, Territory of Hawaii, for school purposes.

H.R. 6339 An act to amend the provisions of title VI of the Public Health Service Act relating to standards of maintenance and operation for hospitals receiving aid under that title.

H. R. 6430. An act making appropriations for the government of the District of Columbia and other activities chargeable in whole or in part against the revenues of such District for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6489. An act to provide for the temporary free importation of lead.

H. R. 6716. An act to authorize the Administrator of Veterans' Affairs to transfer a portion of the Veterans' Administration center at Los Angeles, Calif., to the State of California for the use of the University of California.

H. R. 6758. An act making supplemental appropriations for the Treasury and Post Office Departments for the fiscal year ending June 30, 1949, and for other purposes.

On June 21, 1948:
H. R. 633. An act for the relief of Mrs. Myrtle Hovde.

H. R. 6368. An act to provide for the issuance of a special postage stamp in commemoration of the dedication of the Palomar Mountain Observatory.

On June 22, 1948:
H.R. 929. An act for the relief of Ernest L Godfrey.

H.R. 4964. An act to preserve seniority rights of 10-point preference eligibles in the postal service transferring from the position of letter carrier to clerk or from the position of clerk to letter carrier.

H. R. 5071. An act to extend the public land laws of the United States to certain lands, consisting of islands, situated in the Red River in Oklahoma.

H. R. 5272. An act relating to the compensation of certain railway postal clerks.

H.R. 5822. An act to establish the Saratoga National Historical Park, in the State of New York, from the lands that have been acquired by the Federal Government for that purpose pursuant to the act of June 1, 1938 (52 Stat. 608), and for other purposes.

H. R. 6239. An act to provide for the suspension of annual assessment work on mining claims held by location in the Territory of Alaska.

H. R. 6246. An act to authorize the transfer of certain Federal lands within the Chopawamsic Park to the Secretary of the Navy, the addition of lands surplus to the Department of the Army to this park, the acquisition of additional lands needed to round out the boundaries of this park, to change the name of said park to Prince William Forest Park, and for other purposes.

H. R. 6289. An act to provide for the voluntary admission and treatment of mental patients at St. Elizabeths Hospital.

On June 23, 1948:
H. R. 2588. An act requiring all mails consigned to an airport from a post office or branch, or from an airport to a post office or branch, within a radius of 35 miles of a city in which there has been established a Government-owned vehicle service to be delivered by Government-owned motor vehicles.

H. R. 6766. An act to amend the Railroad Retirement Act of 1937, as amended, and the Railroad Unemployment Insurance Act, as amended, and for other purposes.

On June 24, 1948:
H. R. 239. An act to further perfect the consolidation of the Lighthouse Service with the Coast Guard.

H.R. 2867. An act to permit, subject to certain conditions, mining locations under the mining laws of the United States within that portion of the Harney National Forest, designated as a game sanctuary, and for other purposes.

H.R. 3889. An act to amend Veterans Regulation No. 1 (a), parts I and II, as amended, to establish a presumption of service connection for chronic and tropical diseases.

H.R. 4071. An act to amend sections 301 (k) and 304 (a) of the Federal Food, Drug, and Cosmetic Act, as amended.

H. R. 4047. An act for the relief of Edmund Huppler.

H. R. 4516. An act for the relief of the Moore Dry Dock Co., of Oakland, Calif.

H. R. 4962. An act to provide pensions for certain widows of veterans of the Spanish-American War, including the Boxer Rebellion and the Philippine Insurrection.

H. R. 5036. An act to authorize the attendance of the United States Marine Corps Band at the national assembly of the Marine Corps League to be held at Milwaukee, Wis., September 22 to September 25, inclusive, 1948.

H. R. 5275 An act to amend the Tariff Act of 1930 to provide for the free importation of limestone to be used in the manufacture of fertilizers.

H. R. 5936. An act to provide for the addition of certain surplus Government lands to the Chickamauga and Chattanooga National Military Park, in the States of Georgia and Tennessee, and for other purposes.

H. R. 6318. An act to amend section 3 of the Standard Time Act of March 19, 1918, as amended, relating to the placing of a certain portion of the State of Idaho in the third time zone.

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6822. An act to continue the authorization for the appointment of two additional Assistant Secretaries of State.

H. R. 6188. An act to confer jurisdiction over the Fort Des Moines Veterans' Village upon the State of Iowa.

H. R. 6698. An act to authorize the course of instruction at the United States Naval Academy to be given to not exceeding four persons at a time from the Republic of the Philippines.

H. R. 6726. An act to amend the Public Health Service Act to provide for, foster, and aid in coordinating research relating to dental diseases and conditions, and for other purposes.

H. R. 6772. An act making appropriations for the Department of the Navy and the naval service for the fiscal year ending June 30, 1949, and for other purposes.

On June 25, 1948:
H.R. 564. An act for the relief of Sarah Lee Cregg.

H. R. 700. An act for the relief of Anthony Arancio.

H. R. 912. An act for the relief of Hiro Higa and Kana Higa.

H. R. 945. An act relating to the payment of fees, expenses, and costs of jurors.

H. R. 1409. An act for the relief of Frantisek Jiri Pavlik or Georg Pavlik.

H. R. 1642. An act for the relief of Miss Rosella M. Kostenbader.

H. R. 2009. An act for the relief of the estate of Vito Abarno.

H. R. 2193. An act for the relief of Robert E. Graham.

H. R. 2431. An act for the relief of the estate of David Jefferson Janow, deceased.

H. R. 2734. An act for the relief of Joseph M. Henry.

H. R. 2766. An act to amend section 2 of an act entitled, "An act to provide for the establishment of a probation system in the United States courts, except in the District of Columbia," approved March 4, 1925, as amended (18 U. S. C. 725).

H. R. 3190. An act to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

S. J. Res. 219. Joint resolution to continue until March 1, 1949, the authority of the United States Maritime Commission to make provision for certain ocean transportation service to, from, and within Alaska.

On July 2, 1948:

S. 555. An act to provide that the rates of compensation for disabilities incurred in active military or naval service other than in a period of war service shall be equal to 80 percent of the rates payable for similar disabilities incurred during active service in time of war.

S. 1260. An act to create a commission to hear and determine the claims of certain motor carriers.

S. 1683. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State.

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III.

S. 2554. An act to promote the common defense by providing for the retention and maintenance of a national reserve of industrial productive capacity, and for other purposes.

S. 2743. An act providing for the more expeditious determination of certain claims filed by Ute Indians.

S. 2821. An act to provide increases of compensation for certain veterans with service-connected disabilities who have dependents.

On July 3, 1948:

S. 1243. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes.

S. 2217. An act conferring jurisdiction upon the Court of Claims of the United States to hear, determine, and render judgment upon the joint claims of Silas Mason Co., Inc.; Walsh Construction Co.; and Atkinson-Kier Co.

S. 2767. An act to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market of agricultural commodities to meet domestic needs and foreign commitment.

---

The message also announced that the President of the United States had transmitted to the Secretary of the Senate a list of bills of the Senate disapproved, with his reason for such action, as follows:

On July 2, 1948:

ESTATE OF WILLIAM R STIGALL, DECEASED

S. 1717. I have withheld my approval from S. 1717, an act for the relief of the estate of William R. Stigall, deceased.

The purpose of this bill is to compensate the estate of William R. Stigall, deceased, for his death from injuries sustained by him while in the military service.

It appears that on September 5, 1941, Pvt. William R. Stigall, a member of Headquarters Company, First Signal Armored Batallion, Fort Knox, Ky., which was en route from Fort Knox to Camp Polk, La., by Army convoy, was accidentally electrocuted when the antenna of the radio scout car in which he was riding touched a high-tension electric power line. The convoy had halted by the roadside for the noonday meal. The antenna of the radio scout car was released to permit the canvass top of the car to be rolled back, and as the antenna rose into the air it came into contact with a high-tension power line approximately 19 feet above the ground. Private Stigall dismounted from the car, with one hand on the door thereof, and as he stepped on the ground, completing the circuit, the current flowed through his body, causing his death almost instantly. It appears that the power line had not been recognized as such by any member of the military personnel, in view of the fact that it was composed of two light wires suspended comparatively close to the ground.

In view of the fact that at the time of his death Private Stigall was in line of duty as an enlisted man of the Army, any dependents left by him would be entitled to all of the benefits conferred by general law on dependents of members of the armed forces of the United States who die in line of duty. It appears, however, that Private Stigall left no one who was dependent upon him. His service record, under the heading "Government Insurance," bears the notation "No insurance desired." Had he chosen to take advantage of the opportunity afforded him to obtain national service life insurance, he could have been insured in the maximum amount of $10,000, and his beneficiary, or beneficiaries, would have been compensated in that amount for his death. However, his father, Dumont Stigall, received the statutory death gratuity benefit, in an amount equal to the decedent's Army pay for 6 months.

The approval of this bill awarding compensation for the death of Private Stigall would be discriminatory in that it would grant to his estate a special benefit denied to the estates of other members of the armed forces where the facts are similar and to the estates of military and naval personnel who are killed in action. There are no circumstances present in this case that would warrant singling out this estate for preferential treatment. On June 11, 1948, I withheld my approval from a similar bill, S. 252, "An act for the relief of the estate of Lee Jones Cardy." (Congressional Record, vol. 94, p. 8355, June 14, 1948). While deeply regretting the untimely death of Private Stigall, I am obliged to withhold my approval from this bill.

RATES OF PAY FOR CERTAIN VETERANS AFFAIRS FIELD INSTALLATION POSITIONS

S. 2794. I am withholding my approval from S. 2794, an act to authorize the Administrator of Veterans' Affairs to prescribe the rates of pay for certain positions at field installations.

This bill would authorize the Administrator to establish pay scales for some 60,000 field employees of the Veterans' Administration, including hospital attendants, dental mechanics, and others who work in veterans' hospitals. These employees are now paid under the provisions of the Classification Act of 1923.

It is argued that this authority is needed since the Administrator has had difficulty in recruiting and retaining personnel to staff veterans' hospitals. It is estimated that the increase to be given the employees affected by this bill would have been about $80 per year. Since I have just approved a bill increasing salaries for persons covered by the Classification Act by $330 per year, the authority granted by this bill should be unnecessary.

Furthermore, I do not believe that this bill represents a sound approach to the problem of recruiting and retaining Government employees. It would have affected only certain employees of one agency, whereas the same problem confronts many other agencies, and should be dealt with by general legislation. It would have set no standards or limits to guide the Administrator except the single provision that he could not set rates of pay lower than those prescribed by the Classification Act. This would have been a step toward uncoordinated and diverse pay scales for Government employees, when the need is for greater uniformity.

---

The message further announced that the President, on July 3, 1948, had pocket-vetoed the following bill and joint resolution:

S. 1639. An act authorizing the repair and rehabilitation of irrigation works damaged by flood and the prevention of flood damage in the Fort Sumner irrigation district, and for other purposes. (No statement.)

S. J. Res. 84. Joint resolution to provide for the restoration and preservation of the Francis Scott Key Mansion, to establish the Francis Scott Key National Memorial, and for other purposes. (No statement.)

---

MONDAY, JULY 26, 1948

On which day, being the day fixed by the proclamation of the President of the United States, on the 15th day of July 1948 for the meeting of Congress, which proclamation is in the words following, to wit:

PRESIDENT'S PROCLAMATION

Whereas the public interest requires that the Congress of the United States should be convened at 12 o'clock noon, on Monday, the twenty-sixth day of July 1948, to receive such communication as may be made by the Executive:

Now, therefore, I, Harry S. Truman, President of the United States of America, do hereby proclaim and declare that an extraordinary occasion requires the

Congress of the United States to convene at the Capitol in the city of Washington on Monday, the twenty-sixth day of July 1948, at 12 o'clock noon, of which all persons who shall at that time be entitled to act as Members thereof are hereby required to take notice.

In witness whereof I have hereunto set my hand and caused to be affixed the great seal of the United States.

Done at the city of Washington this fifteenth day of July, in the year of our Lord nineteen hundred and forty-eight, and of the independence of the United States of America the one hundred and seventy-third.

  [SEAL]      HARRY S. TRUMAN.

By the President:

    G. C. MARSHALL,

      *Secretary of State.*

In conformity with the foregoing proclamation of the President of the United States, the House of Representatives assembled in its Chamber in the city of Washington.

———

The House was called to order by JOSEPH W. MARTIN, Jr., the Speaker (a Representative from the State of Massachusetts), by whose order the foregoing proclamation was read.

The Journal of the proceedings of Saturday, June 19, 1948, was read and approved.

#### COMMUNICATIONS

Executive and other communications, pursuant to clause 2, rule XXIV, were referred as follows:

1668. A letter from the Under Secretary of Agriculture, transmitting a report on cooperation of the United States with Mexico in the control and eradication of foot-and-mouth disease; to the Committee on Agriculture.

1669. A letter from the Acting Secretary of the Navy, transmitting a report of a proposed transfer of a submarine chaser to the University of North Carolina Institute of Fisheries, State of North Carolina; to the Committee on Armed Services.

1670. A letter from the Acting Secretary of the Navy, transmitting a report of the number of professors and instructors and the amount of compensation for each employed at the United States Naval Postgraduate School; to the Committee on Armed Services.

1671. A letter from the Attorney General, transmitting a copy of a letter from the Secretary of Agriculture advising that he is withdrawing his request for the voluntary plan for the conservation of grain by the brewing industry; to the Committee on Banking and Currency.

1672. A letter from the Acting Attorney General, transmitting copies of the voluntary plan covering the allocation of steel products for the United States Atomic Energy Commission projects; to the Committee on Banking and Currency.

1673. A letter from the Acting Attorney General, transmitting copies of the vol-

untary plan covering the allocation of steel products for warm-air heating equipment for residential housing and copies of the requests for compliance therewith which the Secretary of Commerce has issued to various steel producers and steel consumers; to the Committee on Banking and Currency.

1674. A letter from the Vice Chairman, Reconstruction Finance Corporation, transmitting a report on the Government-owned tin smelter at Texas City, Tex., and the program for purchase and sale of tin metal in the United States; to the Committee on Banking and Currency.

1675. A letter from the Commissioner, Federal Housing Administration, transmitting the Fourteenth Annual Report of the Federal Housing Administration, for the calendar year 1947; to the Committee on Banking and Currency.

1676. A letter from the Attorney General, transmitting a report showing the special assistants employed during the period from January 1, 1948, to June 30, 1948; to the Committee on Expenditures in the Executive Departments.

1677. A letter from the Chairman, Federal Communications Commission, transmitting a recommendation in the form of an amendment to section 4 (g) of the Communications Act; to the Committee on Interstate and Foreign Commerce.

1678. A letter from the Chairman, Federal Trade Commission, transmitting a report entitled "The Merger Movement: A Summary Report"; to the Committee on Interstate and Foreign Commerce.

1679. A letter from the Chairman, Federal Power Commission, transmitting one copy of the report "Production of Electric Energy and Capacity of Generating Plants in the United States" for the year 1946 and one copy of the report "Power Market Survey, Colorado River, Upper Basin, Part 1—Power Requirements"; to the Committee on Interstate and Foreign Commerce.

1680. A letter from the Chairman, Federal Trade Commission, transmitting a report on manufacture and distribution of farm implements; to the Committee on Interstate and Foreign Commerce.

1681. A letter from the Chairman, Federal Trade Commission, transmitting a report on international steel cartels; to the Committee on Interstate and Foreign Commerce.

1682. A letter from the Acting Chairman, Federal Trade Commission, transmitting the report of the Federal Trade Commission entitled "The International Electrical Equipment Cartel"; to the Committee on Interstate and Foreign Commerce.

1683. A letter from the Attorney General, transmitting a request that the case of Angele Charlotte Douthe, nee Rivis, or Simone Rivis, or Simone Douhte, be withdrawn from those now before Congress and returned to the jurisdiction of the Department; to the Committee on the Judiciary.

1684. A letter from the Attorney General, transmitting a request that the case of Viggo John Schmidt be withdrawn from those now before Congress and returned to the jurisdiction of the Department; to the Committee on the Judiciary.

1685. A letter from the Attorney General, transmitting a request that the case of Armando Pinto y Bisquerra be withdrawn from those now before Congress and returned to the jurisdiction of the Department; to the Committee on the Judiciary.

1686. A letter from the Acting Attorney General, transmitting a request that the case of Camilo Crestes Rafael Fanerai y Bertini be withdrawn from those now before the Congress and returned to the jurisdiction of the Department; to the Committee on the Judiciary.

1687. A letter from the Attorney General, transmitting a report reciting the facts and pertinent provisions of law in the cases of 10 individuals whose deportation has been suspended for more than 6 months under the authority vested in the Attorney General; to the Committee on the Judiciary.

1688. A letter from the Secretary, Department of Agriculture, transmitting a report of all claims paid under the Federal Tort Claims Act of August 2, 1946 (Public Law 601, 79th Cong.), for the period July 1, 1947, to the end of the fiscal year June 30, 1948; to the Committee on the Judiciary.

1689. A letter from the Postmaster General, transmitting a draft of a proposed bill for the relief of John I. Malarin, former Army mail clerk at APO 932, a branch of the San Francisco, Calif., post office relative to a shortage in his fixed credit account; to the Committee on the Judiciary.

1690. A letter from the Acting Postmaster General, transmitting a report of claims paid by the Post Office Department under the provisions of the Federal Tort Claims Act during the fiscal year 1947–48; to the Committee on the Judiciary.

1691. A letter from the chairman, United States Maritime Commission, transmitting Report No. 15 of action taken under section 217 of the Merchant Marine Act, 1936, as amended (Public Law 498, 77th Cong.); to the Committee on Merchant Marine and Fisheries.

1692. A letter from the Chairman, United States Maritime Commission, transmitting the quarterly report of the United States Maritime Commission on the activities and transactions of the Commission under the Merchant Ship Sales Act of 1946 from April 1, 1948, through June 30, 1948; to the Committee on Merchant Marine and Fisheries.

1693. A letter from the Assistant Secretary of the Interior, transmitting the Forty-seventh Annual Report of the Governor of Puerto Rico, for the fiscal year ended June 30, 1947; to the Committee on Public Lands.

1694. A letter from the Acting Secretary of the Interior, transmitting one

iaries of Labor; to the Committee on Banking and Currency.

2118. Also, petition of Adam Daniel and others, of New York City, petitioning consideration of their resolution with reference to making such necessary representations to England as will bring about the end of the partition of Ireland; to the Committee on Foreign Affairs.

2119. Also, petition of President Fernando Leon de Vivero, of Peru, petitioning consideration of his resolution with reference to expression of profound condolence of the passing of Gen. John J. Pershing; to the Committee on Foreign Affairs.

2120. Also, petition of Hector J. Campora, President of the House of Deputies, Buenos Aires, Argentina, petitioning consideration of his resolution with reference to notifying the Speaker of the United States House of Representatives that the House of Deputies of Argentina paid hearty homage to the anniversary of the independence of their great brother country the United States; to the Committee on Foreign Affairs.

2121. Also, petition of Kaminskis V. & Ritums H., Esslingen a. N., Germany, United States zone, petitioning consideration of their resolution with reference to a booklet entitled "We Accuse the Eastern Power of Despotism—the Western Ones of Indifference," asking for support in the abolishment of the inhuman terror as is executed by the Communists; to the Committee on Foreign Affairs.

2122. Also, petition of Greek-American Parliamentary Group, of Athens, Greece, petitioning consideration of their resolution with reference to the one hundred and seventy-second anniversary of the Fourth of July; to the Committee on Foreign Affairs.

2123. Also, petition of Leroy Switzer, Illinois State Penitentiary, Menard, Ill., petitioning consideration of his petition for a writ of habeas corpus; to the Committee on the Judiciary.

2124. Also, petition of Nicholas J. Curtis, petitioning consideration of his resolution with reference to a redress of grievance according to the provisions of the decision of the board of review in the case of Nicholas J. Curtis against Phillip Forman, United States district judge, district of New Jersey, and Guy L. Fake, United States district judge, district of New Jersey, Newark, N. J.; to the Committee on the Judiciary.

2125. Also, petition of the Municipal Council of St. Croix, V. I., petitioning consideration of their resolution with reference to the Virgin Island Company, St. Croix, V. I.; to the Committee on Public Lands.

2126. Also, petition of the secretary, Lions International, petitioning consideration of his resolution with reference to favoring statehood for Hawaii; to the Committee on Public Lands.

2127. Also, petition of Manhattan Wallace Committee, New York 16, N. Y.,

petitioning consideration of their resolution with reference to demanding the abolition of the House Un-American Activities Committee; to the Committee on Rules.

2128. Also, petition of the Board of Supervisors of Milwaukee County, Wis., petitioning consideration of their resolution with reference to an amendment to the Wigglesworth bill, H. R. 6829; to the Committee on Veterans' Affairs.

2129. By Mr. EATON: Joint resolution of the Senate and General Assembly of the State of New Jersey, memorializing the Congress of the United States to proceed with all possible dispatch to the preparation and adoption of necessary legislation designed to encourage and make adequately effectual a comprehensive program of merchant shipbuilding in this country's shipyards and expanding our merchant marine; to the Committee on Merchant Marine and Fisheries.

## TUESDAY, JULY 27, 1948

The House was called to order by the Speaker.

The Journal of the proceedings of Monday, July 26, 1948, was read and approved.

### COMMUNICATION

A communication, pursuant to clause 2, rule XXIV, was referred as follows:

1702. A letter from the Chairman, Munitions Board, National Military Establishment, transmitting a report detailing the activities with respect to stock piling between January 1 and June 30, 1948, was taken from the Speaker's table and reefrred to the Committee on Armed Services.

### ADJOURNMENT OVER

On motion of Mr. HALLECK, by unanimous consent,

*Ordered,* That when the House adjourns today it adjourn to meet on Thursday, July 29, 1948.

### CORRECTION OF RECORD—ROLL CALL NO. 127

On motion of Mr. RANKIN, by unanimous consent,

*Ordered,* That roll call No. 127, as printed in the Congressional Record of Monday, July 26, 1948, be corrected to show the names of the Members present and answering to their names.

### RECESS

At 12 o'clock and 4 minutes p. m. the House stood in recess, subject to the call of the Chair.

### AFTER RECESS 12:18

The SPEAKER called the House to order.

### MESSAGE FROM THE SENATE

A message from the Senate, by Mr. Carrell, one of its clerks, announced that the Senate had passed without amendment a concurrent resolution of the House of the following title:

H Con Res. 220. Concurrent resolution providing for a joint session of Congress on July 27, 1948.

### JOINT SESSION TO RECEIVE THE PRESIDENT'S MESSAGE

The Doorkeeper announced the President pro tempore and Members of the Senate, who entered the Hall of the House and took seats assigned them.

Whereupon, pursuant to House Concurrent Resolution 220, the Speaker called the joint session of the two Houses to order.

The SPEAKER appointed Mr. HALLECK, Mr ALLEN of Illinois, and Mr. McCORMACK members on the part of the House of the committee to escort the President into the Hall of the House.

The PRESIDENT pro tempore of the Senate appointed Mr. WHERRY, Mr. MILLIKIN, and Mr. BARKLEY members on the part of the Senate of the committee to escort the President into the Hall of the House.

The Doorkeeper announced ambassadors, ministers and chargés d'affaires of foreign governments, who entered the Hall of the House and took seats assigned them.

The Doorkeeper announced the members of the President's Cabinet, who entered the Hall of the House and took seats assigned them.

The President of the United States, at 12:30 p. m., escorted by the committee on the part of both Houses, entered the Hall of the House and, at the Clerk's desk, delivered the following message:

Mr. President, Mr. Speaker, Members of the Eightieth Congress, the urgent needs of the American people require our presence here today.

Our people demand legislative action by their Government to do two things: First, to check inflation and the rising cost of living; and, second, to help in meeting the acute housing shortage.

These are matters which affect every American family. They also affect the entire world, for world peace depends upon the strength of our economy.

The Communists, both here and abroad, are counting on our present prosperity turning into a depression. They do not believe that we can—or will—put the brake on high prices. They are counting on economic collapse in this country.

If we should bring on another great depression in the United States by failing to control high prices, the world's hope for lasting peace would vanish. A depression in the United States would cut the ground from under the free nations of Europe. Economic collapse in this country would prevent the recovery throughout the world which is essential to lasting peace. We would have only ourselves to blame for the tragedy that would follow.

In these tense days, when our strength is being tested all over the world, it would be reckless folly if we failed to act against inflation.

# NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, der the seal of the National Archives of the United States, that the attached reproduction(s) is a true and t copy of documents in his custody.

| SIGNATURE | |
|---|---|
| *R J H Ut* | |
| NAME | DATE |
| Richard H. Hunt | 05/11/07 |
| TITLE Director | |
| Center for Legislative Archives | |
| NAME AND ADDRESS OF DEPOSITORY | |
| The National Archives<br>Washington, D.C. 20408 | |

NA FORM APR 85 1407-A

# JOURNAL OF THE SENATE

OF THE

# UNITED STATES OF AMERICA

———

## SECOND SESSION

OF THE

## EIGHTIETH CONGRESS

BEGUN AND HELD AT THE CITY OF WASHINGTON
JANUARY 6, 1948, IN THE ONE HUNDRED
AND SEVENTY-SECOND YEAR OF THE
INDEPENDENCE OF THE
UNITED STATES



UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1949

# JOURNAL OF THE SENATE OF THE UNITED STATES OF AMERICA

Eightieth Congress, Second Session  :  :  :  Beginning January 6, 1948

The SECOND SESSION of the EIGHTIETH CONGRESS commenced this day, conformably to the joint resolution fixing the date of meeting of the second regular session of the Eightieth Congress, approved August 4, 1947, and the Senate met in its Chamber at the city of Washington.

## TUESDAY, JANUARY 6, 1948

The Honorable ARTHUR H. VANDENBERG, President pro tempore of the Senate, called the Senate to order, and the Chaplain, Rev. Peter Marshall, D. D., offered prayer.

### QUESTION OF QUORUM

Mr. WHERRY raised a question as to the presence of a quorum;

Whereupon

The PRESIDENT pro tempore directed the roll to be called;

When

Sixty-eight Senators answered to their names, as follows:

*From the State of Alabama:*
    Messrs. LISTER HILL and JOHN J. SPARKMAN.
*From the State of Arizona:*
    Messrs. CARL HAYDEN and ERNEST W. McFARLAND.
*From the State of Arkansas:*
    Mr. JOHN L. McCLELLAN.
*From the State of California:*
    Mr. WILLIAM F. KNOWLAND.
*From the State of Colorado:*
    Messrs. EDWIN C. JOHNSON and EUGENE D. MILLIKIN.
*From the State of Connecticut:*
    Mr. RAYMOND E. BALDWIN.
*From the State of Delaware:*
    Messrs. CLAYTON DOUGLASS BUCK and JOHN J. WILLIAMS.
*From the State of Florida:*
    Mr. SPESSARD L. HOLLAND.
*From the State of Georgia:*
    Messrs. WALTER F. GEORGE and RICHARD B. RUSSELL.
*From the State of Idaho:*
    Messrs. GLEN H. TAYLOR and HENRY DWORSHAK.
*From the State of Illinois:*
    Mr. SCOTT W. LUCAS.
*From the State of Indiana:*
    Mr. WILLIAM E. JENNER.
*From the State of Iowa:*
    Messrs. GEORGE A. WILSON and BOURKE B. HICKENLOOPER.
*From the State of Kansas:*
    Messrs. ARTHUR CAPPER and CLYDE M. REED.
*From the State of Kentucky:*
    Mr. ALBEN W. BARKLEY.

*From the State of Maine:*
    Mr. OWEN BREWSTER.
*From the State of Maryland:*
    Messrs. MILLARD E. TYDINGS and HERBERT R. O'CONOR.
*From the State of Massachusetts:*
    Messrs. LEVERETT SALTONSTALL and HENRY CABOT LODGE, Jr.
*From the State of Michigan:*
    Messrs. ARTHUR H. VANDENBERG and HOMER FERGUSON.
*From the State of Minnesota:*
    Messrs. JOSEPH H. BALL and EDWARD J. THYE.
*From the State of Mississippi:*
    Mr. JOHN C. STENNIS.
*From the State of Missouri:*
    Mr. FORREST C. DONNELL.
*From the State of Montana:*
    Messrs. JAMES E. MURRAY and ZALES N. ECTON.
*From the State of Nebraska:*
    Mr. KENNETH S. WHERRY.
*From the State of Nevada:*
    Mr. PAT McCARRAN.
*From the State of New Hampshire:*
    Mr. CHARLES W. TOBEY.
*From the State of New Mexico:*
    Messrs. CARL A. HATCH and DENNIS CHAVEZ.
*From the State of New York:*
    Mr. IRVING M. IVES.
*From the State of North Carolina:*
    Messrs. CLYDE R. HOEY and WILLIAM B. UMSTEAD.
*From the State of North Dakota:*
    Messrs. WILLIAM LANGER and MILTON R. YOUNG.
*From the State of Ohio:*
    Messrs. ROBERT A. TAFT and JOHN W. BRICKER.
*From the State of Oklahoma:*
    Messrs. ELMER THOMAS and E. H. MOORE.
*From the State of Pennsylvania:*
    Mr. EDWARD MARTIN.
*From the State of Rhode Island:*
    Mr. THEODORE FRANCIS GREEN.
*From the State of South Carolina:*
    Mr. OLIN D. JOHNSTON.
*From the State of South Dakota:*
    Messrs. CHAN GURNEY and HARLAN J. BUSHFIELD.

*From the State of Tennessee:*
    Messrs. KENNETH McKELLAR and TOM STEWART.
*From the State of Texas:*
    Messrs. TOM CONNALLY and W. LEE O'DANIEL.
*From the State of Utah:*
    Messrs. ELBERT D. THOMAS and ARTHUR V. WATKINS.
*From the State of Vermont:*
    Messrs. GEORGE D. AIKEN and RALPH E. FLANDERS.
*From the State of Virginia:*
    Mr. A. WILLIS ROBERTSON.
*From the State of Washington:*
    Mr. HARRY P. CAIN.
*From the State of West Virginia:*
    Mr. CHAPMAN REVERCOMB.
*From the State of Wisconsin:*
    Mr. ALEXANDER WILEY.
*From the State of Wyoming:*
    Mr. EDWARD V. ROBERTSON.

### NOTIFICATION TO THE PRESIDENT

Mr. WHERRY submitted the following resolution (S. Res. 182), which was considered by unanimous consent and agreed to:

*Resolved,* That a committee consisting of two Senators be appointed to join such committee as may be appointed by the House of Representatives to wait upon the President of the United States and inform him that a quorum of each House is assembled and that the Congress is ready to receive any communication he may be pleased to make.

The PRESIDENT pro tempore appointed Mr. WHERRY and Mr. BARKLEY as the members of the committee on the part of the Senate.

### NOTIFICATION TO THE HOUSE

Mr. BARKLEY submitted the following resolution (S. Res. 183), which was considered by unanimous consent and agreed to:

*Resolved,* That the Secretary inform the House of Representatives that a quorum of the Senate is assembled and that the Senate is ready to proceed to business.

### HOUR OF DAILY MEETING

Mr. WHERRY submitted " ing resolution (S. Res. 184)

### PETITIONS AND MEMORIALS

The PRESIDENT pro tempore laid before the Senate the following petitions, etc., which were referred as indicated:

A resolution of the Maryland State and District of Columbia Federation of Labor, Washington, D. C., remonstrating against the passage of any bill to control subversive and un-American activities;

A memorial of sundry citizens of the Sixth Congressional District, State of Washington, remonstrating against the passage of legislation to control subversive and un-American activities; and

A petition of Laura B. Prisk, National Flag Day Association, New York, N. Y., praying the enactment of legislation to make June 14 a legal national holiday; to the Committee on the Judiciary.

The PRESIDENT pro tempore laid before the Senate a petition of the chairman of the municipal committee of St. Croix, V. I., praying the enactment of legislation to continue the Virgin Islands Company; which was ordered to lie on the table.

### REPORTS OF COMMITTEES

Mr. BUTLER, by unanimous consent, from the Committee on Interior and Insular Affairs, to whom was referred the bill (H. R. 6090) authorizing the Secretary of the Interior to issue patents for lands held under color of title, reported it without amendment and submitted a report (No. 1618) thereon.

Mr. BUTLER, by unanimous consent, from the Committee on Interior and Insular Affairs, to whom was referred the bill (S. 2080) to provide for the establishment of the Philadelphia National Historical Park, and for other purposes, reported it with amendments and submitted a report (No. 1622) thereon.

Mr. COOPER, by unanimous consent, from the Committee on the Judiciary, to whom was referred the bill (S. 2764) to amend the Trading With the Enemy Act, reported it without amendment and submitted a report (No. 1619) thereon.

Mr. SALTONSTALL, by unanimous consent, from the Committee on Appropriations, to whom was referred the bill (H. R. 6772) making appropriations for the Department of the Navy and the naval service for the fiscal year ending June 30, 1949, and for other purposes, reported it with amendments and submitted a report (No. 1621) thereon.

Mr. BYRD, by unanimous consent, from the Committee on Armed Services, to whom was referred the bill (S. 2698) to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institute, a State institution, reported it with amendments and submitted a report (No. 1624) thereon.

Mr. WILEY, by unanimous consent, from the Committee on the Judiciary, to whom was referred the bill (H. R. 6412) to codify and enact into law title 3 of the United States Code, entitled "The President," reported it without amendment and submitted a report (No. 1623) thereon.

Mr. WILEY, by unanimous consent, from the Committee on the Judiciary, to whom was referred the bill (H. R. 3190) to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure," reported it with amendments and submitted a report (No. 1620) thereon.

Mr. AIKEN, by unanimous consent, from the Committees on Expenditures in the Executive Departments, submitted a report (No. 1617) on survey of space leased by the Federal Government; which was ordered to be printed.

Mr. FERGUSON, by unanimous consent, from the Committee on the Judiciary, submitted a report (No. 1625) accompanied by a bill (S. 2860) to provide for the better assurance of the protection of persons within the several States from lynching, and for other purposes; which was read the first and second times by unanimous consent and placed on the calendar.

### INTRODUCTION OF BILLS

Bills were introduced by unanimous consent, severally read the first and second time, and referred as follows:

By Mr. CAIN:

S. 2858. A bill to establish a reclamation project fund; to provide for an orderly rate of construction of self-liquidating reclamation and irrigation projects; to provide for the issuance of revenue bonds to finance the cost of constructing, operating, and maintaining the self-liquidating portions of certain reclamation and irrigation projects; and for other purposes; to the Committee on Finance.

By Mr. BALDWIN:

S. 2859. A bill for the relief of Isiah Johnson; to the Committee on the Judiciary.

By Mr. TAFT:

S. 2861. A bill to assist by grants-in-aid the Republic of the Philippines in providing medical care and treatment for certain veterans; to the Committee on Labor and Public Welfare.

By Mr. JOHNSON of Colorado:

S. 2862. A bill to remove the restrictions upon the acquisition, possession, and ownership of gold, and to permit the sale of gold within the United States, its Territories, and possessions, including Alaska, and for other purposes; to the Committee on Banking and Currency.

### COMMITTEE AUTHORIZED TO SIT DURING THE SESSION OF THE SENATE

The Committee on Public Works was authorized to sit during the session of the Senate on today, on the request of Mr. WHERRY.

### EXTENSION OF RECIPROCAL TRADE AGREEMENTS ACT

The Senate resumed the consideration of the bill (H. R. 6556) to extend the authority of the President under section 350 of the Tariff Act of 1939, as amended, and for other purposes.

On motion by Mr. GEORGE, and by unanimous consent,

*Ordered,* That Mr. Barkley control the time for debate on the part of the opponents of the bill.

Mr. WHERRY raised a question as to the presence of a quorum;

Whereupon

The PRESIDENT pro tempore directed the roll to be called;

When

Ninety Senators answered to their names, as follows:

| | | |
|---|---|---|
| Aiken | Gurney | Myers |
| Baldwin | Hatch | O'Conor |
| Ball | Hawkes | O'Daniel |
| Barkley | Hayden | O'Mahoney |
| Brewster | Hickenlooper | Pepper |
| Bricker | Hill | Reed |
| Bridges | Hoey | Revercomb |
| Brooks | Holland | Robertson, Va. |
| Buck | Ives | Robertson, Wyo. |
| Butler | Jenner | Russell |
| Byrd | Johnson, Colo. | Saltonstall |
| Cain | Johnston, S. C. | Smith |
| Capehart | Kem | Sparkman |
| Capper | Kilgore | Stennis |
| Chavez | Knowland | Stewart |
| Connally | Langer | Taft |
| Cooper | Lodge | Taylor |
| Gordon | Lucas | Thomas, Okla. |
| Donnell | McCarthy | Thye |
| Downey | McClellan | Tobey |
| Dworshak | McFarland | Tydings |
| Eastland | McGrath | Umstead |
| Ecton | McKellar | Vandenberg |
| Ellender | McMahon | Watkins |
| Feazel | Magnuson | Wherry |
| Ferguson | Malone | White |
| Flanders | Martin | Wiley |
| Fulbright | Millikin | Williams |
| George | Morse | Wilson |
| Green | Murray | Young |

A quorum being present,

Pending debate,

Mr. HATCH raised a question as to the presence of a quorum;

Whereupon

The PRESIDING OFFICER (Mr. ECTON in the chair) directed the roll to be called;

When

Ninety Senators answered to their names, as follows:

| | | |
|---|---|---|
| Aiken | Gurney | Myers |
| Baldwin | Hatch | O'Conor |
| Ball | Hawkes | O'Daniel |
| Barkley | Hayden | O'Mahoney |
| Brewster | Hickenlooper | Pepper |
| Bricker | Hill | Reed |
| Bridges | Hoey | Revercomb |
| Brooks | Holland | Robertson, Va. |
| Buck | Ives | Robertson, Wyo. |
| Butler | Jenner | Russell |
| Byrd | Johnson, Colo. | Saltonstall |
| Cain | Johnston, S. C. | Smith |
| Capehart | Kem | Sparkman |
| Capper | Kilgore | Stennis |
| Chavez | Knowland | Stewart |
| Connally | Langer | Taft |
| Cooper | Lodge | Taylor |
| Gordon | Lucas | Thomas, Okla. |
| Donnell | McCarthy | Thye |
| Downey | McClellan | Tobey |
| Dworshak | McFarland | Tydings |
| Eastland | McGrath | Umstead |
| Ecton | McKellar | Vandenberg |
| Ellender | McMahon | Watkins |
| Feazel | Magnuson | Wherry |
| Ferguson | Malone | White |
| Flanders | Martin | Wiley |
| Fulbright | Millikin | Williams |
| George | Morse | Wilson |
| Green | Murray | Young |

A quorum being present,

Pending debate,

Mr. WHERRY raised a question as to the presence of a quorum;

Whereupon

The PRESIDING OFFICER (Mr. BALD-WIN in the chair) directed the roll to be called;

When

Seventy-seven Senators answered to their names, as follows:

| | | |
|---|---|---|
| Aiken | Hayden | O'Daniel |
| Baldwin | Hickenlooper | O'Mahoney |
| Ball | Hill | Pepper |
| Barkley | Hoey | Robertson, Va. |
| Bricker | Holland | Robertson, Wyo. |
| Bridges | Jenner | Russell |
| Buck | Johnson, Colo. | Saltonstall |
| Butler | Johnston, S. C. | Smith |
| Byrd | Kem | Sparkman |
| Capehart | Kilgore | Stennis |
| Connally | Knowland | Stewart |
| Cooper | Langer | Taft |
| Cordon | Lodge | Taylor |
| Donnell | Lucas | Thomas, Okla. |
| Downey | McCarthy | Thye |
| Dworshak | McClellan | Tydings |
| Eastland | McFarland | Umstead |
| Ecton | McGrath | Vandenberg |
| Ellender | McKellar | Watkins |
| Feazel | McMahon | Wherry |
| Ferguson | Magnuson | White |
| Fulbright | Martin | Wiley |
| Green | Millikin | Williams |
| Gurney | Morse | Wilson |
| Hatch | Myers | Young |
| Hawkes | O'Conor | |

A quorum being present,

The question being taken, Shall the bill pass, the objections of the President of the United States to the contrary notwithstanding?

It was determined in ⎰Yeas_____ 65
the affirmative_____⎱Nays_____ 12

The Senators who voted in the affirmative are—

| | | |
|---|---|---|
| Aiken | Hayden | Robertson, Va. |
| Baldwin | Hickenlooper | Robertson, Wyo. |
| Ball | Hill | Russell |
| Bricker | Hoey | Saltonstall |
| Bridges | Holland | Smith |
| Buck | Jenner | Sparkman |
| Butler | Johnson, Colo. | Stennis |
| Capehart | Johnston, S. C. | Stewart |
| Connally | Kem | Taft |
| Cooper | Kilgore | Thomas, Okla. |
| Cordon | Knowland | Thye |
| Donnell | Lodge | Tydings |
| Downey | McCarthy | Umstead |
| Dworshak | McClellan | Vandenberg |
| Eastland | McFarland | Watkins |
| Ecton | McKellar | Wherry |
| Ellender | Magnuson | White |
| Feazel | Martin | Wiley |
| Ferguson | Millikin | Williams |
| Fulbright | Myers | Wilson |
| Gurney | O'Conor | Young |
| Hawkes | O'Daniel | |

Senators who voted in the negative are—

| | | |
|---|---|---|
| Barkley | Langer | Morse |
| Byrd | Lucas | O'Mahoney |
| Green | McGrath | Pepper |
| Hatch | McMahon | Taylor |

So it was

*Resolved,* That the bill do pass, two-thirds of the Senators present having voted in the affirmative.

*Ordered,* That the Secretary notify the House of Representatives thereof.

The PRESIDENT pro tempore announced the time of the passage of the said bill to be 7 o'clock and 19 minutes p. m.

AUTHORITY TO REPORT H. R. 6801

On motion by Mr. WHERRY, and by unanimous consent,

*Ordered,* That the Committee on Appropriations be authorized to report, dur-ing the adjournment of the Senate following today's session, the bill (H. R. 6801) making appropriations for foreign aid for the period beginning April 3, 1948, and ending June 30, 1949, and for other purposes.

INTERIOR DEPARTMENT APPROPRIATIONS

The Senate resumed the consideration of the bill (H. R. 6705) making appropriations for the Department of the Interior for the fiscal year ending June 30, 1949, and for other purposes.

The reported amendments, in part, were agreed to, in part amended, and, as amended, agreed to, and the bill further amended on the motion of Mr. O'MAHONEY, on behalf of the Committee on Appropriations.

*Ordered,* That the amendments be engrossed and the bill read a third time.

The said bill, as amended, was read the third time.

*Resolved,* That it pass.

On motion by Mr. WHERRY,

*Resolved,* That the Senate insist upon its amendments to the said bill and ask a conference with the House of Representatives thereon.

*Ordered,* That the conferees on the part of the Senate be appointed by the Presiding Officer; and

The PRESIDING OFFICER (Mr. BALD-WIN in the chair) appointed Mr. WHERRY, Mr. GURNEY, Mr. BALL, Mr. CORDON, Mr. HAYDEN, Mr. THOMAS of Oklahoma, and Mr. O'MAHONEY.

*Ordered,* That the Secretary notify the House of Representatives thereof.

MESSAGE FROM THE HOUSE

A message from the House of Representatives, by Mr. Maurer, one of its clerks:

*Mr. President:* The House of Representatives has passed without amendment the joint resolution (S. J. Res. 203) providing for the ratification by Congress of a contract for the purchase of certain lands and mineral deposits by the United States from the Choctaw and Chickasaw Nations of Indians.

The House has passed the bill (S. 2821) to provide increases of compensation for certain veterans with service-connected disabilities who have dependents, with amendments, in which it requests the concurrence of the Senate.

The House has agreed to the amendments of the Senate to the bill (H. R. 2744) to provide for the elimination of Regular Army and Regular Air Force officers and for the retirement of officers, warrant officers, and enlisted men of the Regular Army and the Regular Air Force, and to provide retirement benefits for members of the Reserve components of the Army of the United States, the Air Force of the United States, United States Navy and Marine Corps, and Coast Guard.

The House has agreed to the amendment of the Senate to the bill (H. R. 6028) to authorize appropriations for the Bureau of Reclamation for payments to school districts on certain projects during their construction status.

The House has passed the following joint resolutions, in which it requests the concurrence of the Senate:

H. J. Res. 412. Joint resolution to amend the Merchant Marine Act, 1936, as amended, to strengthen the American merchant marine, to encourage investment in the American merchant marine to build more ships, and to remove inequities; and

H. J. Res. 413. Joint resolution to amend the Merchant Marine Act, 1936, as amended, to further promote the development and maintenance of the American merchant marine, and for other purposes.

JOINT RESOLUTIONS REFERRED

The joint resolutions H. J. Res. 412 and H. J. Res. 413, this day received from the House of Representatives for concurrence, were read the first and second times by unanimous consent and referred to the Committee on Interstate and Foreign Commerce.

ENROLLED BILL PRESENTED

The Secretary reported that on today he presented to the President of the United States the enrolled bill (S. 1675) to authorize the Secretary of the Navy to proceed with the construction of certain public works, and for other purposes.

APPROPRIATIONS FOR GOVERNMENT CORPORATIONS AND INDEPENDENT EXECUTIVE AGENCIES

On motion by Mr. FERGUSON, and by unanimous consent,

The Senate proceeded to consider the bill (H. R. 6481) making appropriations for Government corporations and independent executive agencies for the fiscal year ending June 30, 1949, and for other purposes.

Pending debate,

EXECUTIVE BUSINESS

During legislative session, certain executive business was transacted by unanimous consent, as in executive session.

ADJOURNMENT

On motion by Mr. WHERRY, at 10 o'clock and 8 minutes p. m.,

The Senate adjourned until 11 o'clock a. m. tomorrow.

TUESDAY, JUNE 15, 1948

The PRESIDENT pro tempore called the Senate to order at 11 o'clock a. m., and Rev. Bernard Braskamp, D. D., of Washington, D. C., offered prayer.

THE JOURNAL

Mr. WHERRY submitted a request that the Journal of the proceedings of yesterday be approved without reading, to which Mr. RUSSELL objected.

On motion by Mr. TAFT, and by unanimous consent,

*Ordered,* That the calendar be called under the rule applicable to Calendar Monday, and that at 1 o'clock p. m., the

Senate resume the consideration of its unfinished business, viz, the bill (S. 2318) to provide for a coordinated agricultural program.

The Journal of the proceedings of yesterday was then approved.

### MESSAGE FROM THE HOUSE

A message from the House of Representatives, by Mr. Chaffee, one of its clerks:

*Mr. President:* The House of Representatives has passed the bill (S. 418) to provide for water-pollution-control activities in the United States Public Health Service of the Federal Security Agency and the Federal Works Agency, and for other purposes, with an amendment, in which it requests the concurrence of the Senate.

The House has passed the joint resolution (S. J Res. 117) providing for acceptance by the United States of America of the Constitution of the International Labor Organization Instrument of Amendment, and further authorizing an appropriation for payment of the United States share of the expenses of membership and for expenses of participation by the United States, with an amendment, in which it requests the concurrence of the Senate.

The House has agreed to the concurrent resolution (S. Con. Res. 56) welcoming the Inter-American Bar Association to the United States for its conference in Detroit, Mich., in May 1949.

The House has passed the following bills, in which it requests the concurrence of the Senate:

H. R. **4462.** An act authorizing the conveyance of certain lands in Park County, Wyo., to the State of Wyoming;

H. R. 5053. An act to provide for the establishment of the Independence National Historical Park, and for other purposes;

H. R. 6247. An act to provide for the air security and defense of the United States, to establish the composition of the Air Force, and for other purposes; and

H. R. 6411 An act to provide for the issuance of a special postage stamp in furtherance of national safety against traffic and other accident hazards.

The Speaker having signed an enrolled bill, viz, S. 2642, and an enrolled joint resolution, viz, S. J. Res. 84, I am directed to bring the same to the Senate for the signature of its President.

### ENROLLED BILLS AND JOINT RESOLUTION SIGNED

The Secretary reported that he had examined and found truly enrolled the following bill and joint resolution:

S. 2642. An act to amend the District of Columbia Motor Vehicle Parking Facility Act of 1942, approved February 16, 1942; and

S. J Res 84 Joint resolution to provide for the restoration and preservation of the Francis Scott Key National Memorial, and for other purposes.

The PRESIDENT pro tempore thereupon signed the same.

### HOUSE BILLS REFERRED

The bills this day received from the House of Representatives were severally read the first and second times by unanimous consent.

*Ordered,* That the bill H. R. 6247 be referred to the Committee on Armed Services;

That the bill H. R. 6411 be referred to the Committee on Post Office and Civil Service; and

That the bills H. R. 4462 and H. R. 5053 be placed on the calendar.

### INCREASE IN PRODUCTION AND PROCUREMENT OF COPRA AND PALM OIL IN NETHERLANDS INDIES

The PRESIDENT pro tempore laid before the Senate a communication from the Secretary of Agriculture, transmitting, pursuant to law, a proposed agreement between the Netherlands Indies Government and the United States to stimulate and increase the production and procurement of copra and palm oil in the Netherlands Indies; which, with the accompanying paper, was referred to the Committee on Banking and Currency.

### USELESS PAPERS IN DEPARTMENTS AND AGENCIES

The PRESIDENT pro tempore laid before the Senate a communication from the Archivist of the United States, transmitting, pursuant to law, a list of records of various departments and agencies of the Government recommended for disposition, which appear to have no permanent value or historical interest; which, with the accompanying papers, was referred to the Joint Select Committee on the Disposition of Papers in the Executive Departments; and

The PRESIDENT pro tempore appointed Mr. Langer and Mr. McKellar as members of the committee on the part of the Senate.

*Ordered,* That the Secretary notify the House of Representatives thereof.

### PETITION AND MEMORIAL

The PRESIDENT pro tempore laid before the Senate a memorial of members of the Department Store Union, CIO, Local 3, of New York State, remonstrating against the enactment of legislation against subversive and un-American activities; which was referred to the Committee on the Judiciary.

Mr. BUTLER presented a resolution adopted by the Farwell, Nebr., irrigation district, favoring the enactment of legislation to bring about early construction and completion of the irrigation work in that district; which was referred to the Committee on Interior and Insular Affairs.

### REPORTS OF COMMITTEES

Under the authority of the order of yesterday, Mr. BRIDGES, from the Committee on Appropriations, to whom was referred the bill (H. R. 6801) making ap-

propriations for foreign aid for the period beginning April 3, 1948, and ending June 30, 1949, and for other purposes, reported it on yesterday, with amendments, and submitted a report (No. 1626) thereon.

Mr. WILEY, from the Committee on the Judiciary, to whom were referred the following bills, reported them each without amendment and submitted reports thereon, as follows:

S. 617. A bill for the relief of Richard T. Charrett (Rept. No. 1688);

S. 1872. A bill for the relief of Jose Babace (Rept. No. 1631);

S. 2050. A bill for the relief of Gracy Mariluch (Rept. No. 1633);

S. 2054. A bill for the relief of Engebert Axer (Rept. No. 1634);

S. 2075. A bill for the relief of Wisia Paryzenberg (Rept. No. 1635);

S. 2235. A bill for the relief of Milo Jurisevic, Mrs. Jelena Jurisevic, Svetozar Jurisevic, and Radmila Jurisevic (Rept. No. 1636);

S. 2360. A bill for the relief of Dr. Chung Kwai Lui (Rept. No. 1637);

H. R. 333. An act for the relief of sundry residents of Alaska, veterans of World War II (Rept. No. 1649);

H. R. 371. An act for the relief of Jenness C. Thomas (Rept. No. 1658);

H. R. 564. An act for the relief of Sarah Lee Cregg (Rept. No. 1659);

H. R. 700. An act for the relief of Anthony Arancio (Reprt. No. 1650);

H. R. 851. An act for the relief of Adney W. Gray (Rept. No. 1690);

H. R. 911. An act for the relief of Kam Fong Chun, Mr. and Mrs. Jose Dias, Joseph De Souza, Mr. and Mrs. Kenneth Ayres, and Jose Oducado (Rept. No. 1651);

H. R. 912. An act for the relief of Hiro Higa and Kana Higa (Rept. No. 1652);

H. R. 1220. An act for the relief of James D. Sigler and Frederick P. Vogelsand III (Rept. No. 1691);

H. R. 1409. An act for the relief of Frantisek Jiri Pavlik or Georg Pavlik (Rept. No. 1638);

H. R. 1642. An act for the relief of Miss Rosella M. Kostenbader (Rept. No. 1660);

H. R. 1779. An act for the relief of the Winona Machine & Foundry Co., a corporation of Winona, Minn. (Rept. No. 1692);

H. R. 1910. An act for the relief of the legal guardian of Robert Lee Threatt, a minor (Rept. No. 1693);

H. R. 1930. An act for the relief of the Growers Fertilizer Co., a Florida corporation (Rept. No. 1642);

H. R. 2269. An act for the relief of Frank A. Constable (Rept. No. 1694);

H. R. 2372. An act for the relief of George Cleve Williams (Rept. No. 1643);

H. R. 2431. An act for the relief of the estate of David Jefferson Janow, deceased (Rept. No. 1695);

H R. 2489. An act for the relief of James W. Adkins and Mary Clark Adkins (Rept. No. 1654);

The said bill, as amended, was read the third time.

*Resolved,* That it pass.

On motion by Mr. CAIN,

*Resolved,* That the Senate insist upon its amendment to the said bill and ask a conference with the House of Representatives thereon.

*Ordered,* That the conferees on the part of the Senate be appointed by the President pro tempore; and

The PRES'DENT pro tempore appointed Mr. CAIN, Mr. BUCK, and Mr. FULBRIGHT.

*Ordered,* That the Secretary notify the House of Representatives thereof.

*Ordered,* by unanimous consent, That the bill (S. 2736) to amend the act entitled "An act to expedite the provision of housing in connection with national defense, and for other purposes," approved October 14, 1940, as amended, and for other purposes, be postponed indefinitely.

The Senate proceeded to consider the following bills; and the reported amendments were agreed to:

H. R. 5882. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes;

H. R. 6116. An act to amend the Trading With the Enemy Act;

H. R. 3190. An act to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure";

H. R. 2729. An act for the relief of the legal guardian of Rose Mary Ammirato, a minor; and

H. R. 2009. An act for the relief of the estate of Vito Abarno.

*Ordered,* That the amendments be engrossed and the bills read a third time.

The said bills, as amended, were severally read the third time.

*Resolved,* That they pass.

*Ordered,* That the Secretary request the concurrence of the House of Representatives in the amendments.

The bill (S. 2820) to authorize the Administrator of Veterans' Affairs to convey to the city of Cheyenne, Wyo., for public park and golf course purposes, certain land situated within the boundaries of the Veterans' Administration center at Cheyenne, Wyo., having been reached,

On motion by Mr. MILLIKIN, and by unanimous consent,

The Committee on Finance was discharged from the further consideration of the bill (H. R. 5734) to authorize the Administrator of Veterans' Affairs to convey to the city of Cheyenne, Wyo., for public-park and golf-course purposes, certain land situation within the boundaries of the Veterans' Administration center at Cheyenne, Wyo.

The Senate proceeded, by unanimous consent, to consider the said bill; and having been amended on the motion of Mr. MORSE,

*Ordered,* That the amendment be engrossed and the bill read a third time.

The said bill, as amended, was read the third time.

*Resolved,* That it pass.

*Ordered,* That the Secretary request the concurrence of the House of Representatives in the amendment.

*Ordered,* by unanimous consent, That the bill S. 2820 be postponed indefinitely.

The Senate proceeded to consider the bill (H. R. 2352) to provide for sale to the Crow Tribe of interests in the estates of deceased Crow Indian allottees; and the reported amendment having been agreed to,

*Ordered,* That the amendment be engrossed and the bill read a third time.

The said bill, as amended, was read the third time.

*Resolved,* That it pass, and that the title thereof be amended, as reported by the committee, to read: "An act to provide for sale to the Crow Tribe of interests in the estates of deceased Crow Indian allottees, and to provide for the sale of certain lands to the Board of County Commissioners of Comanche County, Okla., and for other purposes."

*Ordered,* That the Secretary request the concurrence of the House of Representatives in the amendments.

The Senate proceeded to consider the following bills; and the reported amendments were agreed to:

S. 2551. A bill authorizing the Secretary of the Interior to issue a patent in fee to Mrs. Pearl Scott Loukes;

S. 1973. A bill for the relief of certain Basque aliens; and

S. 2861. A bill to assist by grants-in-aid the Republic of the Philippines in providing medical care and treatment for certain veterans.

*Ordered,* That the bills be engrossed and read a third time.

The said bills were severally read the third time.

*Resolved,* That they pass, and that the respective titles thereof be as aforesaid.

*Ordered,* That the Secretary request the concurrence of the House of Representatives therein.

The Senate proceeded to consider the bill (S. 2764) to amend the Trading With the Enemy Act; and having been amended on the motion of Mr. COOPER,

*Ordered,* That the bill be engrossed and read a third time.

The said bill was read the third time.

*Resolved,* That it pass, and that the title thereof be as aforesaid.

*Ordered,* That the Secretary request the concurrence of the House of Representatives therein.

The bill (S. 2080) to provide for the establishment of the Philadelphia National Historical Park, and for other purposes, having been reached,

The Senate proceeded, by unanimous consent, to consider the bill (H. R. 5053) to provide for the establishment of the Independence National Historical Park, and for other purposes; and no amendment being made,

*Ordered,* That it pass to a third reading.

The said bill was read the third time.

*Resolved,* That it pass

*Ordered,* That the Secretary notify the House of Representatives thereof.

*Ordered,* by unanimous consent, That the bill S. 2080 be postponed indefinitely.

The Senate proceeded to consider the bill (S. 2698) to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institute, a State institution; and the reported amendments having been agreed to,

*Ordered,* That the bill be engrossed and read a third time.

The said bill was read the third time.

*Resolved,* That it pass, and that the title thereof be amended, as reported by the committee, to read: "A bill to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institute, a State institution, and for other purposes."

*Ordered,* That the Secretary request the concurrence of the House of Representatives therein.

The Senate proceeded to consider the bill (H. R. 4462) authorizing the conveyance of certain lands in Park County, Wyo., to the State of Wyoming; and no amendment being made,

*Ordered,* That it pass to a third reading.

The said bill was read the third time.

*Resolved,* That it pass.

*Ordered,* That the Secretary notify the House of Representatives thereof.

*Ordered,* by unanimous consent, That the bill (S. 1821) of an identical title be postponed indefinitely.

The bill (S. 2816) to direct the Secretary of Agriculture to convey certain land to the State of Oklahoma having been reached.

The Senate proceeded, by unanimous consent, to consider the bill (H. R. 5861) of an identical title; and no amendment being made,

*Ordered,* That it pass to a third reading.

The said bill was read the third time.

*Resolved,* That it pass.

*Ordered,* That the Secretary notify the House of Representatives thereof.

*Ordered,* by unanimous consent, That the bill S. 2816 be postponed indefinitely.

The Senate proceeded to consider the bill (S. 1301) for the relief of Alfonso Felice; and the reported amendments having been agreed to,

*Ordered,* That the bill be engrossed and read a third time.

The said bill was read the third time.

*Resolved,* That it pass, and that the title thereof be amended, as reported by the committee, to read: "A bill for the relief of Alfonso Felici."

*Ordered,* That the Secretary request the concurrence of the House of Representatives therein.

The Senate proceeded to consider the bill (H. R. 6295) to provide increased pensions for widows and children of de-

The Senate proceeded to consider the following bills; and no amendment was made:

S. 2299. A bill for the relief of Ella L. Browning;

S. 2850. A bill to amend the act entitled "An act to fix and regulate the salaries of teachers, school officers, and other employees of the Board of Education of the District of Columbia, and for other purposes," approved July 7, 1947;

S. 1995. A bill for the relief of George Bailey; and

S. 2605. A bill for the relief of the widow of Robert V. Holland.

*Ordered*, That they be engrossed and read a third time.

The said bills were severally read the third time.

*Resolved*, That they pass, and that the respective titles thereof be as aforesaid.

*Ordered*, That the Secretary request the concurrence of the House of Representatives therein.

The Senate proceeded to consider the bill (S. 1691) for the relief of the First, Second, and Third National Steamship Cos.; and the reported amendment having been agreed to,

*Ordered*, That the bill be engrossed and read a third time.

The said bill was read the third time.

*Resolved*, That it pass, and that the title thereof be as aforesaid.

*Ordered*, That the Secretary request the concurrence of the House of Representatives therein.

The Senate proceeded to consider the bill (S. 2482) to amend sections 2, 4, and 8 of the Migratory Bird Hunting Stamp Act of March 16, 1934 (48 Stat. 451; 16 U. S. C. 718b), as amended, and section 5 of the Migratory Bird Conservation Act of February 18, 1929 (45 Stat. 1222; 16 U. S. C. 715), as amended, and the reported amendment to the text having been agreed to,

*Ordered*, That the bill be engrossed and read a third time.

The said bill was read the third time.

*Resolved*, That it pass, and that the title thereof be amended, as reported by the committee, to read: "A bill to amend sections 2 and 4 of the Migratory Bird Hunting Stamp Act of March 16, 1934 (48 Stat. 451; 16 U. S. C. 718b), as amended,"

*Ordered*, That the Secretary request the concurrence of the House of Representatives therein.

The Senate proceeded to consider the following bills; and the reported amendments were agreed to:

H. R. 6039. An act to authorize the permanent appointment in the Regular Army of one officer in the grade of general and to authorize the permanent appointment in the Regular Air Force of one officer in the grade of general, and for other purposes;

H. R. 6707. An act to amend the Officer Personnel Act of 1947 (Public Law 381, 80th Cong ), and for other purposes; and

H. R. 4044. An act to amend the Trading With the Enemy Act, as amended;

to create a commission to make an inquiry and report with respect to war claims; and to provide for relief for internees in certain cases.

*Ordered*, That the amendments be engrossed and the bills read a third time.

The said bills, as amended, . were severally read the third time.

*Resolved*, That they pass.

*Ordered*, That the Secretary request the concurrence of the House of Representatives in the amendments.

The Senate proceeded to consider the bill (S. 2686) to establish the Navajo-Hopi Indian Administration, to provide for the rehabilitation of the Navajo and Hopi Indian Tribes, and for other purposes; and the reported amendments having been agreed to,

*Ordered*, That the bill be engrossed and read a third time.

The said bill was read the third time.

*Resolved*, That it pass, and that the title thereof be as aforesaid.

*Ordered*, That the Secretary request the concurrence of the House of Representatives therein.

**TERMS OF MEMBERS OF THE ATOMIC ENERGY COMMISSION**

The Senate resumed the consideration of the bill (S. 2589) to provide for the extension of the terms of office of the present members of the Atomic Energy Commission.

Pending debate,

**INCREASE OF STRENGTH OF THE ARMED FORCES OF THE UNITED STATES**

The PRESIDENT pro tempore laid before the Senate the message this day received from the House of Representatives, insisting upon its amendment to the bill (S. 2655) to provide for the common defense by increasing the strength of the armed forces of the United States, including the reserve components thereof, and for other purposes, and asking a conference with the Senate thereon.

On motion by Mr. GURNEY that the Senate disagree to the amendment of the House of Representatives to the said bill, agree to the conference asked by the House, and that the conferees on the part of the Senate be Mr. GURNEY, Mr. SALTONSTALL, Mr. MORSE, Mr. TYDINGS, and Mr. BYRD,

Pending debate,

**SUPPLEMENTAL APPROPRIATION FOR INDE-PENDENT OFFICES**

On motion by Mr. WHERRY, and by unanimous consent,

The Senate proceeded to consider the bill (H. R. 6829) making supplemental appropriations for the Executive Office and sundry independent executive bureaus, boards, commissions, and offices, for the fiscal year ending June 30, 1949, and for other purposes.

The reported amendments in part were agreed to.

Mr. EASTLAND raised a question as to the presence of a quorum;

Whereupon

The PRESIDENT pro tempore directed the roll to be called;

When

Eighty-nine Senators answered to their names, as follows:

Atken
Baldwin
Ball
Barkley
Brewster
Bricker
Bridges
Brooks
Buck
Butler
Byrd
Cain
Capehart
Chavez
Connally
Cooper
Cordon
Donnell
Downey
Dworshak
Eastland
Ecton
Ellender
Feazel
Ferguson
Flanders
Fulbright
Green
Gurney
Hatch

Hawkes
Hayden
Hickenlooper
Hill
Hoey
Holland
Ives
Jenner
Johnson,Colo.
Johnston,S.C.
Kem
Kilgore
Knowland
Langer
Lucas
McCarthy
McClellan
McFarland
McGrath
McKellar
McMahon
Magnuson
Malone
Martin
Maybank
Millikin
Moore
Morse
Murray
Myers

O'Conor
O'Daniel
O'Mahoney
Pepper
Reed
Revercomb
Robertson, Va.
Robertson,Wyo.
Russell
Saltonstall
Smith
Sparkman
Stennis
Stewart
Taft
Taylor
Thomas, Okla.
Thye
Tobey
Tydings
Umstead
Vandenberg
Watkins
Wherry
White
Wiley
Williams
Wilson
Young

A quorum being present,

The reported amendments in part were further agreed to.

**MESSAGE FROM THE HOUSE**

A message from the House of Representatives, by Mr. Chaffee, one of its clerks:

*Mr. President:* The House of Representatives has passed without amendment the joint resolution (S. J. Res. 37) requesting the President to proclaim February 1 as National Freedom Day.

The House has agreed to the respective reports of the committees of conference on the disagreeing votes of the two Houses on the amendment of the House to each of the following bills of the Senate:

S. 418. A bill to provide for water-pollution-control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes; and

S. 2242. A bill to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes.

The House has agreed to the amendments of the Senate to each of the following bills of the House:

H. R. 3190. An act to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure";

H. R. 3218. An act to authorize an emergency fund for the Bureau of Reclamation to assure the continuous operation of its irrigation and power systems;

H. R. 4272. An act to provide for the procurement and supply of Government headstones or markers for unmarked graves of members of the armed forces dying in the service or after honorable discharge therefrom, and other persons, and for other purposes; and

H R. 5710. An act to amend the act entitled "An act to expedite the provision of housing in connection with national

*demand for milk or its products in the marketing area to which the contemplated marketing agreement, order, or amendment relates. Whenever the Secretary finds, upon the basis of the evidence adduced at the hearing required by section 8b or 8c, as the case may be, that the parity prices of such commodities are not reasonable in view of the price of feeds, the available supplies of feeds, and other economic conditions which affect market supply and demand for milk and its products in the marketing area to which the contemplated agreement, order, or amendment relates, he shall fix such prices as he finds will reflect such factors, insure a sufficient quantity of pure and wholesome milk, and be in the public interest. Thereafter, as the Secretary finds necessary on account of changed circumstances, he shall, after due notice and opportunity for hearing, make adjustments in such prices."*

*(c) Section 8c (17) of the Agricultural Adjustment Act, as reenacted and amended by the Agricultural Marketing Agreement Act of 1937, is amended by striking out "and section 8e".*

*(d) Section 8c of the Agricultural Adjustment Act, as reenacted and amended by the Agricultural Marketing Agreement Act of 1937, is repealed.*

*(e) Section 4 of the Agricultural Marketing Agreement Act of 1937, as amended, is amended by inserting after the section designation the subsection designation "(a)" and by adding at the end thereof a new subsection to read as follows:*

*"(b) Any program in effect under the Agricultural Adjustment Act, as reenacted and amended by this Act, on the effective date of section 302 of the Agricultural Act of 1948 shall continue in effect without the necessity for any amendatory action relative to such program, but any such program shall be continued in operation by the Secretary of Agriculture only to establish and maintain such orderly marketing conditions as will tend to effectuate the declared purpose set out in section 2 or 8c (18) of the Agricultural Adjustment Act, as reenacted and amended by this Act."*

*(f) All references in other laws to—*
*(1) parity,*
*(2) parity prices,*
*(3) prices comparable to parity prices, or*
*(4) prices to be determined in the same manner as provided by the Agricultural Adjustment Act of 1938 prior to its amendment by this Act for the determination of parity prices,*
*with respect to prices for agricultural commodities and products thereof, shall hereafter be deemed to refer to parity prices as determined in accordance with the provisions of section 301 (a) (1) of the Agricultural Adjustment Act of 1938, as amended by this Act.*

70300—s J—80-2——37

## Effective Date

Sec. 303. Titles II and III of this Act shall take effect on January 1, 1950.

And the Senate agree to the same.

That the Senate recede from its amendment to the title.

GEORGE D. AIKEN,
MILTON R. YOUNG,
EDWARD J. THYE,
ELMER THOMAS,
ALLEN J. ELLENDER,
*Managers on the Part of the Senate.*
CLIFFORD R. HOPE,
AUG. H. ANDRESEN,
ANTON J. JOHNSON,
GEO. W. GILLIE,
*Managers on the Part of the House.*

The Senate proceeded to consider the said report; and

*Resolved,* That the Senate agree thereto.

*Ordered,* That the Secretary notify the House of Representatives thereof.

### MESSAGE FROM THE HOUSE

A message from the House of Representatives, by Mr. Swanson, one of its clerks:

*Mr. President:* The House of Representatives has agreed to the following concurrent resolutions, in which it requests the concurrence of the Senate:

#### House Concurrent Resolution 218

*Resolved by the House of Representatives (the Senate concurring),* That when the two Houses adjourn on Sunday, June 20, 1948, they stand adjourned until 12 o'clock meridian on Friday, December 31, 1948, or until 12 o'clock meridian on the third day after the respective Members are notified to reassemble in accordance with section 2 of this resolution, whichever event first occurs.

SEC. 2. The President pro tempore of the Senate, the Speaker of the House of Representatives, the acting majority leader of the Senate, and the majority leader of the House of Representatives, all acting jointly, shall notify the Members of the Senate and the House respectively, to reassemble whenever, in their opinion, the public interest shall warrant it.

#### House Concurrent Resolution 219

*Resolved by the House of Representatives (the Senate concurring),* That notwithstanding the adjournment of the two Houses until December 31, 1948, the Speaker of the House of Representatives and the President pro tempore of the Senate be, and they are hereby, authorized to sign enrolled bills and joint resolutions duly passed by the two Houses and found truly enrolled.

### CONDITIONAL ADJOURNMENT, SECOND SESSION, EIGHTIETH CONGRESS

The PRESIDING OFFICER laid before the Senate the concurrent resolution (H. Con. Res. 218) to provide for the

adjournment of the two Houses of Congress until December 31, 1948, this day received from the House of Representatives for concurrence, which was read.

The Senate proceeded to consider the said concurrent resolution; and

*Resolved,* That the Senate agree thereto.

*Ordered,* That the Secretary notify the House of Representatives thereof.

### AUTHORITY FOR SIGNING ENROLLED BILLS FOLLOWING ADJOURNMENT

The PRESIDING OFFICER laid before the Senate the concurrent resolution (H. Con. Res. 219) authorizing the signing of enrolled bills following adjournment, this day received from the House of Representatives for concurrence, which was read.

The Senate proceeded to consider the said concurrent resolution; and

*Resolved,* That the Senate agree thereto.

*Ordered,* That the Secretary notify the House of Representatives thereof.

### AUTHORITY FOR SECRETARY TO RECEIVE MESSAGES FROM THE HOUSE OF REPRESENTATIVES, AND THE PRESIDENT PRO TEMPORE TO MAKE APPOINTMENTS DURING THE ADJOURNMENT

Mr. WHERRY submitted the following order, which was considered by unanimous consent, and agreed to:

*Ordered,* That notwithstanding the final adjournment of the present session of the Congress, the President pro tempore be, and he is hereby, authorized to make appointments to commissions or committees authorized by law, by concurrent action of the two Houses, or by order of the Senate.

*Ordered further,* That the Secretary of the Senate be, and he is hereby, authorized to receive messages from the House of Representatives subsequent to the adjournment of the present session.

### MESSAGE FROM THE HOUSE

A message from the House of Representatives, by Mr. Maurer, one of its clerks:

*Mr. President:* The House of Representatives has passed the bill (S. 2767) to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market of agricultural commodities to meet domestic needs and foreign commitment, with amendments, in which it requests the concurrence of the Senate.

### FARM LABOR

The PRESIDING OFFICER laid before the Senate the amendments this day received from the House of Representatives for concurrence to the bill (S. 2767) to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market of agricultural

commodities to meet domestic needs and foreign commitment.

The Senate proceeded to consider the said amendments; and,

*On motion by Mr. AIKEN,*

*Resolved,* That the Senate agree thereto.

*Ordered,* That the Secretary notify the House of Representatives thereof.

### PRODUCTION OF STRATEGIC AND CRITICAL MATERIALS

The Senate resumed the consideration of the bill (S. 2756) to stimulate the production and conservation of strategic and critical ores, metals, and minerals in the interest of national defense and for the establishment within the Department of the Interior of a Mine Incentive Payments Division, and for other purposes.

The question being, Shall the bill pass?

Pending debate,

### DEVELOPMENT OF CIVIL TRANSPORT AIRCRAFT

On motion by Mr. BREWSTER,

The Senate proceeded to consider the bill (S. 2644) to provide for the development of civil transport aircraft adaptable for auxiliary military service, and for other purposes.

On the question of agreeing to the reported amendment, striking out all after the enacting clause and inserting in lieu thereof other words,

Pending debate,

### ISSUANCE OF STAMP COMMEMORATIVE OF JULIETTE LOW

On motion by Mr. JOHNSTON of South Carolina, and by unanimous consent,

The Senate proceeded to consider the joint resolution (H. J. Res. 327) to authorize the issuance of a special series of stamps commemorative of Juliette Low, founded and organizer of Girl Scouting in the United States of America; and no amendment being made,

*Ordered,* That it pass to a third reading.

The said joint resolution was read the third time.

*Resolved,* That it pass.

*Ordered,* That the Secretary notify the House of Representatives thereof.

### ISSUANCE OF STAMP COMMEMORATIVE OF ROUGH RIDERS

On motion by Mr. JOHNSTON of South Carolina, and by unanimous consent,

The Senate proceeded to consider the joint resolution (H. J. Res. 305) to authorize the issuance o fa special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer United States Cavalry) of the Spanish-American War; and no amendment being made,

*Ordered,* That it pass to a third reading.

The said joint resolution was read the third time.

*Resolved,* That it pass.

*Ordered,* That the Secretary notify the House of Representatives thereof.

### EXECUTIVE BUSINESS

During legislative session, certain executive business was transacted as in executive session, by unanimous consent,

### CONSTRUCTION OF RAILROADS IN ALASKA

On motion by Mr. MAGNUSON, and by unanimous consent,

The Senate proceeded to consider the concurrent resolution (S. Con. Res. 59) relative to negotiations with the Canadian Government concerning the construction of railroads in Alaska and the establishment of reciprocal tariff and immigration arrangements; and the reported amendments having been agreed to,

The concurrent resolution, as amended, together with the accompanying preamble, was agreed to, as follows:

Whereas the defense of the Territory of Alaska is essential to the national security of the United States; and

Whereas further development of mineral, timber, and other resources of Alaska is necessary to the defense of that Territory and to the welfare and security of the United States; and

Whereas adequate transportation facilities within the Territory of Alaska and between the Territory of Alaska and the United States are essential to the development of the resources and the defense of Alaska; and

Whereas existing transportation facilities within the Territory of Alaska and between the Territory of Alaska and the United States are inadequate for the development of the resources and the defense of Alaska: Therefore be it

*Resolved by the Senate (the House of Representatives concurring),* That the President is requested to commence negotiations with the Canadian Government with a view toward determining the desirability of extending the existing railroad system now terminating at Prince George, British Columbia, Canada, to the Territory of Alaska,, and to cause surveys to be made and plans, specifications, and cost estimates be prepared covering the construction of a railroad connecting the existing railroad system terminating at Fairbanks, Alaska, with a railroad system extended from Prince George, British Columbia, Canada, to the Territory of Alaska; also including studies with the Canadian Government for reciprocal tariff and immigration arrangements in connection with this project.

### ADJOURNMENT

On motion by Mr. WHERRY, at 7 o'clock and 14 minutes a. m. (Sunday, June 20, 1948),

The Senate, pursuant to House Concurrent Resolution 218, adjourned.

### ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED

Subsequent to the adjournment of the Senate on June 20, 1948, the President pro tempore, under the authority of House Concurrent Resolution 219, signed the following enrolled bills and joint resolutions, which had been previously signed by the Speaker of the House of Representatives, and examined and found truly enrolled by the Secretary of the Senate:

S. 165. An act for the relief of Doris E. Snyder;

S. 418. An act to provide for water-pollution-control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes;

S. 595. An act to provide that the rates of compensation for disabilities incurred in active military or naval service other than in a period of war service shall be equal to 80 percent of the rates payable for similar disabilities incurred during active service in time of war;

S. 1243. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes;

S. 1260. An act to create a commission to hear and determine the claims of certain motor carriers;

S. 1322. An act to provide a Federal charter for the Commodity Credit Corporation;

S. 1683. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State;

S. 1715. An act for the relief of Archie Hamilton and Delbert Hamilton;

S. 1717. An act for the relief of the estate of William R. Stigall, deceased;

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III;

S. 2217. An act conferring jurisdiction upon the Court of Claims of the United States to hear, determine, and render judgment upon the joint claims of Silas Mason Co., Inc.; Walsh Construction Co.; and Atkinson-Kier Co.;

S. 2242. An act to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes;

S. 2281. An act to provide for an air parcel-post service, and for other purposes;

S. 2371. An act validating certain conveyances of the Oregon Short Line Railroad Co. and the Union Pacific Railroad Co .and waiving, relinquishing, and disclaiming all title and all right of reverter and forfeiture of the United States of America to the lands described in said conveyance;

S. 2376. An act to provide a revolving fund for the purchase of agricultural commodities and raw materials to be processed in occupied areas and sold;

S. 2440. An act for the relief of Charles Duncan Montrieth;

S. 2554. An act to promote the common defense by providing for the retention and maintenance of a national reserve of industrial productive capacity, and for other purposes;

S. 2621. An act authorizin gthe extension of the functions and duties of Fed-

eral Prison Industries, Inc., to military disciplinary barracks;

S. 2655. An act to provide for the common defense by increasing the strength of the armed forces of the United States, including the Reserve components thereof, and for other purposes;

S. 2676. An act to authorize the Secretary of the Interior to convey a certain parcel of land in St. Louis County, Minn., to the University of Minnesota;

S. 2692. An act to terminate the retirement system of the Office of the Comptroller of the Currency, and to transfer that retirement fund to the Civil Service Retirement and Disability Fund;

S. 2698. An act to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institution, a State institution, and for other purposes;

S. 2705. An act to reimburse the James & Phelps Construction Co.;

S. 2709. An act for the relief of Stefan Magura and Michal Magura;

S. 2730. An act to include as allowable service under the act of July 6, 1945, service performed in the military forces and on war transfer by employees in the field service of the Post Office Department;

S. 2743. An act providing for the more expeditious determination of certain claims filed by Ute Indians;

S. 2747. An act to amend the Canal Zone Code for the purpose of incorporating the Panama Railroad Company;

S. 2767. An act to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market of agricultural commodities to meet domestic needs and foreign commitment;

S. 2790. An act to amend the Servicemen's Readjustment Act of 1944, as amended, and for other purposes;

S. 2794. An act to authorize the Administrator of Veterans' Affairs to prescribe the rates of pay for certain positions at field installations;

S. 2830. An act to extend for 2 years the authority to provide for the maintenance of a domestic tin-smelting industry;

S. 2849. An act to authorize the Administrator of Veterans' Affairs to convey a certain tract of land in the State of Arkansas to Washington County, Ark.;

S. 2861. An act to assist by grants-in-aid the Republic of the Philippines in providing medical care and treatment for certain veterans;

S. 2877. An act to amend the Reconstruction Finance Corporation Act, as amended;

H. R. 333. An act for the relief of sundry residents of Alaska, the veterans of World War II;

H. R. 2009. An act for the relief of the estate of Vito Abarno;

H. R. 2269. An act for the relief of Frank A. Constable;

H. R. 2798. An act to amend section 5, Home Owners' Loan Act of 1933, and for other purposes;

H. R. 3190. An act to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure";

H. R. 3416. An act to provide for the establishment of the Pensacola National Monument;

H. R. 4044. An act to amend the Trading With the Enemy Act, as amended; to create a commission to make an inquiry and report with respect to war claims; and to provide for relief for internees in certain cases;

H. R. 4917. An act to provide further benefits for certain employees of the United States who are veterans of World War II and lost opportunity for probational civil-service appointments by reason of their service in the armed forces of the United States, and who, due to service-connected disabilities, are unable to perform the duties of the positions for which examinations were taken;

H. R. 5416. An act to promote the interests of the Fort Hall Indian irrigation project, Idaho; and for other purposes;

H. R. 5882. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes;

H. R. 5904. An act to continue the Virgin Islands Company as an agency of the United States;

H. R. 6248. An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes;

H. R. 6402. An act to provide for extension of the terms of office of the present members of the Atomic Energy Commission;

H. R. 6448. An act to authorize the Administrator of Veterans' Affairs to convey certain land in Tennessee to the city of Johnson City.

H. R. 6465. An act to amend and supplement section 2 of the act approved August 30, 1935, relating to the construction and financing of toll bridges over the Delaware River by the Delaware River Joint Toll Bridge Commission of the Commonwealth of Pennsylvania and the State of New Jersey;

H. R. 6481. An act making appropriations for Government corporations and independent executive agencies for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6527. An act to provide assistance to certain local school agencies overburdened with war-incurred or postwar national-defense-incurred enrollments;

H. R. 6641. An act to amend the Civil Service Retirement Act of May 29, 1930, to provide annuities for certain surviving spouses of annuitants retired prior to April 1, 1948;

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6801. An act making appropriations for foreign aid, and for other purposes;

H. R. 6808. An act to permit refund or credit to brewers of taxes paid on beer lost in bottling operations;

H. R. 6829. An act making supplemental appropriations for the Executive Office and sundry independent executive bureaus, boards, commissions, and offices for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6916. An act to provide for permanent postal rates and to provide pay increases for Government employees;

H. R. 6935. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1948, and for other purposes;

S. J. Res. 177. Joint resolution providing for participation by the Government of the United States in the Pan American Railway Congress, and authorizing an appropriation therefor;

S. J. Res. 219. Joint resolution to continue until March 1, 1949, the authority of the United States Maritime Commission to make provision for certain ocean transportation service to, from, and within Alaska.

H. J. Res. 190. Joint resolution authorizing the printing and binding of Cannon's Procedure in the House of Representatives and providing that the same shall be subject to copyright by the author.

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer U. S. Cavalry) of the Spanish-American War;

H. J. Res. 327. Joint resolution to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America; and

H. J. Res. 433. Joint resolution permitting the free entry of certain articles imported to promote international good will, and for other purposes.

ENROLLED BILLS AND JOINT RESOLUTIONS PRESENTED

Subsequent to the adjournment of the Senate on June 20, 1948, the following enrolled bills and joint resolutions, heretofore duly signed by the Presiding Officers of the two Houses, were presented to the President of the United States by the Secretary of the Senate:

On June 21, 1948:

S. 83. An act authorizing the naturalization of Elizabeth Pickering Winn;

S. 1107. An act relating to the arming of American vessels;

S. 1639. An act authorizing the repair and rehabilitation of irrigation works damaged by flood and the prevention of flood damage in the Fort Sumner irrigation district, and for other purposes;

S. 1730. An act for the relief of Mrs. Anna V. Reyer, Alexander A. Reyer, and Vitaly A. Reyer;

S. 1820. An act to confer jurisdiction on the State of Iowa over offenses committed by or against Indians on the Sac and Fox Indian Reservation;

S. 2186. An act to amend section 5 of the act entitled "An act to amend the laws relating to navigation, and for other purposes";

S. 2192. An act to amend the Interstate Commerce Act so as to permit the issuance of free passes to time inspectors of carriers subject to part I of such act;

S. 2341. An act to authorize an increase in the annual appropriation for the maintenance and operation of the Gorgas Memorial Laboratory;

S. 2510. An act to provide for certain administrative expenses in the Post Office Department, including retainment of penumatic-tube systems, and for other purposes;

S. 2706. An act to authorize the Federal Works Administrator to lease for commercial purposes certain space in the building located at 811 Vermont Avenue NW., Washington, D. C., commonly known as the Lafayette Building;

S. 2739. An act to authorize the issuance of a stamp commemorative of the two hundredth anniversary of the founding of the city of Alexandria, Va.;

S. 2821. An act to provide increases of compensation for certain veterans with service-connected disabilities who have dependents; and

S. 2825. An act to increase the rates of service-connected-death compensation payable to certain widows, children, and dependent parents of persons who served in the active or naval service, and for other purposes.

On June 23, 1948:

S. 418. An act to provide for water-pollution-control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes;

S. 595. An act to provide that the rates of compensation for disabilities incurred in active military or naval service other than in a period of war service shall be equal to 80 percent of the rates payable for similar disabilities incurred during active service in time of war;

S. 1243. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes;

S. 1260. An act to create a commission to hear and determine the claims of certain motor carriers;

S. 1322. An act to provide a Federal charter for the Commodity Credit Corporation;

S. 1683. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State;

S. 1715. An act for the relief of Archie Hamilton and Delbert Hamilton;

S. 1717. An act for the relief of the estate of William R. Stigall, deceased;

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III;

S. 2217. An act conferring jurisdiction upon the Court of Claims of the United States to hear, determine, and render judgment upon the joint claims of Silas Mason Co., Inc., Walsh Construction Co., and Atkinson-Kier Co.;

S. 2242. An act to authorize for a limited period time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes;

S. 2281. An act to provide for an air parcel-post service, and for other purposes;

S. 2371. An act validating certain conveyances of the Oregon Short Line Railroad Co. and the Union Pacific Railroad Co. and waiving, relinquishing, and disclaiming all title and all right of reverter and forfeiture of the United States of America to the lands described in said conveyance;

S. 2376. An act to provide a revolving fund for the purchase of agricultural commodities and raw materials to be processed in occupied areas and sold;

S. 2440. An act for the relief of Charles Duncan Montrieth;

S. 2554. An act to promote the common defense by providing for the retention and maintenance of a national reserve of industrial productive capacity, and for other purposes;

S. 2621. An act authorizing the extension of the functions and duties of Federal Prison Industries, Inc., to military disciplinary barracks;

S. 2655. An act to provide for the common defense by increasing the strength of the armed forces of the United States, including the Reserve components thereof, and for other purposes;

S. 2676. An act to authorize the Secretary of the Interior to convey a certain parcel of land in St. Louis County, Minn., to the University of Minnesota;

S. 2692. An act to terminate the retirement system of the Office of the Comptroller of the Currency, and to transfer that retirement fund to the Civil Service Retirement and Disability Fund;

S. 2698. An act to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institute, a State institution, and for other purposes;

S. 2705. An act to reimburse the James & Phelps Construction Co.;

S. 2709. An act for the relief of Stefan Magura and Michal Magura;

S. 2730. An act to include as allowable service under the act of July 6, 1945, service performed in the military forces and on war transfer by employees in the field service of the Post Office Department;

S. 2743. An act providing for the more expeditious determination of certain claims filed by Ute Indians;

S. 2747. An act to amend the Canal Zone Code for the purpose of incorporating the Panama Railroad Company;

S. 2767. An act to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market agricultural commodities to meet domestic needs and foreign commitment;

S. 2794. An act to authorize the Administrator of Veterans' Affairs to prescribe the rates of pay for certain positions at field installations;

S. 2830. An act to extend for 2 years the authority to provide for the maintenance of a domestic tin-smelting industry;

S. 2849. An act to authorize the Administrator of Veterans' Affairs to convey a certain tract of land in the State of Arkansas to Washington County, Ark.;

S. 2861. An act to assist by grants-in-aid the Republic of the Philippines in providing medical care and treatment for certain veterans;

S. J. Res. 177. Joint resolution providing for participation by the Government of the United States in the Pan American Railway Congress, and authorizing an appropriation therefor; and

S. J. Res. 219. Joint resolution to continue until March 1, 1949, the authority of the United States Maritime Commission to make provision for certain ocean transportation service to, from, and within Alaska.

On June 24, 1948:

S. 165. An act for the relief of Doris E. Snyder;

S. 2790. An act to amend the Servicemen's Readjustment Act of 1944, as amended, and for other purposes; and

S. 2877. An act to amend the Reconstruction Finance Corporation Act, as amended.

APPROVALS OF BILLS AND JOINT RESOLUTIONS

The President of the United States, subsequent to the adjournment of the Senate on June 20, 1948, notified the Secretary of the Senate that he had approved acts and joint resolutions as follows:

On June 19, 1948:

S. 263. An act to provide for the carrying of mail on star routes, and for other purposes;

S. 295. An act to further amend the thirteenth paragraph of section 127a of the National Defense Act, as amended;

S. 424. An act conferring jurisdiction upon the United States District Court for the District of Nebraska to hear, determine, and render judgment upon the claims of John J. Higgins, and others;

S. 554. An act to provide for the collection and publication of statistical information by the Bureau of the Census;

S. 612. An act to amend section 35 of chapter III of the act of June 19, 1934, entitled "An act to regulate the business of life insurance in the District of Columbia," as amended, and to repeal section 36 of said chapter III of said act, as amended, so as to permit certain additional investments;

S. 692. An act to authorize a mileage allowance of 7 cents per mile for United States marshals and their deputies for travel on official business;

and the Railroad Unemployment Insurance Act, as amended, and for other purposes.

On June 24, 1948:

S. 1266. An act to amend section 1064 of the act entitled "An act to establish a Code of Law for the District of Columbia," approved March 3, 1901, relating to admissibility of testimony by a party to a transaction when the other party is incapable of testifying;

S. 1274. An act conveying all right, title, and interest of the United States in and to certain lands in Wilkinson County, Miss., to the heirs, assigns, and successors in title of William Collins;

S. 1275. An act conveying all right, title, and interest of the United States in and to certain lands in Warren County, Miss., to the heirs, assigns, and successors in title of Moses Evans;

S. 2192. An act to amend the Interstate Commerce Act so as to permit the issuance of free passes to time inspectors of carriers subject to part I of such act;

S. 2223. An act to authorize the promotion of Lt. Gen. Leslie Richard Groves to the permanent grade of major general, United States Army, and for other purposes;

S. 2237. An act to increase certain benefits payable under the Longshoremen's and Harbor Workers' Compensation Act;

S. 2505. An act to amend the act of August 1, 1947, to clarify the position of the Secretary of the Air Force with respect to such act, and to authorize the Secretary of Defense to establish six additional positions in the reserve components thereof, and for other purposes;

S. 2508. An act relating to salaries of certain officers and employees of the United States and certain officers and employees of Puerto Rico;

S. 2655. An act to provide for the common defense by increasing the strength of the armed forces of the United States, including the reserve components thereof, and for other purposes;

S. 2706. An act to authorize the Federal Works Administrator to lease for commercial purposes certain space in the building located at 811 Vermont Avenue NW., Washington, D. C., commonly known as the Lafayette Building;

H. R. 239. An act to further perfect the consolidation of the Lighthouse Service with the Coast Guard;

H. R. 2867. An act to permit, subject to certain conditions, mining locations under the mining laws of the United States within that portion of the Harney National Forest, designated as a game sanctuary, and for other purposes;

H. R. 3889. An act to amend Veterans Regulation No. 1 (a), parts I and II, as amended, to establish a presumption of service connection for chronic and tropical diseases;

H. R. 4047. An act for the relief of Edmund Huppler;

H. R. 4071. An act to amend sections 301 (k) and 304 (a) of the Federal Food, Drug, and Cosmetic Act, as amended;

H. R. 4516. An act for the relief of the Moore Dry Dock Co., of Oakland, Calif.;

H. R. 4962. An act to provide pensions for certain widows of veterans of the Spanish-American War, including the Boxer Rebellion and the Philippine Insurrection;

H. R. 5036. An act to authorize the attendance of the United States Marine Corps Band at the national assembly of the Marine Corps League to be held at Milwaukee, Wis., September 22 to September 25, inclusive, 1948;

H. R. 5275. An act to amend the Tariff Act of 1930 to provide for the free importation of limestone to be used in the manufacture of fertilizer;

H. R. 5936. An act to provide for the addition of certain surplus Government lands to the Chickamauga and Chattanooga National Military Park, in the States of Georgia and Tennessee, and for other purposes;

H. R. 6188. An act to confer jurisdiction over the Fort Des Moines Veterans' Village upon the State of Iowa;

H. R. 6318. An act to amend section 3 of the Standard Time Act of March 19, 1918, as amended, relating to the placing of a certain portion of the State of Idaho in the third time zone;

H. R. 6698. An act to authorize the course of instruction at the United States Naval Academy be given to not exceeding four persons at a time from the Republic of the Philippines;

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6822. An act to continue the authorization for the appointment of two additional Assistant Secretaries of State;

H. R. 6726. An act to amend the Public Health Service Act to provide for, foster, and aid in coordinating research relating to dental diseases and conditions, and for other purposes;

H. R. 6772. An act making appropriations for the Department of the Navy and the naval service for the fiscal year ending June 30, 1949, and for other purposes; and

S. J. Res. 203. Joint resolution providing for the ratification by Congress of a contract for the purchase of certain lands and mineral deposits by the United States from the Choctaw and Chickasaw Nations of Indians.

On June 25, 1948:

S. 1409. An act for the relief of Markoto Iwamatsu, Atsushi Jun Imamatsu, and Tomoe Iwamatsu;

S. 2242. An act to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes;

S. 2401. An act to provide for the administration of military justice within the United States Air Force, and for other purposes;

S. 2675. An act to amend the Organic Act of Puerto Rico;

S. 2770. An act to fix the rank of the Assistant to the Chief of Engineers in charge of river and harbor and flood-control improvements.

H. R. 564. An act for the relief of Sarah Lee Cregg;

H. R. 700. An act for the relief of Anthony Arancio;

H. R. 912. An act for the relief of Hiro Higa and Kana Higa;

H. R. 945. An act relating to the payment of fees, expenses, and costs of jurors;

H. R. 1409. An act for the relief of Frantisek Jiri Pavlik or Georg Pavlik;

H. R. 1642. An act for the relief of Miss Rosella M. Kostenbader;

H. R. 2009. An act for the relief of the estate of Vito Abarno;

H. R. 2193. An act for the relief of Robert E. Graham;

H. R. 2431. An act for the relief of the estate of David Jefferson Janow, deceased;

H. R. 2734. An act for the relief of Joseph M. Henry;

H. R. 2766. An act to amend section 2 of an act, entitled, "An act to provide for the establishment of a probation system in the United States courts, except in the District of Columbia," approved March 4, 1925, as amended (18 U. S. C. 725) ;

H. R. 3190. An act to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure";

H. R. 3214. An act to revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary";

H. R. 3427. An act for the relief of Mrs. Mary H. Overall and Thomas I. Baker;

H. R. 4114. An act to amend the Public Health Service Act to permit certain expenditures, and for other purposes;

H. R. 4298. An act for the relief of Henry Hill;

H. R. 4452. An act for the relief of Douglas L. Craig;

H. R. 4566. An act for the relief of William Nally;

H. R. 4587. An act for the relief of Mrs. Harry A. Light (formerly Mrs. Elsie Purvey) ;

H. R. 4518. An act for the relief of Gerald R. Furman;

H. R. 4659. An act to ratify and confirm amendments to certain contracts for the furnishing of petroleum products to the United States;

H. R. 4881. An act for the relief of Dimitri Petrou;

H. R. 5524. An act making appropriations for civil functions administered by the Department of the Army for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 5886. An act to amend section 332 (a) of the Nationality Act of 1940;

H. R. 6293. An act to amend the act of June 19, 1934, providing for the establishment of the National Archives, so as to provide that certain fees collected by the Archivist shall be available for dis-

MONDAY, JULY 26, 1948

CONVENING THE CONGRESS BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

## A PROCLAMATION

Whereas the public interest requires that the Congress of the United States should be convened at 12 o'clock noon on Monday, the 26th day of July 1948, to receive such communication as may be made by the Executive:

Now, therefore, I, Harry S. Truman, President of the United States of America, do hereby proclaim and declare that an extraordinary occasion requires the Congress of the United States to convene at the Capitol in the city of Washington on Monday, the 26th day of July 1948, at 12 o'clock noon, of which all persons who shall at that time be entitled to act as Members thereof are hereby required to take notice.

In witness whereof, I have hereunto set my hand and caused to be affixed the great seal of the United States.

Done at the city of Washington this 15th day of July, in the year of our Lord nineteen hundred and forty-eight, and of the independence of the United States of America the one hundred and seventy-third.

[SEAL]

HARRY S. TRUMAN.

By the President:

G. C. MARSHALL,
*Secretary of State.*

In conformity with the foregoing proclamation of the President of the United States, the Senate reassembled in its Chamber in the city of Washington.

---

The PRESIDENT pro tempore called the Senate to order and Rev. Bernard Braskamp, D. D., of Washington, D. C. offered prayer.

READING OF PROCLAMATION OF THE PRESIDENT

The proclamation of the President convening the Senate in session was read.

QUESTION OF QUORUM

Mr. WHERRY raised a question as to the presence of a quorum:

Whereupon

The PRESIDENT pro tempore directed the roll to be called;

When

Seventy-eight Senators answered to their names, as follows:

| | | |
|---|---|---|
| Aiken | Hickenlooper | O'Daniel |
| Baldwin | Hill | O'Mahoney |
| Barkley | Hoey | Pepper |
| Brewster | Holland | Reed |
| Brooks | Jenner | Revercomb |
| Butler | Johnson, Colo. | Robertson, Va. |
| Byrd | Johnston, S. C. | Robertson, Wyo |
| Cain | Kem | Russell |
| Capehart | Kilgore | Saltonstall |
| Capper | Knowland | Smith |
| Connally | Langer | Sparkman |
| Cooper | Lodge | Stennis |
| Cordon | Lucas | Stewart |
| Donnell | McCarthy | Taft |
| Downey | McClellan | Taylor |
| Eastland | McFarland | Thomas, Okla. |
| Ecton | McGrath | Thomas, Utah |
| Ellender | McMahon | Thye |
| Feazel | Magnuson | Tobey |
| Ferguson | Martin | Umstead |
| George | Maybank | Vandenberg |
| Green | Millikin | Watkins |
| Gurney | Moore | Wherry |
| Hatch | Murray | Wiley |
| Hawkes | Myers | Williams |
| Hayden | O'Conor | Young |

A quorum being present,

THE JOURNAL

On motion by Mr. WHERRY, and by unanimous consent,

70300—s J—80-2——38

The Journal of the proceedings of Friday, June 18, Saturday, June 19, and Sunday, June 20, 1948, was approved.

NOTIFICATION TO THE PRESIDENT

Mr. WHERRY submitted the following resolution (S. Res. 266), which was considered by unanimous consent and agreed to:

*Resolved,* That a committee of two Senators be appointed to join such committee as may be appointed by the House of Representatives to wait upon the President of the United States and inform him that a quorum of each House is reassembled and that the Congress is ready to receive any communication he may be pleased to make.

The PRESIDENT pro tempore appointed Mr. WHERRY and Mr. BARKLEY as the members of the committee on the part of the Senate.

*Ordered,* That the Secretary notify the House of Representatives thereof.

ADJOURNMENT

On motion by Mr. WHERRY, at 12 o'clock and 11 minutes p. m.,

The Senate adjourned.

TUESDAY, JULY 27, 1948

The PRESIDENT pro tempore called the Senate to order, and Rev. Bernard Braskamp, D. D., of Washington, D. C., offered prayer.

THE JOURNAL

On motion by Mr. WHERRY, and by unanimous consent,

The Journal of the proceedings of Monday, July 26, 1948, was approved.

MESSAGE FROM THE HOUSE

A message from the House of Representatives, by Mr. Swanson, one of its clerks:

*Mr. President:* The House of Representatives has passed the following resolution, which I am directed to communicate to the Senate:

*Resolved,* That a committee of three members be appointed by the Speaker on the part of the House of Representatives to join with the committee on the part of the Senate to notify the President of the United States that a quorum of each House is assembled and that Congress is ready to receive any communications that he may be pleased to make.

The Speaker of the House has appointed Mr. HALLECK, Mr. ARENDS, and Mr. McCORMACK as the members of the said committee on the part of the House.

The House has passed the following concurrent resolution (H. Con. Res. 220), in which it requests the concurrence of the Senate:

*Resolved by the House of Representatives (the Senate concurring),* That the two Houses of Congress assemble in the Hall of the House of Representatives on Tuesday, July 27, 1948, at 12:30 o'clock in the afternoon, for the purpose of receiving such communication as the President of the United States may be pleased to make to them.

REPORT OF NOTIFICATION COMMITTEE

Mr. WHERRY, from the committee appointed to join a similar committee appointed by the House of Representatives to wait upon the President of the United States and inform him that a quorum of each House is reassembled

593

amount each year for the development of farm-to-market roads. The Commissioner of Public Roads, Mr. Thomas H. MacDonald, spoke in favor of the bill. General Fleming, Commissioner of Public Works, favored the bill. No one appeared in opposition to the bill. It was reported unanimously by the Public Works Committee. Three identical bills have been introduced in the other body by three different Senators. The President recommended the passage of such measure in his message to the Congress on January 3 of this year. This bill will not require a single dollar of appropriations from the Federal Treasury.

Mr. CASE of South Dakota. Mr. Speaker, will the gentleman yield?

Mr. CUNNINGHAM. I yield.

Mr. CASE of South Dakota. Does the extension apply to the farm-to-market roads as well as to the primary system?

Mr. CUNNINGHAM. It certainly does, as well as the development of the highways in the urban areas.

Mr. CASE of South Dakota. The bill is very much in order for two reasons. One is that the time when the Japanese war expired, creating the resolution which the gentleman has referred to before, came along in the fall, which gave the States a short year the first year.

Mr. CUNNINGHAM. Yes. No States started building highways prior to October of 1945. They lost 4 months to start with. Then, there was a lack of material and shortage of labor and high prices, which caused the program to be held up. The whole program will be retarded and the States will lose some of this appropriation and there will be tremendous waste if this bill is not enacted. Possibly 12 months' grace period is not sufficient, but if it is not sufficient we can bring up another bill later.

Mr. CASE of South Dakota. If I remember correctly prior to this authorization the old Federal-aid authorization gave the States 2 years in which to act.

Mr. CUNNINGHAM. I think the gentleman is right.

Mr. H. CARL ANDERSEN. Mr. Speaker, will the gentleman yield?

Mr. CUNNINGHAM. I yield.

Mr. H. CARL ANDERSEN. I wish to state at this time that in my opinion this is very necessary legislation. As a previous member of the Committee on Roads, I would like to compliment the gentleman for bringing this bill up at this time.

Mr. CUNNINGHAM. I thank the gentleman.

Mr. DONDERO. Mr. Speaker, will the gentleman yield?

Mr. CUNNINGHAM. I yield to the chairman of the committee.

Mr. DONDERO. I think the gentleman has already covered the ground, but is it not a fact that because of the conditions enumerated by the gentleman, many of the States have been unable to comply with the provisions of this act, which makes this bill mandatory in order to protect the States?

Mr. CUNNINGHAM. That is absolutely true. In addition, there would be tremendous waste, because the highway program would be stopped, and highways partly completed would be left in status

quo until the Congress took some additional action.

Mr. COLE of New York. Mr. Speaker, I withdraw my reservation of objection.

Mr. ANGELL. Mr. Speaker, reserving the right to object, as one of the members of this committee, I had an opportunity to study this bill very carefully. The people in my particular area in the Northwest are very, very much in sympathy with this bill. I think what the chairman has said and what the gentleman from Iowa [Mr. CUNNINGHAM] has said is absolutely true, that this bill is essential for our road-building program.

The SPEAKER. Is there objection to the present consideration of the bill?

There was no objection.

The Clerk read the bill, as follows:

*Be it enacted, etc.,* That paragraph (d) of section 4 of the Federal-Aid Highway Act of 1944, Public Law 521, Seventy-eighth Congress, approved December 20, 1944, is hereby amended by striking out the term "one year" where it appears in said paragraph and inserting in lieu thereof the term "two years."

The bill was ordered to be engrossed and read a third time, was read the third time, and passed, and a motion to reconsider was laid on the table.

TO CODIFY TITLE 18 OF THE UNITED STATES CODE, CRIMES AND CRIMINAL PROCEDURE

The Clerk called the bill (H. R. 3190) to revise, codify, and enact into positive law, title 18 of the United States Code entitled "Crimes and Criminal Procedure."

The SPEAKER. Is there objection to the present consideration of the bill?

There was no objection.

The Clerk read the bill the second time.

Mr. WALTER. Mr. Speaker, I offer an amendment.

The Clerk read as follows:

Amendment offered by Mr. WALTER: On page 434, line 11, after the word "of", strike out "three" and insert "five."

Mr. WALTER. Mr. Speaker, the amendment you have just heard reported would have the effect, if adopted, of increasing the membership of the parole board from three to five.

At the last session of the Congress one of the subcommittees of the Committee on the Judiciary, in studying the legislation which we hoped might have the effect of cutting down the criminal rate in this country, found a perfectly appalling situation in the parole board. That board of three members actually interviews upward at 10,000 prisoners each year. That is, personal interviews. In addition to that, they have to review the cases acted on after personal interviews.

There are 21 criminal institutions in the United States that must be visited by this Board at regular intervals. So they have a perfectly impossible job with the result that men are paroled according to formula who should be compelled to serve their full sentence. I am not thinking about those men who are eligible for parole and in whose cases no action can be taken because the Board has not the time to reach their cases;

that is bad enough, but, significantly enough, over 50 percent of the criminals in the Federal institutions are repeaters. It seems to me that the least we can do is to make it possible or probable for a Board intelligently to pass on applications for parole in order to determine whether or not men should be released from their incarceration.

Mr. CARROLL. Mr. Speaker, will the gentleman yield?

Mr. WALTER. I yield.

Mr. CARROLL. Would the gentleman's amendment change existing law?

Mr. WALTER. It does not change existing law at all.

Mr. COLE of New York. Mr. Speaker, will the gentleman yield?

Mr. WALTER. I yield.

Mr. COLE of New York. If it does not change existing law, and this bill is designed to codify existing law, what is the necessity of offering the amendment?

Mr. WALTER. It changes existing law in that it changes the number of members on the Board. It does not, however, in any way affect the purpose of the law establishing the parole system; it merely changes the number of members of the Board. This is not different from what has been done by this committee in this very bill. The period of sentence has been changed in order to make different crimes fit the sentences that have been fixed by Congress from time to time. That is done throughout this entire title 18.

Mr. GRAHAM. Mr. Speaker, will the gentleman yield?

Mr. WALTER. I yield.

Mr. GRAHAM. As I understand the gentleman's amendment it increases the number of members from three to five.

Mr. WALTER. That is right.

Mr. GRAHAM. But it does not increase the rate of compensation of the members.

Mr. WALTER. That is right, exactly.

Mr. ROBSION. Mr. Speaker, will the gentleman yield?

Mr. WALTER. I yield.

Mr. ROBSION. I may say this to the gentleman, this matter came up before our Judiciary Committee and former Senator George Wharton Pepper, who is tremendously interested in this subject, and others felt they had to have additional authorization to increase the number from three to five. Otherwise we are not amending the law. I think there is no objection to it. We have a bill which can be called up to do this thing.

Mr. WALTER. The gentleman is correct, but we are this far. I do not think there is any doubt but that the Judiciary Committee would unanimously approve a separate bill, but we have gotten this far with this legislation and it certainly seems to me the situation is so critical that we ought to act as quickly as we possibly can. That is the reason I have offered this amendment at this time.

The SPEAKER. The time of the gentleman from Pennsylvania has expired.

Mr. ROBSION. Mr. Speaker, this bill differs from the five codification bills which have preceded it on this calendar in that it constitutes a revision, as well as a codification, of the Federal laws

relating to crimes and criminal procedure.

A bill similar to this passed the House unanimously in the closing days of the Seventy-ninth Congress but was not acted upon in the other body. I believe that I should make a brief statement explaining the method of drafting the bill and its scope.

The work on this revision was commenced under the supervision of the former Committee on Revision of the Laws in 1944. That committee engaged the services of the West Publishing Co. and the Edward Thompson Co., two law-publishing companies that have assisted in the preparation of the original United States Code and every supplement and new edition of that code. These companies have worked continuously and closely with the Committee on Revision of the Laws and, since the beginning of this Congress, with the Committee on the Judiciary, and counsel for the committees. In turn, the companies supplemented their regular editorial staffs by engaging the services of a reviser who was long familiar with the operation and administration of these laws. In addition they assembled an outstanding group of men as an advisory committee who labored unselfishly toward achieving the best revision of the criminal laws. A number of these men—members of the bench and bar of the country—appeared before the Committee on the Judiciary and testified that in their opinion this bill is eminently worthy of favorable action by the Congress. The Department of Justice also designated a representative of the Criminal Division to cooperate in the preparation of this revision.

Several preliminary drafts of the revision were studied most carefully, word for word and line for line, by these various groups, culminating in the bill now up for consideration.

At the last Congress the Committee on the Revision of the Laws, through its chairman, appeared before a subcommittee of the Judiciary Committee and, in a number of sessions, pointed out and explained every change in substantive law made by the bill which had been reported by that committee. After full discussion the Committee on the Judiciary unanimously endorsed the then pending bill, which is similar to the bill before us today, and that bill was passed unanimously by the House on July 16, 1946, in the closing days of the session. The bill had received the endorsement of the Department of Justice and the Section on Criminal Law of the American Bar Association. I believe that I am not engaging in overstatement when I say that no bill of this magnitude ever came to the House with such a background of careful and painstaking preparation and critical appraisal by so many leaders in this branch of the law.

So much for the method of preparation—and I want to express our appreciation to the learned members of the bench and bar who contributed so much of their talent and time toward this work.

Now as to the scope of the bill.

XCIII——319

This bill is a restatement of the Federal laws relating to crimes and criminal procedure in effect on April 15, 1947. Most of these laws are now set forth in title 18 of the United States Code and are based upon the 1909 Criminal Code—which was the last revision of criminal laws enacted by the Congress—and subsequent laws on the subject. Of course, title 18 of the United States Code is only prima facie evidence of the law which is contained in numerous volumes of the Statutes at Large. Upon the enactment of this bill it will no longer be necessary to have recourse to those numerous volumes. All the law will be set out in one place and amendments in the future will be facilitated because of the orderly arrangement of the laws within one title.

Just a year ago with the adoption of the Federal Rules of Criminal Procedure many statutes became obsolete or superseded, but, of course, were not specifically repealed. These together with other obsolete, superseded, redundant, and repetitious statutes are repealed by this bill, and the effect of the rules is clearly set forth in the revision.

The law is restated in simple, clear, and concise language. Many sections of existing statutes are consolidated to facilitate finding the law. The advantages of codes are too well known to require any lengthy exposition on my part at this time.

You will find no radical changes in the philosophy of our criminal law in this bill. There is no attempt made here to coddle criminals and wrongdoers. Nor is this bill a subject of partisanship. Its predecessor which passed the House unanimously in the Seventy-ninth Congress had been reported unanimously by the Committee on the Revision of the Laws and had received the unanimous endorsement of the Committee on the Judiciary. This bill has also been reported unanimously by the Committee on the Judiciary.

Favorable action by the House today will constitute a big step toward an orderly and systematic code of laws and will prove a boon to the bench and bar and the public generally.

Mr. COLE of New York. Mr. Speaker, I rise in opposition to the amendment only for the purpose of suggesting that to some extent the gentleman's amendment is in violation of the understanding on which these bills were submitted to the House for passage today. It was understood that they were simply codifications of existing law and undertook to make no changes in existing law.

I understand that probably the gentleman's amendment has considerable merit, and I see several members of the Committee on the Judiciary on the floor. I certainly am not in a position and have no desire to raise any criticism of procedure or objection to it, but it does seem to be a violation of the understanding under which these bills were submitted.

Mr. ROBSION. Mr. Speaker, will the gentleman yield?

Mr. COLE of New York. I yield.

Mr. ROBSION. I pointed out when I made my statement with reference to the first five bills that we considered, that

they were purely a codification. But there are some changes in this bill (H. R. 3198), I mean, for instance, when we were considering this bill the Philippine Islands were a part of the United States. We had many laws applicable to the Philippine Islands when she was a part of the United States that are no longer in force because the Philippines are no longer a part of the United States. Those laws we cut out.

We also found going through criminal law with the Department of Justice, the bar association, and the representatives of the Federal courts that Congress has passed many acts almost identical. In some of them the penalty was fixed at 5 years and in others, fixed at 6 months. We thought it wise to clarify and harmonize these.

Mr. COLE of New York. Mr. Speaker, so long as these distinguished gentlemen of the Judiciary Committee are satisfied with this procedure and with this bill, I shall not use the time of the House further.

Mr. MICHENER. Mr. Speaker, will the gentleman yield?

Mr. COLE of New York. I yield to the gentleman from Michigan.

Mr. MICHENER. Mr. Speaker, I hold in my hand a copy of the committee report which I wish the Members would look at carefully. Where there is any indication of change every one of these questions is fully explained in the report. If we start to amend now we are liable to get into trouble. I favor the bill suggested by the gentleman from Pennsylvania but I hope it will not be interjected here because it will upset the procedure which must be followed if we ever hope to accomplish this purpose.

Mr. COLE of New York. Is the amendment offered by the gentleman from Pennsylvania in the report accompanying this bill to which he has referred?

Mr. MICHENER. No; it is not.

The SPEAKER. The question is on the amendment offered by the gentleman from Pennsylvania [Mr. WALTER].

The question was taken; and the Speaker being in doubt, the House divided, and there were—ayes 38, noes 6. So the amendment was agreed to.

The bill was ordered to be engrossed and read a third time, was read the third time, and passed, and a motion to reconsider was laid on the table.

### EXTENSION OF REMARKS

Mr. STEVENSON asked and was given permission to extend his remarks in the Appendix of the RECORD and include a report to his constituents.

### REVISION OF TITLE 28, UNITED STATES CODE

The Clerk called the bill (H. R. 3214) to revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary."

The SPEAKER. Is there objection to the present consideration of the bill?

Mr. CURTIS. Mr. Speaker, reserving the right to object, this bill H. R. 3214 deals with the judiciary and judicial procedure and I wish to call attention merely to one part of it. That is the part

Case 1:09-cv-00580-PLF    Document 1-1    Filed 03/26/09    Page 73 of 143

those employees who have not left the Federal Government, and who do not do so by the time this pending legislation is enacted. The violation of a covenant does not become either moral or ethical simply because it is done by legislation.

The major purpose of the bill S. 637 is to liberalize retirement benefits. It is incompatible with that purpose to break a covenant already made with employees now working, and take away from them retirement rights which they now have. It would be far more logical to provide for the commencement of retirement benefits at the age of 60, irrespective of whether a person is voluntarily or involuntarily separated from Government service.

I have prepared two proposed amendments to the bill S. 637, which have been printed.

The first of these two amendments would do what I have just proposed: It would substitute the age of 60 years, throughout the bill, as the age at which retirement benefits are to begin. It would also cover the case of an employee who is forced to retire voluntarily at an earlier age than the retirement age, by permitting him to begin drawing a reduced annuity at the age of 55, or thereafter, computed on an actuarial basis.

I think this amendment is entirely equitable, and I should be glad to see it adopted. However, I do not intend to press it. Speaking frankly, I have been told that the offering of any amendments to this bill would result in defeating the bill, and I should not wish to be responsible for such an eventuation.

The second amendment which I sent to the clerk, and which has been printed, was not intended to be offered unless the first amendment should have been defeated. Since I have decided not to press the first amendment, neither shall I press the second.

This second amendment treats only with the discrimination and equity between voluntary and involuntary retirement; and its sole effect would be to provide that an employee who has served the number of years entitling him to receive retirement benefits can begin to receive those benefits at the age of 62, regardless of whether his retirement is voluntary or involuntary.

Employees who left their jobs with old-line Government agencies, during the time when OPA and other war agency staffs were being recruited, and took positions with the newer agencies at salary increases ranging from one-third to 40 or even 50 percent above the salaries they were previously receiving, and who now face involuntary separation from the service as the wartime agencies are liquidated, are actually getting a special bonus when their agency ceases to exist, by being allowed the full deferred annuity at the age of 62, while those who stayed on the job in the old-line agencies are told they cannot receive a deferred annuity until they reach the age of 65. The migrant workers got higher salaries all during the war years, and they will get higher retirement benefits because of those higher salaries.

Both voluntary and involuntary separation, except for cause, should receive the same treatment in the Government's retirement system. No logical argument to the contrary can be offered, and no such argument was offered at the hearings on the bill S. 637.

I have made this statement to the Senate because I had already sent forward these two amendments, and they had been printed at my request; and I felt the Senate was entitled to an explanation of why I had prepared these amendments and what they were designed to accomplish. I felt, also, that the Senate was entitled to notice that I have decided not to press these amendments.

## HOUSE BILLS REFERRED

The following bills were severally read twice by their titles, and referred, as indicated:

H. R. 84. An act to amend the Nationality Act of 1940, as amended;

H. R. 1467. An act to amend the act entitled "An act to punish acts of interference with the foreign relations, the neutrality, and the foreign commerce of the United States, to punish espionage, and better to enforce the criminal laws of the United States, and for other purposes," of June 15, 1917, as amended, and the Alien Registration Act, 1940, to increase the penalties for violation of such acts;

H. R. 1565. An act to codify and enact into positive law, title 1 of the United States Code, entitled "General Provisions";

H. R. 1566. An act to codify and enact into positive law, title 4 of the United States Code, entitled "Flag and Seal, Seat of Government, and the States";

H. R. 1567. An act to codify and enact into positive law, title 6 of the United States Code, entitled "Official and Penal Bonds";

H. R. 2083. An act to codify and enact into positive law, title 17 of the United States Code, entitled "Copyrights";

H. R. 3084. An act to codify and enact into positive law, title 9 of the United States Code, entitled "Arbitration";

H. R. 2237. An act to correct an error in section 342 (b) (8) of the Nationality Act of 1940, as amended; and

H. R. 3190. An act to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure"; to the Committee on the Judiciary.

H. R. 239. An act to further perfect the consolidation of the Lighthouse Service with the Coast Guard;

H. R. 2054. An act to amend the act of April 14, 1930, to provide increased retired pay for certain members of the former Life Saving Service;

H. R. 2331. An act to amend section 20s of the Interstate Commerce Act; and

H. R. 2684. An act to authorize the Secretary of the Treasury to grant to the mayor and City Council of Baltimore, State of Maryland, a permanent easement for the purpose of installing, maintaining, and servicing a subterranean water main in, on, and across the land of the United States Coast Guard station called Lazaretto depot, Baltimore, Md.; to the Committee on Interstate and Foreign Commerce.

H. R. 1170. An act to aid in defraying the expenses of the Seventeenth Triennial Convention of the World's Woman's Christian Temperance Union to be held in this country in June 1947; to the Committee on Foreign Relations.

H. R. 1203. An act to provide compensation to persons performing the duties of postmasters at post offices of the fourth class during annual and sick leave of the postmasters; to the Committee on Civil Service.

H. R. 1287. An act to regulate the marketing of economic poisons and devices, and for other purposes; to the Committee on Agriculture and Forestry.

H. R. 1362. An act to permit certain naval personnel to count all active service rendered under temporary appointment as warrant or commissioned officers in the United States Navy and the United States Naval Reserve, or in the United States Marine Corps and the United States Marine Corps Reserve, for purposes of promotion to commissioned warrant officer in the United States Navy or the United States Marine Corps, respectively; and

H. R. 1371. An act to authorize the Secretary of the Navy to appoint, for supply duty only, officers of the line of the Marine Corps, and for other purposes; to the Committee on Armed Services.

H. R. 1412. An act to grant to the Arthur Alexander Post, No. 58, the American Legion, of Belzoni, Miss., all of the reversionary interest reserved to the United States in lands conveyed to said post pursuant to act of Congress approved June 29, 1938;

H. R. 1876. An act to amend the act entitled "An act to provide that the United States shall aid the States in the construction of rural post roads, and for other pur-

poses," approved July 11, 1916, as amended and supplemented, and for other purposes; and

H. R. 3029. An act to provide for the acquisition of a site and for preparation of plans and specifications for a courthouse to accommodate the United States Court of appeals for the District of Columbia and the District Court of the United States for the District of Columbia; to the Committee on Public Works.

H. R. 2181. An act relating to institutional on-farm training for veterans; and

H. R. 2368. An act to amend paragraph 5 of part VII, Veterans Regulation No. 1 (a), as amended, to authorize an appropriation of $3,000,000 as a revolving fund in lieu of $1,500,000 now authorized, and for other purposes; to the Committee on Labor and Public Welfare.

H. R. 2353. An act to authorize the patenting of certain public lands to the State of Montana or to the Board of County Commissioners of Hill County, Mont., for public-park purposes; and

H. R. 3573. An act to authorize the Director of the United States Geological Survey to produce and sell copies of aerial or other photographs and mosaics, and photographic or photostatic reproductions of records, on a reimbursement of appropriations basis; to the Committee on Public Lands.

## LABOR LEGISLATION—ADDRESS BY SENATOR BALL

[Mr. BALL asked and obtained leave to have printed in the RECORD a radio address on the subject of labor legislation delivered by him on May 12, 1947, which appears in the Appendix.]

## THE PLACE OF THE UNITED STATES IN INTERNATIONAL AFFAIRS—ADDRESS BY SENATOR HATCH

[Mr. HOEY asked and obtained leave to have printed in the RECORD an address on the place of the United States in international relations, delivered by Senator HATCH, at the University of North Carolina, May 8, 1947, under the auspices of the International Relations Club of the University, which appears in the Appendix.]

## PROHIBITION OF ALCOHOLIC-BEVERAGE ADVERTISEMENTS—STATEMENT OF DR. CLINTON N. HOWARD

[Mr. CAPPER asked and obtained leave to have printed in the RECORD a statement relative to Senate bill 265, prohibiting the transportation in interstate commerce of advertisements of alcoholic beverages, made by Dr. Clinton N. Howard before the Committee on Interstate and Foreign Commerce on May 13, 1947, which appears in the Appendix.]

## UNIVERSAL MILITARY TRAINING—EDITORIAL FROM THE CHICAGO HERALD-AMERICAN

[Mr. BREWSTER asked and obtained leave to have printed in the RECORD an editorial entitled "For the Sake of Peace and Safety," published in the Chicago Herald-American of May 5, 1947, which appears in the Appendix.]

## IS CONGRESS ANTILABOR?—EDITORIAL FROM MAGAZINE AMERICA

[Mr. MYERS asked and obtained leave to have printed in the RECORD an editorial entitled "Is Congress Antilabor?" from the magazine America, for April 19, 1947, which appears in the Appendix.]

## THE STATE DEPARTMENT'S BROADCAST TO RUSSIA—ARTICLE FROM THE NEW YORK HERALD TRIBUNE

[Mr. LODGE asked and obtained leave to have printed in the RECORD an article entitled "The Henry Wallace Affair," by John Crosby, published in the New York Herald Tribune of May 9, 1947, which appears in the Appendix.]

## BUREAU OF MINES

The legislative clerk read the nomination of James Boyd, of Colorado, to be Director of the Bureau of Mines.

Mr. TAFT. Mr. President, I ask that the nomination be passed over.

The PRESIDING OFFICER. Without objection, the nomination will be passed over.

Mr. REVERCOMB. Mr. President, I join in the request that the nomination of James Boyd be Director of the Bureau of Mines be passed over. I do that not for any personal reason whatsoever, but solely on the ground of doubt as to whether this nominee is fitted for the position and whether he has had the training and experience to fill the position.

The position of Director of Mines is becoming an increasingly important one. More and more he is a director of safety in the mines of this country.

At this session we passed a law with respect to continuing mine inspection in the Bureau of Mines. That law did not contain all that I wanted it to contain, but it indicates that there is a continued interest by the Federal Bureau of Mines in mine inspection. There are approximately 820,000 miners in the Nation, and of that number approximately 400,000 are engaged in coal mining. The preservation of safety has become one of the foremost duties of the Bureau of Mines. I find that Mr. Boyd is absolutely devoid of any experience in the coal-mining industry.

I want to read two questions which he very frankly and fairly answered when he was before the committee. This question was asked by the Senator from Montana [Mr. MURRAY]:

Senator MURRAY. Mr. Boyd, what study have you given to the coal-mining industry?

Mr. BOYD. Senator, I have never worked in the coal-mining industry directly. I have, as a member of the faculty of the Colorado School of Mines, been instrumental in training men who have gone into the coal-mining industry. I have been on inspection trips myself to various coal mines in the West. As I have said, we had direction of coal operations in Europe, and I know something of the operations there. I have never myself been engaged in the coal-mining industry.

And then this question was asked by the Senator from Montana:

Senator MURRAY. You admit that you are not familiar with the conditions in the coal mines in the country, especially here in the eastern section of the country.

Mr. BOYD. Senator, I admit that I have never been employed in coal mines. I have studied the situation for many years, and I know the basic problems in the coal-mining industry.

Mr. President, in view of the fact that more than half of the miners in this country are engaged in the mining of coal, and in view of the fact that the safety of those miners has become the primary duty and interest of the Federal Bureau of Mines, I feel that it is entirely fair to raise the question of the training and competency of Mr. Boyd to fill this position; and I join in the request that the nomination go over.

The PRESIDING OFFICER. The nomination will be passed over.

The clerk will state the next nomination on the calendar.

## NATIONAL LABOR RELATIONS BOARD

The legislative clerk proceeded to read the nominations of two members and the general counsel of the National Labor Relations Board.

Mr. TAFT. Mr. President, I ask that the Labor Relations Board nominations go over.

The PRESIDING OFFICER. Without objection, it is so ordered.

## UNITED STATES PUBLIC HEALTH SERVICE

The legislative clerk proceeded to read sundry nominations in the United States Public Health Service.

Mr. TAFT. Mr. President, I ask that the nominations in the Public Health Service be confirmed en bloc.

The PRESIDING OFFICER. Without objection, the nominations are confirmed en bloc.

## THE ARMY

The legislative clerk proceeded to read sundry nominations in the Army.

Mr. TAFT. Mr. President, I ask that the nominations in the Army be confirmed en bloc.

The PRESIDING OFFICER. Without objection, the nominations are confirmed en bloc.

Mr. TAFT. The Senator from South Dakota [Mr. GURNEY] has additional nominations.

Mr. GURNEY. Mr. President, I submit the nominations of 128 captains, 307 first lieutenants, 122 lieutenant colonels, and also certain nominations in the Navy, and ask that they be confirmed en bloc.

The PRESIDING OFFICER. Without objection, the nominations are confirmed en bloc.

## POSTMASTERS

The legislative clerk proceeded to read sundry nominations of postmasters.

Mr. TAFT. Mr. President, I ask that the postmaster nominations be confirmed en bloc.

The PRESIDING OFFICER. Without objection, the postmaster nominations are confirmed en bloc.

Mr. TAFT. I ask that the President be notified of the confirmations in all of these instances.

The PRESIDING OFFICER. Without objection, the President will be notified forthwith.

## CONDITIONAL ADJOURNMENT JANUARY 2, 1948

Mr. TAFT. Mr. President, in accordance with the terms of Senate Concurrent Resolution 33, adopted earlier today, I move that the Senate do now adjourn.

The motion was agreed to; and (at 8 o'clock and 50 minutes a. m., Sunday, July 27, 1947) the Senate adjourned, the adjournment being, under the provision of Senate Concurrent Resolution 33, to January 2, 1948, at 12 o'clock meridian.

## NOMINATIONS

Executive nominations received by the Senate July 26 (legislative day of July 16), 1947:

SECRETARY OF DEFENSE

James V. Forrestal, of New York, to be Secretary of Defense.

COLLECTOR OF INTERNAL REVENUE

John T. Jarecki, of Chicago, Ill., to be collector of internal revenue for the first district of Illinois, in place of Nigel D. Campbell, resigned.

## CONFIRMATIONS

Executive nominations confirmed by the Senate July 26 (legislative day of July 16), 1947:

SECRETARY OF DEFENSE

James V. Forrestal, to be Secretary of Defense.

DEPARTMENT OF JUSTICE

Philip B. Perlman, to be Solicitor General of the United States.

DIPLOMATIC AND FOREIGN SERVICE

TO BE ENVOY EXTRAORDINARY AND MINISTER PLENIPOTENTIARY OF THE UNITED STATES OF AMERICA TO RUMANIA

Rudolf E. Schoenfeld

TO BE FOREIGN SERVICE OFFICERS OF CLASS 2, VICE CONSULS OF CAREER, AND SECRETARIES IN THE DIPLOMATIC SERVICE OF THE UNITED STATES OF AMERICA

John A. Bovey, Jr.          James R. Ruchti
Ernest E. Ramsaur, Jr.      Ralph B. Scal
Miss Louise Schaffner       Robert M. Winfree
Richard W. Sterling         Robert W. Zimmermann

TO BE FOREIGN SERVICE OFFICERS OF CLASS 5, CONSULS, AND SECRETARIES IN THE DIPLOMATIC SERVICE OF THE UNITED STATES OF AMERICA

Charles F. Baldwin
John Lammey Stewart
Ben H. Thibodeaux

TO BE FOREIGN SERVICE OFFICERS OF CLASS 3, CONSULS, AND SECRETARIES IN THE DIPLOMATIC SERVICE OF THE UNITED STATES OF AMERICA

Ralph B. Curren             Oscar E. Baskin
Jerome T. Gaspard           Philip W. Ireland

TO BE FOREIGN SERVICE OFFICERS OF CLASS 4, CONSULS, AND SECRETARIES IN THE DIPLOMATIC SERVICE OF THE UNITED STATES OF AMERICA

Turner C. Cameron,          Eric Kocher
Jr.                         William Henry Law-
Harry Conover                 rence
Robert C. Creel             Frank G. Siscoe
Ridgway B. Knight

TO BE A FOREIGN SERVICE OFFICER OF CLASS 5, A VICE CONSUL OF CAREER, AND SECRETARY IN THE DIPLOMATIC SERVICE OF THE UNITED STATES OF AMERICA

James B. Gantin.

TO BE FOREIGN SERVICE OFFICERS OF CLASS 6, VICE CONSULS OF CAREER, AND SECRETARIES IN THE DIPLOMATIC SERVICE OF THE UNITED STATES OF AMERICA

Robert A. Aylward           Francis N. Magliozzi
Howard L. Boorman           Parke D. Massey, Jr.
William D. Brewer           Everett K. Melby
Edward West Burgess         Alfred E. Moon
Stephen A. Comiskey         Curtis W. Prendergast
William B. Dunn             Herbert F. Propps
Seymour M. Finger           Lowell G. Richardson
Walter P. Houk              Jordan T. Rogers
Vernon V. Hukes             Howard René Stephenson
Joseph N. Jacque            son
Robert L. James             Kenneth P. T. Sullivan
Edward J. Krache, Jr.       Edward J. Trost
Edward T. Long              Wayland B. Waters

of those which duplicate or conflict with each other or with activities carried on by the Government of Puerto Rico. He shall report through the Secretary of the Interior to the President and to Congress concerning the administration of all Federal civilian functions and activities in Puerto Rico, specifying the recommendations made by him to the Federal agencies and the results of such recommendations. He shall advise the Secretary of the Interior, who shall advise the Bureau of the Budget and the Congress with respect to all appropriation estimates submitted by any civilian department or agency of the Federal Government to be expended in or for the benefit of Puerto Rico. He shall confer with the Governor of Puerto Rico with respect to the correlation of activities of Federal and insular agencies and all plans and programs and other matters of mutual interest.

"'(3) The President of the United States may, from time to time, after hearing, promulgate Executive orders expressly excepting Puerto Rico from the application of any Federal law, not expressly declared by Congress to be applicable to Puerto Rico, which as contemplated by section 9 of this act is inapplicable by reason of local conditions. The Coordinator of Federal Agencies may, from time to time, make recommendations to the President for such purpose. Any such recommendation shall show the concurrence or dissent of the Governor of Puerto Rico.

"'(4) The Coordinator of Federal Agencies, in the name of the President of the United States, shall have authority to request from the Governor of Puerto Rico, and the Governor shall furnish to him all such reports pertaining to the affairs, conditions, and government of Puerto Rico as the Coordinator of Federal Agencies shall from time to time request for transmission to the President through the Secretary of the Interior.

"'(5) The President of the United States shall prescribe such rules and regulations as may be necessary to carry out the provisions of this section.'

"SEC. 7. Section 3 of said Organic Act (48 U. S. C. sec. 737) is amended by adding at the end thereof the following new paragraph:

"'The rights, privileges, and immunities of citizens of the United States shall be respected in Puerto Rico to the same extent as though Puerto Rico were a State of the Union and subject to the provisions of paragraph 1 of section 2 of article IV of the Constitution of the United States.'"

The SPEAKER. Is there objection to the request of the gentleman from Michigan?

There was no objection.

The Senate amendments were concurred in.

A motion to reconsider was laid on the table.

RECESS

The SPEAKER. The Chair declares the House in recess at this time subject to the call of the Chair.

Accordingly (at 12 o'clock and 10 minutes a m), the House stood in recess, subject to the call of the Chair.

AFTER RECESS

The recess having expired, the House was called to order by the Speaker at 12 o'clock and 31 minutes a. m.

FURTHER MESSAGE FROM SENATE

A further message from the Senate, by Mr Carrell, one of its clerks, announced that the Senate agrees to the amendment

of the House to a concurrent resolution of the Senate of the following title:

S. Con. Res. 33. Concurrent resolution providing for the adjournment of the two Houses of Congress until January 2, 1948.

SENATE ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED

The SPEAKER announced his signature to enrolled bills and joint resolutions of the Senate of the following titles:

S. 609. An act conferring jurisdiction upon the United States District Court for the Western District of Arkansas to hear, determine, and render judgment upon any claims arising out of the deaths of Norman Ray Pedron and Carl Franklin Morris;

S. 758. An act to promote the national security by providing for a Secretary of Defense; for a National Military Establishment; for a Department of the Army, a Department of the Navy, and a Department of the Air Force; and for the coordination of the activities of the National Military Establishment with other departments of the Government concerned with the national security;

S. 794. An act to authorize the sale of a small tract of land on the Cherokee Indian Reservation, N. C;

S. 892. An act for the payment of claims of one Fidelity Trust Co., of Baltimore, Md., and others, covered by findings of fact made by the United States Court of Claims, dated June 5, 1944, and contained in Senate Document No. 229, Seventy-eighth Congress, second session;

S. 907. An act to provide for the orderly transaction of the public business in the event of the death, resignation, or separation from office of regional disbursing officers of the Treasury Department;

S. 1070. An act to provide for the cancellation of the capital stock of the Federal Deposit Insurance Corporation and the refund of moneys received for such stock, and for other purposes;

S. 1181. An act for the relief of Robert F. Parks;

S. 1350. An act to authorize relief of accountable officers of the Government, and for other purposes;

S. 1361. An act to amend the United States Housing Act of 1937 so as to permit loans, capital grants, or annual contributions for low-rent housing and slum-clearance projects where construction costs exceed present cost limitations upon condition that local housing agencies pay the difference between cost limitations and the actual construction costs;

S. 1463. An act to amend section 12 of the Immigration Act of 1917;

S. 1480. An act authorizing the conveyance to the State of Delaware of a portion of Pea Patch Island;

S. 1494. An act to amend section 14 of the Veterans' Preference Act of June 27, 1944;

S. 1605. An act authorizing the Secretary of Agriculture to convey certain lands in Boise, Idaho, to the Boise Chamber of Commerce;

S. 1582. An act relating to the sale of Paxon Field, Duval County, Fla.;

S. 1600. An act to amend the District of Columbia rent-control law so as to provide that schools and universities may recover possession of housing accommodations in certain cases:

S. 1633 An act to authorize the attendance of the Marine Band at the National Convention of the American Legion to be held in New York, N. Y, August 28 to 31, 1947, and the National Convention of the Veterans of Foreign Wars of the United States to be held in Cleveland, Ohio, September 4 to 9 1947;

S. 1661 An act to provide additional inducements to physicians, surgeons, and den-

tists to make a career of the United States military, naval, and public-health services, and for other purposes;

S. J. Res. 112. Joint resolution to establish a commission to formulate plans for the erection, in Grant Park, Chicago, Ill., of a Marine Corps memorial.

S. J. Res. 130. Joint resolution relating to safety in bituminous-coal and lignite mines of the United States;

S. J. Res. 138. Joint resolution to provide for return of Italian property in the United States, and for other purposes, and

S. J. Res. 148. Joint resolution to authorize the temporary continuation of regulation of consumer credit.

ADJOURNMENT

Mr. HALLECK Mr. Speaker, I move that the House do now adjourn.

The motion was agreed to; accordingly (at 12 o'clock and 32 minutes a m.), pursuant to Senate Concurrent Resolution 33, the House adjourned until Friday, January 2, 1948, at 12 o'clock noon.

EXECUTIVE COMMUNICATIONS, ETC.

Under clause 2 of rule XXIV, executive communications were taken from the Speaker's table and referred as follows:

993. A letter from the Attorney General, transmitting request for withdrawal of the case of Juan Hernandez Ayala from those 139 cases involving suspension of deportation referred to in letter of June 16, 1947; to the Committee on the Judiciary.

994. A letter from the Clerk, House of Representatives, transmitting the motion to dismiss of the contestee in the contested election case of Lawrence Michael against Howard W. Smith for a seat in the House of Representatives from the Eighth Congressional District of the State of Virginia (H. Doc. No. 418); to the Committee on House Administration and ordered to be printed.

995. A letter from the Executive Secretary, Air Coordinating Committee, transmitting a draft of a proposed bill to encourage the development of a safe United States flag international air transportation system properly adapted to the present and future needs of foreign commerce of the United States, of the postal service, and of the national defense, and to meet certain of the obligations incumbent upon the United States by virtue of its membership in the International Civil Aviation Organization, by providing for the transfer, establishment, operation, administration, and maintenance of airport and airway property located outside the continental United States, for the training of foreign nationals in aviation activities, and for other purposes: to the Committee on Interstate and Foreign Commerce.

996. A letter from the Acting Secretary of Commerce, transmitting a draft of a proposed bill to provide basic authority for the performance of certain functions and activities of the Department of Commerce, and for other purposes; to the Committee on Interstate and Foreign Commerce.

997 A letter from the Acting Secretary of Commerce, transmitting a draft of a proposed bill to provide basic authority for certain functions and activities of the Weather Bureau, and for other purposes, to the Committee on Interstate and Foreign Commerce

998. A letter from the Secretary of the Interior, transmitting interim report on the status of investigations of potential water resource developments in the Colorado River Basin in Arizona, California, Colorado, Nevada, New Mexico, Utah, and Wyoming (H. Doc. No. 419); to the Committee on Public Lands and ordered to be printed, with illustrations.

be established by legislation now pending in the Congress (with an accompanying paper); to the Committee on Appropriations and ordered to be printed.

**SUPPLEMENTAL ESTIMATE, FEDERAL WORKS Agency (S. Doc. No. 176)**

A communication from the President of the United States, transmitting a supplemental estimate of appropriation for the Federal Works Agency, amounting to $15,-000,000, fiscal year 1948, and a proposed contract authorization in the amount of $19,-000,000 (with an accompanying paper); to the Committee on Appropriations and ordered to be printed.

**SUPPLEMENTAL ESTIMATE, SEVERAL EXECUTIVE DEPARTMENTS AND INDEPENDENT OFFICES (S. Doc. No. 177)**

A communication from the President of the United States, transmitting an estimate of appropriation for the several executive departments and independent offices to pay claims for damages, audited claims, and judgments rendered, against the United States, as provided by various laws, in the amount of $3,303,455.55, together with an indefinite amount as may be necessary to pay interest and costs (with accompanying papers); to the Committee on Appropriations and ordered to be printed.

**PETITIONS AND MEMORIALS**

Petitions, etc., were laid before the Senate and referred as indicated:

By the PRESIDENT pro tempore:

A letter in the nature of a petition from Laura B. Frisk, of New York, N. Y., relating to Flag Day; to the Committee on the Judiciary.

A telegram in the nature of a petition from Walter L. M. Hodge, chairman, Municipal Committee, St. Croix, V. I., praying for the enactment of House bill 5904, to incorporate the Virgin Islands Corporation; ordered to lie on the table.

A resolution adopted by the forty-second annual convention of the Maryland State and District of Columbia Federation of Labor, at Washington, D. C., protesting against the enactment of the Mundt-Nixon un-American activities bill; to the Committee on the Judiciary.

A memorial of sundry citizens of the State of Washington, remonstrating against the enactment of the so-called Mundt-Nixon un-American activities bill; to the Committee on the Judiciary.

**REPORTS OF COMMITTEES**

The following reports of committees were submitted:

By Mr. BUTLER, from the Committee on Interior and Insular Affairs:

S. 2080. A bill to provide for the establishment of the Philadelphia National Historical Park, and for other purposes; with amendments (Rept. No. 1622); and

H. R. 6090. A bill authorizing the Secretary of the Interior to issue patents for lands held under color of title; without amendment (Rept. No. 1618).

By Mr. WILEY, from the Committee on the Judiciary:

H. R. 3190 A bill to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure;" with amendments (Rept. No. 1620); and

H. R. 6112. A bill to codify and enact into law title 3 of the United States Code, entitled "The President"; without amendment (Rept. No 1623).

By Mr. COOPER, from the Committee on the Judiciary:

S. 1784. A bill to amend the Trading With the Enemy Act; without amendment (Rept. No. 1619).

By Mr. SALTONSTALL, from the Committee on Appropriations:

H. R. 6772. A bill making appropriations for the Department of the Navy and the naval service for the fiscal year ending June 30, 1949, and for other purposes; with amendments (Rept. No. 1621).

By Mr. BYRD, from the Committee on Armed Services:

S. 2036. A bill to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institute, a State institution; with amendments (Rept. No. 1634).

**PROTECTION AGAINST LYNCHING—REPORT OF A COMMITTEE**

Mr. FERGUSON. Mr. President, from the Committee on the Judiciary, I ask unanimous consent to report an original bill, to provide for the better assurance of the protection of persons within the several States from lynching, and for other purposes, and I submit a report (No. 1625) thereon. The report is short, and I request that it be printed in the RECORD.

The PRESIDENT pro tempore. Without objection, the bill and the report will be received, and the bill will be placed on the calendar; and, without objection, the report will be printed in the RECORD.

The bill (S. 2860) to provide for the better assurance of the protection of persons within the several States from lynching, and for other purposes, was received, read twice by its title, and ordered to be placed on the calendar.

The report was ordered to be printed in the RECORD, as follows:

The Committee on the Judiciary, which has had under consideration various bills relating to the protection of persons within the several States from lynching, report favorably a bill to provide for the better assurance of the protection of persons within the several States from lynching, and for other purposes, with the recommendation that the bill do pass.

The purpose of the bill is self-explanatory in the title statement in that it is designed to provide for the better assurance of the protection of persons from lynching.

**STATEMENT**

Section 1 of the bill is self-explanatory.

Section 2 of the bill, which contains the definitions, might be considered one of the most important parts of the measure.

The bill defines lynching as an exercise or an attempt to exercise by an assembly of two or more persons, without authority of law, by action of physical force against person or property, of any power of correction or punishment over any persons in the custody of any peace officer, or suspected of, charged with, or convicted of the commission of any criminal offense with the purpose or consequence of preventing the apprehension or trial or punishment by law of such person, or of imposing a punishment. The essence of the offense is the depriving of the person accused or suspected of crime of a trial in the manner provided by law and, if such person is convicted of, punishment in the manner provided by law.

Section 3 of the bill makes it a crime punishable by imprisonment and/or a fine for Federal or State officers to conspire with members of a lynching mob in the prosecution of a lynching. The constitutionality of the imposition of Federal sanctions against Federal or State officers for their participation in a lynching will not be discussed in this section. In a later paragraph it is pointed out that such sanctions are valid. The question here involves the validity of Federal sanctions imposed against members of the lynch mob when they conspire with the Federal or State officers. It

seems to be well-settled law that any Federal sanctions against the individual lynchers (aiders, abettors, etc.) are invalid.

It appears well settled that under the fourteenth amendment to the Constitution, Congress does not have the authority to enact sanctions against private individuals or individual actions. (The Civil Rights cases (109 U. S. 3); U. S. v. Harris (106 U. S. 629); Slaughterhouse cases (83 U. S. 36); U. S. v. Cruikshank (92 U. S. 542); Strauder v. West Virginia (100 U. S. 303); Virginia v. Rives (100 U. S. 313); Hodges v. U. S. (203 U. S.); Corrigan v. Buckley (271 U. S. 323).)

It is the opinion of the committee that those individuals who conspire with Federal or State officers for the purpose of lynching may be held guilty of the crime or conspiracy when, in effect, they could not be held guilty of lynching. It is sufficient if one of the parties to a conspiracy is legally capable of committing the offense, while the other party may not have that capacity (Chadwick v. U. S. (141 F. 225); Olsen v. U. S. (167 F. 054, 85 O. C. A. 113, certiorari denied, 207 U. S. 598).). A person may be guilty of conspiring although incapable of committing the objective offense (Farnsworth v. Zerbst (98 F. 2d 541); U. S. v. Rabinowich (238 U. S. 78, 86); U. S. v. Holte (236 U. S. 140, 144); Jelke v. U. S. (255 F. 265); Israel v. U. S. (3 F. 2d 743); U. S. v. Lyman (190 F. 414); U. S. v. Socony Vacuum Oil Company (310 U. S. 150).).

Section 4 punishes State officers and employees for their failure to prevent a lynching. The fourteenth amendment is directed toward the action of the States, including the action of State officers. Any action by the officers of the State which violates the prohibition upon State action contained in the fourteenth amendment is subject to being imposed by the United States (Ex Parte Virginia (100 U. S. 339); Screws v. U. S. (325 U. S. 91)). The right not to be deprived by a State (or State officers) of a trial by the State, or of the punishment prescribed by law, is inherent in due process of law (Screws v. U. S., supra; Crews v. U. S. (160 F. 2d. 746); U. S. v. Classic (313 U. S. 299)).

Section 5 of the bill penalizes Federal officers and employees for their willful failure to prevent a lynching. Congress has, many times, created penalties upon Federal officers for a violation of their duties. The creation of the sanction in itself creates a duty on a Federal officer not to commit it when would invoke the imposition of the penalty. (See the offenses defined and punished in U. S. Code, title 18, secs. 171 et seq.)

Section 6 defines the duty of the Attorney General of the United States under this act. It imposes a duty upon him to cause an investigation to be made to determine whether there has been a violation of the bill, whenever a lynching occurs, and information on oath is submitted to him that any officer or employee of the United States or of a State, or any governmental subdivision thereof, is guilty of a criminal offense under section 4 or section 5 of the bill. This section merely spells out a duty which normally rests with the Attorney General, the chief law enforcement officer of the United States, to enforce, and prosecute violations of, all criminal laws of the United States. It is not intended to restrict the Attorney General in the enforcement of the act but to make it mandatory upon him to cause the investigation prescribed if the information on oath is submitted to him.

Section 7 provides for civil actions for damages by an individual who is lynched (or his next of kin) against any person violating section 3, section 4, or section 5 of the act with respect to that lynching.

The validity of this section rests upon the same constitutional bases and cases cited under the foregoing sections 3, 4, or 5. Obviously, if Congress has the authority to make certain acts a crime, punishable by fines and/or imprisonment, it also has the

ter, east half of the northwest quarter, the east half of the east half of the west half of the northwest quarter, section 17, lots 1, 2, and 3, section 18, township 7 south, range 28 east, Montana principal meridian, containing approximately 626 acres.

The amendments were agreed to.

The bill was ordered to be engrossed for a third reading, read the third time, and passed.

## IMPROVEMENT OF POST OFFICE, LOS ANGELES, CALIF.

The bill (H. R. 5750) to provide for the extension and improvement of post-office facilities at Los Angeles, Calif., and for other purposes, was considered, ordered to a third reading, read the third time, and passed.

## LEASE OF LAFAYETTE BUILDING, WASHINGTON, D. C.

The bill (S. 2706) to authorize the Federal Works Administrator to lease for commercial purposes certain space in the building located at 811 Vermont Avenue NW., Washington, D. C., commonly known as the Lafayette Building, was considered, ordered to be engrossed for a third reading, read the third time, and passed, as follows:

*Be it enacted, etc.,* That the Federal Works Administrator is hereby authorized to lease for commercial purposes for periods not exceeding 10 years and upon such terms and conditions as he may deem to be in the public interest, such space in the building located at 811 Vermont Avenue NW., Washington, D. C., commonly known as the Lafayette Building, as was leased by the Reconstruction Finance Corporation for commercial purposes on July 30, 1947, the date title to such building was transferred from the Reconstruction Finance Corporation to the United States of America by section 306, title III, Public Law 269, Eightieth Congress. The rentals received pursuant to this act may be deposited into a common fund account or accounts in the Treasury, and notwithstanding the provisions of the act of June 30, 1932 (40 U. S. C. 303b), shall be available to pay the cost of maintenance, upkeep, and repair of the space so leased and for the establishment of necessary reserves therefor: *Provided,* That except for such necessary reserves, the unobligated balances of rentals so deposited into the Treasury shall be covered at the end of each fiscal year into miscellaneous receipts.

## ISSUANCE OF PATENTS FOR CERTAIN LANDS

The bill (H. R. 6090) authorizing the Secretary of the Interior to issue patents for lands held under color of title was considered, ordered to a third reading, read the third time, and passed.

## REVISION AND CODIFICATION OF TITLE 18, UNITED STATES CODE

The Senate proceeded to consider the bill (H. R. 3190) to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure," which had been reported from the Committee on the Judiciary with amendments.

The PRESIDENT pro tempore. Is there objection to present consideration of the bill?

There being no objection, the Senate proceeded to consider the bill.

The PRESIDENT pro tempore. The bill contains a large volume of amendments. Is there objection to the consideration of the amendments en bloc?

Mr. TAFT. Mr. President, may we have an explanation of the bill? This is a long bill, containing 475 pages.

Mr. WILEY. Mr. President, I assure the distinguished Senator I shall not take much time, and that we shall not spend much time on the bill.

The House has sent to the Senate the revision of title 18. It was my privilege and duty to appoint a very distinguished subcommittee to go over the matter. The subcommittee was headed by the Senator from Missouri [Mr. DONNELL].

The purpose of the bill is to codify and revise the laws relating to Federal crimes and criminal procedure.

With the amendments proposed by the committee the bill includes all pertinent laws to January 5, 1948, and is made effective September 1, 1948.

The bill makes it easy to find the criminal statutes because of the arrangement, numbering, and classification. The original intent of Congress is preserved. A uniform style of statutory expression is adopted. The new Federal Rules of Criminal Procedure are keyed to the bill and are reflected in part II of title 18.

Obsolete and executed provisions are eliminated. Uncertainty will be ended and there will no longer be any need to examine the many volumes of the Statutes at Large as the bill, upon enactment, will itself embody the substantive law which will thus appear in full in the United States Code.

It is one of the constructive things we have been endeavoring to accomplish, and I think the bill accomplishes it. I should like to see the amendments adopted en bloc. If any further specific information is desired, I shall ask the distinguished senior Senator from Missouri to explain it, but I think, in view of the fact that the work has been gone into by some of the best experts in codification in America, in conjunction with the House committee, the committee has proposed a number of amendments, most of which are insubstantial, some of which are substantial. They will necessitate, I assume, if we pass the bill, a conference with the House. I hope the measure can be disposed of without a great deal of debate. As I said, it is along the line of bringing together the Federal criminal statutes into one place, so as to avoid the necessity of going from one volume to another in order to ascertain what the criminal law of the Nation is.

The PRESIDENT pro tempore. The Senator's time has expired. Is there objection to the consideration of the amendments en bloc?

There being no objection, the amendments were considered and agreed to en bloc.

The amendments agreed to en bloc are as follows:

Page 3, following "13. Laws of States adopted for areas within Federal jurisdiction." Insert: "14. Applicability to Canal Zone."

Page 5, line 4, after "States" insert: ", except the Canal Zone."

Page 8, after line 15, insert:

"§ 14. Applicability to Canal Zone.

"In addition to the sections of this title which by their terms apply to and within the Canal Zone, the following sections of this title shall likewise apply to and within

the Canal Zone: 6, 8, 11, 331, 371, 472, 474, 478, 479, 480, 481, 482, 483, 485, 488, 489, 490, 459, 502, 506, 594, 595, 598, 600, 601, 604, 605, 608, 611, 612, 703, 756, 701, 792, 793, 794, 735, 796, 797, 915, 917, 951, 953, 954, 956, 957, 958, 959, 960, 961, 962, 963, 964, 965, 966, 967, 1017, 1073, 1301, 1364, 1383, 1542, 1543, 1544, 1546, 1584, 1621, 1622, 1761, 1821, 1914, 2151, 2152, 2153, 2154, 2155, 2156, 2199, 2231, 2234, 2235, 2274, 2275, 2277, 2384, 2385, 2388, 2389, 2390, 2421, 2422, 2423, 2424, 3059, 3105, 3109."

Page 91, strike out "610. Contributions by national banks or corporations." and insert: "610. Contributions or expenditures by national banks, corporations, or labor organizations."

Page 104, strike out lines 4 to 21, inclusive, and insert:

"§ 610. Contributions by national banks, corporations, or labor organizations.

"It is unlawful for any national bank, or any corporation organized by authority of any law of Congress, to make a contribution or expenditure in connection with any election to any political office, or in connection with any primary election or political convention or caucus held to select candidates for any political office, or for any corporation whatever, or any labor organization to make a contribution or expenditure in connection with any election at which Presidential and Vice Presidential electors or a Senator or Representative in, or a Delegate or Resident Commissioner to Congress are to be voted for, or in connection with any primary election or political convention or caucus held to select candidates for any of the foregoing offices, or for any candidate, political committee, or other person to accept or receive any contribution prohibited by this section.

"Every corporation or labor organization which makes any contribution or expenditure in violation of this section shall be fined not more than $5,000; and every officer or director of any corporation, or officer of any labor organization, who consents to any contribution or expenditure by the corporation or labor organization, as the case may be, in violation of this section shall be fined not more than $1,000 or imprisoned not more than 1 year, or both.

"For the purposes of this section 'Labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exist for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

Page 117, line 8, strike out all after "receiver," down to and including "System," in line 15.

Page 118, line 18, strike out all after "care," down to and including "institution," in line 23.

Page 134, line 19, after "both" insert:"; or if he negligently suffers such person to escape, he shall be fined not more than $500 or imprisoned not more than 1 year, or both."

Page 156, after line 12, insert: "While any foreign government is a member both of the International Monetary Fund and of the International Bank for Reconstruction and Development, this section shall not apply to the sale or purchase of bonds, securities, or other obligations of such government or any political subdivision thereof or of any organization or association acting for or on behalf of such government or political subdivision, or to making of any loan to such government, political subdivision, organization, or association."

Page 367, strike out lines 15 to 18, inclusive, and insert: "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.

"Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof."

Page 415, line 10, after "Zone," insert "District of Columbia."

Page 415, after line 17, insert:

"Nothing in this title, anything therein to the contrary notwithstanding, shall in any way limit, supersede, or repeal any such rules heretofore prescribed by the Supreme Court."

Page 416, after line 21, insert:

"Nothing in this title, anything therein to the contrary notwithstanding, shall in any way limit, supersede, or repeal any such rules heretofore prescribed by the Supreme Court."

Page 448, lines 24 and 25, strike out "the Revised Statutes (1 U. S. C., sec. 1)" and insert: "Title 1 of the United States Code."

Page 456, strike out lines 3 to 21, inclusive.

Page 456, line 22, strike out "19" and insert "18."

Page 457, line 3, strike out "20" and insert "19."

Page 457, strike out lines 8 to 15, inclusive, and insert:

"Sec. 20. This act shall take effect September 1, 1948."

Page 457, line 16, strike out "22" and insert "21."

Page 465, about middle of page, strike out:

| "July 3........| 1281 | 4, 5| 40|755, 756| 15| | 705, 706" |

Page 467, below middle of page, strike out:

| "June 20.......| 634| | 4| 49| 1556| 16| | 705 |
| Do.......| 636| 1, 2| 49| 1557| 22| | 243" |

And insert:

| "June 20.......| 635| 1, 2| 49| 1557| 22| | 243" |

Page 470, after

| "June 8.........| 178| 1, 2, 3| 59|234, 235| 18| 241, 241a, 242" |

insert:

| "July 31.......| 339| | 9| 59| 511|6 31| | 804b" |

Page 471, at the end of the schedule of repeals on this page, insert:

"1947—

| Apr. 16.| 39|.......| 61| | 62| 18| | 411 |
| May 16.| 73|.......| 61| | 97| 18| | 744b-1 |
| June 21.| 111|.......| 61| | 134| 18| | 244 |
| June 23.| 120| 304| 61| | 169| 2| | 251" |

The amendments were ordered to be engrossed and the bill to be read a third time.

The bill was read the third time and passed.

Mr. WILEY. Mr. President, I move that the Senate insist upon its amendments, request a conference with the House thereon, and that the Chair appoint the conferees on the part of the Senate.

The motion was agreed to.

The PRESIDENT pro tempore. The Chair will presently name the conferees.

Mr. WILEY subsequently said: Mr. President, I have been credibly informed that the House will accept our amendments. In view of that information, I ask that the action taken to rescind on my motion to appoint conferees in respect to the bill (H. R. 3190) be rescinded.

The PRESIDENT pro tempore. Without objection, it is so ordered.

## AMENDMENT OF TRADING WITH THE ENEMY ACT

The bill (S. 2764) to amend the Trading With the Enemy Act was announced as next in order.

The PRESIDENT pro tempore. Is there objection to the present consideration of the bill?

There being no objection, the Senate proceeded to consider the bill.

Mr. COOPER. Mr. President, I offer an amendment.

Mr. PEPPER. I should like an explanation of the bill.

The PRESIDENT pro tempore. The Senator from Kentucky offers an amendment which the clerk will state.

The CHIEF CLERK. On page 3, line 14, after the word "buy", it is proposed to strike out "July 31, 1949", and insert "April 30, 1949."

The PRESIDENT pro tempore. The question is on agreeing to the amendment submitted by the Senator from Kentucky.

Mr. PEPPER. Mr. President, I request an explanation of the bill.

Mr. COOPER. Mr. President, the bill proposes to amend section 32 of the Trading With the Enemy Act. That section, among other things, authorizes the Alien Property Custodian to return property to an alien if he deems that the alien was a persecutee. It has developed that some of these persons to whom property would be returned are dead, and there are no known heirs. In such case I assume the property would escheat to this country.

The bill provides that the President may designate approved organizations under certain limitations and conditions, and that such organizations may receive the property of a deceased persecutee alien and use it for the benefit of the group to which the persecutee belonged. I think it is a very humane measure. It was introduced by the Senator from Ohio [Mr. TAFT].

The PRESIDENT pro tempore. The question is on agreeing to the amendment offered by the Senator from Kentucky.

The amendment was agreed to.

The bill was ordered to be engrossed for a third reading, read the third time, and passed, as follows:

Be it enacted, etc., That section 32 of the Trading With the Enemy Act of October 6, 1917 (40 Stat. 411), as amended, is hereby further amended by adding at the end thereof the following subsection:

"(h) The President may designate one or more organizations as successors in interest to deceased persons, who, if alive, would be eligible to receive returns under the provisions of subdivision (C) or (D) of subsection (a) (2) hereof. An organization so designated shall be deemed a successor in interest by operation of law for the purposes of subsection (a) (1) hereof. Return may be made to an organization so designated (a) prior to July 31, 1949, or 2 years from the vesting of the property or interest in question, whichever is later, if the President or such officer or agency as he may designate determines from all relevant facts of which he is then advised that it is probable that the former owner is dead and is survived by no person eligible under section 32 to claim as successor in interest by inheritance, devise, or bequest; and (b) after such later date, if no claim for the return of the property or interest is pending.

"No return may be made to an organization so designated unless it files a claim on or before January 1, 1952, and unless it gives assurances satisfactory to the President that (1) it will use the property or interest returned to it for the rehabilitation and resettlement of persons who suffered substantial deprivation of liberty or failed to enjoy the full rights of citizenship within the meaning of subdivisions (C) and (D) of subsection (a) (2) hereof, by reason of their membership in the political, racial, or religious group of which the former owner was a member; (11) it will transfer, at any time within 2 years from the time that return is made,

such property or interest or the equivalent value thereof to any person designated as entitled thereto pursuant to this act by the President or such officer or agency; and (iii) it will make such reports and permit such examination of its books as the President or such officer or agency may from time to time require.

"The filing of a claim by an organization so designated shall not bar the payment of debt claims under section 34 of this act."

Sec. 2. The first sentence of section 33 of the Trading With the Enemy Act of October 6, 1917 (40 Stat. 411), as amended, is hereby further amended to read as follows:

"Sec. 33. No return may be made pursuant to section 9 or 32 unless notice of claim has been filed, (a) in the case of any property or interest acquired by the United States prior to December 18, 1941, by August 9, 1948, or (b) in the case of any property or interest acquired by the United States on or after December 18, 1941, by April 30, 1949, or 2 years from the vesting of the property or interest in respect of which the claim is made, whichever is later: Provided, That return may be made to successor organizations designated pursuant to section 32 (h) hereof if notice of claim is filed by January 1, 1952."

## PHILADELPHIA NATIONAL HISTORICAL PARK

The bill (S. 2080) to provide for the establishment of the Philadelphia National Historical Park, and for other purposes, was announced as next in order.

The PRESIDENT pro tempore. This bill is identical with Calendar No. 1764, House bill 5053.

Mr. BUTLER. Mr. President, I ask that the House bill be substituted for Senate bill S. 2080, and that the Senate proceed to the consideration of the House bill.

The PRESIDENT pro tempore. Is there objection to the substitution of the House bill for the Senate bill and its present consideration?

There being no objection, the bill (H. R. 5053) to provide for the establishment of the Independence National Historical Park, and for other purposes, was considered, ordered to a third reading, read the third time, and passed.

The PRESIDENT pro tempore. Without objection, Senate bill 2080 is indefinitely postponed.

## CODIFICATION OF TITLE 3 OF THE UNITED STATES CODE

The bill (H. R. 6412) to codify and enact into law title 3 of the United States Code, entitled "The President," was considered, ordered to a third reading, read the third time, and passed.

## TRANSFER OF CERTAIN ARMY EQUIPMENT TO NEW MEXICO MILITARY INSTITUTE

The Senate proceeded to consider the bill (S. 2698) to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institute, a State institution, which had been reported from the Committee on Armed Services, with amendments, on page 1, line 4, after the word "authorized", to insert "upon the request of the institution"; in line 7, after the word "institution", to insert "to Cornell University, Ithaca, N. Y., to Norwich University, Norwich, Vt., and to Virginia Military Institute, Lexington, Va."; on page 2, line 1, before the word

BROOKS] may be excused as a conferee on the bill, S. 2655.

The SPEAKER. Is there objection to the request of the gentleman from New York?

There was no objection.

The SPEAKER. The Chair appoints the gentleman from North Carolina [Mr. DURHAM] to fill the vacancy.

The Clerk will notify the Senate of the action of the House.

PROVIDING FOR WATER POLLUTION CONTROL ACTIVITIES

Mr. DONDERO. Mr. Speaker, I call up the conference report on the bill (S. 418) to provide for water pollution control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes, and ask unanimous consent that the statement of the managers on the part of the House be read in lieu of the report.

The Clerk read the title of the bill.

The SPEAKER. Is there objection to the request of the gentleman from Michigan?

There was no objection.

The Clerk read the statement.

The conference report and statement are as follows:

### CONFERENCE REPORT

The committee of conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (S. 418) "An Act to provide for water pollution control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes", having met, after full and free conferences, have agreed to recommend and do recommend to their respective Houses as follows:

That the Senate recede from its disagreement to the amendment of the House, and agree to the same with amendments, as follows:

Page 3, line 12, of the amendment of the House, strike out the words "hereinafter declared to be a public nuisance".

Page 3, lines 13 and 14, of the amendment of the House, strike out the words "such interstate water and tributaries thereof", and insert the following words "surface and underground waters".

Page 9, line 11, of the amendment of the House, strike out the figure "$300,000" and insert the figure "$250,000".

Page 11, line 25, of the amendment of the House, strike out the figure "$30,000,000" and insert the figure "$22,500,000".

Page 12, line 25 of the amendment of the House, after the words "study of" insert the word "water", and strike out the word "of" after the word "pollution".

Page 13, line 1, of the amendment of the House, strike out the words "interstate waters".

Page 13, line 2, of the amendment of the House, before the word "pollution" insert the word "water", and after the word "pollution" strike out the words "of interstate waters".

Page 14, line 17 through line 23, of the amendment of the House, strike out all after the words "Sec. 9. (a)" and insert the following: "Five officers may be appointed to grades in the Regular Corps of the Public Health Service above that of senior assistant, but not to a grade above that of director; but officers so appointed pursuant to the purposes of this Act. Officers appointed pursuant to this subsection in any fiscal year shall not be counted as part of the 10 per centum of the original appointments authorized to be made

in such year under section 207 (b) of the Public Health Service Act; but they shall for all other purposes be treated as though appointed pursuant to such section 207 (b)."

And the House agree to the same,

GEO. A. DONDERO,
J. HARRY MCGREGOR,
PAUL CUNNINGHAM,
JAMES D. AUCHINCLOSS,
WILL M. WHITTINGTON,
JOHN A. BLATNIK,
TOM PICKETT,
*Managers on the Part of the House.*

GEO. W. MALONE,
CHAPMAN REVERCOMB,
JOHN L. MCCLELLAN,
*Managers on the Part of the Senate.*

### STATEMENT

The managers on the part of the House at the conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (S. 418) submit the following statement in explanation of the effect of the action agreed upon and recommended in the accompanying conference report as to each of such amendments, namely:

The first two amendments apply to Sec. 2 (n), lines 4, 5, and 8, on page 18 of the bill. The language substituted more clearly defines the authority of the Surgeon General with respect to the preparation and adoption of comprehensive programs for eliminating or reducing the pollution of surface and underground waters.

The amendment to Sec. 5 (line 3, page 25), increases by $50,000 the maximum individual loan which may be made under the Act.

The amendment to Sec. 7 (line 18, page 27), increases by $3,500,000 the maximum authorized to be appropriated to the Federal Security Agency for each of the five fiscal years during the period beginning July 1, 1948, and ending June 30, 1953, for the purpose of making loans under Section 5 of the Act.

The purpose of the amendments to Sec. 8 (b) (lines 16, 17, and 18, page 28), is to expand the service of the Public Health Service station authorized to be erected at Cincinnati, Ohio, in connection with research and study of water pollution and the training of personnel in work related to control of water pollution.

The amendment with reference to Sec. 9 (a), (lines 10 to 16, page 30), substitutes a new Sec. 9 (a), which is required for the purpose set forth in the following letter:

FEDERAL SECURITY AGENCY,
*Washington; Zone 25, May 14, 1948.*

DEAR MR. CHAIRMAN: This is in reference to S. 418, which your Committee reported out, with amendments on April 30, 1948.

Section 9 (a) of S. 418 as reported authorizes additional appointments to be made at higher grades in the Regular Corps of the Public Health Service pursuant to section 208 (b) of the Public Health Service Act, is now contained in section 207 (b) of that Act, in a somewhat revised form. In order, therefore, to accomplish the purposes for which section 9 (a) of S. 418 was intended, the following is suggested in lieu of such section 9 (a):

(a) Five officers may be appointed to grades in the Regular Corps of the Service above that of senior assistant, but not to a grade

above that of director, to assist in carrying out the purposes of this Act. Officers appointed pursuant to this subsection in any fiscal year shall not be counted as part of the 10 per centum of the original appointments authorized to be made in such year under section 207 (b) of the Public Health Service Act; but they shall for all other purposes be treated as though appointed pursuant to such section 207 (b).

The short time available for necessary action on the amendment suggested by this letter has not permitted us to obtain advice from the Bureau of the Budget as to the relationship of this amendment to the program of the President.

Sincerely yours,

J. DONALD KINGSLEY,
*Acting Administrator.*

Hon. GEORGE A. DONDERO,
*Chairman, Committee on Public Works, House of Representatives,*
*Washington 25, D. C.*

GEO. A. DONDERO,
J. HARRY MCGREGOR,
JAMES D. AUCHINCLOSS,
PAUL CUNNINGHAM,
WILL M. WHITTINGTON,
JOHN A. BLATNIK,
TOM PICKETT,
*Managers on the Part of the House.*

The conference report was agreed to.

A motion to reconsider was laid on the table.

UNITED STATES CODE, TITLE 18

Mr. REED of Illinois. Mr. Speaker, I ask unanimous consent to take from the Speaker's desk the bill (H. R. 3190) to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure", with Senate amendments thereto, and concur in the Senate amendments.

The Clerk read the title of the bill.

The Clerk read the Senate amendments, as follows:

Page 1, line 10, after "section":

"13. Laws of States adopted for areas within Federal jurisdiction."

Insert:

"14. Applicability to Canal Zone."

Page 5, line 4, after "States" insert ", except the Canal Zone."

Page 5, after line 15, insert:

"§ 14. Applicability to Canal Zone."

"In addition to the sections of this title which by their terms apply to and within the Canal Zone, the following sections of this title shall likewise apply to and within the Canal Zone: Sec. 6, 8, 11, 331, 371, 472, 474, 478, 479, 480, 481, 462, 483, 485, 488, 490, 499, 502, 500, 594, 595, 598, 600, 601, 604, 605, 608, 611, 612, 702, 756, 791, 792, 793, 794, 795, 795, 797, 915, 917, 951, 953, 954, 956, 957, 958, 959, 960, 961, 962, 963, 964, 965, 938, 967, 1017, 1073, 1301, 1364, 1382, 1542, 1543, 1544, 1546, 1584, 1621, 1622, 1761, 1821, 1914, 2151, 3152, 3153, 3154, 3155, 2166, 2190, 2231, 2234, 2235, 2274, 2275, 2277, 2384, 2385, 2300, 3369, 3390, 3421, 2622, 2423, 2424, 3059, 3105, 3109."

Page 91, strike out

"§10. Contributions by national banks or corporations."

And insert:

"§10. Contributions or expenditures by national banks, corporations, or labor organizations."

Page 104, strike out lines 4 to 21, inclusive, and insert:

"§ 610. Contributions by national banks, corporations, or labor organizations

"It is unlawful for any national bank, or any corporation organized by authority of any law of Congress, to make a contribution or expenditure in connection with any election to any political office, or in connection with any primary election or political con-

vention or caucus held to select candidates for any political office, or for any corporation whatever, or any labor organization to make a contribution or expenditure in connection with any election at which Presidential and Vice Presidential electors or a Senator or Representative in, or a Delegate or Resident Commissioner to Congress are to be voted for, or in connection with any primary election or political convention or caucus held to select candidates for any of the foregoing offices, or for any candidate, political committee, or other person to accept or receive any contribution prohibited by this section.

"Every corporation or labor organization which makes any contribution or expenditure in violation of this section shall be fined not more than $5,000; and every officer or director of any corporation, or officer or any labor organization, who consents to any contribution or expenditure by the corporation or labor organization, as the case may be, in violation of this section shall be fined not more than $1,000 or imprisoned not more than 1 year, or both.

"For the purposes of this section 'labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exist for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

Page 117, line 8, strike out all after "receiver," down to and including "System," in line 15.

Page 118, line 18, strike out all after "care," down to and including "institution," in line 23.

Page 134, line 19, after "both" insert "; or if he negligently suffers such person to escape, he shall be fined not more than $500 or imprisoned not more than 1 year, or both."

Page 168, after line 13, insert "While any foreign government is a member both of the International Monetary Fund and of the International Bank for Reconstruction and Development, this section shall not apply to the sale or purchase of bonds, securities, or other obligations of such government or any political subdivision thereof or of any organization or association acting for or on behalf of such government or political subdivision, or to making of any loan to such government, political subdivision, organization, or association."

Page 867, strike out lines 15 to 18, inclusive, and insert "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.

"Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof."

Page 415, line 10, after "Zone," insert "District of Columbia."

Page 415, after line 17, insert:

"Nothing in this title, anything therein to the contrary notwithstanding, shall in any way limit, supersede, or repeal any such rules heretofore prescribed by the Supreme Court."

Page 416, after line 21, insert:

"Nothing in this title, anything therein to the contrary notwithstanding, shall in any way limit, supersede, or repeal any such rules heretofore prescribed by the Supreme Court."

Page 445, lines 24 and 25, strike out "the Revised Statutes (1 U. S. C., sec 1)" and insert "Title 1 of the United States Code."

Page 456, strike out lines 3 to 21, inclusive.

Page 456, line 22, strike out "19" and insert "18."

Page 457, line 8, strike out "20" and insert "19."

Page 457, strike out lines 9 to 15, inclusive, and insert:

"SEC. 20. This act shall take effect September 1, 1948."

Page 457, line 16, strike out "22" and insert "21."

Page 463, above middle of page, strike out [July 3.......| 1368 | 4, 8| 60|734, 735| 16|   705, 705]

Page 467, below middle of page, strike out

| [June 10.......| 614|   4| 10| 1658| 16|   705 |
| De......| 635| 1, 3| 4 8| 1657| 23|   343] |

and insert:

"June 10.......| 653|   1, 8| 4 8|   1657| 23|   340"

Page 470, after

"June 8......| 1776| 1, 2, 3| 8 9|224, 32 9| 12 8| 341, 341a, 3 42"

insert:

"July 31.......| 3295|   6| 5 8|   81 8| 31 8|   824 8h"

Page 471, at the end of the schedule of repeals on this page, insert:

"1947—

| | Apr. 16.| 148|   | 61|   97| 18|   411 |
| | May 14.| 73|   | 61|   97| 17 8| 74 8h-1 |
| | June 21.| 134|   | 61|   134| 16|   244 |
| | June 23.| 134|   304| 61|   126|   5|   251" |

The SPEAKER. Is there objection to the request of the gentleman from Illinois?

There was no objection.

The Senate amendments were concurred in.

A motion to reconsider was laid on the table.

## NATIONAL FREEDOM DAY

Mr. REED of Illinois. Mr. Speaker, I ask unanimous consent to take from the Speaker's desk the joint resolution (S. J. Res. 37) requesting the President to proclaim February 1 as National Freedom Day, and ask for its immediate consideration. I have consulted with the leaders on both sides.

The Clerk read the title of the joint resolution.

The SPEAKER. Is there objection to the request of the gentleman from Illinois?

There was no objection.

The Clerk read, as follows:

*Resolved, etc.*, That the President of the United States is authorized to issue a proclamation designating the 1st day of February of each year as National Freedom Day for the purpose of commemorating the signing by President Abraham Lincoln, on February 1, 1865, of the joint resolution adopted by the Senate and the House of Representatives of the United States, proposing the thirteenth amendment to the Constitution of the United States of America.

The joint resolution was ordered to be read a third time, was read the third time, and passed, and a motion to reconsider was laid on the table.

## PERMISSION TO EXTEND REMARKS AT THIS POINT

Mr. McGARVEY. Mr. Speaker, I ask unanimous consent to extend my remarks at this point in the RECORD.

The SPEAKER. Is there objection to the request of the gentleman from Pennsylvania?

There was no objection.

Mr. McGARVEY. Mr. Speaker, the bill which has been reached on the Consent Calendar today will authorize and request the President to proclaim February 1 as National Freedom Day and invite the people of the United States to observe the day with appropriate ceremonies and thanksgiving. As you all know, on February 1, 1865, President Abraham Lincoln signed the joint resolution, which had previously been adopted by the Congress, proposing the thirteenth amendment to the Constitution.

I should like to repeat for you at this time the immortal words of that amendment: "Neither slavery nor involuntary servitude, except as a punishment for crime, whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." These words are the foundation of our form of government with its emphasis on the freedom of the individual and the human liberties which belong to every citizen of the United States. It is therefore with pride in our free Nation that I introduced this resolution at the first session of the Eightieth Congress. Since that time I have been striving to obtain approval of the legislation.

I wish to thank the members of the Judiciary Committee and, in particular, the members of the subcommittee which handled the resolution, headed by the gentleman from Illinois [Mr. REED], for the interest and cooperation they have displayed in reporting the legislation, also the gentleman from Pennsylvania [Mr. CHADWICK].

I should like to pause here to pay tribute to the founder of National Freedom Day, Maj. R. R. Wright. It is regrettable that Major Wright is not with us today to realize the fulfillment of his long years of hard work and inspiring efforts. Born in slavery, Major Wright rose to prominence as a great American and occupied an unequalled position in the hearts of his fellow Americans. The story of Major Wright is truly the story of America, for in no other country today is it possible for a citizen to achieve such outstanding success: His success, however, would not have occurred had the thirteenth amendment to the Constitution not been approved. Since its signing is one of the cornerstones in the foundation of our American traditions, I am proud that we have today passed the resolution commemorating its inception.

## PROCUREMENT AND SUPPLY OF GOVERNMENT HEADSTONES

Mr. WELCH. Mr. Speaker, I ask unanimous consent to take from the Speaker's desk the bill (H. R. 4272) to provide for the procurement and supply of Government headstones or markers for unmarked graves of members of the armed forces dying in the service or after honorable discharge therefrom, and other persons, and for other purposes, with a Senate amendment thereto, and concur in the Senate amendment.

The Clerk read the title of the bill.

The Clerk read the Senate amendment, as follows:

Page 2, line 2, strike out all after "cemeteries," down to and including "costs," in line 14 and insert "The Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force are authorized and directed to compile a list of the names of all members of the armed forces of the United States who died while serving in such forces in the overseas theaters of operations on or after September 8, 1939, and whose bodies have not been recovered or identified or have been buried at sea. Upon the compilation of such list of names and other appropriate data, the American Battle Monuments Commission and the Secretary of the Army are authorized and directed to provide for the inscribing of each such name and pertinent

...e Federal Communications Commis-

...he PRESIDING OFFICER. Is there ...tion?

...r. YOUNG. I object.

...r. WHERRY. Then, Mr. President, ...ove that the nomination of Frieda B. ...nuck, of New York, be confirmed.

...he PRESIDING OFFICER. The ...stion is on agreeing to the motion of ...Senator from Nebraska.

...r. BALL. Mr. President, what kind ...procedure— is –this?—We -are-not-in-...tain interests, groups, who are greatly ...cutive session.

...r. WHERRY. I asked for unani-...us consent.

...r. BALL. I did not hear any motion.

...r. WHERRY. I understand that. I ...ed for unanimous consent.

The PRESIDING OFFICER. The ...nator asked unanimous consent, and ...animous consent was granted.

Mr. BALL. I am sorry.

The PRESIDING OFFICER. The ...air did not understand that that is ...at it was for.

Mr. WHERRY. If there is any doubt ...out it—

The PRESIDING OFFICER. Con-...nt was granted.

Mr. WHERRY. Very well.

Mr. BALL. Are we in executive ses-...on, then?

The PRESIDING OFFICER. We are.

Mr. WHERRY. We are, for the con-...deration of the –nomination of Miss ...rida B. Hennock.

Mr. BALL. May we proceed in the ...gular order, then, and have the nom-...nation stated, so that we will know what ...e are doing? I do not like to have ...he Senate doing things by unanimous ...onsent. I am not going to hold up the ...enate.

Mr. WHERRY. That is the very thing ...hat is done after the Executive Calen-...dar is taken up, and I ask that the nom-...nation be stated.

The PRESIDING OFFICER. The ...lerk will state the nomination.

The LEGISLATIVE CLERK. Nomination ...passed over. Frieda B. Hennock, of New ...York, to be a member of the Federal ...Communications Commission.

The PRESIDING OFFICER. The ...question is. Will the Senate advise and ...consent to the nomination?

Mr. BALL. Mr. President, I do not ...intend to make a lengthy speech about ...this nomination. I am opposed to it, ...and I want the RECORD to show that. ...So far as I can discover, the only in-...vestigation, the only hearing, regarding ...this nomination, was a brief executive ...session, of the subcommittee of the ...Committee on Interstate and Foreign ...Commerce. For several weeks the re-...ports were that the nomination would ...never get out of committee. Then all of ...a sudden it was reported, with, I may ...say, somewhat suspicious haste. It is ...for a 7-year term on the Federal Com-...munications Commission. In my opin-...ion that is a tremendously important ...Commission. I think it is up to the ...Senate to satisfy itself—and frankly I ...am not satisfied; I do not know about ...the wisdom of the nomination one way ...or the other—that appointments to this

Commission will really serve the best ...interests of the Nation.

I myself have observed some rather ...disturbing things about the Federal ...Communications Commission. I have ...heard more disturbing reports since this ...nomination was reported. I have heard ...a report, on what I consider reliable au-...thority—and obviously in the past few ...days I have not had any opportunity to ...investigate it, I do not know whether it ...is true or not—which indicates that cer-...tain interests, groups, who are greatly ...interested in this nomination, have a ...direct pipe line to the Federal Com-...munications Commission, which we cer-...tainly would not want to have occur. ...What the score is I do not know. So far ...as I can determine, Miss Hennock is a ...lawyer from New York, and I might point ...out that the late President Roosevelt ...never appointed a member of the Fed-...eral Communications Commission from ...New York City, for the simple reason ...that New York City is the center of the ...radio industry, and he wanted to avoid ...any possibility of the industry itself hav-...ing too much influence on the Commis-...sion. So far as I can discover, she has ...had no experience in radio matters, and ...from what I can learn of her back-...ground, frankly I do not think she is ...qualified for the job, and I want to be on ...record as opposed to her confirmation.

Mr. BREWSTER. Mr. President, I ...think the Senator from Minnesota has ...been very fair in his statement. As ...chairman of the subcommittee which in-...vestigated this nomination for the Sen-...ate Committee on Interstate and Foreign ...Commerce, which reported it by a vote ...of 8 to 0, with another member voting ..."present," I think the Senate should ...know what we have learned as to the ...circumstances.

Miss Hennock has been a member of ...the New York bar for 20 or 25 years. ...I ...hesitate to estimate the age of a lady, ...but I should say she is between 40 and 50 ...years old, so she is reasonably mature. ...She has had quite a brilliant record at ...the bar. She is a member now, which is ...somewhat unusual for a woman, of the ...third largest law firm in New York City, ...one of the most highly respected and ...distinguished, one composed almost ex-...clusively of Republicans. She has had ...no experience in radio, as the Senator ...from Minnesota has said, which, it ...seemed to many of us, was perhaps most ...fortunate, because one who had been ...active in radio work, representing radio ...clients, would by that very fact come in ...under somewhat of a cloud. The com-...mittee took into consideration her ...breadth of experience and training and ...recognized abilities.

I may say that one of her most earnest ...sponsors was John W. Davis, of New ...York, who certainly is a leader of the ...New York bar, and who vouched most ...earnestly for her capacity and character. ...And from many other quarters there ...have come most earnest testimonials as ...to the character and competency of this ...woman.

Obviously only the future can tell how ...well she can fulfill these responsibilities. ...I can say that we in our committee,

share the concern which the Senator from ...Minnesota has experienced concerning ...the functioning of the Federal Commu-...nications Commission. We think it ...needs new blood, and it was the con-...sensus of those of us who became familiar ...with this matter through contact with ...many who were acquainted with her and ...through various representations, that she ...would be well qualified to fit into this ...position, and we believed her confirma-...tion was warranted and wise.

The PRESIDING OFFICER. The ...question is, will the Senate advise and ...consent to this nomination?

The nomination was confirmed.

## POSTMASTERS

EXECUTIVE REPORT OF A COMMITTEE

The following favorable report of a ...committee was submitted:

By Mr. LANGER, from the Committee on ...Post Office and Civil Service:

The nomination of Jack Destwick to be ...postmaster at Eastrop, in the State of ...Louisiana.

On motion by Mr. LANGER, and by ...unanimous consent, it was

Ordered, That the said nomination be ...considered with those postmasters ap-...pearing on today's calendar.

Mr. BARKLEY. Does the Senator in-...tend that the nominations of postmasters ...shall be considered?

Mr. WHERRY. Yes.

The PRESIDING OFFICER. The ...clerk will state the nominations of post-...masters on the calendar.

The legislative clerk proceeded to read ...the nominations of postmasters on the ...calendar.

The PRESIDING OFFICER. With-...out objection, the nominations of post-...masters will be confirmed en bloc.

Without objection the President will ...be notified of all nominations this day ...confirmed on the Executive Calendar.

Mr. WHERRY. Mr. President, are ...there any measures any Senator desires ...to bring up at this time, or is there any ...other matter that is desired to be con-...sidered?

Mr. O'MAHONEY. Mr. President, ...may I ask the majority leader whether ...there is any intention to proceed with ...Calendar No. 125. Senate Joint Resolu-...tion 76?

Mr. WHERRY. What is the equal-...rights amendment?

Mr. O'MAHONEY. Yes.

Mr. WHERRY. I believe the Senator ...who was particularly interested in the ...legislation stated that it would not be ...taken up at this time. I would not un-...dertake to take it up.

Mr. O'MAHONEY. Very well.

## CONDITIONAL ADJOURNMENT TO DECEMBER 31, 1948

Mr. WHERRY. I move that the Sen-...ate do now adjourn.

The motion was agreed to; and (at 7 ...o'clock and 14 minutes a. m., Sunday, ...June 20, 1948) the Senate adjourned, ...the adjournment being under the pro-...vision of House Concurrent Resolution ...218, to Friday, December 31, 1948, at 12 ...o'clock meridian.

Case 1:09-cv-00580-PLF    Document 1-1    Filed 03/26/09    Page 82 of 143

such fund to such extent and in such manner and under such terms and conditions as the Secretary of Labor may by regulation or otherwise prescribe.

Mr. HOPE. Mr. Speaker, I ask unanimous consent to withdraw the committee amendments.

The SPEAKER. Is there objection to the request of the gentleman from Kansas?

There was no objection.

Mr. HOPE. Mr. Speaker, I offer two amendments, which I send to the Clerk's desk.

The Clerk read as follows:

Amendments offered by Mr. HOPE:

On page 1, line 3, strike out "the Secretary of Labor" and insert "the Administrator of the Federal Security Agency."

On page 2, line 11, strike out "the Secretary of Labor" and insert "the Administrator of the Federal Security Agency."

Mr. FOGARTY. The first amendment was to strike out "the Secretary of Labor" and insert "the Federal Security Administrator"; is that correct?

Mr. HOPE. Yes. That is made necessary by reason of the act that was passed, the appropriation bill, which transferred the Federal Employment Service to the Federal Security Agency.

The SPEAKER. The question is on agreeing to the amendments.

The amendments were agreed to.

The bill was ordered to be read a third time, was read the third time, and passed, and a motion to reconsider was laid on the table.

## ISSUING PATENTS IN ALASKA

Mr. D'EWART. Mr. Speaker, I ask unanimous consent for the immediate consideration of House Joint Resolution 162, a joint resolution to repeal section 2 of the act of May 1, 1936, and for other purposes.

The Clerk read the title of the resolution.

The SPEAKER. Is there objection to the request of the gentleman from Montana [Mr. D'EWART]?

Mr. RICH. Mr. Speaker, reserving the right to object, what does this bill do?

Mr. D'EWART. The bill repeals section 2 of the act of May 1, 1936, having to do with the issuing of certain patents in Alaska. Second, it permits the Secretary of the Interior to issue patents in Alaska to individual tribes, villages, or individuals, with the approval of the Secretary of the Interior.

Mr. RICH. Mr. Speaker, it is now 15 minutes after 6 in the morning. It is almost time to go to church. It seems to me this legislation should be deferred until some other time. I object.

## ADJOURNMENT RESOLUTION

Mr. HALLECK. Mr Speaker, I offer a concurrent resolution (H. Con. Res. 218) and ask for its immediate consideration.

The Clerk read as follows:

*Resolved,* That when the two Houses adjourn on Sunday, June 20, 1948, they stand adjourned until 12 o'clock meridian on Friday, December 31, 1948, or until 12 o'clock meridian on the third day after the respective Members are notified to reassemble in accordance with section 2 of this resolution, whichever event first occurs.

SEC. 2. The President pro tempore of the Senate, the Speaker of the House of Representatives, the acting majority leader of the Senate, and the majority leader of the House of Representatives, all acting jointly, shall notify the Members of the Senate and the House, respectively, to reassemble whenever, in their opinion, the public interest shall warrant it.

The SPEAKER. The question is on agreeing to the resolution.

The resolution was agreed to.

## AUTHORIZING THE SPEAKER AND THE PRESIDENT PRO TEMPORE TO SIGN ENROLLED BILLS AND JOINT RESOLUTIONS

Mr. HALLECK. Mr. Speaker, I offer a concurrent resolution (H. Con. Res. 219) and ask for its immediate consideration.

The Clerk read the resolution, as follows:

*Resolved,* That notwithstanding the adjournment of the two Houses until December 31, 1948, the Speaker of the House of Representatives and the President pro tempore of the Senate be, and they are hereby, authorized to sign enrolled bills and joint resolutions duly passed by the two Houses and found truly enrolled.

The SPEAKER. The question is on agreeing to the resolution.

The resolution was agreed to.

A motion to reconsider was laid on the table.

## AUTHORIZING THE CLERK TO RECEIVE MESSAGES

Mr. HALLECK. Mr. Speaker, I ask unanimous consent that notwithstanding the adjournment of the House until December 31, 1948, the Clerk be authorized to receive messages from the Senate.

The SPEAKER. Without objection, it is so ordered.

There was no objection.

## AUTHORIZING THE SPEAKER TO APPOINT COMMISSIONS, BOARDS, AND COMMITTEES

Mr. HALLECK. Mr. Speaker, I ask unanimous consent that notwithstanding the adjournment of the House until December 31, 1948, the Speaker be authorized to appoint commissions, boards, and committees authorized by law or by the House.

The SPEAKER. Without objection, it is so ordered.

There was no objection.

## GENERAL LEAVE TO EXTEND REMARKS

Mr. HALLECK. Mr. Speaker, I ask unanimous consent that all Members of the House shall have the privilege until the last edition authorized by the Joint Committee on Printing is published to extend and revise their own remarks in the CONGRESSIONAL RECORD on more than one subject, if they so desire, and also to include therein such short quotations as may be necessary to explain or complete such extension of remarks, but this order shall not apply to any subject matter which may have occurred or to any speech delivered subsequent to the adjournment of Congress until Friday, December 31, 1948.

The SPEAKER. Is there objection to the request of the gentleman from Indiana?

There was no objection.

## REPORTS OF INVESTIGATING COMMISSIONS TO BE DOCUMENTS OF EIGHTIETH CONGRESS

Mr. HALLECK. Mr. Speaker, I ask unanimous consent that reports filed with the Clerk following the adjournment of the House until Friday, December 31, 1948, by committees authorized by the House to conduct investigations may be printed by the Clerk as reports of the Eightieth Congress.

The SPEAKER. Is there objection to the request of the gentleman from Indiana?

There was no objection.

## CERTAIN REPORTS OF COMPTROLLER GENERAL'S OFFICE TO BE PRINTED AS HOUSE DOCUMENTS

Mr. HALLECK. Mr. Speaker, I offer a resolution (H. Res. 700) and ask for its immediate consideration.

The Clerk read as follows:

*Resolved,* That the reports of the Comptroller General of the United States made to Congress, pursuant to section 5 of the act of February 24, 1945 (59 Stat. 6), and the Government Corporation Control Act (59 Stat. 597), after the adjournment of the House until December 31, 1948, shall be printed as House documents of the second session of the Eightieth Congress.

The resolution was agreed to.

A motion to reconsider was laid on the table.

## DESIGNATION OF ASSISTANT CLERK OF THE HOUSE OF REPRESENTATIVES

Mr. HALLECK. Mr. Speaker, I offer a resolution (H. Res. 701) and ask for its immediate consideration.

The Clerk read as follows:

*Resolved,* That in order that the duties of his office may be discharged in case of his absence or disability or in case his office should become vacant, the Clerk of the House of Representatives on or before June 19, 1948, shall designate a subordinate in his office to perform the duties thereof in any such contingencies until the commencement of the first session of the Eighty-first Congress. Such designee when acting under this authorization, shall subscribe himself as Acting Clerk of the House of Representatives.

The Clerk of the House shall promptly communicate to the Speaker the name of the employee designated hereunder for the information of the House.

The resolution was agreed to.

A motion to reconsider was laid on the table.

The SPEAKER laid before the House the following communication, which was read by the Clerk:

OFFICE OF THE CLERK,
HOUSE OF REPRESENTATIVES,
*Washington, D. C., June 19, 1948.*
The Honorable the SPEAKER,
*House of Representatives.*

SIR: Pursuant to the provisions of House Resolution 701 adopted by the House today, I have designated Mr. Harry Newlin Megill, an official in my office, to discharge the duties contemplated by said resolution.

Respectfully yours,
JOHN ANDREWS,
*Clerk of the House of Representatives.*

## EXTENSION OF REMARKS

Mr. WIGGLESWORTH asked and was given permission to extend his remarks in two instances and in each to include tabular material.

Mr. KERSTEN of Wisconsin asked and was given permission to extend his remarks in the Appendix of the RECORD in two instances.

The SPEAKER. The gentleman from Vermont [Mr. PLUMLEY].

Mr. PLUMLEY. I just wish to call attention to the fact that this is Father's Day, and, therefore, I say: Good night, good morning, good luck.

The SPEAKER. The gentleman from Illinois [Mr. BUSBEY].

Mr. BUSBEY. Mr. Speaker, I do not know how many have ever attended a sunrise service before, but you have today.

### RECESS

The SPEAKER. The Chair declares a recess subject to the call of the Chair.

Thereupon (at 5 o'clock and 23 minutes a. m.) the House stood in recess subject to the call of the Chair.

### AFTER RECESS

The recess having expired, the House was called to order by the Speaker at 6 o'clock and 55 minutes a. m.

### FURTHER MESSAGE FROM THE SENATE

A further message from the Senate by Mr. Latta, its enrolling clerk, announced that the Senate had passed without amendment concurrent resolutions of the House of the following titles:

H. Con. Res. 218. Concurrent resolution providing for adjournment of the two Houses of Congress until December 31, 1948; and

H. Con. Res. 219. Concurrent resolution authorizing the signing of enrolled bills following adjournment.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (H. R. 6248) entitled "An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 32 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes."

The message also announced that the Senate had passed without amendment joint resolutions of the House of the following titles:

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer United States Cavalry) of the Spanish-American War; and

H. J. Res. 327. Joint resolution to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America.

The message also announced that the Senate agrees to the amendments of the House to bills of the Senate of the following title:

S. 2767. An act to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market of agricultural commodities to meet domestic needs and foreign commitments; and

S. 2790 An act to amend the Servicemen's Readjustment Act of 1944, as amended, and for other purposes.

### ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED

Mr. LeCOMPTE, from the Committee on House Administration, reported that that committee had examined and found truly enrolled bills and joint resolutions of the House of the following titles; which were thereupon signed by the Speaker:

H. R. 371. An act for the relief of Jenness O. Thomas;

H. R. 564. An act for the relief of Sarah Lee Cregg;

H. R. 700. An act for the relief of Anthony Arancio;

H. R. 708. An act for the relief of Leon Nitcholvich Volkov;

H. R. 861. An act for the relief of Adney W. Gray;

H. R. 911. An act for the relief of Kam Fong Chun, Mr. and Mrs. Jose Dias, Joseph De Souza, Mr. and Mrs. Kenneth Ayres, and Jose Odurado;

H. R. 912. An act for the relief of Hiro Higa and Kana Higa;

H. R. 915. An act to confer jurisdiction upon the District Court of the United States for the Territory of Hawaii to hear, determine, and render judgment on the claims of the executors and trustees of the estate of L. L. McCandless, deceased, as their interests may appear, against the United States of America;

H. R. 1076. An act for the relief of Chester O. Glenn;

H. R. 1230. An act for the relief of James D. Sigler and Frederick P. Vogeland III;

H. R. 1409. An act for the relief of Frantisek Jiri Pavlik or Georg Pavlik;

H. R. 1400. An act for the relief of the United States Radiator Corp. of Detroit, Mich.;

H. R. 1643. An act for the relief of Miss Rosella M. Kostenbader;

H. R. 1733. An act for the relief of G. G. Hedrick;

H. R. 1734. An act for the relief of Gabel Construction Co.;

H. R. 1779. An act for the relief of the Winona Machine & Foundry Co., a corporation of Winona, Minn.;

H. R. 1780. An act for the relief of the Cannon Valley Milling Co.;

H. R. 1910. An act for the relief of the legal guardian of Robert Lee Thrasitt, a minor;

H. R. 1930. An act for the relief of the Growers Fertilizer Co., a Florida corporation;

H. R. 2005. An act to amend section 11 of the act approved June 5, 1942 (56 Stat. 317), relating to Mammoth Cave National Park in the State of Kentucky, and for other purposes;

H. R. 2192. An act for the relief of the Massman Construction Co.;

H. R. 2193. An act for the relief of Robert E. Grahám;

H. R. 2352. An act to provide for sale to the Crow Tribe of interests in the estates of deceased Crow Indian allottees;

H. R. 2372. An act for the relief of George Cleve Williams;

H. R. 2395. An act for the relief of the Cypress Creek drainage district of the State of Arkansas;

H. R. 2431. An act for the relief of the estate of David Jefferson Janow, deceased;

H. R. 2469. An act for the relief of James W. Adkins and Mary Clark Adkins;

H. R. 3551. An act for the relief of William B. Ramsey;

H. R. 3552. An act for the relief of Thomas A. Haniey;

H. R. 3695. An act for the relief of Otto Kraus, receiver of the Neafie & Levy Ship & Engine Building Co.;

H. R. 2719. An act for the relief of the legal guardian of Rose Mary Amminato, a minor;

H. R. 2732. An act for the relief of Dennis Stanton;

H. R. 2734. An act for the relief of Joseph M. Henry;

H. R. 2578. An act to amend the act approved May 18, 1928 (45 Stat. 603), as amended, to revise the roll of the Indians of California provided therein;

H. R. 2889. An act for the relief of Aubrey F. Houston;

H. R. 2916. An act for the relief of the Sumner County Colored Fair Association;

H. R. 3012. An act for the relief of the estate of Rudolph Maximilian Goepp, Jr.;

H. R. 3218. An act to authorize an emergency fund for the Bureau of Reclamation to assure the continuous operation of its irrigation and power systems;

H. R. 3251. An act for the relief of Capt. Carroll C. Garretson;

H. R. 3427. An act for the relief of Mrs. Mary H. Overall and Thomas J. Baker;

H. R. 3499. An act for the relief of Petrol Corp.;

H. R. 3566. An act to amend subsection (c) of section 19 of the Immigration Act of 1947, as amended, and for other purposes;

H. R. 3735. An act to authorize and direct the Secretary of the Army to donate and convey to Okaloosa County, State of Florida, all the right, title, and interest of the United States in and to a portion of Santa Rosa Island, Fla., and for other purposes;

H. R. 3937. An act for the relief of William O. Reese;

H. R. 3999. An act to authorize the Attorney General to adjudicate certain claims resulting from evacuation of certain persons of Japanese ancestry under military orders;

H. R. 4047. An act for the relief of Edmund Huppler;

H. R. 4103. An act for the relief of Charles M. Davis;

H. R. 4199. An act for the relief of George Haniotis;

H. R. 4272. An act to provide for the procurement and supply of Government headstones or markers for unmarked graves of members of the armed forces dying in the service or after honorable discharge therefrom, and other persons, and for other purposes;

H. R. 4360. An act to authorize the Secretary of State to perform certain consular-type functions within the United States and its Territories and possessions;

H. R. 4367. An act authorizing the Hidalgo Bridge Co., its heirs, legal representatives, and assigns, to construct, maintain, and operate a railroad toll bridge across the Rio Grande, at or near Hidalgo, Tex.;

H. R. 4435. An act to amend the Civil Aeronautics Act of 1938 by redefining certain powers of the Administrator, by authorizing delegation of certain powers by the Civil Aeronautics Board to the Administrator, and for other purposes;

H. R. 4441. An act for the relief of the William J. Burns International Detective Agency;

H. R. 4452. An act for the relief of Douglas L. Craig;

H. R. 4462. An act authorizing the conveyance of certain lands in Park County, Wyo., to the State of Wyoming;

H. R. 4516. An act for the relief of the Moore Dry Dock Co., of Oakland, Calif.;

H. R. 4518. An act for the relief of Gerald S. Furman;

H. R. 4587. An act for the relief of Mrs. Barry A. Light (formerly Mrs. Elsie Purvey);

H. R. 4590. An act for the relief of Mrs. Loraine Thomsen;

H. R. 4635. An act to amend section 11 of an act entitled "An act to regulate barbers in the District of Columbia, and for other purposes";

H. R. 4644 An act for the relief of E Brevard Walker, trading as E. B. Walker Lumber Co.;

H. R. 4600 An act to amend the act of July 30, 1947, permitting vessels of Canadian registry to transport certain



# Congressional Record

**United States of America**

### PROCEEDINGS AND DEBATES OF THE 80th CONGRESS, SECOND SESSION

## SENATE

### MONDAY, JULY 26, 1948

The Senate reassembled this day in its Chamber at the Capitol, in the city of Washington, in pursuance of the proclamation of the President of the United States of the 15th day of July 1948.

ARTHUR VANDENBERG, President pro tempore, called the Senate to order at 12 o'clock noon.

Rev. Bernard Braskamp, D. D., pastor of the Gunton-Temple Memorial Presbyterian Church, Washington, D. C., offered the following prayer:

O Thou God of infallible wisdom, we have entered upon days which are fraught with perplexing problems and heavy responsibilities, but also with glorious opportunities and possibilities.

We pray that we may have the interpreting light and the clear and confident leading of Thy spirit in all our deliberations and decisions.

May the ideals and principles of our blessed Lord not only stir our emotions but our wills, and may every lofty God-inspired sentiment be translated into action and achievement.

Grant that it may be the goal of all our aspirations to glorify Thy great and holy name and to build Thy kingdom of peace and good will among men and nations.

Hear us for the sake of the Christ. Am'n.

The PRESIDENT pro tempore. The proclamation of the President reconvening the Congress will be read by the clerk.

The Chief Clerk (Edward E. Mansur, Jr.) read the proclamation, as follows:

CONVENING THE CONGRESS BY THE PRESIDENT OF THE UNITED STATES OF AMERICA—A PROCLAMATION

Whereas the public interest requires that the Congress of the United States should be convened at 12 o'clock noon on Monday, the 26th day of July 1948, to receive such communication as may be made by the Executive:

Now, therefore, I, Harry S. Truman, President of the United States of America, do hereby proclaim and declare that an extraordinary occasion requires the Congress of the United States to convene at the Capitol in the city of Washington on Monday, the 26th day of July 1948, at 12 o'clock noon, of which all persons who shall at that time be entitled to act as Members thereof are hereby required to take notice.

In witness whereof, I have hereunto set my hand and caused to be affixed the great seal of the United States.

Done at the city of Washington this 15th day of July, in the year of our Lord 1948, and of the independence of the United States of America the one hundred and seventy-third.

HARRY S. TRUMAN.

By the President:
G. C. MARSHALL,
*Secretary of State.*

### CALL OF THE ROLL

Mr. WHERRY. I suggest the absence of a quorum.

The PRESIDENT pro tempore. The clerk will call the roll.

The Chief Clerk called the roll, and the following Senators answered to their names:

| | | |
|---|---|---|
| Aiken | Hickenlooper | O'Daniel |
| Baldwin | Hill | O'Mahoney |
| Barkley | Hoey | Pepper |
| Brewster | Holland | Reed |
| Brooks | Jenner | Revercomb |
| Butler | Johnson, Colo. | Robertson, Va. |
| Byrd | Johnston, S. C. | Robertson, Wyo. |
| Cain | Kem | Russell |
| Capehart | Kilgore | Saltonstall |
| Capper | Knowland | Smith |
| Connally | Langer | Sparkman |
| Cooper | Lodge | Stennis |
| Gordon | Lucas | Stewart |
| Donnell | McCarthy | Taft |
| Downey | McClellan | Taylor |
| Eastland | McFarland | Thomas, Okla. |
| Ecton | McGrath | Thomas, Utah |
| Ellender | McMahon | Thye |
| Feazel | Magnuson | Tobey |
| Ferguson | Martin | Umstead |
| George | Maybank | Vandenberg |
| Green | Millikin | Watkins |
| Gurney | Moore | Wherry |
| Hatch | Murray | Wiley |
| Hawkes | Myers | Williams |
| Hayden | O'Conor | Young |

Mr. WHERRY. I announce that the Senator from Minnesota [Mr. BALL], the Senator from Ohio [Mr. BRICKER], the Senator from Delaware [Mr. BUCK], the Senator from South Dakota [Mr. BUSHFIELD], the Senator from Vermont [Mr. FLANDERS], the Senator from Oregon [Mr. MORSE], and the Senator from Iowa [Mr. WILSON] are necessarily absent.

The Senator from New Hampshire [Mr. BRIDGES] is detained on official business.

The Senator from Idaho [Mr. DWORSHAK] is absent on official state business.

The Senator from New York [Mr. IVES] is absent because of illness in his family.

The Senator from Nevada [Mr. MALONE] is absent on official committee business of the Committee on Public Works.

Mr. LUCAS. I announce that the Senator from New Mexico [Mr. CHAVEZ] is unavoidably absent.

The Senator from Arkansas [Mr. FULBRIGHT], the Senator from Nevada [Mr. McCARRAN], the Senator from Tennessee [Mr. McKELLAR], the Senator from Maryland [Mr. TYDINGS], and the Senator from New York [Mr. WAGNER] are necessarily absent.

The PRESIDENT pro tempore. Seventy-eight Senators having answered to their names, a quorum is present.

### THE JOURNAL

Mr. WHERRY. Mr. President, I ask unanimous consent that, without reading, the Journal of the proceedings of the Senate for the calendar days Friday, June 18, Saturday, June 19, and Sunday, June 20, 1948, be approved.

The PRESIDENT pro tempore. Without objection, the order is made.

### ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED AFTER ADJOURNMENT

Subsequent to the adjournment of the Senate on June 20, 1948, the President pro tempore, under the authority of House Concurrent Resolution 219, signed the following enrolled bills and joint resolutions, which had previously been signed by the Speaker of the House of Representatives:

S. 165. An act for the relief of Doris E. Snyder;

S. 418. An act to provide for water-pollution-control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes;

S. 595. An act to provide that the rates of compensation for disabilities incurred in active military or naval service other than in a period of war service shall be equal to 80 percent of the rates payable for similar disabilities incurred during active service in time of war;

S. 1243. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes;

S. 1260. An act to create a commission to hear and determine the claims of certain motor carriers;

S. 1322. An act to provide a Federal charter for the Commodity Credit Corporation;

S. 1683. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State;

S. 1715. An act for the relief of Archie Hamilton and Delbert Hamilton;

S. 1717. An act for the relief of the estate of William R. Stigall, deceased;

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III;

S. 2217. An act conferring jurisdiction upon the Court of Claims of the United States to hear, determine, and render judgment upon the joint claims of Silas Mason Co., Inc.; Walsh Construction Co.; and Atkinson-Kier Co.;

S. 2242. An act to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes;

TEXAS STATE LIBRARY  82177
Austin, Texas

9353

App. 58

S. 2281. An act to provide for an air parcel-post service, and for other purposes;

S. 2371. An act validating certain conveyances of the Oregon Short Line Railroad Co. and the Union Pacific Railroad Co., and waiving, relinquishing, and disclaiming all title and all right of reverter and forfeiture of the United States of America to the lands described in said conveyance;

S. 2375. An act to provide a revolving fund for the purchase of agricultural commodities and raw materials to be processed in occupied areas and sold;

S. 2440. An act for the relief of Charles Duncan Montieth;

S. 2554. An act to promote the common defense by providing for the retention and maintenance of a national reserve of industrial productive capacity, and for other purposes;

S. 2621. An act authorizing the extension of the functions and duties of Federal Prison Industries, Inc., to military disciplinary barracks;

S. 2655. An act to provide for the common defense by increasing the strength of the armed forces of the United States, including the Reserve components thereof, and for other purposes;

S. 2676. An act to authorize the Secretary of the Interior to convey a certain parcel of land in St. Louis County, Minn., to the University of Minnesota;

S. 2692. An act to terminate the retirement system of the Office of the Comptroller of the Currency, and to transfer that retirement fund to the Civil Service Retirement and Disability Fund;

S. 2698. An act to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institution, a State institution, and for other purposes;

S. 2705. An act to reimburse the James & Phelps Construction Co.;

S. 2709. An act for the relief of Stefan Magura and Michal Magura;

S. 2730. An act to include as allowable service under the act of July 6, 1945, service performed in the military service and on war transfer by employees in the field service of the Post Office Department;

S. 2743. An act providing for the more expeditious determination of certain claims filed by Ute Indians;

S. 2747. An act to amend the Canal Zone Code for the purpose of incorporating the Panama Railroad Company;

S. 2767. An act to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market of agricultural commodities to meet domestic needs and foreign commitment;

S. 2790. An act to amend the Servicemen's Readjustment Act of 1944, as amended, and for other purposes;

S. 2794. An act to authorize the Administrator of Veterans' Affairs to prescribe the rates of pay for certain positions at field installations;

S. 2830. An act to extend for 2 years the authority to provide for the maintenance of a domestic tin-smelting industry;

S. 2849. An act to authorize the Administrator of Veterans' Affairs to convey a certain tract of land in the State of Arkansas to Washington County, Ark.;

S. 2861. An act to assist by grants-in-aid the Republic of the Philippines in providing medical care and treatment for certain veterans;

S. 2877. An act to amend the Reconstruction Finance Corporation Act, as amended;

H. R. 333. An act for the relief of sundry residents of Alaska, the veterans of World War II;

H. R. 2009. An act for the relief of the estate of Vito Abarno;

H. R. 2269. An act for the relief of Frank A. Constable;

H. R. 2798. An act to amend section 5, Home Owners' Loan Act of 1933, and for other purposes;

H. R. 3190. An act to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure";

H. R. 3416. An act to provide for the establishment of the Pensacola National Monument;

H. R. 4044. An act to amend the Trading With the Enemy Act, as amended; to create a commission to make an inquiry and report with respect to war claims; and to provide for relief for internees in certain cases;

H. R. 4917. An act to provide further benefits for certain employees of the United States who are veterans of World War II and lost opportunity for probational civil-service appointments by reason of their service in the armed forces of the United States, and who, due to service-connected disabilities, are unable to perform the duties of the positions for which examinations were taken;

H. R. 5416. An act to promote the interests of the Fort Hall Indian irrigation project, Idaho; and for other purposes;

H. R. 5882. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes;

H. R. 5904. An act to continue the Virgin Islands Company as an agency of the United States;

H. R. 6248. An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes;

H. R. 6402. An act to provide for extension of the terms of office of the present members of the Atomic Energy Commission;

H. R. 6448. An act to authorize the Administrator of Veterans' Affairs to convey certain land in Tennessee to the city of Johnson City;

H. R. 6466. An act to amend and supplement section 2 of the act approved August 30, 1935, relating to the construction and financing of toll bridges over the Delaware River by the Delaware River Joint Toll Bridge Commission of the Commonwealth of Pennsylvania and the State of New Jersey;

H. R. 6481. An act making appropriations for Government corporations and independent executive agencies for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6527. An act to provide assistance to certain local school agencies overburdened with war-incurred or postwar national-defense-incurred enrollments;

H. R. 6641. An act to amend the Civil Service Retirement Act of May 29, 1930, to provide annuities for certain surviving spouses of annuitants retired prior to April 1, 1948;

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6801. An act making appropriations for foreign aid, and for other purposes;

H. R. 6808. An act to permit refund or credit to brewers of taxes paid on beer lost in bottling operations;

H. R. 6829. An act making supplemental appropriations for the Executive Office and sundry independent executive bureaus, boards, commissions, and offices for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6916. An act to provide for permanent postal rates and to provide pay increases for Government employees;

H. R. 6935. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1948, and for other purposes;

S. J. Res. 177. Joint resolution providing for participation by the Government of the United States in the Pan American Railway Congress, and authorizing an appropriation therefor;

S. J. Res. 219. Joint resolution to continue until March 1, 1919, the authority of the United States Maritime Commission to make provision for certain ocean transportation service to, from, and within Alaska;

H. J. Res. 190. Joint resolution authorizing the printing and binding of Cannon's Procedure in the House of Representatives and providing that the same shall be subject to copyright by the author;

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer U. S. Cavalry) of the Spanish-American War;

H. J. Res. 327. Joint resolution to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America; and

H. J. Res. 433. Joint resolution permitting the free entry of certain articles imported to promote international good will, and for other purposes.

## ENROLLED BILLS AND JOINT RESOLUTIONS PRESENTED AFTER ADJOURNMENT

Subsequent to the adjournment of the Senate on June 20, 1948, the following enrolled bills and joint resolutions, heretofore duly signed by the Presiding Officers of the two Houses, were presented to the President of the United States by the Secretary of the Senate:

On June 21, 1948:

S. 83. An act authorizing the naturalization of Elizabeth Pickering Winn;

S. 1107. An act relating to the arming of American vessels;

S. 1639. An act authorizing the repair and rehabilitation of irrigation works damaged by flood and the prevention of flood damage in the Fort Sumner irrigation district, and for other purposes;

S. 1790. An act for the relief of Mrs. Anna V. Reyer, Alexander A. Reyer, and Vitaly A. Reyer;

S. 1820. An act to confer jurisdiction on the State of Iowa over offenses committed by or against Indians on the Sac and Fox Indian Reservation;

S. 2186. An act to amend section 5 of the act entitled "An act to amend the laws relating to navigation, and for other purposes";

S. 2192. An act to amend the Interstate Commerce Act so as to permit the issuance of free passes to time inspectors of carriers subject to part I of such act;

S. 2341. An act to authorize an increase in the annual appropriation for the maintenance and operation of the Gorgas Memorial Laboratory;

S. 2510. An act to provide for certain administrative expenses in the Post Office Department, including retainment of pneumatic-tube systems, and for other purposes;

S. 1736. An act to authorize the Federal Works Administrator to lease for commercial purposes certain space in the building located at 811 Vermont Avenue NW., Washington, D. C., commonly known as the Lafayette Building;

S. 2739. An act to authorize the issuance of a stamp commemorative of the two hun-

ernment concerning the construction of railroads in Alaska and the establishment of reciprocal tariff and immigration arrangements.

ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED AFTER ADJOURNMENT

Mr. LeCOMPTE, from the Committee on House Administration, reported that that committee had examined and found truly enrolled bills and joint resolutions of the House of the following titles:

H. R. 838. An act for the relief of sundry residents of Alaska, the veterans of World War II;

H. R. 2009. An act for the relief of the estate of Vito Abarno;

H. R. 2269. An act for the relief of Frank A. Constable;

H. R. 2798. An act to amend section 5, Home Owners' Loan Act of 1933, and for other purposes;

H. R. 3190. An act to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure";

H. R. 3416. An act to provide for the establishment of the Pensacola National Monument;

H. R. 4044. An act to amend the Trading With the Enemy Act, as amended; to create a commission to make an inquiry and report with respect to war claims; and to provide for relief for internees in certain cases;

H. R. 4917. An act to provide further benefits for certain employees of the United States who are veterans of World War II and lost opportunity for probational civil-service appointments by reason of their service in the armed forces of the United States, and who, due to service-connected disabilities, are unable to perform the duties of the positions for which examinations were taken;

H. R. 5416. An act to promote the interests of the Fort Hall Indian irrigation project, Idaho, and for other purposes;

H. R. 5882. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes;

H. R. 6904. An act to continue the Virgin Islands Company as an agency of the United States;

H. R. 6348. An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes;

H. R. 6402. An act to provide for extension of the terms of office of the present members of the Atomic Energy Commission;

H. R. 6448. An act to authorize the Administrator of Veterans' Affairs to convey certain land in Tennessee to the city of Johnson City;

H. R. 6465. An act to amend and supplement section 2 of the act approved August 30, 1935, relating to the construction and financing of toll bridges over the Delaware River by the Delaware River Joint Toll Bridge Commission of the Commonwealth of Pennsylvania and the State of New Jersey;

H. R. 6481. An act making appropriations for Government corporations and independent executive agencies for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6527. An act to provide assistance to certain local school agencies overburdened with war-incurred or postwar national-defense-incurred enrollments;

H. R. 6641. An act to amend the Civil Service Retirement Act of May 29, 1930, to provide annuities for certain surviving spouses of annuitants retired prior to April 1, 1948;

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6801. An act making appropriations for foreign aid, and for other purposes;

H. R. 6829. An act making supplemental appropriations for the Executive Office and sundry independent executive bureaus, boards, commissions, and offices for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6916. An act to provide for permanent postal rates and to provide pay increases for Government employees;

H. R. 6935. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1948, and for other purposes;

H. R. 6808. An act to permit refund or credit to brewers of taxes paid on beer lost in bottling operations;

H. J. Res. 190. Joint resolution authorizing the printing and binding of Cannon's Procedure in the House of Representatives and providing that the same shall be subject to copyright by the author;

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer U. S. Cavalry) of the Spanish-American War;

H. J. Res. 327. Joint resolution to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America; and

H. J. Res. 438. Joint resolution permitting the free entry of certain articles imported to promote international good will, and for other purposes.

The SPEAKER, pursuant to the provisions of House Concurrent Resolution 219, Eightieth Congress, announced his signature to enrolled bills and joint resolutions of the Senate as follows:

On June 22, 1948:

S. 418. An act to provide for water-pollution-control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes;

S. 595. An act to provide that the rates of compensation for disabilities incurred in active military or naval service other than in a period of war service shall be equal to 80 percent of the rates payable for similar disabilities incurred during active service in time of war;

S. 1243. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes;

S. 1260. An act to create a commission to hear and determine the claims of certain motor carriers;

S. 1322. An act to provide a Federal charter for the Commodity Credit Corporation;

S. 1683. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State;

S. 1715. An act for the relief of Archie Hamilton and Delbert Hamilton;

S. 1717. An act for the relief of the estate of William R. Stigall, deceased;

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III;

S. 2217. An act conferring jurisdiction upon the Court of Claims of the United States to hear, determine, and render judgment upon the joint claims of Silas Mason Co., Inc.; Walsh Construction Co.; and Atkinson-Kier Co.;

S. 2242. An act to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes;

S. 2281. An act to provide for an air parcel-post service, and for other purposes;

S. 2371. An act validating certain conveyances of the Oregon Short Line Railroad Co. and the Union Pacific Railroad Co. and waiving, relinquishing, and disclaiming all title and all right of reverter and forfeiture of the United States of America to the lands described in said conveyance;

S. 2376. An act to provide a revolving fund for the purchase of agricultural commodities and raw materials to be processed in occupied areas and sold;

S. 2440. An act for the relief of Charles Duncan McIntyre;

S. 2554. An act to promote the common defense by providing for the retention and maintenance of a national reserve of industrial productive capacity, and for other purposes;

S. 2621. An act authorizing the extension of the functions and duties of Federal Prison Industries, Inc., to military disciplinary barracks;

S. 2655. An act to provide for the common defense by increasing the strength of the armed forces of the United States, including the Reserve components thereof, and for other purposes;

S. 2676. An act to authorize the Secretary of the Interior to convey a certain parcel of land in St. Louis County, Minn., to the University of Minnesota;

S. 2692. An act to terminate the retirement system of the Office of the Comptroller of the Currency, and to transfer that retirement fund to the Civil Service Retirement and Disability Fund;

S. 2698. An act to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institution, a State institution, and for other purposes;

S. 2705. An act to reimburse the James & Phelps Construction Co.;

S. 2709. An act for the relief of Stefan Magura and Michal Magura;

S. 2730. An act to include as allowable service under the act of July 6, 1945, service performed in the military forces and on war transfer by employees in the field service of the Post Office Department;

S. 2743. An act providing for the more expeditious determination of certain claims filed by Ute Indians;

S. 2747. An act to amend the Canal Zone Code for the purpose of incorporating the Panama Railroad Company;

S. 2767. An act to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market of agricultural commodities to meet domestic needs and foreign commitment;

S. 2794. An act to authorize the Administrator of Veterans' Affairs to prescribe the rates of pay for certain positions at field installations;

S. 2830. An act to extend for 2 years the authority to provide for the maintenance of a domestic tin-smelting industry;

S. 2849. An act to authorize the Administrator of Veterans' Affairs to convey a certain tract of land in the State of Arkansas to Washington County, Ark.;

S. 2951. An act to assist by grants-in-aid the Republic of the Philippines in providing medical care and treatment for certain veterans;

S. J. Res. 177. Joint resolution providing for participation by the Government of the United States in the Pan American Railway Congress, and authorizing an appropriation therefor; and

S. J. Res. 219. Joint resolution to continue until March 1, 1949, the authority of the United States Maritime Commission to make provision for certain ocean transportation service to, from, and within Alaska.

And on June 23, 1948, enrolled bills of the Senate as follows:

S. 165. An act for the relief of Doris E. Snyder;

S. 2790. An act to amend the Servicemen's Readjustment Act of 1944, as amended, and for other purposes; and

S. 2877. An act to amend the Reconstruction Finance Corporation Act, as amended.

**BILLS AND JOINT RESOLUTIONS PRESENTED TO THE PRESIDENT AFTER ADJOURNMENT**

Mr. LeCOMPTE, from the Committee on House Administration, reported that that committee did on the following dates present to the President, for his approval, bills and joint resolutions of the House of the following titles:

On June 21, 1948:

H. R. 371. An act for the relief of Jenness O. Thomas;

H. R. 564. An act for the relief of Sarah Lee Cregg;

H. R. 700. An act for the relief of Anthony Arancio;

H. R. 703. An act for the relief of Leon Nikolaivich Volkov;

H. R. 851. An act for the relief of Adney W. Gray;

H. R. 911. An act for the relief of Kam Fong Chun, Mr. and Mrs. Jose Diaz, Joseph de Souza, Mr. and Mrs. Kenneth Ayres, and Jose Oduardo;

H. R. 912. An act for the relief of Hiro Higa and Kana Higa;

H. R. 915. An act to confer jurisdiction upon the District Court of the United States for the Territory of Hawaii to hear, determine, and render judgment on the claims of the executors and trustees of the estate of L. L. McCandless, deceased, as their interests may appear, against the United States of America;

H. R. 1076. An act for the relief of Chester O. Glenn;

H. R. 1409. An act for the relief of Frantisek Jiri Pavlik or Georg Pavlik;

H. R. 1490. An act for the relief of the United States Radiator Corp., of Detroit, Mich.;

H. R. 1842. An act for the relief of Miss Rosella M. Kostenbader;

H. R. 1920. An act for the relief of James D. Sigler and Frederick F. Vogelsang III;

H. R. 1735. An act for the relief of G. C. Hedrick;

H. R. 1764. An act for the relief of Gabel Construction Co.;

H. R. 1779. For the relief of the Winona Machine & Foundry Co., a corporation of Winona, Minn.;

H. R. 1780. An act for the relief of the Cannon Valley Milling Co.;

H. R. 1910. An act for the relief of the legal guardian of Robert Lee Threatt, a minor;

H. R. 1930. An act for the relief of the Growers Fertilizer Co., a Florida corporation;

H. R. 2096. An act to amend section 11 of the act approved June 5, 1942 (56 Stat. 317), relating to Mammoth Cave National Park in the State of Kentucky, and for other purposes;

H. R. 2192. An act for relief of the Massman Construction Co.;

H. R. 2193. An act for the relief of Robert E. Graham;

H. R. 2352. An act to provide for sale to the Crow tribe of interests in the estates of deceased Crow Indian allottees, and to provide for the sale of certain lands to the Board of County Commissioners of Comanche County, Okla., and for other purposes;

H. R. 2372. An act for the relief of George Cleve Williams;

H. R. 2395. An act for the relief of the Cypress Creek drainage district of the State of Arkansas;

H. R. 2431. An act for the relief of the estate of David Jefferson Janow, deceased;

H. R. 2489. An act for the relief of James W. Adkins and Mary Clark Adkins;

H. R. 2551. An act for the relief of William R. Ramsey;

H. R. 2552. An act for the relief of Thomas A. Haley;

H. R. 2696. An act for the relief of Otto Kraus, receiver of the Neafie and Levy Ship & Engine Building Co.;

H. R. 2729. An act for the relief of the legal guardian of Rose Mary Ammirato, a minor;

H. R. 2732. An act for the relief of Dennis Stanton;

H. R. 2734. An act for the relief of Joseph M. Henry;

H. R. 2878. An act to amend the act approved May 18, 1928 (45 Stat. 602), as amended, to revise the roll of the Indians of California provided therein;

H. R. 2889. An act for the relief of Aubrey F. Houston;

H. R. 2918. An act for the relief of the Sumner County Colored Fair Association;

H. R. 3062. An act for the relief of the estate of Rudolph Maximilien Goepp, Jr.;

H. R. 3218. An act to authorize an emergency fund for the Bureau of Reclamation to assure the continuous operation of its irrigation and power systems;

H. R. 3261. An act for the relief of Capt. Carroll C. Garretson;

H. R. 3427. An act for the relief of Mrs. Mary H. Overall and Thomas I. Baker;

H. R. 3499. An act for the relief of Petrol Corp.;

H. R. 3566. An act to amend subsection (c) of section 19 of the Immigration Act of 1917, as amended, and for other purposes;

H. R. 3735. An act to authorize the Secretary of the Army to sell and convey to Okaloosa County, State of Florida, all the right, title, and interest of the United States in and to a portion of Santa Rosa Island, Fla., and for other purposes;

H. R. 3937. An act for the relief of William C. Reese;

H. R. 3999. An act to authorize the Attorney General to adjudicate certain claims resulting from evacuation of certain persons of Japanese ancestry under military orders;

H. R. 4047. An act for the relief of Edmund Huppler;

H. R. 4071. An act to amend sections 301 (k) and 304 (a) of the Federal Food, Drug, and Cosmetic Act, as amended;

H. R. 4103. An act for the relief of Charles M. Davis;

H. R. 4199. An act for the relief of George Haniotis;

H. R. 4272. An act to provide for the procurement and supply of Government headstones or markers for unmarked graves of members of the armed forces dying in the service or after honorable discharge therefrom, and other persons, and for other purposes;

H. R. 4330. An act to authorize the Secretary of State to perform certain consular-type functions within the United States and its Territories and possessions;

H. R. 4367. An act authorizing the Hidalgo Bridge Co., its heirs, legal representatives, and assigns, to construct, maintain, and operate a railroad toll bridge across the Rio Grande, at or near Hidalgo, Tex.;

H. R. 4435. An act to amend the Civil Aeronautics Act of 1938 by redefining certain powers of the Administrator, by authorizing delegation of certain powers by the Civil Aeronautics Board to the Administrator, and for other purposes;

H. R. 4441. An act for the relief of the Williams J. Burns International Detective Agency;

H. R. 4452. An act for the relief of Douglas L. Craig;

H. R. 4462. An act authorizing the conveyance of certain lands in Park County, Wyo., to the State of Wyoming;

H. R. 4516. An act for the relief of the Moore Dry Dock Co., of Oakland, Calif.;

H. R. 4518. An act for the relief of Gerald S. Furman;

H. R. 4587. An act for the relief of Mrs. Harry A. Light (formerly Mrs. Elsie Purvey);

H. R. 4590. An act for the relief of Mrs. Loraine Thomsen;

H. R. 4635. An act to amend section 11 of an act entitled "An act to regulate barbers in the District of Columbia, and for other purposes";

H. R. 4644. An act for the relief of E. Brevard Walker, trading as E. B. Walker Lumber Co.;

H. R. 4690. An act to amend the act of July 30, 1947, permitting vessels of Canadian registry to transport certain merchandise between Hyder, Alaska, and points in the continental United States;

H. R. 4816. An act to amend section 624 of the Public Health Service Act so as to provide a minimum allotment of $100,000 to each State for the construction of hospitals;

H. R. 4856. An act to delay the liquidation of mineral interests reserved to the United States as required by the Farmers' Home Administration Act of 1946, and for other purposes;

H. R. 4881. An act for the relief of Dimitri Petrou;

H. R. 4952. An act to provide pensions for certain widows of veterans of the Spanish-American War, including the Boxer Rebellion and the Philippine Insurrection;

H. R. 5053. An act to provide for the establishment of the Independence National Historical Park, and for other purposes;

H. R. 5252. An act to extend the time for commencing the construction of a toll bridge across the Rio Grande at or near Rio Grande City, Tex.;

H. R. 5355. An act authorizing a per capita payment of $50 each to the members of the Red Lake Band of Chippewa Indians from the proceeds of the sale of timber and lumber on the Red Lake Reservation;

H. R. 5508. An act to amend the Veterans' Preference Act of 1944 to extend the benefits of such act to certain mothers of veterans;

H. R. 5710. An act to amend the act entitled "An act to expedite the provision of housing in connection with national defense, and for other purposes," approved October 14, 1940, as amended;

H. R. 5716. An act to record the lawful admission to the United States for permanent residence of Patricia Schwartz and Beatrice Schwartz;

H. R. 5734. An act to authorize the Administrator of Veterans' Affairs to convey to the city of Cheyenne, Wyo., for public-park and golf-course purposes, certain land situated within the boundaries of the Veterans' Administration center at Cheyenne, Wyo.;

H. R. 5750. An act to provide for the extension and improvement of post-office facilities at Los Angeles, Calif., and for other purposes;

H. R. 5861. An act to direct the Secretary of Agriculture to convey certain land to the State of Oklahoma;

H. R. 5886. An act to amend section 332 (a) of the Nationality Act of 1940;

H. R. 5888. An act to amend and supplement the Federal-Aid Road Act approved July 11, 1916 (39 Stat. 355), as amended and supplemented, to authorize appropriations for continuing the construction of highways, and for other purposes;

H. R. 6039. An act to authorize the permanent appointment in the Regular Army of one officer in the grade of general and to authorize the permanent appointment in the Regular Air Force of one officer in the grade of general, and for other purposes;

H. R. 6089. An act to amend the act of July 6, 1945 (Public Law 134);

H. R. 6090. An act authorizing the Secretary of the Interior to issue patents for lands held under color of title;

H. R. 6096. An act to provide for making available the Government-owned alcohol plants at Muscatine, Iowa; Kansas City, Mo.; and Omaha, Nebr., for the production of products from agricultural commodities in the furtherance of authorized programs of

the Department of Agriculture, and for other purposes;

H. R. 6116. An act to amend the Trading With the Enemy Act:

H. R. 6192. An act to make imported beer and other similar imported fermented liquors subject to the internal-revenue tax on fermented liquor;

H. R. 6184. An act for the relief of the East Coast Ship & Yacht Corp., of Noank, Conn.;

H. R. 6186. An act for reimbursement of the Hawaiian Dredging Co., Ltd.;

H. R. 6224. An act for the relief of John Watkins;

H. R. 6293. An act to amend the act of June 19, 1934, providing for the establishment of the National Archives, so as to provide that certain fees collected by the Archivist shall be available for disbursement in the interest of the National Archives;

H. R. 6318. An act to amend section 3 of the Standard Time Act of March 19, 1918, as amended, relating to the placing of a certain portion of the State of Idaho in the third time zone;

H. R. 6327. An act to provide for the issuance of a license to practice chiropractic in the District of Columbia to Samuel O. Burdette;

H. R. 6428. An act to reimburse the Luther Bros. Construction Co.;

H. R. 6452. An act to amend section 7 of the act entitled "An act making appropriations to provide for the government of the District of Columbia for the fiscal year ending June 30, 1903, and for other purposes,"; approved July 1, 1902, as amended;

H. R. 6454. An act to amend the Civil Service Retirement Act of May 29, 1930, as amended, to provide annuities for certain Federal employees who have rendered at least 20 years' service in the investigation, apprehension, or detention of persons suspected or convicted of offenses against the United States;

H. R. 6507. An act to amend subsection 602 (f) of the National Service Life Insurance Act of 1940, as amended, to authorize renewal of level premium term insurance for a second 5-year period, and for other purposes;

H. R. 6598. To amend section 2 of the act entitled "An act to provide for insanity proceedings in the District of Columbia," approved August 9, 1939;

H. R. 6633. An act to authorize an exchange of lands and interests therein between the city of San Diego, Calif., and the United States, and for other purposes;

H. R. 6634. An act to authorize the issuance of a special series of stamps in honor and commemoration of Moina Michael, originator of Flanders Field memorial poppy idea;

H. R. 6698. An act to authorize the course of instruction at the United States Naval Academy to be given to not exceeding four persons at a time from the Republic of the Philippines;

H. R. 6707. An act to amend the Office Personnel Act of 1947 (Public Law 381), 80th Cong.), and for other purposes;

H. R. 6818. An act to amend title X of the Social Security Act (relating to aid to the blind) so as to provide greater encouragement to blind recipients thereunder to become self-supporting;

H. R. 6822. An act to continue the authorization for the appointment of two additional Assistant Secretaries of State;

H. R. 6860. An act to amend the Federal Airport Act;

H. R. 6412. An act to codify and enact into law title 3 of the United States Code, entitled "The President";

H. R. 6419. An act authorizing the construction, repair, and preservation of certain public works on rivers and harbors for navigation, flood control, and for other purposes;

H. R. 6705. An act making appropriations for the Department of the Interior for the

fiscal year ending June 30, 1949, and for other purposes;

H. R. 6772. An act making appropriations for the Department of the Navy and the naval service for the fiscal year ending June 30, 1949, and for other purposes;

H. J. Res. 297. Joint resolution to increase the sum authorized to be appropriated for the presentation to Eire of a statute of Commodore John Barry;

H. J. Res. 421. Joint resolution to authorize and direct the Commissioners of the District of Columbia to investigate and study certain matters relating to parking lots in the District of Columbia;

H. J. Res. 427. Joint resolution correcting act establishing the Theodore Roosevelt National Memorial Park, as amended;

H. J. Res. 428. Joint resolution providing an extension of time for claiming credit or refund with respect to war losses; and

H. J. Res. 429. Joint resolution relating to the marital deduction, for estate-tax purposes, in the case of life insurance or annuity payments.

On June 23, 1948:

H. R. 333. An act for the relief of sundry residents of Alaska, veterans of World War II;

H. R. 2009. An act for the relief of the estate of Vito Abarno;

H. R. 2269. An act for the relief of Frank A. Constable;

H. R. 2796. An act to amend section 5, Home Owners' Loan Act of 1933, and for other purposes;

H. R. 3190. An act to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure";

H. R. 3416. An act to provide for the establishment of the Pensacola National Monument;

H. R. 4044. An act to amend the Trading With the Enemy Act, as amended; to create a commission to make an inquiry and report with respect to war claims; and to provide for relief of internees in certain cases;

H. R. 4917. An act to provide further benefits for certain employees of the United States who are veterans of World War II and lost opportunity for probational civil-service appointments by reason of their service in the armed forces of the United States, and who, due to service-connected disabilities, are unable to perform the duties of the positions for which examinations were taken;

H. R. 5416. An act to promote the interests of the Fort Hall Indian Irrigation project, Idaho, and for other purposes;

H. R. 5882. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes;

H. R. 5904. An act to continue the Virgin Islands Company as an agency of the United States;

H. R. 6246. An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes;

H. R. 6402. An act to provide for extension of the terms of office of the present members of the Atomic Energy Commission;

H. R. 6448. An act to authorize the Administrator of Veterans' Affairs to convey certain land in Tennessee to the city of Johnson City;

H. R. 6465. An act making supplemental amendment section 2 of the act approved August 30, 1935, relating to the construction and financing of toll bridges over the Delaware River by the Delaware River Joint Toll Bridge Commission of the Commonwealth of Pennsylvania and the State of New Jersey;

H. R. 6481. An act making appropriations for Government corporations and independent executive agencies for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6527. An act to provide assistance to certain local school agencies overburdened with war-incurred, or postwar national-defense-incurred enrollments;

H. R. 6641. An act to amend the Civil Service Retirement Act of May 29, 1930, to provide annuities for certain surviving spouses of annuitants retired prior to April 1, 1948;

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6801. An act making appropriations for foreign aid, and for other purposes;

H. R. 5808. An act to permit refund or credit to brewers of taxes paid on beer lost in bottling operations;

H. R. 6829. An act making supplemental appropriations for the Executive Office and sundry independent executive bureaus, boards, commissions, and offices, for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6916. An act to provide for permanent postal rates and to provide pay increases for Government employees;

H. R. 6935. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1948, and for other purposes;

H. J. Res. 190. Joint resolution authorizing the printing and binding of Cannon's Procedure in the House of Representatives and providing that the same shall be subject to copyright by the author;

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer United States Cavalry) of the Spanish-American War;

H. J. Res. 327. Joint resolution to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America; and

H. J. Res. 433. Joint resolution permitting the free entry of certain articles imported to promote international good will, and for other purposes.

APPROVAL OF BILLS AND JOINT RESOLUTIONS AFTER ADJOURNMENT

A message from the President of the United States, received by the Clerk of the House, reported that on the following dates the President had approved and signed bills and joint resolutions of the House of the following titles:

On June 19, 1948:

H. R. 238. An act for the extension of admiralty jurisdiction;

H. R. 636. An act for the relief of W. A. Knox, W. L. M. Knox, and Frank C. Morris, operating as Knox Lumber Sales Co., of Thomson, Ga.;

H. R. 1222. An act for the relief of Mr. and Mrs. M. C. Lewis;

H. R. 1726. An act for the relief of Elsie L. Rosenow;

H. R. 1781. An act for the relief of Annie L. Taylor, and William Benjamin Taylor;

H. R. 1855. An act for the relief of Elbert Spivey;

H. R. 2062. An act for the relief of Mrs. Carrie M. Lee;

H. R. 2273. An act to amend the act of May 29, 1944, providing for the recognition of the services of the civilian officials and employees, citizens of the United States, engaged in and about the construction of the Panama Canal;

H. R. 2479. An act for the relief of Hardy H. Bryant;

H. R. 2684. An act for the relief of sundry fruit growers of the State of Delaware who sustained losses as the result of the fumigation of apples with methyl bromide in order to comply with the requirements of the

United States Department of Agriculture relating to the Japanese beetle quarantine;

H. R. 2721. An act to amend the act of March 10, 1934, entitled "an act to promote the conservation of wildlife, fish, and game, and for other purposes," as amended by the act approved August 14, 1946;

H. R. 2916. An act for the relief of Walter Vandahl and Esther S. Vandahl, Allabrada Adams, Mrs. Lucile L. Brice Talbot, Mrs. Gladys Webb, and John E. Webb;

H. R. 2922. An act for the relief of Charles B. Featherstone;

H. R. 3007. An act for the relief of Ernest F. Lutzken;

H. R. 3114. An act for the relief of the estate of John Delman;

H. R. 3159. An act for the relief of Mrs. Mae H. Fitzgerald;

H. R. 3260. An act for the relief of Clarence S. Oatka;

H. R. 3382. An act for the relief of Emeline Latigue;

H. R. 3402. An act to extend the authorized maturity date of certain bridge revenue bonds to be issued in connection with the refunding of the acquisition cost of the bridge across the Missouri River at Rulo, Nebr.;

H. R. 3433. An act to amend the act entitled "An act to classify the officers and members of the Fire Department of the District of Columbia, and for other purposes," approved June 20, 1906, and for other purposes;

H. R. 3500. An act for the relief of Lester L. Elder and Mrs. Esther E. Elder;

H. R. 3641. An act for the relief of Mrs. Helen E. Scofield;

H. R. 3683. An act to authorize and direct the Secretary of the Army to transfer to the Territory of Alaska the title to the Army vessel *Hygiene*;

H. R. 3916. An act to increase the size of the Arkansas-Mississippi Bridge Commission, and for other purposes;

H. R. 4244. An act to authorize assistance to certain veterans in acquiring specially adapted housing which they require by reason of the nature of their service-connected disabilities;

H. R. 4455. An act to authorize the conveyance by the Secretary of the Interior to the Richmond, Fredericksburg & Potomac Railroad Co., of certain lands lying in the bed of Roaches Run, Arlington County, Va., and for other purposes;

H. R. 4663. An act to confer jurisdiction upon the District Court of the United States for the Middle District of Georgia to hear, determine, and render judgment on the claims of the owners of the fee-simple titles and leasehold interests in lands leased to the United States by the city of Macon, Ga., for use as a part of the site of Camp Wheeler, Ga.;

H. R. 4688. An act to enlarge the Gettysburg National Cemetery;

H. R. 4830. An act for the relief of Cooperative for American Remittances to Europe, Inc.;

H. R. 4874. An act to transfer Pelican Rock in Crescent City Harbor, Del Norte County, Calif., to that county;

H. R. 5065. An act to amend section 1700 (a) (1) of the Internal Revenue Code so as to exempt hospitalized servicemen and veterans from the admissions tax when admitted free;

H. R. 5112. An act to amend the Civil Service Retirement Act of May 29, 1930, as amended;

H. R. 5147. An act authorizing the Secretary of the Interior to issue a patent in fee to Florence A. W. Arens;

H. R. 5174. An act to authorize Commodity Credit Corporation to make adjustment payments to certain producers of raw cane sugar in Puerto Rico and Hawaii;

H. R. 5844. An act to prevent retroactive checkage of retired pay in the cases of certain enlisted men and warrant officers appointed or advanced to commissioned rank or grade under the act of July 24, 1941 (55 Stat. 603), as amended, and for other purposes;

H. R. 5330. An act for the relief of W. W. DeLoach;

H. R. 5655. An act confirming the claim of Juan Berrar to certain lands in the State of Louisiana, county of Attakapas, now parish of St. Martin, said claim being listed as No. B-690 in the report of the commissioners dated June 1811, so as to include section 2, township 11 south, range 6 east, Louisiana meridian, containing one hundred and thirty-nine and sixty-two one-hundredths acres;

H. R. 5756. An act to amend further the Armed Forces Leave Act of 1946, as amended, to permit certain payments to be made to surviving brothers and sisters, and nieces and nephews, of deceased members and former members of the armed forces;

H. R. 5808. An act to continue a system of nurseries and nursery schools for the day care of school-age and under-school-age children of the District of Columbia;

H. R. 5820. An act to aid in the development of improved prosthetic appliances, and for other purposes;

H. R. 5883. An act making appropriations for the Department of Agriculture (exclusive of the Farm Credit Administration) for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 5889. An act to extend the provisions of title VI of the Public Health Service Act to the Virgin Islands;

H. R. 5891. An act to repeal an act approved August 24, 1894, entitled "An act to authorize the purchasers of the property and franchises of the Choctaw Coal & Railway Co. to organize a corporation, and to confer upon the same all the powers, privileges, and franchises vested in that company," and all acts amendatory thereof and supplemental thereto;

H. R. 5957. An act to provide for the establishment of the Fort Vancouver National Monument, in the State of Washington, to include the site of the old Hudson's Bay Co. stockade, and for other purposes;

H. R. 5983. An act to amend section 202 of title II of the Army-Navy Medical Service Corps Act of 1947, as amended, to remove the present restriction on appointments to the Navy Medical Service Corps;

H. R. 6073. An act to provide for the acquisition of lands for grazing and related purposes;

H. R. 6110. An act to permit the landing of halibut by Canadian fishing vessels to Alaskan ports, and for other purposes;

H. R. 6113. An act to transfer certain land in Langlade County, Wis., to the United States Forest Service;

H. R. 6114. An act to amend title I of the Bankhead-Jones Farm Tenant Act, as amended, so as to increase the interest rate on title I loans, to provide for the redemption of nondelinquent insured mortgages, to authorize advances for the preservation and protection of the insured loan security, and for other purposes;

H. R. 6229. An act to authorize the extension of leases of certain land in the Territory of Hawaii;

H. R. 6234. An act to authorize the establishment of internships in the Department of Medicine and Surgery of the Veterans' Administration;

H. R. 6252. An act to authorize the issuance of a land patent to certain public lands, situated in the county of Kauai, Territory of Hawaii, for school purposes;

H. R. 6339. An act to amend the provisions of title VI of the Public Health Service Act relating to standards of maintenance and operation for hospitals receiving aid under that title;

H. R. 6430. An act making appropriations for the government of the District of Columbia and other activities chargeable in whole or in part against the revenues of such District for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6689. An act to provide for the temporary free importation of lead;

H. R. 6716. An act to authorize the Administrator of Veterans' Affairs to transfer a portion of the Veterans' Administration center at Los Angeles, Calif., to the State of California for the use of the University of California; and

H. R. 6758. An act making supplemental appropriations for the Treasury and Post Office Departments for the fiscal year ending June 30, 1949, and for other purposes.

On June 21, 1948:

H. R. 633. An act for the relief of Mrs. Myrtle Hovde;

H. R. 6368. An act to provide for the issuance of a special postage stamp in commemoration of the dedication of the Pelomar Mountain Observatory.

On June 22, 1948:

H. R. 929. An act for the relief of Ernest L. Godfrey;

H. R. 4964. An act to preserve seniority rights of 10-point preference eligibles in the postal service transferring from the position of letter carrier to clerk or from the position of clerk to letter carrier;

H. R. 5071. An act to extend the public land laws of the United States to certain lands, consisting of islands, situated in the Red River in Oklahoma; and

H. R. 5272. An act relating to the compensation of certain railway postal clerks;

H. R. 5822. An act to establish the Saratoga National Historical Park, in the State of New York, from the lands that have been acquired by the Federal Government for that purpose pursuant to the act of June 1, 1938 (52 Stat. 608), and for other purposes;

H. R. 6239. An act to provide for the suspension of annual assessment work on mining claims held by location in the Territory of Alaska;

H. R. 6246. An act to authorize the transfer of certain Federal lands within the Chopawamsic Park to the Secretary of the Navy, the addition of lands surplus to the Department of the Army to this park, the acquisition of additional lands needed to round out the boundaries of this park, to change the name of said park to Prince William Forest Park, and for other purposes;

H. R. 6289. An act to provide for the voluntary admission and treatment of mental patients at St. Elizabeths Hospital.

On June 23, 1948:

H. R. 2588. An act requiring all mails consigned to an airport from a post office or branch, or from an airport to a post office or branch, within a radius of 35 miles of a city in which there has been established a Government-owned vehicle service to be delivered by Government-owned motor vehicles; and

H. R. 6766. An act to amend the Railroad Retirement Act of 1937, as amended, and the Railroad Unemployment Insurance Act, as amended, and for other purposes.

On June 24, 1948:

H. R. 239. An act for further perfect the consolidation of the Lighthouse Service with the Coast Guard;

H. R. 2887. An act to permit, subject to certain conditions, mining locations under the mining laws of the United States within that portion of the Harney National Forest, designated as a game sanctuary, and for other purposes;

H. R. 3889. An act to amend Veterans Regulation No. 1 (a), parts I and II, as amended, to establish a presumption of service connection for chronic and tropical diseases;

H. R. 4071. An act to amend sections 301 (k) and 304 (a) of the Federal Food, Drug, and Cosmetic Act, as amended;

H. R. 4047. An act for the relief of Edmund Huppler;

H.R. 4516. An act for the relief of the Moore Dry Dock Co., of Oakland, Calif.;

H.R. 4963. An act to provide pensions for certain widows of veterans of the Spanish-American War, including the Boxer Rebellion and the Philippine Insurrection;

H.R. 5036. An act to authorize the attendance of the United States Marine Corps Band at the national assembly of the Marine Corps League to be held at Milwaukee, Wis., September 22 to September 25, inclusive, 1948;

H.R. 5275. An act to amend the Tariff Act of 1930 to provide for the free importation of limestone to be used in the manufacture of fertilizer;

H.R. 5936. An act to provide for the addition of certain surplus Government lands to the Chickamauga and Chattanooga National Military Park, in the States of Georgia and Tennessee, and for other purposes;

H.R. 6318. An act to amend section 3 of the Standard Time Act of March 19, 1918, as amended, relating to the placing of a certain portion of the State of Idaho in the third time zone;

H.R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes;

H.R. 6822. An act to continue the authorization for the appointment of two additional Assistant Secretaries of State;

H.R. 6188. An act to confer jurisdiction over the Fort Des Moines Veterans' Village upon the State of Iowa;

H.R. 6698. An act to authorize the course of instruction at the United States Naval Academy to be given to not exceeding four persons at a time from the Republic of the Philippines;

H.R. 6736. An act to amend the Public Health Service Act to provide for, foster, and aid in coordinating research relating to dental diseases and conditions, and for other purposes; and

H.R. 6772. An act making appropriations for the Department of the Navy and the naval service for the fiscal year ending June 30, 1949, and for other purposes.

On June 25, 1948:

H.R. 564. An act for the relief of Sarah Lee Cregg;

H.R. 700. An act for the relief of Anthony Arknolo;

H.R. 912. An act for the relief of Hiro Higa and Kana Higa;

H.R. 945. An act relating to the payment of fees, expenses, and costs of jurors;

H.R. 1409. An act for the relief of Frantisek Jiri Pavlik or Georg Pavlik;

H.R. 1642. An act for the relief of Miss Rosella M. Kostenbader;

H.R. 2009. An act for the relief of the estate of Vito Abarno;

H.R. 2193. An act for the relief of Robert E. Graham;

H.R. 2431. An act for the relief of the estate of David Jefferson Janow, deceased;

H.R. 2734. An act for the relief of Joseph M. Henry;

H.R. 2786. An act to amend section 2 of an act, entitled, "An act to provide for the establishment of a probation system in the United States courts, except in the District of Columbia," approved March 4, 1925, as amended (18 U.S.C. 725);

H.R. 3190. An act to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure";

H.R. 3214. An act to revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary";

H.R. 3427. An act for the relief of Mrs. Mary H. Overall and Thomas I. Baker;

H.R. 4114. An act to amend the Public Health Service Act to permit certain expenditures, and for other purposes;

H.R. 4298. An act for the relief of Henry Hill;

H.R. 4452. An act for the relief of Douglas L. Craig;

H.R. 4566. An act for the relief of William Nally;

H.R. 4587. An act for the relief of Mrs. Harry A. Light (formerly Mrs. Elsie Furvey);

H.R. 4518. An act for the relief of Gerald S. Furmest;

H.R. 4659. An act to ratify and confirm amendments to certain contracts for the furnishing of petroleum products to the United States;

H.R. 4881. An act for the relief of Dimitri Petrou;

H.R. 5524. An act making appropriations for civil functions administered by the Department of the Army for the fiscal year ending June 30, 1949, and for other purposes;

H.R. 5886. An act to amend section 332 (a) of the Nationality Act of 1940;

H.R. 6293. An act to amend the act of June 19, 1934, providing for the establishment of the National Archives, so as to provide that certain fees collected by the Archivist shall be available for disbursement in the interest of the National Archives;

H.R. 6327. An act to provide for the issuance of a license to practice chiropractic in the District of Columbia to Samuel O. Burdette;

H.R. 6412. An act to codify and enact into law title 3 of the United States Code, entitled "The President";

H.R. 6641. An act to amend the Civil Service Retirement Act of May 29, 1930, to provide annuities for certain surviving spouses of annuitants retired prior to April 1, 1948;

H.R. 6935. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1948, and for other purposes;

H.J. Res. 297. Joint resolution to increase the sum authorized to be appropriated for the presentation to Eire of a statue of Commodore John Barry; and

H.J. Res. 433. Joint resolution permitting the free entry of certain articles imported to promote international good will, and for other purposes.

On June 26, 1948:

H.R. 2551. An act for the relief of William R. Ramsey;

H.R. 2732. An act for the relief of Dennis Stanton;

H.R. 2918. An act to authorize an emergency fund for the Bureau of Reclamation to assure the continuous operation of its irrigation and power systems;

H.R. 3937. An act for the relief of William C. Reese;

H.R. 6039. An act to authorize the permanent appointment in the Regular Army of one officer in the grade of general and to authorize the permanent appointment in the Regular Air Force of one officer in the grade of general, and for other purposes;

H.R. 6224. An act for the relief of John Watkins;

H.R. 6556. An act to extend the authority of the President under section 350 of the Tariff Act of 1930, as amended, and for other purposes; and

H.J. Res. 190. Joint resolution authorizing the printing and binding of Cannon's Procedure in the House of Representatives and providing that the same shall be subject to copyright by the author.

On June 28, 1948:

H.R. 971. An act for the relief of Jenness C. Thomas;

H.R. 1076. An act for the relief of Chester O. Glenn;

H.R. 1220. An act for the relief of James D. Sigler and Frederick P. Vogelsand III;

H.R. 2269. An act for the relief of Frank A. Constable;

H.R. 4330. An act to authorize the Secretary of State to perform certain consular-type functions within the United States and its Territories and possessions;

H.R. 4367. An act authorizing the Hidalgo Bridge Co., its heirs, legal representatives, and assigns, to construct, maintain, and operate a railroad toll bridge across the Rio Grande, at or near Hidalgo, Tex.;

H.R. 4635. An act to amend section 11 of an act entitled "An act to regulate barbers in the District of Columbia, and for other purposes";

H.R. 4690. An act to amend the act of July 30, 1947, permitting vessels of Canadian registry to transport certain merchandise between Hyder, Alaska, and points in the continental United States;

H.R. 4917. An act to provide further benefits for certain employees of the United States who are veterans of World War II and lost opportunity for probational civil-service appointments by reason of their service in the armed forces of the United States, and who, due to service-connected disabilities, are unable to perform the duties of the positions for which examinations were taken;

H.R. 5053. An act to provide for the establishment of the Independence National Historical Park, and for other purposes;

H.R. 5710. An act to amend the act entitled "An act to expedite the provision of housing in connection with national defense, and for other purposes," approved October 14, 1940, as amended;

H.R. 5715. An act to record the lawful admission to the United States for permanent residence of Patricia Schwarts and Beatrice Schwarts;

H.R. 5648. An act to authorize the Administrator of Veterans' Affairs to convey certain land in Tennessee to the city of Johnson City;

H.R. 6707. An act to amend the Officer Personnel Act of 1947 (Public Law 381, 80th Cong.), and for other purposes; and

H.R. 6801. An act making appropriations for foreign aid, and for other purposes.

On June 29, 1948:

H.R. 333. An act for the relief of sundry residents of Alaska, veterans of World War II;

H.R. 703. An act for the relief of Leon Nikolaivich Volkov;

H.R. 911. An act for the relief of Kam Fong Chun, Mr. and Mrs. Jose Diaz, Joseph Da Souza, Mr. and Mrs. Kenneth Ayres, and Jose Oducado;

H.R. 915. An act to confer jurisdiction upon the District Court of the United States for the Territory of Hawaii to hear, determine, and render judgment on the claims of the executors and trustees of the estate of L. L. McCandless, deceased, as their interests may appear, against the United States of America;

H.R. 1930. An act for the relief of the Growers Fertilizer Co., a Florida corporation;

H.R. 2239. An act to amend section 13 (a) of the Surplus Property Act of 1944, as amended;

H.R. 2372. An act for the relief of George Cleve Williams;

H.R. 2395. An act for the relief of the Cypress Creek Drainage District of the State of Arkansas;

H.R. 2744. An act to provide for the elimination of Regular Army and Regular Air Force officers and for the retirement of officers, warrant officers, and enlisted men of the Regular Army and the Regular Air Force, and to provide retirement benefits for members of the Reserve components of the Army of the United States, the Air Force of the United States, United States Navy and Marine Corps, and Coast Guard;

H.R. 2918. An act for the relief of the Sumner County Colored Fair Association;

H.R. 4103. An act for the relief of Charles M. Davis;

H.R. 4516. An act to amend section 624 of the Public Health Service Act so as to provide a minimum allotment of $100,000 to each State for the construction of hospitals;

H.R. 5734. An act to authorize the Administrator of Veterans' Affairs to convey to the city of Cheyenne, Wyo., for public-park and

## HISTORY OF BILLS ENACTED INTO PUBLIC LAW (80TH CONG., 2D SESS.)—Continued

| Title | Bill No. | Date introduced | Committees—hearings House | Committees—hearings Senate | Date reported House | Date reported Senate | Report No. House | Report No. Senate | Page of Cong. Record of passage House | Page of Cong. Record of passage Senate | Date of passage House | Date of passage Senate | Public law Date approved | No. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| To amend the Railroad Retirement Act of 1937, to increase certain annuities, and the Railroad Unemployment Insurance Act with respect to taxes levied thereunder. | H. R. 6766 (S. 2782) | June 1 | IFC* | LPW | June 2 | June 9 | 2154 | 1574 | 7436 | 7933 | June 8 | June 12 | June 23 | 744 |
| Amending District of Columbia Code, relative to admissibility of testimony. | S. 1266 | May 12, 1947 | DC | DC | June 3 | May 29, 1947 | 2188 | 212 | 7455 | 7010 | June 8 | June 16, 1947 | June 24 | 745 |
| To increase salary of Coordinator of Federal Agencies in Puerto Rico. | S. 2508 | Apr. 15 | PL | IIA | June 4 | May 12 | 2208 | 1279 | 8484 | 6204 | June 16 | May 24 | June 24 | 746 |
| Permitting mining locations under United States mining laws within the game sanctuary of the Harney National Forest. | H. R. 2867 | Mar. 31, 1947 | PL | IIA | July 14, 1947 | June 11 | 912 | 1597 | 9596 | 7944 | July 21, 1947 | June 12 | June 24 | 747 |
| To amend Federal Regulation No. (x), pts. I and II, to establish a presumption of service connection for chronic and tropical diseases. | H. R. 3889 | June 18, 1947 | VA | Fin* | July 8, 1947 | June 7 | 808 | 1536 | 9609 | 7924 | July 21, 1947 | June 12 | June 24 | 748 |
| To amend the Food and Drug Act, to authorize seizure of adulterated or misbranded products. | H. R. 4071 | July 2, 1947 | IFC | IFC* | July 8, 1947 | Apr. 30 | 807 | 1221 | 134 | 8239 | Jan. 13 | June 15 | June 24 | 749 |
| To permit free entry of crude or broken limestone to be used in manufacture of fertilizer. | H. R. 5275 | Feb. 4 | WM | Fin | Feb. 23 | Apr. 15 | 1415 | 1129 | 1610 | 8238 | Feb. 24 | June 15 | June 24 | 750 |
| Conferring jurisdiction over Fort Des Moines Village upon the State of Iowa. | H. R. 6188 | Apr. 12 | PW* | PW | Apr. 15 | June 10 | 1747 | 1585 | 5199 | 7941 | May 3 | June 12 | June 24 | 751 |
| Relative to admission of Filipinos to the U.S. Naval Academy. | H. R. 6698 | May 25 | AS* | AS | June 8 | June 17 | 2258 | 1766 | 8489 | 8755 | June 16 | June 18 | June 24 | 752 |
| Navy appropriations for 1949. | H. R. 6772 / S.J. Res. 203 (H.J. Res. 363) | June 2 / Apr. 2 | App* / PL | App* / HA | June 14 / May 5 | June 14 / May 10 | 2135 / 1868 | 1621 / 1266 | 7073 / 8214 | 8301 / 6290 | June 3 / June 14 | June 12 / May 24 | June 24 | 753 / 754 |
| To ratify contract for purchase of certain mineral land from the Choctaw and Chickasaw Indians. | H. R. 6726 (S. 176) | May 27 | IFC* | LPW | June 2 | July 7, 1947 | 2158 | 436 | 7415 | 7934 | June 8 | June 12 | June 24 | 755 |
| Providing for a National Institute of Dental Research. | S. 176 | Feb. 20 | IFC | IFC | June 17 | June 8 | 2394 | 1538 | 8954 | 7924 | June 18 | June 12 | June 24 | 756 |
| To provide for the issuance of free passes on railroads to official watch inspectors. | S. 2192 | Feb. 27 | EdL | LPW* | June 1 | May 17 | 2095 | 1315 | 7397 | 6302 | June 8 | May 24 | June 24 | 757 |
| To increase certain benefits payable under the Longshoremen's and Harbor Workers' Compensation Act. | S. 2237 (H. R. 6647) | | POCS | AS | June 11 | May 26 | 2306 | 1408 | 8494 | 6778 | June 16 | June 1 | June 24 | 758 |
| To clarify the position of Air Force Secretary and to authorize Secretaries of Army, Navy, Air Force, and Secretary of Defense to establish certain positions in professional and scientific service. | S. 2505 | Apr. 15 | AS | AS* | May 7 | May 12 | 1881 | 1268 | 8828 | 7681 | June 18 | June 10 | June 24 | 759 |
| Selective Service Act of 1948. | S. 2655 (6401) / S. 2706 | May 12 / May 19 | | PW | | June 12 | | 1614 | 8947 | 8721 | June 18 | June 18 | June 24 | 760 |
| To authorize lease of certain space in Lafayette Building in the District of Columbia by FWA. | H. R. 239 | Jan. 3, 1947 | MMF | IFC | Apr. 23, 1947 | June 11 | 294 | 1594 | 5055 | 7942 | May 12, 1947 | June 12 | June 24 | 761 |
| Relative to consolidation of the Lighthouse Service with the Coast Guard. | H. R. 4962 | Jan. 14 | VA | Fin | June 11 | June 17 | 2316 | 1747 | 8495 | 8754 | June 16 | June 18 | June 24 | 762 |
| Providing pensions for certain widows of Spanish-American War veterans. | H. R. 5036 (S. 2060) | Jan. 20 | AS* | AS | June 2 | June 8 | 2150 | 1541 | 7414 | 7926 | June 8 | June 12 | June 24 | 763 |
| To authorize Marine Band attendance at 1948 national assembly of the Marine Corps League. | | | | | | | | | | | | | | |

1948     CONGRESSIONAL RECORD—DAILY DIGEST     D557

| Subject | Bill No. | Date | FL | IIA | Date | Date | No. | No. | No. | No. | Date | Date | Date | Digest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Addition of certain surplus Federal lands to the Chickamauga and Chattanooga Military Park, Ga., and Tenn. | H. R. 5936 | Mar. 22 | | | May 5 | June 11 | 1862 | 1600 | 5995 | 7944 | May 18 | June 12 | June 24 | 764 |
| To amend the Standard Time Act relative to placing a certain portion of the State of Idaho in the third time zone. | H. R. 6318 (S. 2547) | Apr. 22 | IFC* | IFC | May 12 | May 13 | 1948 | 1287 | 6010 | 8239 | May 18 | June 15 | June 24 | 765 |
| National military appropriations for 1949. | H. R. 6771 / 6822 (S. 2869) (S. 2760) | June 2 / June 7 | App* / FA | App* / FR | June 2 / June 8 | June 17 / June 15 | 2135 / 2257 | 1763 / 1683 | 6957 / 8489 | 8618 / 8727 | June 2 / June 16 | June 17 / June 18 | June 24 / June 24 | 766 / 767 |
| To extend for 1 year the terms of two additional Assistant Secretaries of State. | (S. 2869) | May 20 | POCS | POCS | June 11 | June 15 | 2309 | 1685 | 8494 | 8728 | June 16 | June 18 | June 25 | 768 |
| To provide annuities for certain surviving spouses of annuitants retired prior to Apr. 1, 1948. | (S. 2760) | June 18 | WM | | | | | | 9222 | 9098 | June 19 | June 19 | June 25 | 769 |
| To authorize free entry of certain railroad equipment under certain conditions from France. | H. J. Res. 433 | Dec. 8, 1947 | Jud | BC | May 28 | June 9 | 2077 | 1560 | 7390 | 7930 | June 8 | June 12 | June 25 | 770 |
| Continuing certain oil contracts negotiated by Treasury. | H. R. 4659 (S. 1857) | Apr. 30 | Jud | Jud | May 10 | June 14 | 1898 | 1623 | 6000 | 8722 | May 18 | June 18 | June 25 | 771 |
| To amend Title 3 of the United States Code, entitled "The President." | H. R. 6412 | Apr. 24, 1947 | Jud | Jud | Apr. 24, 1947 | June 14 | 304 | 1620 | 5948 | 8722 | May 12, 1947 | June 18 | June 25 | 772 |
| To codify Title 18 of the United States Code entitled "Crimes and Criminal Procedure." | H. R. 3190 | Apr. 25, 1947 | Jud | Jud | Apr. 25, 1947 | June 9 | 308 | 1559 | 8392 | 7930 | July 7, 1947 | June 12 | June 25 | 773 |
| To codify Title 28 of the United States Code, entitled "Judicial Code and Judiciary." | H. R. 3214 | Mar. 2 | Jud* | Jud | May 4 | Mar. 2 | 1854 | 950 | 7888 | 6916 | June 11 | June 2 | June 25 | 774 |
| To authorize admission of displaced persons. | S. 2242 (H. R. 6396) 2401 (H. R. 5937) 2675 / 2770 (H. R. 6751) | Mar. 29 | AS | AS | June 8 | Mar. 2 | 2263 | 1542 | 8492 | 7925 | June 11 | June 2 | June 25 | 775 |
| To provide for military justice within the Air Force. | H. J. Res. 297 | May 17 / May 28 | PL / AS | IIA / AS | June 4 / June 8 | May 27 / June 2 | 2210 / 2256 | 1418 / 1451 | 9484 / 8498 | 6782 / 7695 | June 16 / June 16 | June 1 / June 10 | June 25 / June 25 | 776 / 777 |
| To amend the Organic Act of Puerto Rico. | H. J. Res. 297 | Jan. 15 | FA | FR | May 18 | June 17 | 1972 | 1760 | 7381 | 8754 | June 8 | June 18 | June 25 | 778 |
| Fixing the rank of the assistant to the Chief of Engineers in charge of river and harbor and flood-control improvements. | H. R. 945 (S. 19) | Jan. 14, 1947 | Jud | Jud* | June 2 | June 7 | 2162 | 1510 | 7418 | 7945 | June 8 | June 12 | June 25 | 779 |
| Increasing the sum to $30,000 for statue of Commodore John Barry for presentation to Eire. | H. R. 2766 | Mar. 25, 1947 | Jud | Jud | May 11 | June 8 | 1923 | 1544 | 6007 | 7926 | May 18 | June 12 | June 25 | 780 |
| Relative to pay of jurors in the United States courts. | H. R. 4114 | July 8, 1947 | IFC | LPW | May 11 | June 9 | 1927 | 1578 | 6008 | 7933 | May 18 | May 19 / June 18 | June 25 | 781 |
| Relative to probation system in United States courts. | H. R. 5524 / 5886 | Feb. 24 / Mar. 17 | App* / Jud | App* / Jud | Feb. 24 / Apr. 6 | Apr. 23 / June 15 | 1420 / 1661 | 1167 / 1641 | 1772 / 6012 | 5096 / 8723 | Feb. 26 / May 18 | June 18 | June 25 / June 25 | 782 / 783 |
| Authorizing certain expenditures from appropriations of the Public Health Service. | H. R. 6293 | Apr. 21 | POCS | POCS | May 11 | June 15 | 1938 | 1687 | 7380 | 8727 | June 8 | June 18 | June 25 | 784 |
| Army-civil functions appropriations for 1949. | H. R. 6935 / 1853 | June 15 / Dec. 10, 1947 | App* / MMF | App* / IFC* | June 15 / May 7 | June 19 / Mar. 31 | 2348 / 1878 | 1769 / 1043 | 8461 / 5996 | 9054 / 4288 | June 16 / May 18 | June 19 / Apr. 12 | June 25 / June 26 | 785 / 786 |
| To amend the Nationality Act of 1940 relative to petition for citizenship. | S. 2186 / 2591 | Feb. 20 / Apr. 30 | NMF / HA | IFC / PW | June 17 / June 18 | May 27 / June 2 | 2397 / 2602 | 1415 / 1439 | 8957 / 8857 | 6781 / 7693 | June 18 / June 18 | June 1 / June 10 | June 26 / June 26 | 787 / 788 |
| Providing that certain fees collected by the Bureau of Reclamation be available for disbursement in the interest of the National Archives. | H. J. Res. 190 | May 6, 1947 | HA | R.Adm | May 14, 1947 | June 19 | 382 | 1770 | 5279 | 9056 | May 14, 1947 | June 19 | June 26 | 789 |
| Second deficiency appropriations for 1948. | H. R. 3218 | Apr. 25, 1947 | PL | IIA | July 10, 1947 | June 4 | 860 | 1493 | 317 | 7701 | Jan. 19 | June 10 | June 26 | 790 |
| Authorizing permanent appointment in each the Regular Army and Regular Air Force of one officer in the grade of general. | H. R. 6039 | Mar. 30 | AS | AS | Apr. 14 | June 17 | 1734 | 1764 | 4644 | 6755 | Apr. 20 | June 18 | June 26 | 791 |

*Printed hearings.

| 80TH CONGRESS<br>*1st Session* | HOUSE OF REPRESENTATIVES | REPORT<br>No. 304 |
|---|---|---|

## REVISION OF TITLE 18, UNITED STATES CODE

APRIL 24, 1947.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

Mr. ROBSION, from the Committee on the Judiciary, submitted the following

# REPORT

[To accompany H. R. 3190]

The Committee on the Judiciary submits the following report in explanation of the accompanying bill entitled "A bill to revise, codify, and enact into positive law, title 18 of the United States Code, entitled 'Crimes and Criminal Procedure.'" The present bill has been substituted for an earlier bill [H. R. 1600] on which hearings were held, and contains changes recommended by the subcommittee.

### PRELIMINARY STATEMENT

#### SCOPE OF REVISION

The starting point in this revision was the Criminal Code of 1909. To that were added those criminal provisions in other titles of the United States Code which could be transferred without injury to the text of such titles, and with due regard to maintaining the framework of the official United States Code prepared for Congress in 1926 by the former Committee on Revision of Laws of the House and enacted by Congress June 30, 1926.

This revision includes all applicable criminal laws in effect April 15, 1947.

Before actual revision was begun a scientific plant was assembled. This included:

1. The complete text of title 18, United States Code, 1940 edition.

2. Criminal provisions from other titles of the code pertinent to this revision.

3. Applicable constructions of the courts.

4. Notes based upon a careful examination of the Code of Federal Regulations and law review articles.

5. Exhaustive historical notes.

1

79th Congress, 2d Session · · · · · · · House Document No. 769

# CONSTITUTION
# JEFFERSON'S MANUAL

AND

# RULES OF THE HOUSE OF
# REPRESENTATIVES

### OF THE UNITED STATES
#### EIGHTIETH CONGRESS

By

## LEWIS DESCHLER
#### PARLIAMENTARIAN



.... .... .URARY

Austin, Texas

### UNITED STATES
### GOVERNMENT PRINTING OFFICE
#### WASHINGTON : 1947

## HOUSE RESOLUTION NO. 674

IN THE HOUSE OF REPRESENTATIVES

*July 12, 1946.*

*Resolved*, That a revised edition of the Rules and Manual of the House of Representatives for the Eightieth Congress be printed as a House document, and that one thousand six hundred additional copies shall be printed and bound for the use of the House of Representatives, of which seven hundred copies shall be bound in leather with thumb index and delivered as may be directed by the Parliamentarian of the House for distribution to officers and Members of Congress.

Attest:

SOUTH TRIMBLE,
*Clerk.*

[III]

# PREFACE

The parliamentary practice of the House of Representatives emanates from four sources: First, the Constitution of the United States; second, from Jefferson's Manual; third, from the rules adopted by the House itself from the beginning of its existence; and, fourth, from the decisions of the Speakers of the House and from decisions of the Chairmen of the Committee of the Whole.

In the early history of the House the membership of that body frequently found it difficult to accomplish the purposes upon which they had determined. The Constitution directed the House to do certain things in a specified manner, and to do things not set forth specifically it gave the House carte blanche to make such rules as it thought necessary to carry out the purposes of a legislative body. The early Congresses, therefore, naturally borrowed from the English Parliament many of its practices. In the years following, these practices were adapted to meet the needs of our then youthful House. Special needs of the House have caused some of the motions adopted from the English system to lose their original form and purpose. They have evolved into a distinctly American system of procedure.

In the years from 1797 to 1801 Thomas Jefferson, then Vice President of the United States and President of the Senate, prepared the notable work which has come to be known as Jefferson's Manual. This work contributed greatly to the procedure of the House, although it was not

[v]

until 1837 that the House finally adopted a rule, which is still in existence, permitting the provisions of the Manual "to govern the House in all cases to which they are applicable."

From the beginning of the First Congress the House has formulated rules for its procedure. Some of them have since gone out of existence. More of them have been amplified and broadened to meet the exigencies that have arisen from time to time. To-day they are perhaps the most finely adjusted, scientifically balanced, and highly technical rules of any parliamentary body in the world. Under them a majority may work its will at all times in the face of the most determined and vigorous opposition of a minority.

The rulings of the Speakers of the House and of the Chairmen of the Committee of the Whole are to the rules of the House what the decisions of the courts are to the statutes. It is rare, indeed, for a question to arise that has not been decided at some prior time. All of these decisions have been embodied in the monumental work of the Hon. Asher C. Hinds and the Hon. Clarence Cannon, former Parliamentarians of the House. These rulings, which aggregate more than 11,000 in number, cover practically every situation that may arise.

I believe that I am not making too broad a statement when I say that the parliamentary practice of the House is a system of procedure that ranks second to none. It has proven adequate to meet all the emergencies that have arisen in the past. It will meet the emergencies and problems of the future with the same degree of success.

In this edition of the House Rules and Manual there is included in the manner hereinafter described the text of the Legislative Reorganization Act of 1946. The provisions of that act specifically amending Rules X, XI, XII, and XXI have been placed within the standing rule structure. Part 3 of Title I of the act, containing the provisions

[VI]

RULES OF THE HOUSE OF REPRESENTATIVES

applicable to both Houses, has been inserted at the end of the standing rules. Titles II through VI of the act, containing the statutory provisions relating to congressional personnel, lobbying regulations, Federal tort claims, bridges, compensation and retirement of Members of Congress have been inserted where "Important Decisions" have heretofore been found. "Important Decisions" have been eliminated in this edition as they are now set out in full in Cannon's Precedents of the House of Representatives.

Rulings of the Speakers and Chairmen of the Committee of the Whole which are of significance have been inserted under the rule which governed the decision of the Chair.

References are to Hinds' and Cannon's Precedents, the Congressional Record, and the United States Reports.

LEWIS DESCHLER.

JANUARY 3, 1947.

[VII]

CONSTITUTION OF THE UNITED STATES

§§ 51–54.

§ 51. Laws of Congress not binding on the House in its function of judging its elections.

The statutes of the United States provide specific methods for institution of a contest as to the title to a seat in the House (I, 678, 697–706); but the House regards this law as not of absolute binding force, but rather a wholesome rule not to be departed from except for cause (I, 597, 719, 825, 833), and it sometimes by resolution modifies the procedure prescribed by the law (I, 449, 600).

Decisions of the Supreme Court of the United States:

Reed v. County Commissioners, 277 U. S., 376; Barry v. U. S. ex. rel. Cunningham, 279 U. S., 597.

* * * and a Majority of each [House] shall constitute a Quorum to do Business; but a smaller Number may adjourn from day to day, and may be authorized to compel the Attendance of absent Members, in such Manner, and under such Penalties as each House may provide.

§ 52. The quorum.

§ 53. Interpretation of the Constitution as to number constituting a quorum.

Out of conditions arising between 1861 and 1891 the rule was established that a majority of the Members chosen and living constituted the quorum required by the Constitution (IV, 2885–2888); but later examination has resulted in a decision confirming in the House of Representatives the construction established in the Senate that a quorum consists of a majority of Senators duly chosen and sworn (I, 630; IV, 2891–2894). So the decision of the House now is that after the House is once organized the quorum consists of a majority of those Members chosen, sworn, and living whose membership has not been terminated by resignation or by the action of the House (IV, 2889, 2890). (Speaker Clark, May 9, 1913, Record, p. 1457, 63d Cong., 1st sess.)

§ 54. The theory of the quorum present; and the count by the Speaker.

For many years the quorum was determined only by noting the numbers of Members voting (IV, 2896, 2897), with the result that Members by refusing to vote could often break a quorum and obstruct the public business (II, 1034; IV, 2895, footnote; V, 5744). But in 1890 Mr. Speaker Reed directed the Clerk to enter on the Journal as part of the record of a yea-and-nay vote names of Members present but not voting, thereby establishing a quorum of record (IV, 2895). This decision, afterwards sustained by the Supreme Court (IV, 2904),

[18]

### CONSTITUTION OF THE UNITED STATES

established the principle that a quorum present made valid any action by the House, although an actual quorum might not vote (I, 216, footnote; IV, 2932). And thenceforth the point of order as to a quorum was required to be that no quorum was present and not that no quorum had voted (IV, 2917). At the time of the establishment of this principle the Speaker revived the count by the Chair as a method of determining the presence of a quorum at a time when no record vote was ordered (IV, 2909). The Speaker permitted his count of a quorum to be verified by tellers (IV, 2888), but did not concede it as a right of the House to have tellers under the circumstances (IV, 2916), claiming that the Chair might determine the presence of a quorum in such manner as he should deem accurate and suitable (IV, 2932). The Chair counts all members in sight, whether in the cloak rooms or within the bar (IV, 2970). Later, as the complement to the new view of the quorum, the early theory that the presence of a quorum is as necessary during debate or other business as on a vote was revived (IV, 2935–2949); also, a line of rulings made under the old theory were overruled, and it was established that the point of no quorum might be made after the House had declined to verify a division by tellers or the yeas and nays (IV, 2918–2926).

The absence of a quorum having been disclosed, there must be a

§ 55. Relations of the quorum to acts of the House.

quorum of record before the House may proceed to business (IV, 2952, 2953), and the point of no quorum may not be withdrawn after the absence of a quorum has been ascertained and announced by the Chair (IV, 2928–2931). But when an action has been completed, it is too late to make the point of order that a quorum was not present when it was done (IV, 2927). But where action requiring a quorum was taken in the ascertained absence of a quorum by ruling of a Speaker pro tempore, the Speaker on the next day ruled that the action was null and void (IV, 2964). But such absence of a quorum should appear from the Journal if a legislative act is to be vacated for such reason (IV, 2962), and where the assumption that a quorum was present when the House acted was uncontradicted by the Journal, it was held that this assumption might not be overthrown by expressions of opinion by Members individually (IV, 2961 . A point of no quorum may prevent the report of the Chairman of a Committee of the Whole. (Speaker Gillett, Dec. 13, 1924, p. 624, 68th Cong., 2d sess.) If a question as to a quorum is raised before the reading of the Journal, a quorum must be ascertained before the reading may begin (IV, 2732, 2733). While messages are received in the absence of a quorum they are not read (IV, 3522; V, 6600, 6650). No motion is in order on the failure of a quorum but the motions to

## CONSTITUTION OF THE UNITED STATES

**§§ 104, 105.**

has allowed to fail (IV, 3499–3502). In one instance he communicated his omission to sign a bill through the committee appointed to notify him that Congress was about to adjourn (IV, 3504). A bill that had not actually passed having been signed by the President, he disregarded it and a new bill was passed (IV, 3498). Messages of the President giving notice of bills approved are entered in the Journal and published in the Congressional Record (V, 6593).

A message withholding approval of a bill, called a veto message, is sent to the House in which the bill originated; but it has been held that such a message may not be returned to the President on his request (IV, 3521).

**§ 104. Disapproval (or veto) of bills.**

A vetoed bill received in the House by way of the Senate is considered as if received directly from the President and supersedes the regular order of business (IV, 3537). A veto message may not be read in the absence of a quorum, even though the House be about to adjourn sine die (IV, 3522); but the message may be read and acted on at the next session of the same Congress (IV, 3522). When the President has been prevented by adjournment from returning a bill with his objections he has sometimes at the next session communicated his reasons for not approving (V, 6618–6620).

It is the usual but not invariable rule that a bill returned with the objections of the President shall be voted on at once (IV, 3534–3536), but it has been held that the constitutional mandate that "the House shall proceed to consider" means that the House shall

**§ 105. Consideration of a vetoed bill in the House.**

immediately proceed to consider it under the rules of the House, and that the ordinary motions under the rules of the House—to refer, to commit, or to postpone to a day certain—are in order. (Speaker Gillett, May 15, 1924, 68th Cong., 1st sess., p. 8663; IV, 3542–3550.) A motion to refer a vetoed bill, either with or without the message, has been held allowable within the constitutional mandate that the House "shall proceed to reconsider" (IV, 3550). But while the ordinary motion to refer may be applied to a vetoed bill, it is not in order to move to recommit it pending the demand for the previous question or after it is ordered (IV, 3551). (Speaker Gillett, Aug. 19, 1919, p. 3983.) A vetoed bill having been rejected by the House, the message was referred (IV, 3552). Committees to which vetoed bills have been referred have sometimes neglected to report (IV, 3523, 3550, footnotes). A vetoed bill may be laid on the table (IV, 3549), but it is still highly privileged and a motion to take it from the table is in order at any time (IV, 3549). Also a motion to discharge a committee from the consideration of such a bill is privileged (IV, 3532). While

[34]

# BILLS

[479]

## STAGES OF A BILL OF THE HOUSE.

§ 163.

### 1. Introduction:

By a Member by laying the bill on the Clerk's table informally.
A Member sometimes introduces a petition only,
leaving to the committee the drawing of a bill, such a
petition referred to a committee having jurisdiction of
the subject giving authority to report a bill.   Some-
times communications addressed to the House from the executive
departments or from other sources are referred to committees
by the Speaker and give authority for the committees to originate
bills.   Messages from the President also are referred by the
Speaker or the House and give jurisdiction to the committees
receiving them to originate bills.

§ 163. Introduc-
tion of a bill and
its progress to
final passage.

### 2. Reference to a standing or select committee:

Public bills are referred under direction of the Speaker; private
bills are indorsed with the names of the committees to which
they go under the rule by the Members introducing them.   Sen-
ate bills are referred under direction of the Speaker.   A bill is
numbered and printed when referred.

### 3. Reported from the committee:

Committees having leave to report at any time make their
reports from the floor; other committees make their reports by
laying them on the Clerk's table informally.   The bill and the
report are printed when reported.

### 4. Placed on the Calendar:

Occasionally a privileged bill is considered when reported; but
usually it is placed with the unprivileged bills on the Calendar
where it belongs under the rule by direction of the Speaker.

### 5. Consideration in Committee of the Whole:

Public bills which do not raise revenue or make or authorize
appropriations of money or property do not go through this stage.
All other bills are considered in Committee of the Whole.   The
stages of consideration in Committee of the Whole are: General
debate; reading for amendment under the five-minute rule; order
to lay aside with a favorable recommendation, or to rise and re-
port; reporting of to the House.

[ [51] ]

§ 983.

## 6. Reading a second time in the House:

Bills not requiring consideration in Committee of the Whole are read a second time in full, after which they are open to debate and amendment in any part. Bills considered in Committee of the Whole are read a second time in full in that committee and when reported out, with or without amendments, are not read in full again, but are subject to further debate or amendment in the House unless the previous question is ordered at once.

## 7. Engrossment and third reading:

The question on House bills is taken on ordering the engrossment and third reading at one vote. If decided in the affirmative, the reading a third time usually takes place at once, by title. But any Member may demand the reading in full of the engrossed copy, in which case the bill is laid aside until it can be engrossed. Senate bills come to the House in engrossed form, and the question is put on third reading alone. When the question on engrossment and third reading of a House bill or third reading of a Senate bill is decided in the negative the bill is lost as much as if defeated on the final passage. The question on engrossment and third reading is not made from the floor, but is put by the Speaker as a matter of course.

## 8. Passage:

The question on the passage of a bill is put by the Speaker as a matter of course, without awaiting a motion from the floor.

## 9. Transmission to the Senate by message.

## 10. Consideration by the Senate:

In the Senate House bills are usually referred to committees for consideration and report, after which they have their several readings, with opportunities for debate and amendment. The same procedure takes place in the House as to bills sent from the Senate.

## 11. Return of, from the Senate without amendments:

If the Senate passes a House bill without amendment it returns it to the House, where it is at once enrolled on parchment for signature. A bill thus passed without amendment goes into

[482]

possession of the clerk, and is not laid before the House prior to enrollment. If the Senate rejects a House bill the House is informed. Similar procedure occurs when the House passes a Senate bill without amendment.

## 12. Return of, from the Senate with amendments:

House bills returned with Senate amendments go to the Speaker's table. If any Senate amendment requires consideration in Committee of the Whole the bill is referred by the Speaker informally to the standing committee having jurisdiction, and when that committee reports the bill with recommendations it is referred to Committee of the Whole House on the state of the Union, to be there considered and reported to the House itself. When no Senate amendment requires consideration in Committee of the Whole the bills come before the House directly from the Speaker's table.

## 13. Consideration of Senate amendments by the House:

When a bill with Senate amendments comes before the House, the House takes up each amendment by itself and may vote to agree to it, agree to it with an amendment, or disagree to it. If it disagrees it may ask a conference with the Senate or may send notice of its disagreement, leaving it to the Senate to recede or insist and ask the conference.

## 14. Settlement of differences by conference:

When disagreements are referred to conference, the managers embody their settlement in a report, which is acted on by each House as a whole. When this report is agreed to the bill is finally passed, and is at once enrolled for signature.

## 15. Enrollment on parchment:

The House in which a bill originates enrolls it.

## 16. Examination by the Committee on House Administration:

The chairman of the Committee on House Administration or Senate Committee on Rules and Administration as the case may be affixes to the bills examined a certificate that the bill has been found truly enrolled.

§ 983.

## 17. Signing by the Speaker and President of the Senate:

The enrolled bill is first laid before the House of Representatives and signed by the Speaker, whether it be a House or Senate bill, after which it is transmitted to the Senate and signed by the president of that body.

## 18. Transmittal to the President of the United States:

The Chairman of the Committee on House Administration or the Chairman of the Senate Committee on Rules and Administration as the case may be carries the bills from his House to the President. In the House of Representatives a report of the bills taken to the President each day is made to the House and entered on its Journal.

## 19. Approval by the President:

If the President approve he does so with his signature.

## 20. Disapproval by the President:

When the President disapproves a bill he returns it to the House in which it originated, with a message stating that he disapproves, and giving his reasons therefor,

## 21. Action on, when returned disapproved:

The House to which a disapproved bill is returned has the message read and spread on its Journal. It may then consider at once the question of passing the bill notwithstanding the President's objections, or may postpone to a day certain, or refer to a committee for examination. The vote on passing the bill, notwithstanding the President's objections, must be carried by two-thirds. If the bill fails to pass in the House to which it is returned it remains there; but if it passes it is sent to the other House for action.

## 22. Filing with the Secretary of State:

When approved by the President a bill is deposited in the office of the Secretary of State; and when the two Houses have passed a bill, notwithstanding the President's objections, the presiding officer of the House which acts on it last transmits it to the Secretary of State.

[484]

THE STATE LIBRARY
AUSTIN, TEXAS

59TH CONGRESS }      HOUSE OF REPRESENTATIVES      { DOCUMENT
2d Session }                                             { No. 355

# HINDS' PRECEDENTS

OF THE

# HOUSE OF REPRESENTATIVES

OF THE

## UNITED STATES

INCLUDING REFERENCES TO PROVISIONS
OF THE CONSTITUTION, THE LAWS, AND DECISIONS
OF THE UNITED STATES SENATE

By

ASHER C. HINDS, LL. D.

Clerk at the Speaker's Table

## VOLUME IV

PUBLISHED BY AUTHORITY OF THE ACT OF CONGRESS
APPROVED MARCH 4, 1907

WASHINGTON
GOVERNMENT PRINTING OFFICE
1907

CONTENTS.

Chapter 72. The impeachment and trial of Samuel Chase.
Chapter 73. The impeachment and trial of James H. Peck.
Chapter 74. The impeachment and trial of West H. Humphreys.
Chapter 75. The first attempts to impeach the President.
Chapter 76. The impeachment and trial of the President.
Chapter 77. The impeachment and trial of William W. Belknap.
Chapter 78. The impeachment and trial of Charles Swayne.
Chapter 79. Impeachment proceedings not resulting in trial.
Chapter 80. Questions of privilege and their precedence.
Chapter 81. Privilege of the House.
Chapter 82. Privilege of the Member.

# VOLUME IV.

Chapter 83. The Journal and its approval.
Chapter 84. The making of the Journal.
Chapter 85. The quorum.
Chapter 86. The call of the House.
Chapter 87. The order of business.
Chapter 88. Special orders.
Chapter 89. Private and District of Columbia business.
Chapter 90. Petitions and memorials.
Chapter 91. Bills, resolutions, and orders.
Chapter 92. Approval of bills by the President.
Chapter 93. Bills returned without the President's approval.
Chapter 94. General appropriation bills.
Chapter 95. Authorization of appropriations on general appropriation bills.
Chapter 96. Appropriations in continuation of a public work.
Chapter 97. Legislation in general appropriation bills.
Chapter 98. Limitations in general appropriation bills.
Chapter 99. History and jurisdiction of the standing committees.
Chapter 100. History and jurisdiction of the standing committees. (Continued.)
Chapter 101. History and jurisdiction of the standing committees. (Continued.)
Chapter 102. General principles of jurisdiction of committees.
Chapter 103. Select and joint committees.
Chapter 104. Appointment of committees.
Chapter 105. Organization and procedure of committees.
Chapter 106. Reports of committees.
Chapter 107. The Committee of the Whole.
Chapter 108. Subjects requiring consideration in Committee of the Whole.
Chapter 109. Reports from the Committee of the Whole.
Chapter 110. Consideration "In the House as in Committee of the Whole."

# VOLUME V.

Chapter 111. The question of consideration.
Chapter 112. Conduct of debate in the House.
Chapter 113. References in debate to committees, the President, or the other House.
Chapter 114. Disorder in debate.
Chapter 115. Debate in Committee of the Whole.
Chapter 116. Reading of papers.
Chapter 117. Motions in general.
Chapter 118. The motion to adjourn.
Chapter 119. The motion to lay on the table.
Chapter 120. The previous question.
Chapter 121. The ordinary motion to refer.

XIV                              CONTENTS.

Chapter 122. The motion to refer as related to the previous question
Chapter 123. The motion to reconsider.
Chapter 124. Dilatory motions.
Chapter 125. Amendments.
Chapter 126. The House rule that amendments must be germane.  ·
Chapter 127. General principles as to voting.
Chapter 128. Voting by tellers and by ballot.
Chapter 129. The vote by yeas and nays.
Chapter 130. Division of the question for voting.
Chapter 131. Amendments between the Houses.
Chapter 132. General principles of conferences.
Chapter 133. Appointment of managers of a conference.
Chapter 134. Instruction of managers of a conference.
Chapter 135. Managers to consider only matters in disagreement.
Chapter 136. Privilege and form of conference reports.
Chapter 137. Consideration of conference reports.
Chapter 138. Messages and communications.
Chapter 139. Recess.
Chapter 140. Sessions and adjournments.
Chapter 141. The rules.
Chapter 142. Suspension of the rules.
Chapter 143. Questions of order and appeals.
Chapter 144. The Congressional Record.
Chapter 145. Amendments to the Constitution.
Chapter 146. Ceremonies.
Chapter 147. Service of the House.
Chapter 148. Miscellaneous.

## VOLUME VI.

### INDEX-DIGEST.

#### [A to G.]

## VOLUME VII.

### INDEX-DIGEST.

#### [H to P.]

## VOLUME VIII.

### INDEX-DIGEST.

#### [Q to Z.]

# Chapter LXXXIII.*

## THE JOURNAL AND ITS APPROVAL.

1. Provisions of the Constitution.  Section 2726.
2. The official record.  Section 2727.[1]
3. Title and copy.  Sections 2728–2730.
4. Reading and approval.  Sections 2731–2750.[2]
5. Business not transacted before approval.  Sections 2751–2759.[3]
6. Motions to amend, especially as to record of votes.  Sections 2760–2770.
7. Delay in approval.  Sections 2771–2774.
8. As to record of amendments and approval.  Sections 2775–2782.
9. Changes in as related to actual facts.  Sections 2783–2789.[4]
10. Changes after approval.  Sections 2790–2797.
11. As to entry of protests and declarations.  Sections 2798–2808.[5]
12. In general.  Sections 2809, 2810.

2726. **The Constitution requires the House to keep and publish a Journal, excepting from publication such parts as require secrecy.**

**Votes by yeas and nays and veto messages of the President are required by the Constitution to be spread on the Journal.**

The Constitution of the United States, in section 5 of Article I, provides:

Each House shall keep a Journal of its proceedings, and from time to time publish the same, excepting such parts as may in their judgment require secrecy; and the yeas and nays of the Members of either House on any question shall, at the desire of one-fifth of those present, be entered on the Journal.[6]

Also in section 7 of Article I:

Every bill which shall have passed the House of Representatives and the Senate shall, before it become a law, be presented to the President of the United States.  If he approve he shall sign it, but if not he shall return it, with his objections, to that House in which it shall have originated, who shall enter the objections at large on their Journal and proceed to reconsider it.

---

* See Volume VI, Chapter CCVI.
[1] Printed and distributed by the Clerk.  Section 251 of Volume I.
Office of journal clerk and its requirements.  Section 2644 of Volume III.
[2] Preparation and reading is not prevented by death of Clerk.  Section 237 of Volume I.
Amendment of Congressional Record secondary to.  Section 6989 of Volume V.
[3] Administration of oath to Member-elect before.  Sections 171, 172 of Volume I.
[4] See also section 3091 of this volume.
[5] Clerk declines to entertain a protest at organization.  Section 80 of Volume I.
Summary of precedents as to entry of protests.  Sections 2597, 2783 of this volume.
[6] Field v. Clark, 143 U. S., 649.

1

being in secret session, had passed the "act declaring war between Great Britain and her dependencies," whereupon Mr. George Poindexter moved to have inserted in the Journal a declaration in the following words:

George Poindexter, Delegate from the Mississippi Territory, not having a constitutional right to record his suffrage on the Journal of the House on the important question under consideration, and being penetrated with a firm conviction of the propriety of the measure, asks the indulgence of the House to express his own and the sense of his constituents,[1] in support of the honorable and dignified attitude which the Government of his country has assumed in vindication of its rights against the lawless violence and unprecedented usurpations of the Government of Great Britain.

This paper was read, and appeared in the Journal of the next day, whereupon Mr. Nathaniel Macon, of North Carolina, moved that it be expunged from the Journal. This motion was disagreed to—yeas 44, nays 62. A motion that the House proceed to consider the declaration was decided in the negative.

**2809. The Parliamentary method of raising a committee to investigate an alleged error in the Journal has not been utilized.**—On February 10, 1885,[2] a question being raised as to the correctness of the Journal, a motion was made that a committee be appointed to ascertain the facts in regard to the matter over which the error was alleged to occur. This motion was made in accordance with the parliamentary principle laid down in Jefferson's Manual. The motion was not agreed to.

**2810. Certified extracts of the Journal are admitted as evidence in the courts of the United States.**—The Statutes of the United States provide:

Extracts from the Journals of the Senate, or of the House of Representatives, and of the Executive Journal of the Senate when the injunction of secrecy is removed, certified by the Secretary of the Senate or by the Clerk of the House of Representatives, shall be admitted as evidence in the courts of the United States, and shall have the same force and effect as the originals would have if produced and authenticated in court.[3]

---

[1] Mr. Poindexter must have wished to enter this expression in the Journal, for he had the right of debate and frequently exercised it. (For an instance see Annals, March 12, 1812, pp. 1201–1204.)

[2] Second session Forty-eighth Congress, Record, pp. 1497–1500; Journal, p. 508.

[3] See Revised Statutes, sec. 895.

# Chapter LXXXV.*

## THE QUORUM.[1]

1. Provision of the Constitution.  Section 2884.
2. Interpretation of the Constitutional provision.  Sections 2885-2894.
3. Ruling of Mr. Speaker Reed as to quorum present.  Sections 2895-2904.
4. Rule for counting a quorum and its interpretation.  Sections 2905-2908.[2]
5. Reestablishment of the Speaker's count.  Section 2909.[3]
6. Review of Senate practice.  Sections 2910-2915.[4]
7. Speaker's count final.  Section 2916.
8. Making the point of no quorum.  Sections 2917-2931.
9. All business, including debate, suspended by failure of quorum.  Sections 2932-2965.[5]
10. Failure of quorum in Committee of the Whole.  Sections 2966-2979.

**2884. A majority of the House constitutes a quorum to do business.—**
The Constitution of the United States provides in Article 1, section 5, that—

A majority of each [House] shall constitute a quorum to do business.

**2885. Out of conditions arising between 1861 and 1891 the rule was established that a majority of the Members chosen and living constitutes the quorum required by the Constitution.—**On July 19, 1861,[6] Mr. Charles B. Sedgwick, of New York, moved the previous question on the engrossment of a joint resolution to provide for the selection of a site for the Naval Academy. Fifty-two Members having voted in favor of and 41 Members having voted against seconding the same, the Speaker[7] declared that the previous question was seconded.[8]

---

* See Volume VI, Chapter CCVIII.
[1] A majority of a committee is a quorum.  Section 4540 of this volume.
Quorum of Senate sitting for impeachment trial.  Section 2063 of Volume III.
Senate counted during impeachment trial.  Section 2105 of Volume III.
As to quorum of managers in impeachment trial.  Section 2035 of Volume III.
[2] Principle that legislator detained by force may be counted.  Section 356 of Volume I.
[3] See also section 1653 of Volume III.
Illustration of former practice of accertaining presence of.  Section 2733 of this volume.
[4] Elaborate Senate discussion.  Section 630 of Volume I.
[5] Oath administered to Members in absence of.  Sections 174-178 of Volume I.
Must be present before reading of Journal.  Section 2733 of this volume.
Motion to reconsider in absence of.  Sections 5606-5608 of Volume V.
Point of no quorum held dilatory.  Sections 5724-5730 of Volume V.
[6] First session Thirty-seventh Congress, Journal, p. 117; Globe, p. 210.
[7] Galusha A. Grow, of Pennsylvania, Speaker.
[8] The previous question no longer requires a second.  (See sec. 5443 of Vol. V of this work.)

59

2937. On March 7, 1838,[1] during the debate in Committee of the Whole on an appropriation bill, Mr. John Reed, of Massachusetts, said he had some remarks to make, but there was no House to make them to. The Chair then appointed tellers to count the House, when it was found that there were but 72 Members in their seats—not a quorum. So the committee rose and reported the fact to the House.

2938. On February 24, 1875,[2] the Speaker,[3] in the course of a decision, said:

If any gentleman raises the question that business is proceeding without the presence of a quorum, it is within the competence of the Chair to decide that a quorum is present; and he will not allow the business of the House to be interrupted by any dilatory proceeding. He assumes the responsibility for that purpose of declaring that a quorum is present, because no business can proceed without a quorum. Even a gentleman speaking is entitled to have a quorum present. If the point be raised, a gentleman addressing the Chair may be taken off the floor by any Member raising the point that no quorum is present.

2939. On February 12, 1877,[4] a question of order was raised that debate could not proceed without a quorum.

In the course of the discussion of the question Mr. Nathaniel P. Banks, of Massachusetts, a former Speaker, said:

If any Member states that a quorum is not present, the Speaker counts the House, as he is bound to do, and if a quorum is found not to be present, business is suspended and a motion for a call of the House may be made.

The Speaker[5] said: "The House is not a House without a quorum," and the debate was not permitted to proceed.

2940. On Wednesday, January 21, 1891,[6] the Journal of the proceedings of yesterday's sitting having been read, and the question being on its approval,

Mr. William McKinley, jr., of Ohio, demanded the previous question, when Mr. W. C. P. Breckinridge, of Kentucky, made the point of order that no quorum was present.

The Speaker[7] ruled that the point of order that no quorum was present could only be raised when that fact was established by a division.[8]

---

[1] Second session Twenty-fifth Congress, Globe, p. 224.
[2] Second session Forty-third Congress, Record, p. 1733.
[3] James G. Blaine, of Maine, Speaker.
[4] Second session Forty-fourth Congress, Record, pp. 1488, 1489.
[5] Samuel J. Randall, of Pennsylvania, Speaker.
[6] Second session Fifty-first Congress, Journal, p. 162; Record, p. 1630.
[7] Thomas B. Reed, of Maine, Speaker.
[8] The actual transaction is recorded as follows in the Record:
Mr. McKINLEY. Mr. Speaker——
The SPEAKER. The gentleman from Ohio [Mr. McKinley] is recognized.
Mr. BRECKINRIDGE, of Kentucky. I raise the question of order——
Mr. McKINLEY. I move the previous question.
Mr. BRECKINRIDGE, of Kentucky (continuing). That there is no quorum in the House to do business.
The SPEAKER. The gentleman from Ohio [Mr. McKinley] moves the previous question.
Mr. BRECKINRIDGE, of Kentucky. I raise the question of order that there is no quorum present.
The SPEAKER. That will be determined by the vote. As many as are in favor of ordering the previous question will say "aye."

Mr. J. Warren Keifer, of Ohio, said:

Mr. Chairman, I make the point of order that the gentleman from Illinois in charge of the bill has the floor, making a speech, and the distinguished gentleman from Mississippi is not entitled to take him off the floor.

After debate the Chairman [1] held:

The Chair is of opinion that a question of order involving the presence of a quorum may be raised, and the Chair will count to ascertain whether a quorum is present.

**2950. A quorum not being present, no motion is in order but for a call of the House or to adjourn.**—On February 5, 1846,[2] the House was in Committee of the Whole House on the state of the Union, considering joint resolution (No. 5) of notice to Great Britain to "annul and abrogate" the convention between Great Britain and the United States of the 6th of August, 1827, relative to the country "on the northwest coast of America, westward of the Stony Mountains," commonly called Oregon. Finding itself without a quorum, the committee rose. A motion to adjourn having been decided in the negative, on motion of Mr. George W. Jones, of Tennessee, a call of the House was ordered; and the roll having been called as far as the name of Stephen Adams, of Mississippi, a motion was made by Mr. Robert B. Rhett, of South Carolina, that further proceedings in the call be dispensed with. And the question being put, it was decided in the affirmative.

A motion was made by Mr. Howell Cobb, of Georgia, that the House take a recess until 7.30 o'clock.

Mr. Robert C. Winthrop, of Massachusetts, raised the question of order that, a quorum of Members not being present, it was not competent for the Chair to entertain a motion for a recess.

The Speaker[3] decided that, it appearing from the record that there was not a quorum present, no motion was in order except for a call of the House or to adjourn.

In this decision the House acquiesced.

**2951. The absence of a quorum having been disclosed, the only proceedings in order are the motions to adjourn or for a call of the House; and not even by unanimous consent may business proceed.**—On May 24, 1872,[4] the House, while considering the bill of the Senate (No. 569) for the relief of Thomas B. Wallace, of Lexington, Mo., found itself without a quorum on the vote on the passage of the bill. A call of the House was ordered, and then a motion to adjourn was defeated, a yea and nay vote being had on each of these motions.

At this point Mr. James A. Garfield, of Ohio, proposed that by unanimous consent further proceedings under the call be dispensed with, and that the bill be acted on by a rising vote, on the assumption that a quorum was present.

The Speaker pro tempore[5] said:

The vote upon the passage of this bill by yeas and nays has disclosed the fact that there is not a quorum in the House. The House thereby becomes constitutionally disqualified to do further business,

---

[1] Edgar D. Crumpacker, of Indiana, Chairman.

[2] First session Twenty-ninth Congress, Journal, p. 355.

[3] John W. Davis, of Indiana, Speaker.

[4] Second session Forty-second Congress, Globe, p. 3855.

[5] Clarkson N. Potter, of New York, Speaker pro tempore.

except that business which the Constitution authorizes the House to do when a quorum is not present, to adjourn, or to order a call of the House, and the proceedings in respect to that bill fell, and the bill, should there be a quorum in the House, must again come before the House for its passage.

**2952. The absence of a quorum having been disclosed, there must be a quorum of record before the House may proceed to business.**—On February 28, 1849,[1] at an evening session, Mr. Caleb B. Smith, of Indiana, moved a resolution to close debate in Committee of the Whole on a bill to establish the Territorial government of New Mexico.

On this motion the question stood, ayes 41, noes 64, no quorum voting. On a motion for a call of the House no quorum voted.

Mr. Samuel F. Vinton, of Ohio, proposed that by common consent they go into committee and take up the amendments of the Senate to the Indian appropriation bill.

The Speaker[2] said the Chair was obliged to state to the gentleman from Ohio that the last two votes showed that there was no quorum present. There must be a quorum of record before the House could proceed to business.

**2953.** On February 11, 1901,[3] Mr. James D. Richardson, of Tennessee, moved that the House adjourn. The yeas and nays being demanded and ordered, there appeared, yeas 59, nays 80, answering present, 6.

The result being announced, Mr. William S. Knox, of Massachusetts, announced his purpose to call up a report of the Committee of the Whole House on the state of the Union, in relation to an occurrence in the committee.

The Speaker said:

The Chair, however, is compelled to take cognizance of the fact that the House is without a quorum and not in a position to do business.

**2954. The absence of a quorum being disclosed, a motion to fix the day to which the House shall adjourn may not be entertained.**

**A motion which was by the rules more highly privileged than the motion to adjourn was not entertained after an affirmative vote on a motion to adjourn.**

On February 21, 1894[4] no quorum appearing, Mr. Richard P. Bland, of Missouri, moved that the House do now adjourn, pending which motion, Mr. J. Fred C. Talbott, of Maryland, moved that when the House adjourn to-day it be to meet on Friday next.

The Speaker[5] declined to entertain the motion of Mr. Talbott, for the reason that a quorum was required to decide it, the roll of the last preceding vote not having disclosed a quorum.

The question being put, Will the House adjourn? it was decided in the affirmative, yeas 141, nays 107.

Before the result of the foregoing vote was announced, Mr. Julius C. Burrows, of Michigan, moved that when the House adjourn to-day it be to meet on Friday next.

---

[1] Second session Thirtieth Congress, Globe, p. 624.

[2] Robert C. Winthrop, of Massachusetts, Speaker.

[3] Second session Fifty-sixth Congress, Record, pp. 2286, 2287.

[4] Second session Fifty-third Congress, Journal, p. 188.

[5] Charles F. Crisp, of Georgia, Speaker.

The Speaker [1] overruled the point of order on the ground that when the order was made the absence of a quorum was not disclosed by any proceeding in the House and did not appear in the Journal of the House, and that the statements of Members on the subject were merely expressions of their individual opinions.

**2962. The absence of a quorum should appear from the Journal if a legislative act is to be vacated for such reason.**—On June 9, 1856,[2] Mr. George W. Jones, of Tennessee, moved that the Journal of the preceding legislative day be amended by striking out the notice of a bill filed by Mr. Edwards, there being no quorum present on that day.[3]

It was objected in opposition to this motion that the Journal of that day did not show the absence of a quorum; but Mr. Jones urged that it was a matter of common knowledge that there was no quorum present. This was not denied.

Various attempts to dispose of the motion were made, but failed for lack of a quorum until June 20, when Mr. Jones's motion was laid on the table, yeas 89, nays 38.

**2963. When a vote taken by yeas and nays shows that no quorum has voted it is the duty of the Chair to take notice of that fact.**—On June 5, 1884,[4] the House having under consideration a bill forfeiting certain land grants, the yeas and nays were ordered and taken on the passage of the bill. After the vote had been taken the Speaker [5] announced that no quorum had voted and that the bill had not passed.

Upon the question being made by Mr. Poindexter Dunn, of Arkansas, that no Member had made the point that a quorum had not voted, the Speaker decided that when a vote was taken by yeas and nays it would be entered on the Journal of the House, and it was the duty of the Chair to take notice of the fact that a quorum had not voted and that the bill had not passed by a constitutional vote.

**2964. The previous question having been ordered on a bill by unanimous consent in the absence of a quorum, the Speaker on the next day ruled that the action was null and void.**—On February 19, 1873,[6] pending the demand for the previous question on the bill of the House (No. 2354) to provide for the recomputation of the accounts between the United States and the several States growing out of moneys expended by the States in the war of 1812, a quorum failed to vote and a call of the House was ordered. After the roll had been called, the doors closed, and excuses offered, on motion of Mr. Leonard Myers, of Pennsylvania, by unanimous consent, this order was agreed to.

*Ordered*, That all further proceedings under the call be dispensed with, that the previous question shall be considered as seconded, and the main question ordered, upon the bill of the House (H. R. 2354) to provide for the recomputation of the accounts between the United States and the several States growing out of moneys expended by said States in the war of 1812, and that the House shall now adjourn.

The House accordingly, at 12 o'clock m., adjourned.

On the next day, the Journal having been read, Mr. Nathaniel P. Banks, of Massachusetts, made the point of order that the main question on the bill of the

---

[1] Charles F. Crisp, of Georgia, Speaker.
[2] First session Thirty-fourth Congress, Journal, pp. 1079, 1095; Globe, pp. 1379, 1427.
[3] Formerly bills were introduced by leave, and a previous notice was required.
[4] First session Forty-eighth Congress, Journal, p. 1385.
[5] John G. Carlisle, of Kentucky, Speaker.
[6] Third session Forty-second Congress, Journal, p. 447; Globe, p. 1518.

# Chapter XCI.*

## BILLS, RESOLUTIONS, AND ORDERS.

1. Rules for introduction and reference of bills, petitions, etc.   Sections 3364–3366.
2. Forms and practice in relation to bills and resolutions.   Sections 3367–3382.
3. Practice as to consideration of.   Sections 3383–3390.
4. Reading, amendment, and passage.   Sections 3391–3428.
5. Enrolling and signing of.   Sections 3429–3459.
6. Recall of bills from other House for correction of errors.   Sections 3460–3481.

3364. **Petitions, memorials, and bills are introduced by the Member delivering them to the Clerk.**

The reference of a private bill is indorsed on it by the Member introducing it, while the reference of a public bill is made by the Speaker.

Any petition or memorial of an obscene or insulting nature may be returned by the Speaker to the Member presenting it for reference.

Rules for correction of erroneous reference of private and public bills.

Petitions, memorials, and bills referred by delivery to the Clerk are entered on the Journal and Record.

The erroneous reference of a petition or private bill referred by the Member under the rule does not confer jurisdiction on the committee receiving it.

Sections 1, 2, and 3 of Rule XXII provide for the introduction, reference to committees, and change of reference of petitions, memorials, bills, and resolutions:

1. Members having petitions or memorials or bills of a private nature to present may deliver them to the Clerk, indorsing their names and the reference or disposition to be made thereof; and said petitions and memorials and bills of a private nature, except such as, in the judgment of the Speaker, are of an obscene or insulting character, shall be entered on the Journal with the names of the Members presenting them, and the Clerk shall furnish a transcript of such entry to the official reporters of debates, for publication in the Record.

2. Any petition or memorial or private bill excluded under this rule shall be returned to the Member from whom it was received; and petitions and private bills which have been inappropriately referred may, by direction of the committee having possession of the same, be properly referred in the manner originally presented; and an erroneous reference of a petition or private bill under this clause shall not confer jurisdiction upon the committee to consider or report the same.

3. All other bills, memorials, and resolutions may, in like manner, be delivered, indorsed with the names of Members introducing them, to the Speaker, to be by him referred, and the titles and references thereof and of all bills, resolutions, and documents referred under the rules shall be entered on

*See Volume VII, Chapter CCXVII.

282

**Enrolled bills are presented to the President by the committee of enrollment.**

**Notice of the signature of a bill by the President is sent by message to the House in which it originated, and that House informs the other.**

**An enrolled bill, when signed by the President, is deposited in the office of Secretary of State.**

Jefferson's Manual, in Section LXVIH, provides:

> When a bill has passed both Houses of Congress the House last acting on it notifies its passage to the other, and delivers the bill to the Joint Committee of Enrollment,[1] who see that it is truly enrolled in parchment. When the bill is enrolled it is not to be written in paragraphs, but solidly, and all of a piece, that the blanks between the paragraphs may not give room for forgery.[2] (9 Grey, 143.) It is then put into the hands of the Clerk[3] of the House of Representatives to have it signed by the Speaker.[4] The Clerk then brings it by way of message to the Senate[5] to be signed by their President. The Secretary of the Senate return it to the Committee of Enrollment, who presents it to the President of the United States. If he approve, he signs, and deposits it among the rolls in the office of the Secretary of State, and notifies by message the House in which it originated that he has approved and signed it; of which that House informs the other by message.

**3430. The printing, enrolling, signing, and certification of bills on their passage between the two Houses are governed by usages founded on former joint rules.**

**The certification and presentation of enrolled bills to the President is governed by usage founded on former joint rules.**

**The Committee on Enrolled Bills reports, for entry on the Journal, the date of presentation of bills to the President.**

**History of certain of the joint rules and their abrogation in 1876.**

From a very early date[6] the House and Senate had joint rules, a large portion of which related to the handling of bills; and although they have since been allowed to lapse, the usages instituted by them remain. These rules relating to bills are:

---

[1] A bill passed before the appointment of the Committee on Enrolled Bills is enrolled by the Clerk and presented directly to the Speaker for his signature. (See Journal, p. 17, first session, Fifty-second Congress, December 23, 1891.)

[2] Under the law as to enrolling bills by printing this regulation as to paragraphs is not observed. Bills which originate in the House are enrolled by the enrolling clerk of the House, while those originating in the Senate are enrolled under direction of that body.

[3] The chairman of the Committee on Enrolled Bills certifies the bills as correctly enrolled. Formerly he made this report from his place on the floor (see Globe, p. 375, first session Thirty-third Congress), but now he lays the bills, each with his certificate as to its correctness, on the Speaker's table, to be placed before the House and signed by the Speaker.

[4] The signing by the Speaker of the House of Representatives and by the President of the Senate in open session of an enrolled bill is an official attestation by the two Houses of such bill as one that has passed Congress. When approved by the President and deposited in the State Department according to law, its authentication is completed and unimpeachable. (Field v. Clark, April 15, 1892, 143 United States Supreme Court Reports, p. 649.)

[5] In the early days of the House the chairman of the Committee on Enrolled Bills took the message to the Senate (see first session Twelfth Congress, Annals, p. 203); but under the present practice the Clerk, or one of his assistants, takes all enrolled bills signed by the Speaker (whether House or Senate bills) and conveys them to the Senate as a message from the House. As all enrolled bills are signed first by the Speaker, the Senate Committee on Enrolled Bills send their bills to the House Committee on Enrolled Bills, who report them to the House for signature as they report House bills. These Senate bills bear a certificate from the chairman of the Senate Committee on Enrolled Bills.

[6] The joint rules were agreed to November 13, 1794, but many of them antedated even that time. (First session Third Congress, Journal, pp. 230, 231.)

Objection having been made, the following resolution was offered by Mr. John Dalzell, of Pennsylvania, and agreed to by the House:

*Ordered,* That the clerk be directed to return to the Senate the enrolled bill (S. 5718) providing for the sale of sites for manufacturing or industrial plants in the Indian Territory, with the information that the House has considered the request of the Senate that the House vacate the action of the Speaker in signing said enrolled bill, and that the unanimous consent necessary to enable such action to be taken was refused.

**3458. The Speaker may not sign an enrolled bill in the absence of a quorum.**—On May 20, 1826,[1] Mr. Jacob Isacks, of Tennessee, from the Joint Committee for Enrolled Bills, reported that the committee had examined an enrolled bill entitled "An act making appropriations for the public buildings in Washington, and for other purposes," and had found the same to be duly enrolled.

When, a quorum not being present, objection was made by a Member to signing the said bill by the Speaker.[2]

And thereupon the House adjourned.

**3459. Proceedings in correcting an error where the Speaker had signed the enrolled copy of a bill that had not passed.**—On March 14, 1864,[3] the Speaker stated to the House that—

the Secretary of the Senate having inadvertently, on Friday last, announced the passage by the Senate of the Court of Claims bill No. 116, instead of the bill of the House (H. R. 116), and having since corrected said error by certifying to the bill which actually did pass, the Speaker, with the consent of the House, will cause the Journal of that day to be amended by the insertion of the title of the bill which actually passed, in lieu of the one originally announced; and when reported by the committee he will sign the proper enrolled bill, canceling his signature of H. R. C. C. 116.

The unanimous consent of the House was given to the course indicated by the Speaker.[4]

**3460. It is a common occurrence for one House to ask of the other the return of a bill, for the correction of errors or otherwise.**—On April 11, 1810,[5] the House proceeded to consider the amendments of the Senate to the bill entitled "An act regulating the Post-Office Establishment."

Mr. Ezekiel Bacon, of Massachusetts, moved that the following words, "Section 25, lines 2 and 3, strike out the words 'each postmaster, provided each of his letters or packets shall not exceed half an ounce in weight,'" appearing to have been an interpolation in the amendments sent from the Senate after the same were received by this House, be expunged therefrom.

Pending consideration a message was received from the Senate requesting the return of the bill and amendments,

it having been discovered that an inaccuracy had taken place in stating the amendments of the Senate.

The House ordered the bill returned, and the same day a message from the Senate returned to the House the corrected amendments.

---

[1] First session Nineteenth Congress, Journal, p. 639.

[2] John W. Taylor, of New York, Speaker.

[3] First session Thirty-eighth Congress, Journal, p. 377; Globe, p. 1096.

[4] Schuyler Colfax, of Indiana, Speaker.

[5] Second session Eleventh Congress, Journal, pp. 355, 356 (Gales and Seaton ed.); Annals, pp. 650 (Vol. I) and 1769 (Vol. II).

# Chapter XCII.*

## APPROVAL OF BILLS BY THE PRESIDENT.

---

1. Provision of the Constitution.  Section 3482.
2. As to resolutions requiring approval.  Sections 3483, 3484.
3. Bills approved are deposited with the Secretary of State.  Section 3485.
4. Delay in presenting bills to President.  Sections 3486-3488.[1]
5. Practice of the President in approving.  Sections 3489-3492.
6. Approval after adjournment for a recess.  Sections 3493-3496.
7. Exceptional instance of approval after final adjournment.  Section 3497.
8. Error in approval.  Section 3498.
9. Notification of the Houses as to approvals.  Sections 3499-3504.
10. Return of bills by President for correction of errors.  Sections 3505-3519.

---

**3482.** Every bill which has passed the two Houses is presented to the President for his signature if he approve.

In general, orders, resolutions, and votes in which the concurrence of the two Houses is necessary must be presented to the President on the same condition as bills.

A concurrent resolution providing for final adjournment of the two Houses is not presented to the President for approval.

The Constitution of the United States, in section 7 of Article I, provides:

Every bill which shall have passed the House of Representatives and the Senate shall, before it become a law, be presented to the President of the United States; if he approve, he shall sign it, etc.

Every order, resolution, or vote to which the concurrence of the Senate and House of Representatives may be necessary (except on a question of adjournment) shall be presented to the President of the United States, and before the same shall take effect shall be approved by him, or, being disapproved by him, shall be repassed by two-thirds of the Senate and House of Representatives, according to the rules and limitations prescribed in the case of a bill.

**3483.** Although the requirement of the Constitution seems specific, the practice of Congress has been to present to the President for approval only such concurrent resolutions as are legislative in effect.—On January 27, 1897, Mr. David B. Hill, of New York, from the Committee on the Judiciary, submitted to the Senate a report[2] which that committee had been directed to make on the subject of joint and concurrent resolutions and their approval by the President. The subject involved the construction of a portion of section 7 of Article I of the

---

\* See Volume VII, Chapter CCXVIII.
[1] Method of taking enrolled bills to the President.  Section 2601 of Volume III.
[2] Senate Report No. 1335, second session Fifty-fourth Congress.

329

Within the experience of the Chair in the Senate no concurrent resolution has ever been sent to the President of the United States, nor has he ever signed one. The Chair has endeavored faithfully to find out how concurrent resolutions escape the provision of the Constitution. He has not been able to succeed.

This led to debate in the course of which the report of the Judiciary Committee in a former Congress was quoted with approval.[1]

**3485. A statute requires that bills signed by the President shall be received by the Secretary of State from the President.**

**When a bill returned without the President's approval is passed by the two Houses, the Secretary of State receives the bill from the presiding officer of the House in which it last was passed.**

The act approved December 28, 1874,[2] provides:

Whenever a bill, order, resolution, or vote of the Senate and House of Representatives, having been approved by the President, or not having been returned by him with his objections, becomes a law or takes effect, it shall forthwith be received by the Secretary of State from the President; and whenever a bill, order, resolution, or vote is returned by the President with his objections, and on being reconsidered is agreed to be passed and is approved by two-thirds of both Houses of Congress, and thereby becomes a law or takes effect, it shall be received by the Secretary of State from the President of the Senate or Speaker of the House of Representatives, in whichsoever House it shall last have been so approved, and he shall carefully preserve the originals.

**3486. Instance wherein a bill enrolled and signed by the presiding officers of the two Houses of one session was sent to the President and approved at the next session.**—On December 8, 1904,[3] Mr. Frank C. Wachter, of Maryland, chairman of the Committee on Enrolled Bills, offered the following:

Whereas the bill (H. R. 10516) for the relief of Edward J. Farrell passed both Houses at the second session of this Congress, but was enrolled too late to receive the signatures of the presiding officers of the two Houses and be presented to the President of the United States before the adjournment of the said second session; and

Whereas the bill (H. R. 11444) to grant certain lands to the State of Ohio passed both Houses and was signed by the presiding officers thereof, but failed to be presented to the President of the United States before the adjournment of the said second session: Therefore,

*Resolved by the House of Representatives (the Senate concurring),* That the said bills be, and are hereby, ordered to be reenrolled for the signatures of the presiding officers of the two Houses and for presentation to the President of the United States.

The resolution was agreed to by the House.

On December 12,[4] in the Senate, the resolution was referred to the Committee on Rules and was not reported therefrom.

The Senate having taken no action on the resolution, the bill (H. R. 10516) was reenrolled as of the third session, signed by the presiding officers, and transmitted to the President, who signed it.[5]

---

[1] See section 3483 of this chapter.
[2] 18 Stat. L., p. 294. A law on this subject had existed from 1789 and had been amended in 1838. (See sec. 204 of Revised Statutes.)
[3] Third session Fifty-eighth Congress, Record, p. 66.
[4] Record, p. 125.
[5] See history of bill (H. R. 10516) in indexes of Journal and Record.

The bill (H. R. 11444) relating to Ohio lands, was transmitted to the President without reenrollment, appearing as a bill of the second session.[1] After receiving an opinion from the Attorney-General the President signed the bill.[2]

**3487. Enrolled bills pending at the close of a session were at the next session of the same Congress ordered to be treated as if no adjournment had taken place.**—On August 21, 1856,[3] Mr. James Pike, of New Hampshire, by unanimous consent, presented the following resolution:

*Resolved (the Senate concurring),* That such bills as passed both Houses at the last session and for want of time were either not presented to the two Houses for the signatures of their presiding officers, or, having been thus signed were not presented to the President for approval, be now reported or presented to the President as if no adjournment had taken place.

---

[1] The chairman of the Committee on Enrolled Bills took this action after he had considered the following precedents furnished to him by Mr. William Tyler Page, for many years clerk of the Committee on Accounts:

"Touching the matter of the right of the chairman of the Committee on Enrolled Bills to present to the President of the United States a bill passed at the last session of Congress too late to be presented to the President before adjournment, I beg to state that I have had my memory as to a precedent for such action confirmed by the Journals of the Fiftieth Congress. In the first session of that Congress there were passed by both Houses of Congress bills of the following numbers and titles, to wit:

"H. R. 11139, an act to authorize the building of a bridge or bridges across the Mississippi River at La Crosse, Wis.

"H. R. 11262, an act to authorize the construction of bridges across the Kentucky River and its tributaries, by the Richmond, Irvine and Beattyville Railroad Company.

"H. R. 1152, an act for the relief of the legal representatives of Eliza M. Ferris.

"These several acts, as stated, were passed by both Houses and, on October 17, 1888, first session Fiftieth Congress, page 2932 of the Journal of the House, they were reported by the chairman of the Committee on Enrolled Bills as having been examined by said committee and found duly enrolled, whereupon, said bills were signed by the Speaker of the House.

"These acts were not presented to the President of the United States until the succeeding session of Congress, when, on December 7, 1888, there appears this entry in the Journal:

"'Mr. Kilgore, from the Committee on Enrolled Bills, reported that he did on yesterday present to the President of the United States bills of the House numbered H. R. 11262, H. R. 11139, H. R. 1152.' (House Journal, p. 57, second session Fiftieth Congress.)

"In the Journal of the same session, on page 115, there appears the following entry:

"'A message in writing was received from the President of the United States * * * informing the House that he did at the dates named approve bills of the House of the following titles, namely:

"'On the 10th, H. R. 11139, an act to authorize the building of a bridge or bridges across the Mississippi River at La Crosse, Wis.

"'H. R. 11262, an act to authorize the construction of bridge or bridges across the Kentucky River and its tributaries, by the Richmond, Irvine and Beattyville Railroad Company.

"'H. R. 1152, an act for the relief of the legal representatives of Eliza M. Ferris.'"

[2] See history of bill (H. R. 11444) in the indexes.

[3] Second session Thirty-fourth Congress, Journal, p. 1352; Globe, p. 4.

In this case Congress was immediately convened to pass an army appropriation bill, which had failed at the regular session. Several bills were left enrolled but not signed at the adjournment. At that time a joint rule presented the resumption of business from a former session immediately.

Formerly the joint rules provided that no bill from one House should be sent for concurrence to the other on either of the last three days of the session, and also that no bill should be sent to the President for his approval on the last day of the session. On June 20, 1874, a proposition to suspend these rules caused some debate as to the useful purpose they were intended to serve, and upon the fact, then alleged, that they had uniformly been suspended since 1822. They were suspended on this occasion. (First session Forty-third Congress, Record, p. 5309.)

tion upon it, or else, Congress taking a recess under such circumstances and thus preventing him from communicating with them, the bill does not become a law because by their own act of adjournment they have prevented him from having the time for consideration which is intended by the Constitution. [Here follows a brief reference to the clause of the Constitution providing for the return of a vetoed bill.] * * * All these provisions indicate that in order to enable the President to return a bill the House should be in session; and if by their own act they see fit to adjourn and deprive him of the opportunity to return the bill, which his objections, and are not present themselves to receive and record these objections and to act thereon, the bill can not become a law unless ten days shall have expired during which the President will have had the opportunity thus to return it.[1]  There is no suggestion that he may return it to the Speaker, or Clerk, or any officer of the House; but the return must be made to the House as an organized body."

Hon. George F. Edmunds, President pro tempore of the Senate, in a note to President Arthur under date of December 24, 1884, expressing a like opinion, says:

"A bill * * * has passed both Houses of Congress and was presented for my signature after both Houses have adjourned until 5th of January.  This is more than ten days, and, if it were now presented to you, you could not return it with your objections.  I do not know what the practice has been, but it would seem to me as if the bill could not become a law constitutionally; but if you think it can I will send it to you."

This note was probably not carefully considered, but it is of value as the impression of a lawyer and legislator of great ability and experience.

The Attorney-General, after discussing the nature of the recess in question, concludes that it is not an adjournment within the meaning of the clause of the Constitution under discussion. As the approval or disapproval of a bill by the President has been sometimes held to be a legislative act, required to be done while the Congress is in session, the Attorney-General finds difficulties in giving a definite opinion, and concludes upon the whole that the course indicated in the syllabus should be pursued.

On January 4, 1893,[2] on the reassembling of Congress after the recess, the President communicated to the Senate notice that he had approved sundry bills on December 22 and December 28, during the recess, but there appears no message of disapproval of any bill.

**3497. An instance where the President signed a bill after the adjournment of Congress.**—On May 16, 1864,[3] the House ordered—

that the Committee on the Judiciary be instructed to inquire and report to the House by what warrant or authority the act[4] entitled "An act to provide for the collection of abandoned property and for the prevention of frauds in insurrectionary districts within the United States" was approved on the 12th day of March, 1863, and whether said act is still in force.

On June 11, 1864, Mr. James F. Wilson, of Iowa, from the committee, made this report:[5]

On the reception of this resolution the committee caused a note to be addressed to the Secretary of State, asking to be informed whether, "as a matter of fact, it appeared on the original files in the State Department that the act referred to was approved on the 12th day of March, 1863."

In reply to this note, the Secretary of State responded that "the original act is, to all appearances, regular in every respect of form; as to the date of its approval—that of 12th of March, 1863—the words

---

[1] This question was subject of a decision in Connecticut about 1904.
[2] Second session Fifty-second Congress, Record, p. 301.
[3] First session Thirty-eighth Congress, Globe, p. 2290.
[4] See 12 Stat. L., p. 820.
[5] House Report No. 108, first session Thirty-eighth Congress.

and figures 'approved March 12, 1863,' are in the handwriting of the President, and followed by his signature."

Thus it appears, from the original files in the State Department, that said act was approved March 12, 1863, and this is true, in fact, as to the date of approval.

The section of the Constitution of the United States bearing upon this question reads as follows:

"If any bill shall not be returned by the President within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law, in like manner as if he had signed it, unless the Congress, by their adjournment, prevent its return, in which case it shall not be a law."

The committee are informed that in the great press of business immediately preceding the adjournment of Congress on the 4th of March, 1863, the act which is made the subject-matter of inquiry by the resolution of the House was passed to the Secretary of the Treasury for examination, as it related particularly to his Department. It did not reach the President again until after the adjournment of Congress, when it was approved by him under the belief that the last clause of the section of the Constitution, above quoted, was designed more especially to prevent Congress from enacting laws without the approval of the Executive, which might be done by the passage of bills by the two Houses, followed by an adjournment, before the President could examine and return them, were it not for the declaration that in such cases the bills shall not be laws; and did not relate to cases wherein the Executive should approve bills sent to him by Congress within ten days, even though an adjournment should occur before the return of the bills.

That there is force and plausibility in this position, a little reflection will discover to any mind; but the committee can not receive it as a correct interpretation of the Constitution.

The ten days' limitation contained in the section above quoted refers to the time during which Congress remains in session, and has no application after adjournment. Hence, if the Executive can hold a bill ten days after adjournment, and then approve it, he can as well hold it ten months before approval. This would render the laws of the country too uncertain, and could not have been intended by the framers of the Constitution.

The spirit of the Constitution evidently requires the performance of every act necessary to the enactment and approval of laws to be perfect before the adjournment of Congress.

The committee, therefore, conclude that the act referred to, approved March 12, 1863, is not in force; and in this conclusion the committee are unanimous.[1]

**3498. A bill that had not actually passed, having been enrolled and signed by the President of the United States, was disregarded by the Executive, and Congress passed another bill.**—On March 11, 1836,[2] the House considered a joint resolution (No. 2) to place the name of Benedict Alford on the pension roll. The Debates of March 18,[3] give the following explanation of the presentation of this resolution:

At the first session of the Twenty-third Congress a bill passed the House of Representatives granting pensions to Benedict Alford and Robert Brush, soldiers of the Revolutionary war. By the Journals of the Senate it appears that this bill was indefinitely postponed in that body, and the House of Representatives was so notified. And it is also so entered on the Journal of the House. The postponement of the bill in the Senate in the last hour of the session was inadvertently overlooked by the enrolling clerk, as well as by the Committee on Enrolled Bills in the House, and it was enrolled and signed by the officers of the two Houses, and presented to, and approved by, the President. A few days after the adjournment of Congress the error was discovered in the Clerk's office in the House of Representatives, and notice of the fact was immediately given to the War Department. The Secretary of War thereupon declined complying with the provisions of the bill, under the conviction that it was not a valid statute. At the last session of Congress the President communicated the fact to the Senate by message. No

---

[1] The act of July 2, 1864 (13 Stat. L., p. 375), was amendatory of the act "approved March 12, 1863," thereby indicating that the latter act was still considered a law. (See Globe, first session, thirty-eighth Congress, p. 2820, for debate on the bill S. 232.)

[2] First session Twenty-fourth Congress, Journal, pp. 470, 498, 525, 526; Debates, pp. 2747, 2881.

[3] Debates, p. 2881.

# Chapter CVII.*

## THE COMMITTEE OF THE WHOLE.[1]

1. Rule for forming committee.  Section 4704.
2. Origin and development of.  Section 4705.
3. Nature and powers of.  Sections 4706–4715.[2]
4. Certain motions not in order in.  Sections 4716–4721.
5. Yeas and nays not taken in.  Sections 4722–4724.
6. After voting to go into committee no motions in order.  Sections 4725–4728.
7. Order of business in.  Sections 4729–4734.
8. Unfinished business in.  Sections 4735, 4736.
9. Rules of proceeding in.  Section 4737.[3]
10. Reading of bills.  Sections 4738–4741.
11. Amendment under five-minute rule.  Sections 4742–4751.
12. Rising and reporting.  Sections 4752–4766.
13. The simple motion to rise.  Sections 4767–4773.
14. Various motions for disposition of a bill.  Sections 4774–4782.
15. Questions of order.  Sections 4783, 4784.[4]
16. Informal rising.  Sections 4785–4791.[5]

---

**4704. In forming a Committee of the Whole, the Speaker leaves the chair, after appointing a Chairman to preside.**

**The Chairman of the Committee of the Whole may cause the galleries or lobby to be cleared in case of disturbance or disorderly conduct therein.**

**Present form and history of section 1 of Rule XXIII.**

---

* See Volume VIII, Chapter CCXXXVII.
[1] In early practice given power to take testimony.  (Sec. 1804 of Vol. III.)
   Subjects once considered in, irrespective of appropriations or revenue.  (Sec. 1984 of Vol. III.)
   House sometimes attends impeachment trials in.  (Secs. 2027, 2374 of Vol. III.)
   Motions to go into, to consider revenue and appropriation bills.  (Secs. 3072–3085 of this volume.)
   Motions to go into, after call of committees.  (Secs. 3134–3141 of this volume.)
   Relations to special orders.  (Secs. 3214–3230 of this volume.)
   Conference reports not considered in.  (Secs. 6559–6561 of Vol. V.)
   Relations to Congressional Record.  (Secs. 6986–6988 of Vol. V.)
   Rule of admission to floor applies to.  (Sec. 7285 of Vol. V.)
[2] In early years matters originated in.  (Secs. 1507, 1541 of Vol. II.)
   Articles of impeachment considered in.  (Secs. 2415, 2420 of Vol. III.)
[3] As to debate in.  (Chapter CXV, secs. 5203–5211 of Vol. V.)
   Failure of quorum in.  (Secs. 2966–2979 of this volume.)
[4] See also sections 6927–6937 of Vol. V.
   Speaker sometimes takes the chair to restore order.  (Secs. 1348–1351 of Vol. II.)
   Extreme disorder in.  (Secs. 1649–1653, 1657 of Vol. II.)
   Questions of privilege in.  (Secs. 2540–2544 of Vol. III.)
[5] Reception of messages while sitting.  (Sec. 6590 of Vol. V.)

985

**4787. At an informal rising of the Committee of the Whole a message from the President of the United States may be laid before the House only by unanimous consent.**—On June 13, 1902,[1] the Committee of the Whole House on the state of the Union rose informally to receive messages from the President of the United States.

The messages having been communicated to the House, the Speaker [2] said:

If there is no objection, the Chair will lay the messages before the House.

Mr. Oscar W. Underwood, of Alabama, objected.
Thereupon the Speaker said:

Objection being made, the Committee of the Whole will resume its sitting.

**4788. Sometimes on the informal rising of the Committee of the Whole, the House, by unanimous consent, transacts business, such as the presentation of enrolled bills, the swearing in of a Member, or consideration of a message.**—On February 26, 1859,[3] the Committee of the Whole informally rose, and Mr. James Pike, of New Hampshire, from the Committee on Enrolled Bills, reported that they had examined and found truly enrolled certain bills.

Thereupon the Speaker [4] signed the same; and the committee then resumed its session.[5]

**4789.** On May 5, 1880,[6] the Committee of the Whole informally rose to receive a message from the Senate. The message having been read, Mr. Martin Maginnis, of Montana, asked the House to concur in a verbal amendment to one of the bills just received from the Senate.

The Speaker[7] said:

The rising of the committee is informal. That request can not now be entertained.

**4790.** On May 14, 1896,[8] the Committee of the Whole informally rose to receive a message from the Senate, one of the announcements of which was that the Senate had passed with amendments a bill (H. R. 7977) making appropriations for the construction, repair, and preservation of certain public works on rivers and harbors, and for other purposes, asked a conference with the House of Representatives on the bill and amendments, and had appointed Mr. Frye, Mr. Quay, and Mr. Vest as the conferees on the part of the Senate.

As soon as the reading of the message was concluded, Mr. Binger Hermann, of Oregon, asked unanimous consent that the Senate amendments to this bill be

---

[1] First session Fifty-seventh Congress, Record, p. 6746.

[2] David B. Henderson, of Iowa, Speaker.

[3] Second session Thirty-fifth Congress, Globe, p. 1417.

[4] James L. Orr, of South Carolina, Speaker.

[5] It is quite common for the committee to rise informally for this purpose. (See Record, first session Fifty-first Congress, p. 10350; first session Fifty-fifth Congress, p. 507; and first session Fifty-first Congress, p. 7774. In the latter case conferees also were appointed.)

[6] Second session Forty-sixth Congress, Record, p. 3028.

[7] Samuel J. Randall, of Pennsylvania, Speaker.

[8] First session Fifty-fourth Congress, Record, pp. 5249, 5270, 5532.

# Chapter CXL.

## SESSIONS AND ADJOURNMENTS.[1]

1. Provision of the Constitution. Section 6672.
2. The three-day period and its conditions. Sections 6673–6675.[2]
3. The holiday recess. Sections 6676–6685.
4. Instance of a session prolonged by recess. Section 6686.
5. A recess a real, not imaginary time. Section 6687.
6. Adjournment of Congress not fixed by law. Section 6688.
7. Sine die adjournment. Section 6689.[3]
8. Special session ends with day of meeting of next regular session of a Congress. Sections 6690–6693.
9. End of last session of a Congress. Sections 6694–6697.
10. Privilege of concurrent resolutions of adjournment. Sections 6698–6706.
11. Adjournment of House at time of sine die adjournment of Congress. Sections 6707–6721.[4]
12. Forms and ceremonies at adjournment sine die. Sections 6722–6726.
13. Business undisposed of at end of a session. Section 6727.
14. Sessions on Sunday. Sections 6728–6733.[5]
15. Adjournment of the legislative day. Sections 6734–6740.[6]

**6672. Neither House during a session of Congress may, without the consent of the other, adjourn for more than three days, or to another place.**

**When the two Houses disagree as to adjournment, the President may adjourn them.**

Section 5 of Article I of the Constitution provides:

Neither House during the session of Congress shall, without the consent of the other,[7] adjourn for more than three days, nor to any other place than that in which the two Houses shall be sitting.

---

[1] See also Chapter I of Volume I, sections 1–13, for precedents as to the meeting of Congress.

[2] The Senate sitting for an impeachment trial may adjourn for more than three days. (Sec. 2423 of Vol. III.)

[3] Forms of resolutions providing for adjournment sine die or for a recess, and then privileged nature. (Sec. 4031 of Vol. IV.)

[4] Adjournment in the midst of a roll call. (Sec. 6325 of this volume.)

[5] As to Sunday, 7245, 7246 of this volume.

[6] Distinction between the legislative and calendar day. (Sec. 3192 of Vol. IV.)

Fixing the hour of daily meetings. (Sections 104–117 of Vol. I.)

[7] December 21, 1882 (second session Forty-seventh Congress, Record, p. 490), when the concurrent resolution of the House proposing a holiday recess of the Congress was received in the Senate, an amendment was offered to permit the House alone to take such recess, leaving the Senate in session. The Senate declined to agree to the amendment. Procedure like this has never been taken, the two Houses always having continued in session together except in instances wherein the President has convened the Senate alone in extraordinary session.

The Speaker then said:

The first part of that clause declares that "each House shall be the judge of the election, returns, and qualifications of its own Members, and a majority of each shall constitute a quorum to do business.' This is the broad charter given in the Constitution by which the two Houses transact all their legislative business. It includes, of course, within its range of power the authority to lay down an order of business, to decide when they shall meet, and what business they shall or shall not take up when they do meet. This is the power conferred by the Constitution upon a quorum of each House.

The clause then concludes by giving certain powers to less than a quorum. "A smaller number may adjourn from day to day, and may be authorized to compel the attendance of absent Members, but in such manner and under such penalties as each house may provide." They must, therefore, compel the attendance of absent Members in such Manner as each House (which means a quorum thereof) shall have provided anterior to that time. It follows, the Chair thinks, by the plain reading of the Constitution, that a minority of each House, less than a quorum, can not have, as the gentleman from Ohio (Mr. Schenck) argues, larger power than a majority of each House sitting as a legislative body. If the point of order made is correct, less than a quorum has more power than more than a quorum, an anomaly never recognized by parliamentary law nor conferred by the Constitution, in the opinion of the Chair. The limitation of the power of less than a quorum is absolute. They may do certain things in such manner and form and under such penalties as each House (which means a majority thereof) shall have previously provided.

The Chair, therefore, overrules the point of order on three grounds: First, that both Houses of Congress, at the opening meeting of the first session of this Congress, considered this provision of the Constitution, when it declared for exactly such an adjournment as is provided for in the pending resolution. That is a parliamentary precedent not questioned at that time, as the Chair understands, by any Member in either branch—certainly not appealed from in either branch—but spoken of latterly, when it was supposed there might not be a quorum present on the 3d day of July.

The Chair overrules it for a second reason, which is, that a majority of each House, when there was a quorum present, have determined that when Congress assembled on the 3d of July, if there was not a quorum present the absent Members should not be coerced, but that the presiding officers of both branches, who were simply the organs and servants of the two Houses to execute their orders, should then adjourn Congress without day, with full notice to every Senator and Representative of what would be the specific order of business on the 3d day of July, and what would be the result if a majority of either House failed to appear on that day.

The Chair overrules it on the third ground, that at the conclusion of long sessions the two Houses have sometimes provided for an adjournment at a specified day and hour, but that after a certain date only formal business, such as the signing of bills, shall be transacted, and at the final adjournment of such first session less than a quorum has been present.

If the point of order made by the gentleman from Ohio be correct, then if there were no quorum present at such a time the absence of a quorum would render null the concurrent resolutions of quorum of both the House and the Senate.

Mr. Schenck having appealed, the Chair was sustained, yeas 125, nays 14.

On July 20,[1] the Congress took another recess until November 21. When it reassembled the roll of the House was not called, and no notice of the presence of a, quorum was sent to either Senate or House. The Speaker (Mr. Colfax) also assumed that the first business in order was the reading of the Journal of the last day before the recess.

**6687. A recess of Congress is a real, not imaginary time, when it is not sitting in regular or extraordinary session.**

---

[1] First session Fortieth Congress, Journal, p. 253; Globe, p. 768. The resolution providing for this recess was in the ordinary form, providing simply that the presiding officers adjourn their respective Houses to meet on November 21. (Journal, p. 250.)

# Calendar No. 1675

| 80TH CONGRESS | SENATE | REPORT |
|---|---|---|
| 2d Session | | No. 1620 |

## REVISION OF TITLE 18, UNITED STATES CODE

JUNE 14 (legislative day, JUNE 1), 1948.—Ordered to be printed

Mr. WILEY, from the Committee on the Judiciary, submitted the following

## REPORT

[To accompany H. R. 3190]

The Committee on the Judiciary, to whom was referred the bill (H. R. 3190) to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure," having considered the same, do now report the bill to the Senate favorably, with amendments, and recommend that the bill, as amended do pass.

The purpose of the bill is to codify and revise the laws relating to Federal crimes and criminal procedure.

With the amendments proposed by the committee the bill includes all pertinent laws to January 5, 1948, and is made effective September 1, 1948.

The bill makes it easy to find the criminal statutes because of the arrangement, numbering, and classification. The original intent of Congress is preserved. A uniform style of statutory expression is adopted. The new Federal Rules of Criminal Procedure are keyed to the bill and are reflected in part II of title 18.

Obsolete and executed provisions are eliminated. Uncertainty will be ended and there will no longer be any need to examine the many volumes of the Statutes at Large as the bill, upon enactment, will itself embody the substantive law which will thus appear in full in the United States Code.

Codification and revision of the criminal statutes was undertaken in October 1943 by the House Committee on Revision of the Laws. A bill prepared by that committee passed the House on July 16, 1946, Seventy-ninth Congress, was reintroduced in the present Congress as H. R. 3190, and passed the House again on May 12, 1947.

The care with which the bill has been prepared and brought to date in the present Congress under the supervision of the House Committee on the Judiciary is reflected by that committee's report, House Report No. 304 of the Eightieth Congress. For a detailed

**4**        REVISION OF TITLE 18, UNITED STATES CODE

On page 118, line 23, before "shall be fined", strike out "amine into the affairs of such institution,".

### EXPLANATION

Amendments Nos. 6 and 7 involve no change in existing law. The stricken words are unnecessary and inconsistent with other sections of this revision defining embezzlement but are necessary and appropriate in defining the offense of false entries in sections 1005 and 1006. See sections 641, 645, and 659 of this title.

8.    On page 134, line 19, after "both", strike out the period at the end of this line and insert—

; or if he negligently suffers such person to escape, he shall be fined not more than $500 or imprisoned not more than one year, or both.

### EXPLANATION

This amendment gives effect to the act of June 21, 1947 (ch. 111, 61 Stat. 134). amending section 138 of the Criminal Code of 1909 (35 Stat. 1113; 18 U. S. C. sec. 244), the latter being section 755 of revised title 18 as set out in this bill.

9)    On page 158, insert new matter after line 12, as follows:

While any foreign government is a member both of the International Monetary Fund and of the International Bank for Reconstruction and Development, this section shall not apply to the sale or purchase of bonds, securities, or other obligations of such government or any political subdivision thereof or of any organization or association acting for or on behalf of such government or political subdivision, or to making of any loan to such government, political subdivision, organization, or association.

### EXPLANATION

This amendment incorporates in section 955 of title 18 the exception made to the Johnson Act by act of July 31, 1945 (ch. 339, sec. 9, 59 Stat. 516; 31 U. S. C., sec. 804b).

10.    On page 367, lines 15 to 18, inclusive, strike out all of lines 15 to 18, inclusive, and insert in lieu thereof the following two paragraphs:

The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.

Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof.

### EXPLANATION

This amendment is necessary to preserve the provisions of section 371 (1) of title 28 United States Code, 1940 edition, giving the district court of the United States original jurisdiction of all offenses against the laws of the United States, exclusive of State courts.

11.    On page 415, line 10, after "Canal Zone," insert "District of Columbia,".

the protection of their civil rights, all with due regard to the established customs of such peoples.

SEC. 4. For the purposes of this concurrent resolution, the committee, or any duly authorized subcommittee thereof, is authorized to hold such hearings, to sit and act at such times and places during the sessions, recesses, and adjourned periods of the Eightieth Congress, to employ such consultants, specialists, clerks, and other assistants, to travel, and authorize its assistants to travel, freely through such areas and such other places, to utilize such transportation, housing, and other facilities as the Army, Navy, Marine Corps, Coast Guard, and Air Force may make available, to require by subpena or otherwise the attendance of such witnesses and the production of such correspondence, books, papers, and documents, to administer such oaths, to take such testimony, and to make such expenditures, as it deems advisable. The cost of stenographic services to report such hearings shall not be in excess of 25 cents per hundred words. The expenses of the committee, which shall not exceed $50,000, shall be paid one-half from the contingent fund of the Senate and one-half from the contingent fund of the House of Representatives, upon vouchers approved by the chairman or vice chairman. Disbursements to pay such expenses shall be made by the Secretary of the Senate out of the contingent fund of the Senate, such contingent fund to be reimbursed from the contingent fund of the House of Representatives in the amount of one-half of disbursements so made.

*Hearings.*

*Employment of consultants, etc.*

*Witnesses.*

*Expenses.*

Passed June 18, 1948.

---

### COMMUNIST PARTY OF THE UNITED STATES

June 19, 1948
[H. Con. Res. 199]

*Resolved by the House of Representatives (the Senate concurring),* That there be printed six thousand additional copies of the report (House Report Numbered 1920) on the Communist Party of the United States as an Advocate of Overthrow of Government by Force and Violence, of which five thousand copies shall be for the use of the Committee on Un-American Activities of the House of Representatives and one thousand copies shall be for the House document room.

*Printing of additional copies of House report.*

Passed June 19, 1948.

---

### UNITED STATES BOARD OF PAROLE

June 19, 1948
[H. Con. Res. 213]

*Resolved by the House of Representatives (the Senate concurring),* That, in accordance with paragraph 3 of section 2 of the Printing Act, approved March 1, 1907, the Committee on Expenditures in the Executive Departments, House of Representatives, be, and is hereby, authorized and empowered to have printed for its use two thousand five hundred copies of the hearings held before a special subcommittee of said committee during current Congress, relative to investigation as to the manner in which the United States Board of Parole is operating and as to whether there is a necessity for a change in either the procedure or basic law.

*Printing of hearings of special subcommittee.*
*34 Stat. 1012.*
*44 U. S. C. § 154.*

Passed June 19, 1948.

---

### ADJOURNMENT

June 20, 1948
[H. Con. Res. 218]

*Resolved by the House of Representatives (the Senate concurring),* That when the two Houses adjourn on Sunday, June 20, 1948, they

stand adjourned until 12 o'clock meridian on Friday, December 31, 1948, or until 12 o'clock meridian on the third day after the respective Members are notified to reassemble in accordance with section 2 of this resolution, whichever event first occurs.

Reassembly.

SEC. 2.  The President pro tempore of the Senate, the Speaker of the House of Representatives, the acting majority leader of the Senate, and the majority leader of the House of Representatives, all acting jointly, shall notify the Members of the Senate and the House respectively, to reassemble whenever, in their opinion, the public interest shall warrant it.

Passed June 20, 1948.

---

June 20, 1948
[H. Con. Res. 219]

### SIGNING OF ENROLLED BILLS, ETC.

*Resolved by the House of Representatives (the Senate concurring),* That notwithstanding the adjournment of the two Houses until December 31, 1948, the Speaker of the House of Representatives and the President pro tempore of the Senate be, and they are hereby, authorized to sign enrolled bills and joint resolutions duly passed by the two Houses and found truly enrolled.

Passed June 20, 1948.

---

July 27, 1948
[H. Con. Res. 220]

### JOINT MEETING

Communication
from the President.

*Resolved by the House of Representatives (the Senate concurring),* That the two Houses of Congress assemble in the Hall of the House of Representatives on Tuesday, July 27, 1948, at 12:30 o'clock in the afternoon, for the purpose of receiving such communication as the President of the United States may be pleased to make to them.

Passed July 27, 1948.

---

August 7, 1948
[H. Con. Res. 222]

### ADJOURNMENT

*Resolved by the House of Representatives (the Senate concurring),* That when the two Houses adjourn on Saturday, August 7, 1948, they stand adjourned until 12 o'clock meridian on Friday, December 31, 1948, or until 12 o'clock meridian on the third day after the respective Members are notified to reassemble in accordance with section 2 of this resolution, whichever event first occurs.

Reassembly.

SEC. 2.  The President pro tempore of the Senate, the Speaker of the House of Representatives, the acting majority leader of the Senate, and the majority leader of the House of Representatives, all acting jointly, shall notify the Members of the Senate and the House, respectively, to reassemble whenever, in their opinion, the public interest shall warrant it.

Passed August 7, 1948.

---

August 7, 1948
[H. Con. Res. 223]

### SIGNING OF ENROLLED BILLS, ETC.

*Resolved by the House of Representatives (the Senate concurring),* That notwithstanding the adjournment of the two Houses until December 31, 1948, the Speaker of the House of Representatives and the President pro tempore of the Senate be, and they are hereby, authorized to sign enrolled bills and joint resolutions duly passed by the two Houses and found truly enrolled.

Passed August 7, 1948.

## NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

### 𝔗𝔬 𝔞𝔩𝔩 𝔱𝔬 𝔴𝔥𝔬𝔪 𝔱𝔥𝔢𝔰𝔢 𝔭𝔯𝔢𝔰𝔢𝔫𝔱𝔰 𝔰𝔥𝔞𝔩𝔩 𝔠𝔬𝔪𝔢. 𝔊𝔯𝔢𝔢𝔱𝔦𝔫𝔤:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, der the seal of the National Archives of the United States, that the attached reproduction(s) is a true and t copy of documents in his custody.

| SIGNATURE | |
|---|---|
| *Richard H. Hunt* (signature) | |
| NAME Richard H. Hunt | DATE 05/11/07 |
| TITLE Director Center for Legislative Archives | |
| NAME AND ADDRESS OF DEPOSITORY The National Archives Washington, D.C. 20408 | |

NA FORM APR 85 1407·A

App. 107

# H. R.

3190

## An Act

to revise, codify, and enact into positive

law, Title 18 of the United States Code, entitled "Crimes

and Criminal Procedure.".

Examined and found truly enrolled.

*K M Le Compte*

*Chairman.*

------------------------------June 19 19--48

gpo   69792

App. 108

80TH CONGRESS
1ST SESSION

# H. R. 3190

------------

# AN ACT

To revise, codify, and enact into positive law, Title 18 of the
United States Code, entitled "Crimes and Criminal Pro-
cedure".

1     *Be it enacted by the Senate and House of Representa-*
2 *tives of the United States of America in Congress assembled,*
3 That Title 18 of the United States Code, entitled "Crimes
4 and Criminal Procedure", is hereby revised, codified, and
5 enacted into positive law, and may be cited as "Title 18,
6 U. S. C., §—", as follows:

1 international extradition, including the fees of the com-
2 missioner, shall be certified by the judge or commissioner
3 before whom the hearing shall take place to the Secretary
4 of State of the United States, and the same shall be paid
5 out of appropriations to defray the expenses of the judiciary
6 or the Department of Justice as the case may be.

7 The Attorney General shall certify to the Secretary
8 of State the amounts to be paid to the United States on
9 account of said fees and costs in extradition cases by the
10 foreign government requesting the extradition, and the
11 Secretary of State shall cause said amounts to be collected
12 and transmitted to the Attorney General for deposit in the
13 Treasury of the United States.

**CHAPTER 211.—JURISDICTION AND VENUE**

Sec.
3231. District courts.
3232. District of offense—Rule.
3233. Transfer within District—Rule.
3234. Change of venue to another district—Rule.
3235. Venue in capital cases.
3236. Murder or manslaughter.
3237. Offenses begun in one district and completed in another.
3238. Offenses not committed in any district.
3239. Threatening communications.
3240. Creation of new district or division.
3241. Jurisdiction of offenses under certain sections.
3242. Indians committing certain offenses; acts on reservations.
3243. Jurisdiction of State of Kansas over offenses committed by or against Indians on Indian reservations.

14 § 3231. DISTRICT COURTS

15 Offenses against the United States shall be cognizable
16 in the district courts of the United States, but nothing in
17 this title shall be held to take away or impair the jurisdiction
18 of the courts of the several states under the laws thereof.

471

| Date | Statutes at Large | | | | U. S. Code | |
|---|---|---|---|---|---|---|
| | Chapter | Section | Volume | Page | Title | Section |
| 1946—July 10__ | 547 | _____ | 60 | 524, 525 | 18 | 641 |
| July 24__ | 606 | _____ | 60 | 656 | 18 | 409–411 |
| Aug. 2___ | 735 | _____ | 60 | 789 | 18 | 408o |
| Aug. 14__ | 964 | 66 3 | 60 | 1064 | 7 | 1026 |

66 Only the provisions amending section 52 of Act July 22, 1937, ch. 517, title IV, 50 Stat. 531, 532.

Passed the House of Representatives May 12, 1947.

Attest:

*John Andrews*

*Clerk.*

80TH CONGRESS
1st SESSION

# H. R. 3190

# AN ACT

To revise, codify, and enact into positive law,
Title 18 of the United States Code, entitled
"Crimes and Criminal Procedure".

JUN 17 1948

(CALENDAR DAY)
JUN 18 1948

House agrees to Senate amendments.

In the Senate of the United States,

JUN 18   LEG. DAY JUN 15 '48

Resolved, That this bill pass with
amendments.
Attest:

*Carl A. Loeffler*

Secretary

COPY

From

THE NATIONAL ARCHIVES

Records of the U.S.
House of
Representatives
Record Group 233

HR 80A-B9
HR 3190

## NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

### To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf,

r the seal of the National Archives of the United States, that the attached reproduction(s) is a true and

copy of documents in his custody.

| | |
|---|---|
| SIGNATURE *Aloha South* | |
| NAME<br>ALOHA SOUTH | DATE<br>July 27, 2007 |
| TITLE<br>ASST. BRANCH CHIEF, OLD MILITARY & CIVIL RECORDS | |
| NAME AND ADDRESS OF DEPOSITORY<br>NATIONAL ARCHIVES & RECORDS ADMINISTRATION<br>700 PENNSYLVANIA AVENUE, NW<br>WASHINGTON, DC 20408 | |

NA FORM 14007 (10-86)

App. 114

[PUBLIC LAW 772]
[CHAPTER 645]

H. R. 3190



## Eightieth Congress of the United States of America

### At the Second Session

Begun and held at the City of Washington on Tuesday, the sixth
day of January, one thousand nine hundred and forty-eight

## AN ACT

To revise, codify, and enact into positive law, Title 18 of the United
States Code, entitled "Crimes and Criminal Procedure".

*Be it enacted by the Senate and House of Representatives of the
United States of America in Congress assembled,* That Title 18 of the
United States Code, entitled "Crimes and Criminal Procedure", is
hereby revised, codified, and enacted into positive law, and may be
cited as "Title 18, U. S. C., § ——", as follows:

### TITLE 18—CRIMES AND CRIMINAL PROCEDURE

| Part | | Sec. |
|---|---|---|
| I. | CRIMES | 1 |
| II. | CRIMINAL PROCEDURE | 3001 |
| III. | PRISONS AND PRISONERS | 4001 |
| IV. | CORRECTION OF YOUTHFUL OFFENDERS | 5001 |

### PART I—CRIMES

| Chapter | | Sec. |
|---|---|---|
| 1. | General provisions | 1 |
| 3. | Animals, birds and fish | 41 |
| 5. | Arson | 81 |
| 7. | Assault | 111 |
| 9. | Bankruptcy | 151 |
| 11. | Bribery and graft | 201 |
| 13. | Civil rights | 241 |
| 15. | Claims and services in matters affecting government | 281 |
| 17. | Coins and currency | 331 |
| 19. | Conspiracy | 371 |
| 21. | Contempts constituting crimes | 401 |
| 23. | Contracts | 431 |
| 25. | Counterfeiting and forgery | 471 |
| 27. | Customs | 541 |
| 29. | Elections and political activities | 591 |
| 31. | Embezzlement and theft | 641 |
| 33. | Emblems, insignia, and names | 701 |
| 35. | Escape and rescue | 751 |
| 37. | Espionage and censorship | 791 |
| 39. | Explosives and combustibles | 831 |
| 41. | Extortion and threats | 871 |
| 43. | False personation | 911 |
| 45. | Foreign relations | 951 |
| 47. | Fraud and false statements | 1001 |
| 49. | Fugitives from justice | 1071 |
| 51. | Homicide | 1111 |
| 53. | Indians | 1151 |
| 55. | Kidnaping | 1201 |
| 57. | Labor | 1231 |
| 59. | Liquor traffic | 1261 |
| 61. | Lotteries | 1301 |
| 63. | Mail fraud | 1341 |
| 65. | Malicious mischief | 1361 |
| 67. | Military and Navy | 1381 |
| 69. | Nationality and citizenship | 1421 |
| 71. | Obscenity | 1461 |
| 73. | Obstruction of justice | 1501 |

in the several districts through which it may be necessary for him to pass with such prisoner, so far as such power is requisite for the prisoner's safe-keeping.

§ 3194. Transportation of fugitive by receiving agent

Any agent appointed as provided in section 3182 of this title who receives the fugitive into his custody is empowered to transport him to the State or Territory from which he has fled.

§ 3195. Payment of fees and costs

All costs or expenses incurred in any extradition proceeding in apprehending, securing, and transmitting a fugitive shall be paid by the demanding authority.

All witness fees and costs of every nature in cases of international extradition, including the fees of the commissioner, shall be certified by the judge or commissioner before whom the hearing shall take place to the Secretary of State of the United States, and the same shall be paid out of appropriations to defray the expenses of the judiciary or the Department of Justice as the case may be.

The Attorney General shall certify to the Secretary of State the amounts to be paid to the United States on account of said fees and costs in extradition cases by the foreign government requesting the extradition, and the Secretary of State shall cause said amounts to be collected and transmitted to the Attorney General for deposit in the Treasury of the United States.

CHAPTER 211.—JURISDICTION AND VENUE

Sec.
3231. District courts.
3232. District of offense—Rule.
3233. Transfer within District—Rule.
3234. Change of venue to another district—Rule.
3235. Venue in capital cases.
3236. Murder or manslaughter.
3237. Offenses begun in one district and completed in another.
3238. Offenses not committed in any district.
3239. Threatening communications.
3240. Creation of new district or division.
3241. Jurisdiction of offenses under certain sections.
3242. Indians committing certain offenses; acts on reservations.
3243. Jurisdiction of State of Kansas over offenses committed by or against Indians on Indian reservations.

§ 3231. District courts

The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.

Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof.

§ 3232. District of offense—(Rule)

SEE FEDERAL RULES OF CRIMINAL PROCEDURE

Proceedings to be in district and division in which offense committed, Rule 18.

| Date | Statutes at Large | | | | U. S. Code | |
|---|---|---|---|---|---|---|
| | Chapter | Section | Volume | Page | Title | Section |
| **1940—Continued** | | | | | | |
| Mar. 28 | 72 | | 54 | 90 | 18 | 97 |
| Apr. 17 | 101 | | 54 | 110 | 28 | 421 |
| Apr. 30 | 164 | | 54 | 171 | 18 | 86 |
| Do | 176 | 1–6 | 54 | 178, 176 | 18 | 733, 733a, 733b |
| June 6 | 241 | | 54 | 254 | 18 | 408 |
| June 8 | 274 | | 54 | 249 | 18 | 217a |
| Do | 286 | | 54 | 255, 256 | 18 | 412a |
| June 11 | 328 | | 54 | 304 | 18 | 451 |
| Do | 326 | 1–3 | 54 | 305 | 18 | 460–471 |
| June 13 | 350 | | 54 | 391 | 18 | 283 |
| June 25 | 429 | | 54 | 671, 572 | 18 | 75a |
| June 28 | 439 | 1–6 | 54 | 670, 671 | 18 | 9–11 |
| June 30 | 445 | | 54 | 688 | 18 | 667 |
| Do | 449 | 1–6 | 54 | 692, 693 | 18 | 641, 715, 719, 729a, 752k |
| Do | 455 | | 54 | 696 | 12 | 588b |
| July 10 | 567 | | 54 | 747 | 18 | 587 |
| July 19 | 640 | 1, 3, 5, 6 | 54 | 767, 772 | 18 | 61a, 61i, 61m–1, 611 |
| Oct. 8 | 762 | | 54 | 1021 | 18 | 208 |
| Oct. 9 | 777 | 6 | 54 | 1028 | 18 | 383–385 |
| Do | 785 | 1–6 | 54 | 1055, 1060 | 18 | 576, 576a–576d |
| Oct. 14 | 872 | | 54 | 1184 | 18 | 390a |
| Do | 876 | 346 (a–h), (l), 347 | 54 | 1183–1198 | 8 | 746 (a–h), (l), 747 |
| Oct. 17 | 897 | 1–6 | 54 | 1201–1204 | 18 | 14, 14 note 15–17 |
| Nov. 30 | 926 | | 54 | 1220, 1221 | 18 | 101, 104–106 |
| **1941**—May 31 | 145 | 1 (part) | 55 | 230 | 18 | 647 |
| June 14 | 204 | | 55 | 252 | 18 | 732f |
| June 21 | 212 | | 55 | 264, 255 | 18 | 746a, 746b |
| June 25 | 261 | 10 | 55 | 256 | 12 | 1731 (4) |
| July 9 | 282 | | 55 | 581 | 18 | 296a |
| July 11 | 287 | | 55 | 582 | 18 | 516a |
| Aug. 18 | 366 | 1–6 | 55 | 631, 632 | 18 | 419a, 419b, 419c, 419d |
| Aug. 21 | 388 | | 55 | 655 | 20 | 104 |
| Oct. 21 | 453 | | 55 | 743, 744 | 18 | 738f |
| Nov. 18 | 473 | 1, 2 | 55 | 765, 766 | 18 | 105, 107 |
| Nov. 21 | 492 | | 55 | 779 | 18 | 289 |
| Dec. 2 | 513 | | 55 | 843 | 18 | 331 |
| Dec. 31 | 642 | 1–3 | 55 | 876, 877 | 18 | 803, 803, note, 804 |
| **1942**—Mar. 7 | 150 | | 56 | 141 | 18 | 804 |
| Mar. 10 | 178 | 1 (part) | 56 | 155 | 18 | 647 |
| Mar. 21 | 191 | | 56 | 173 | 18 | 641a |
| Mar. 27 | 199 | 1308 | 56 | 184 | 50 App. | 10 |
| May 5 | 206 | 1 | 56 | 271, 273 | 18 | 652 |
| Aug. 24 | 645 | 1, 2 | 56 | 747, 748 | 18 | 660a |
| Sept. 16 | 661 | 314 | 56 | | 50 | 344 |
| Dec. 24 | 826 | 1, 2, 3 | 56 | 1087 | 18 | 420f, 420g, 420h |
| Do | 834 | | 56 | 1087, 1088 | 20 | 101 |
| **1943**—June 30 | 179 | 1 (part) | 57 | 266 | 18 | 647 |
| Nov. 22 | 303 | | 57 | 601 | 18 | 97 |
| **1944**—Mar. 4 | 53 | 1, 2, 3, 4 | 58 | 111 | 18 | 472, 473, 474 |
| Apr. 1 | 151 | | 58 | 140, 130 | 18 | 262a |
| Apr. 4 | 162 | | 58 | 138 | 18 | 400 |
| July 1 | 438 | 10 (a), (d), (e), 19 (b) | 58 | 667, 668 | 41 | n 110 |
| Do | 358 | | 58 | 687 | 18 | 560a |
| Sept. 27 | 426 | | 58 | 752 | 18 | 391 |
| Oct. 3 | 479 | 36 | 58 | 781 | 18 | 560b |
| Dec. 20 | 625 | 4 | 58 | 837 | 12 | 1140a |
| Dec. 22 | 708 | 1, 2, 3 | 58 | 914, 915 | 18 | 52, 53a, 53b |
| **1945**—Apr. 30 | 103 | | 59 | 101 | 18 | 97b |
| May 19 | 126 | | 59 | 166 | 18 | 518a |
| June 8 | 178 | 1, 2, 3 | 59 | 234, 235 | 50 | 241, 241a, 243 |
| July 31 | 326 | 9 | 59 | 515 | 31 | 504b |
| Sept. 24 | 383 | 1, 2, 3 | 59 | 526 | 18 | 692 |
| **1946**—May 10 | 256 | | 60 | 182 | 18 | 41b |
| July 2 | 537 | | 60 | 420 | 10 | 17 note, 420a–420a–1 note, 181 note |
| July 10 | 547 | | 60 | 524, 525 | 18 | 641 |
| July 24 | 608 | | 60 | 730 | 18 | 400–411 |
| Aug. 1 | 724 | | 60 | 769 | 18 | 408a |
| Aug. 14 | 954 | 4 5 | 60 | 1, 004 | 7 | 1, 028 |
| **1947**—Apr. 16 | 39 | | 61 | 52 | 18 | 411 |
| May 16 | 79 | | 61 | 97 | 18 | 746b–1 |
| June 21 | 111 | | 61 | 134 | 18 | 244 |
| June 25 | 135 | 204 | 61 | 150 | 2 | 261 |

n First proviso, only, appearing on this page.
n First proviso, only, appearing on this page.
n As added by Act, Apr. 1, 1944, ch. 160 (part), 58 Stat. 146.
n Second proviso, only, appearing on this page.
n First, second, third, and sixth paragraphs, only, of this section of title 41 of the United States Code, 1940 edition.
n Only the provisions amending section 88 of Act, July 22, 1937, ch. 517, title IV, 50 Stat. 531, 532.

Approved
June 25 1948

Harry S. Truman

12:23 P.M. E.D.T.

*Joseph W. Martin Jr.*
*Speaker of the House of Representatives.*

*President of the Senate pro tempore.*

App. 117